## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARGARET RHEE-KARN,<br><br>    Plaintiff,<br><br>Vs.<br><br>SUSAN CHANA LASK, ESQ., A/K/A SUSAN LUSK, A/K/A SUSAN LESK,<br><br>    Defendant. | Index No.:15-<br><br>VERIFIED<br>CIVIL COMPLAINT<br><br>JURY TRIAL DEMANDED |

COMES NOW, MARGARET RHEE-KARN ("Plaintiff") by and through her attorneys, The Law Offices of Douglas R. Dollinger, Esq., P.C. & Associates alleging and complaining upon personal knowledge and, upon information and belief, based on an investigation and research of relevant documents obtained in this matter, as well as publically available materials related to all other facts alleged in this Complaint, claiming as follows:

## I.
## NATURE OF THE ACTION

1.    This action exists as a legal malpractice claim brought by Plaintiff against her former attorney SUSAN CHANA LASK, Esq., a/k/a SUSAN LUSK a/k/a SUSAN LESK, ("LASK") for claims involving both negligence and a breach of fiduciary duty concerning violations of New York State Judiciary Law§ 487, as well as for claims of fraud/misrepresentation, unjust enrichment, invasion of privacy with a resulting-infliction of emotional distress where by reason of Defendant's legal

malpractice, misconduct-fraud/misrepresentations the defendant was able to engage in bill churning during the course of the Plaintiff's representation where by reason of Defendant's misconduct Plaintiff suffered and continues to suffer from bouts of severe emotional distress related to her misconduct.

2.    Plaintiff retained-hired attorney LASK based on her publically claimed expertise in domestic relations matters dealing with her legal claim involving custody, support and visitation where she was seeking representation in matters of her infant child before the New York City Family Court, New York County.

3.    At all times material hereto, Plaintiff had a stated goal to obtain a quick and expeditious resolution of the custody, support and visitation proceedings so as to avoid, unnecessary cost and continuing emotional distress to her and her infant daughter associated with custody, support and visitation proceedings.

4.    Instead of following Plaintiff's retained and express desires defendant LASK embarked on a course of conduct in an undertaking of well-recognized jurisdictionally deficient and unsupported legal claims before The United States District Court for the Southern District of New York against the State of New York, the assigned judge to Plaintiff's Family Court case and other claimed state actors.

5.    At all times material hereto, LASK misled Plaintiff deceptively convincing her to pursue federal claims against the aforesaid state actors for a deprivation of her and her infant daughter's constitutional and civil rights under circumstances which defendant LASK knew were not ripe for or supported by either the US Constitution, statutory or case law applicable to Plaintiff's claims without first exhausting all of the available state court remedies provided for under New York's own judicial system.

6.      At all times material hereto, the cost to Plaintiff was unnecessary legal fees in excess of three hundred fifteen thousand ($315,000.00) dollars; unwanted media exposure to the press and unwanted exploitation of Plaintiff and her daughter's private affairs-information on LASK's website as occasioned in Plaintiff's family court claims such that LASK's misconduct knowingly caused an exacerbation of Plaintiff's then existing distressed emotional state and which has now manifested in permanent feeling of hopelessness in having lost full custody and visitation with her daughter.

7.      Plaintiff seeks a declaration establishing the respective rights to her and her daughter under a written retainer agreement she had with Defendant LASK.

8.      Plaintiff seeks to establish that the fees claimed by the Defendant LASK are based on false representations and claims, and the costs are improper, unreasonable and unconscionable.

9.      Plaintiffs further seek to establish that because of the breach of their ethical, fiduciary and statutory obligations, the Defendant LASK should be required to disgorge and forfeit their right to any fees procured as a result of her wrongful conduct.

10.      Plaintiffs further seek damages for the emotional distress caused by the attorney's fraudulent conduct, as well as an award of punitive damages for her use of her website and an order prohibiting the continued publication of her personal legal claims where the same are being used to deceive the public and otherwise constitutes malicious conduct.

## II.
### Jurisdiction And Venue

11.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1332 in the complete diversity of citizenship among the parties with the amount in controversy exceeding the sum of $75,000.00.

12.     Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that Defendant's businesses is located within the Southern District of New York, and the events giving rise to this claim occurred within the boundaries of the Southern District of New York.

## III.
### SUPPLEMENTAL JURISDICTION

13.     Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action and within the original jurisdiction of this court that they form part of the same case or controversy.

## IV.
### THE PARTIES

**Plaintiff:**

14.     MARGARET RHEE KARN was and is a resident of the City of New York.

**Defendant:**

15.     SUSAN CHANA LASK, a/k/a SUSAN LUSK, a/k/a SUSAN LESK is an attorney licensed to practice law in the State of New York with offices located at 244 Fifth Avenue, Suite 2369, New York, New York 10001.

## V.
### FACTUAL BACKGROUND

16.     At all times material hereto, and prior to April 2010 Plaintiff was married to Kenneth Karn.   Plaintiff is the biological and natural mother of an infant child ("S. Karn").   Kenneth Karn is the child's biological and natural father.

17.     On April 23, 2010 after the Plaintiff and Kenneth Karn had divorced,

Plaintiff filed a petition for full custody/visitation of the infant child styled: *Margaret Rhee Karn vs. Kenneth Karn* with the matter being venued in the New York City Family Court. S. Karn's rights were represented by a court appointed law guardian.   At the time, Plaintiff had primary custody of her daughter.

18.     On November 17, 2010, Kenneth Karn asked the court to divide custody evenly between himself and Plaintiff.    The court granted his request without a hearing and issued a conforming order.

19.     On August 19, 2011, the referee in the proceedings held a hearing on the order.   After receiving hearsay testimony from Respondent Ken Karn and accepting other hearsay testimony, including consideration of a report of the court appointed forensic psychiatrist and the law guardian for S. Karn which Plaintiff claimed was false and otherwise untrue; without hearing testimony from Plaintiff the referee reduced Plaintiff's visitation and granted primary custody to Kenneth Karn; continue the hearing without allowing Plaintiff to testify or cross-examine Respondent Kenneth Karn.

20.     The matter-decision and order was appealed to the First Department of New York State's Supreme Court Appellate Division.   On March 20, 2012 the court dismissed the appeal of the August 19, 2011 order on the grounds that the order was non-final and thus not appealable as of right, and that neither the Family Court nor the First Department had given Plaintiff permission to appeal.   *Matter of Rhee-Karn v. Karn,* 2012 N.Y. Slip Op. 02045 (1st Dep't Mar. 20, 2012).

21.     Plaintiff was frustrated with the passage of time and with her loss of primary custody and reduced time/visitation with S. Karn without affording her an opportunity to present her claims of falsehood as to the allegations before the Court.

22.     Plaintiff believed the false claims presented to the hearing officer-referee were strategic, designed to delay adjudication of her parental rights by her former husband's counsel as well as the law guardian where there was a tactical acceptance of the false and hearsay testimony by the hearing officer such that the matter was causing emotional distress in Plaintiff and S. Karn by reason of their separation and the loss of their rights.

23.     To Plaintiff, based on conversations with her former counsel it appeared their strategy was to continue to use the weakness of the Family Court's judicial process by continuing to make false claims involving Plaintiff receiving interim orders so as to indefinitely avoid a trial and a final adjudication of Plaintiff's parental rights.

24.     In or about May 2012 Plaintiff was seeking new counsel to represent her in the custody proceedings and conducted research using the Internet whereupon she was attracted to defendant LASK's website for the reasons of its claims and content in relation to advocacy of public interest and parental rights.

25.     The website was specific in content advancing claims that defendant LASK specialized in family law practice including the fact that she had been successful in having a law guardian removed in another case and other matters where defendant LASK made claims designed to create a false belief in her legal accomplishment or clients' rights, her legal skills and education in family law as well as constitutional law which were intended to advance advocacy of similarly situated individuals who were also experiencing problems with resolution of their family Court claims and a loss of their constitutional rights.

26.     After reading the website claims, in reliance of them, in or about May 2012, Plaintiff approached defendant LASK for assistance in resolving her custody and visitation matters and wanted to know her rights.

27.     Plaintiff explained to defendant LASK that more than two (2) years had passed since her family court petition was filed and that there had not been a trial in the matter, further advising defendant LASK of her claims concerning the delaying tactics discussed with her former counsel and the failed appeal.

28.     Plaintiff explained that she and her infant daughter had been alienated such that she and S. Karn were suffering emotionally by means of Kenneth Karn's attorney obtaining interim court orders designed to reduce their visitation based on the false claims of the law guardian, uncontested findings of the court appointed psychiatrist which Plaintiff claimed were collusive among her former husband's counsel creating a false prejudicial-antagonistic assessment of her parental rights to the hearing officer.

29.     Plaintiff advised defendant LASK that she wanted a hearing in the matter, she wanted a new law guardian appointed for S. Karn as soon as possible, the delays were having an impact on her emotional state she was having sleepless nights, anxiety about the mounting cost for legal representation and was in jeopardy of losing her job by reason of the numerous court appearances and the impact of the emotional strain on her at work in her job performance.

30.     Her express goal was, as explained, based on the March 20, 2012 decision and order of the Appellate Division for the Frist Department, for the need to have a final resolution of the matter as quickly as possible wherein Plaintiff inquired about LASK's website posting including her claimed expertise in family law, removing the law guardian.

31.     Defendant LASK confirmed her activities-success in her direct involvement of having a law guardian replaced and told Plaintiff that she was an expert in both state and constitutional law; that she had a case that even went to the US Supreme Court.

32.     Defendant LASK went on to explain to Plaintiff that The Uniform Rules for Trial Courts *22 NYCRR §205.14,* Uniform Rules of the Family Court §205.14 and *CPLR §2219(a)* mandate custody cases conclude with final orders within 90 days from the date of filing a custody petition.

33.     Defendant LASK also explained that the Family Court Act §1112 prohibits an appeal of custody and visitation orders until a final decision is made at the end of a trial and deems with appellate Court's holding that interim custody and visitation orders which are temporary are not appealable.

34.     Plaintiff explained that she was aware of the law and fact that interim orders were generally not appealable and that was why she wanted to proceed to a final decision of the matter she did not want to have her and her daughter held captive to Kenneth Karn's attorney manipulation of the Family Court proceedings

35.     Defendant LASK told Plaintiff she was not the first to complain of these tactics; the family court's failure to comply with the law was well known wherein defendant LASK agreed to represent Plaintiff in her state law claims agreeing that she would immediately seek to have the law guardian replaced and force the Court to hold a hearing and make a final decision in the matter of her custody and visitation rights.

36.     Thereafter, on or about May 17, 2012 defendant LASK presented Plaintiff with a written retainer agreement for her services and representation in the custody/visitation proceedings before the New York City Family Court. [**Exhibit "A".**]

37.    The retainer provided an estimate that the matter would cost between "$70,000-100,000.00." The Retainer established a minimum flat fee of $25,000.00 plus a mandatory $200.00 fee for disbursements for the period commencing May 12, 2012 and up to July 31, 2012.

38.    The Retainer limited defendant LASK's involvement to the family court proceedings providing a billing fee-rate to be applied and calculated at $650.00 an hour, billable at increments of .25 hourly, wherein by construction defendant owed faithfully at a minimum 38.75 hours for this period with excess hours during the minimum flat fee period May 12, 2012 and up to July 31, 2012 to be billed at a rate of $650 per hour.

39.    Section VIII of the Retainer Agreement provided that "during this initial retainer period" May 18, 2012 through July 31, 2012 attorney will do the following:

    a. Conduct in-depth interview with client;
    b. Review, analyze and digest documents submitted by Client, including appellate filings/decision;
    c. Conduct    research;
    d. Draft and file the substitution of attorney/communications to attorneys, court and child's attorney;
    e. One court appearance limited to 4 hours during this retainer period;
    f. Begin trial strategy and prepare with client.

40.    An additional term of the Retainer Agreement, Section IX advised Plaintiff that the media follows defendant LASK; that based on her case being filed the media may be attracted to the matter; that defendant LASK had the right to use **"redacted"** copies of any pleading filed in Plaintiff's case on her website with the removal of all personal information such as the "client's name, personal info and case information".

41.     Defendant LASK claimed that the postings were for the purpose of assisting others-the general public-in understanding similar cases as may relate to them.

42.     The specific language of the Retainer Agreement provided as follows:

"MEDIA/WEBSITE"

"Client understands that the media follows Ms. Lask's cases, or may become involved in this particular case in some way just by virtue of its filing. Client also understands that Ms. Lask sometimes uploads case documents to her website (i.e.-pleadings, motions, anything basically filed or to be filed with the court), which she does redact-meaning she removes the Client's name, personal info and case information.   This uploading is done to assist others like yourself in understanding similar cases. Client agrees and gives Ms. Lask permission to upload any documents in this case provided they are redacted. If anything Ms. Lask uploads by chance mistakenly has information of yours that was inadvertently not removed and you want removed, you will promptly notify Ms. Lask via e-mail and it will be immediately corrected. Client understands that this can be a mistake and not intentional by any means. Client may receive the redacted document before it is uploaded to review it and inform if anything has inadvertently not been removed. (i.e.-Client's name, address, child's nickname). In the event of media attention, you will not speak to any media about your case and will always refer them to Ms. LASK and immediately notify Ms. Lask if anyone has attempted to contact you regarding your case. You and Ms. Lask will decide what, if anything, to say to the media."

43.     The retainer expressly establishes the scope of the work to the Family Court trial in New York.

44.     In reliance on LASK's Retainer Agreement and her belief in the above sited content of defendant's Website as well as the attestations of defendant LASK as to her understanding and agreement to perform in the manner Plaintiff was seeking her services; for a quick resolution of her legal claims, on May 17, 2102 Plaintiff

executed-returned the retainer and paid LASK $25,200.00 for her trial representation in the New York City Family Court custody/visitation proceedings.

45.     Thereafter, on or about June 4, 2012 LASK formally appeared in the family court matter by filing a substitution of attorney with the clerk of the Family Court, and with her former spouse's counsel and the law guardian for S. Karn thus becoming the attorney of record for Plaintiff on the matters pending in and before the New York City Family Court.

**Defendant's Scheme-Acts of Deception:**

46.     That at all times material hereto, it has been the planned strategy of LASK to use her Website to lure unsuspecting consumers to retain her legal services where her scheme constitutes a trap designed to allow her to exploit her client(s) legal affairs for her own media and financial gain.

47.     The scheme operates by LASK intentionally delaying the resolution of the client(s) cases for the purposes of media attention and for churning their files allowing her to illegally recover exorbitant-unnecessary legal fees.

48.     LASK's favorite method and pattern is to create a **conflict** among opposing counsel, the parties to the case and in most instances the courts judges and/or hearing officers.

49.     That at all times material hereto, Plaintiff's request was for a quick resolution of her legal claims was known by LASK and expressed at the time of her interview.

50.     Unknown to Plaintiff was that the manner LASK would seek to exploit her; LASK used the same pattern perpetrated on others conflicting the parties thus causing delays' in resolving the legal claims where in the case of Plaintiff, as she often does, LASK's intended to play on Plaintiff's emotions by using the violations of Plaintiff's

parental rights by the Family Court so as to obtain the fees while she delayed resolution of the claims; where she knew the actions-strategy to be taken by her would be antagonistic to any settlement; and would not be as was requested by Plaintiff to quickly resolve her claims but would instead only delay the resolution of Plaintiff's legal claims by creating hostility in the matter.

51.     That at all times material hereto, LASK's conduct was/is a chronic, extreme pattern of legal delinquency involving multiple clients, attorneys and the courts, including Plaintiff, wherein in furtherance of her billing scheme LASK's misrepresentations and desire to create conflict were directed at the adversarial parties, the courts, and were otherwise undertaken to churn unnecessary legal fees where documents and arguments were submitted to the Plaintiff and the Court in violation of New York State Judiciary Law§ 487.

52.     That at all times material hereto, in furtherance of her scheme in or about June 2012, LASK contacted Plaintiff falsely advising her that she had done extensive research into federal law relating to the delays in her case and that she had determined based on the case law that her and her daughter's constitutional rights were being violated by the New York State legal system and in particular the New York City Family Court by reason of it allowing strategic delays in the resolution of her claims; allowing the case to continue for in excess of 90 days under the pretense of interim-temporary orders; further advising plaintiff that she wanted to prepare a summons and compliant for the violations of her and her daughter's civil rights case in federal court and that this was the "**fastest and cheapest way**" to resolve the case.

53.     Defendant LASK claimed she had already researched the constitutional violations which she identified as violation of their 1st and 14th Amendment rights and

that there were violations of Plaintiff's and her daughter's civil rights which would be best addressed by immediately bringing an action pursuant to 42 USC §1983 requesting injunctive and declaratory relief of the state court proceedings.

54.    At all times material hereto, the statements were knowingly and intentionally false or misleading made by defendant LASK for media exploitation and financial gain in delaying resolution of the Family Court matter with the knowledge that the action would further alienate the parties through antagonistic claims; wherein the approach would create a conflict in the Family Court proceedings delaying the case; that her conduct in commencing an action would not be in accord with the Plaintiff's stated goal to allow her to resolve her legal issues as quickly as possible; that the manner of approach was not legally supported by her research and that except as to defendant LASK's own media and financial benefit there would be no useful purpose in commencing such an action as the claims were not yet ripe for a federal constitutional claim involving due process claims without first exhausting Plaintiff's state court remedies.

55.    At all times material hereto, defendant LASK's research had already revealed that there existed limitations to commencing federal actions against the state and state actors imposed by the 11th Amendment to the US Constitution requiring Federal courts to abstain from exercising jurisdiction over constitutional claims seeking declaratory or injunctive relief when (i) there is an ongoing state proceeding (ii) involving an important state interest and (iii) the plaintiff has an adequate opportunity for judicial review of their constitutional claims in state court during or after the proceeding. *Christ*

*the King Regional High Sch. v. Culvert*, 815 F.2d 219, 224 (2d Cir. 1987) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619 (1986) (relying upon *Younger v. Harris*, 401 U.S. 37, 49, 54 (1971))).

56.    That at all time material hereto, in reliance on LASK's knowingly false claims of ripe constitutional violations and that commencing a federal action would be the "**fastest and cheapest way**" to resolve the case Plaintiff agreed to allow LASK to prepare, file and serve summons and complaint for the prosecution of her claims in the United States District Court for the Southern District of New York.

57.    That at all times material hereto, in furtherance of her billing scheme the LASK engaged in conduct which was planned to delay the family court proceeding by rejecting settlement talks while she was preparing the federal court complaint where her plan was to intentionally create a hostile relationship among herself Respondent Kenneth Karn's counsel, the law guardian for S, Karn, Rosemary Rivieccioe, the court appointed forensic psychologist Dr. Stephanie Brandt and the hearing officer Edwina Richardson-Mendelson wherein in furtherance of her scheme she intentionally sent explosive and toxic e-mails personally attacking their skills and competency as well as accusing them of conspiring to deny Plaintiff her parental rights.

58.    For instance, in or about the beginning of June 2012, in furtherance of her scheme to delay the proceeding, fully aware of the plaintiff's stated goal and desire to expeditiously resolve her custody/visitation matters LASK after her review of the Plaintiff's family court filings; seeking a way to employ her plan discovered that there was a hearing scheduled for September 7, 2012 wherein the Court appointed physiatrist Dr. Stephanie Brandt was to present continuing testimony in the matter of forensic findings as related to the family court petition.

59.     In furtherance of her billing scheme LASK intentionally created hostility among Plaintiff and Dr. Brandt where by knowledge of the scheduled September 7, 2012 hearing, in June 2012, LASK notified Dr. Brandt of her need to attend the hearing to occur in or about September 2012, although she knew the date to be September 7, 2012, advising Brandt that she should block out a three (3) week period for her appearance sometime close to the hearing date in September 2012 and that she would get back to her with a specific date for trial.

60.     That in furtherance of her billing scheme LASK intentionally failed to notify Dr. Brandt of the hearing date or her required appearance and never intended to get to trial; that by reason of the failure of Dr. Brandt to appear the Court adjourned the scheduled hearing of September 7, 2012 and rescheduled the matter for October 22, 2012. That Plaintiff advised LASK the delay created anxiety and distress in her.

61.     Thereafter, LASK in furtherance of her billing scheme sent Brandt an e-mail falsely claiming she had missed the scheduled court appearance causing unnecessary delay and expense to plaintiff and otherwise intentionally creating hostility and prejudice in Dr. Brant towards Plaintiff wherein at all times LASK had intentionally failed to properly notify Dr. Brandt.

62.     Just as she had done with Dr. Brant LASK was intent on creating as much hostility with the law guardian as she could wherein on or about October 16, 2012, defendant LASK received an e-mail from the law guardian for S. Karn requesting a response by defendant LASK to follow-up on a proposed settlement offer which had not been presented by defendant LASK as promised since June 2012.

From: RRIVIECCIOESQ@aol.com Sent: Tuesday, October 16, 2012 9:39 AM
To: susanlesq@verizon.net Cc: cssesq1@aol.com
Subject: Karn
Good morning-

I write again in furtherance of your stated desire, Susan, to negotiate a settlement in this matter. To date, I have not been proffered any resolutions. Is one to be expected, as the trial resumes next week.

Also, the Court has made it clear that your client is to remit payment of my outstanding fees. She has not done so. I truly do not wish to present a motion to compel or to seek contempt, so I ask that you encourage your client to remit payment.

Thank you.

63.     That in response to said e-mail LASK sent an e-mail rejecting settlement talks and received one from the law guardian concerning her bill.

*     *     *

From: "Susan Chana LASK Esq" Date: Tue, 16 Oct 2012 15:34:44 -0400 To: <RRIVIECCIOESQ@aol.com>
Subject: 10-16-12SL-RR Karn

That desire, Ms. Rivieccio, was in the summer and I raised it again before the Judge in chambers and You were unprofessional enough to laugh and make irrelevant commentaries. As well, YOU ARE THE LAWYER
FOR THE CHILD— Ask your client what she wants and get a Lincoln hearing too because this is the most disgraceful record I have seen.
To date my review of the entire file and YOUR BILLS shows you never state your client's desires; only date you have refused to provide her an appropriate response per the disciplinary rules and fee arbitration.

Read the rules and act appropriately, but do not use the judge for your threats and as your personal puppet to force payment against the Rules and the law.
Finally, your non-appearance last week is deplorable-or did your
client direct you not to appear?

\*     \*     \*

From: rrivieccioesq@aol.com Sent: Tuesday, October 16, 2012 5:00 PM To: Susan Chana LASK Esq
Subject: Re: 10-16-12SL-RR Karn

As to the bill, she has NOT questioned any entry. I do not have one letter or email from her on this issue. I will include that fact in my OTSC regarding payment.

\*     \*     \*

64.     That in early October 2012 Kenneth Karn filed an order to show cause claiming contempt violations of the standing restrictions on the Court's visitation order of August 19, 2011 returnable on or about October 11, 2012.

65.     That upon information and belief, on October 11, 2012, although LASK had received the order to show cause and all of its exhibits LASK falsely claimed she had not received the documents and required the order to show cause be reserved wherein the matter was made returnable for October 22, 2012.   That based on the foregoing, Plaintiff advised LASK the delay created anxiety and distress in her.

66.     That on October 22, 2012, although she knew in advance she would not be appearing, without presenting prior notice to the Court, LASK claimed and alleged a medical excuse for her non-appearance in person and appeared telephonically for both the continuing trial of the custody matter and on the order to show cause filed by Kenneth Karn as related to a claim of contempt of the temporary visitation order.

67.     That at all times material hereto; Plaintiff was present in the Family Court and could hear the telephonic exchange between the hearing officer and LASK.

68.     That LASK knew or should have known the manner of her demeanor and the telephonic appearance created anxiety and distress in the Plaintiff.

69.     Rather than provide for an adjournment in advance of the case coming before the Court or provide that the matter be covered by counsel, LASK proceeded telephonically wherein she intentionally hung up on the Court claiming she was not competent to appear due to her medical condition.   That the matter was adjourned November 30, 2012.

70.     By reason of her misconduct-hanging up on the court the hearing officer was angered.   That the manner of her demeanor and LASK's hanging up the telephone on the hearing officer created anxiety and distress in the Plaintiff whereupon Plaintiff advised LASK of her feelings and concerns.

71.     That at all times material hereto, although LASK knew or should have known the federal action was not yet legally ripe LASK advised Plaintiff she was working on the federal complaint and that she should not worry she would not be in state court much longer.

72.     That on or about November 1, 2012 LASK demanded a second payment of $25,000.00 in furtherance of her billing scheme. That on November 6, 2012 Plaintiff paid LASK $25,000.00 where in the majority of the fees were for activities related to LASK's claimed research and preparation of the federal complaint.

73.     That Plaintiff advised LASK the payment was money she had in savings; that a portion was borrowed from her parents-family and that relying on them created anxiety and distress for her.

74.     That on November 30, 2012 the matter was adjourned due to inclement weather the matter was rescheduled to December 3, 2012.

75.     On the morning of the scheduled hearing of December 3, 2012 although she had sufficient time and opportunity between the hearing of October 22, 2012 to avoid any further delays during the scheduled hearing of December 3, 2012 LASK intending to cause a delay in the matter served her response papers to the outstanding October 2012 Order to Show Cause brought by Kenneth Karn and also served a separate Order to Show Cause on behalf of Plaintiff seeking an amendment to her visitation order of August 19, 2011 just before the hearing.   By reason of the late filings the matter was adjourned to December 6, 2012. .   That Plaintiff advised LASK the foregoing delay created anxiety and distress in her.

76.     On December 6, 2012 LASK again appeared telephonically. That the telephonic appearance created unnecessary anxiety and distress in the Plaintiff. That the matter was adjourned until January 15, 2013. That thereafter Plaintiff advised LASK the foregoing telephonic appearance and delay created anxiety and distress in her.

77.     By reason of her October 22, 2012, misconduct, LASK's delaying tactics where the matter was adjourned-delayed to January 15, 2013 for the period from at least September 7, 2012 through January 15, 2013 the matter was delayed with the result being limited visitation between Plaintiff and S. Karn.   That Plaintiff advised LASK the foregoing delay created anxiety and distress in her.

78.     That the delay in serving said order to show cause for modification of her visitation rights and Plaintiff's response to the pending October 2012 motion of Kenneth Karn on December 3, 2012 was intentional and a further delaying tactic used to create hostility and increase LASK's billing cycle.   That Plaintiff advised LASK the foregoing delay created anxiety and distress in her.

79.     Thereafter, rather than bring a motion to disqualify the law guardian or seek recusal of the hearing officer by presenting an Article 78 for mandamus compelling a trial of the custody and visitation matter; that in furtherance of her billing scheme, although she knew or should have known by reason of the facts and procedural posture of the case that Plaintiff had not exhausted her state court remedies; that the facts in Plaintiffs' case lacked the necessary showing of irreparable harm-injury for injunctive and declaratory relief; that by filing the action she would cause a delay in the Family Court proceedings by reason of the inherent conflicts and basis for disqualification associated with the claims asserted against the law guardian's future appearance and the claims of bias directed in the hearing officer continuing to preside in the matter on December 21, 2012 Defendant LASK initiated a civil rights action in the Southern District of New York- 12–CV–9354 (NRB) against "Referee Marva A. Burnett, individually and as a state actor for the County Family Court; Rosemary Rivieccio, Esq., individually and as the lawyer for the child & Dr. Stephanie Brandt, individually and as the forensic psychiatrist and the City of New York".

80.     In general the Complaint alleged that the family court has a "known custom & policy of interfering with litigants' constitutional rights", that  defendant Burnett usurps her powers to violate plaintiffs' constitutional rights in collusion with defendant Rivieccio "as their custom and policy is to abuse a broken system"; that the Plaintiff "was never found to be an unfit parent"; that the defendant "Burnett usurps her powers to abuse plaintiff by refusing to advise her of her parental rights; that defendant "Burnett usurps her powers to abuse plaintiff by denying her hearings for over two and half years to *sua sponte* interfere with her parental rights; that defendant "Burnett's bias is evident

as she always supports defendant Rivieccio to interfere with plaintiffs' civil rights to due process and access to each other; that defendant "Burnett has a recorded history of violating due process"; that "defendants conspire to fictionalize a case against plaintiff to support their personal relationships and agendas while they profit by preventing hearings, misrepresenting facts and ignoring facts"; that defendant Burnett further usurps her powers by using court orders to force plaintiff to pay court appointed persons to her financial burden; that defendant "Rivieccio fictionlized a case against plaintiff  . . . refuses to do her job for the best interests of the child by ignoring & encouraging unlawful court actions so she could profit financially: that defendant Burnett supports her because of their affiliation in the system"; that defendant "Rivieccio abuses her position as a licensed attorney by using her appointment as an attorney for the child to violate the rules of professional conduct: that defendant "Brandt conspired with defendants Rivieccio and Burnett to falsify a case against plaintiff" where by reason of the foregoing there was and were continuing violations of Plaintiff and her infant daughter fourteenth amendment rights entitling them to relief by way of 42 U.S.C. §1983; that their substantive due process rights were violated; that the City of New York had a policy and custom where there was a lack of training among its employees so as to avoid conspiracy to violate rights wherein defendant Burnett acted without authority committed legal malpractice there should be a disgorgement of fees as to defendant Brandt's medical malpractice action" with an injunction being imposed against the defendants.

81.    That at all times material hereto, LASK knew or should have known that the foregoing claims were not actionable-ripe-failed to state a cause of action and were subject to immediate dismissal for the failure to state a claim pursuant to the Federal Rules of Civil Procedure "FRCP").

82.    That at all times material hereto, upon information and belief, after service of the foregoing complaint defendant LASK received communication from the New York City Law Department and other named defendants' counsel advising her of the perfidious nature of the claims and in particular the lack of a ripe claim wherein they were prepared to move for dismissal of the complaint and sanctions pursuant to FRCP wherein LASK was faced with the potential for sanctions pursuant to FRCP-Rule 11.

83.    That at all times material hereto, in furtherance of her billing scheme as planned-intended by LASK, the commencement of the federal action and its effect in delaying the family court proceeding based on the conflict she created relating to the law guardian's continued appearance on behalf of S. Karn in the custody/visitation hearings and trial proceeding forward based on the bias of the hearing officer had the intended-desired effect where the proceedings were delayed for motions concerning the disqualification of the law guardian. That Plaintiff advised LASK the delay created anxiety and distress in her.

84.    That on or about January 7, 2013 LASK, in furtherance of her billing scheme, after insuring she had created the conflict and a bill consuming the prior fees paid by Plaintiff, and although she knew that the complaint filed in the Southern District of New York- 12–CV–9354 would be voluntarily dismissed and that she would be subject to Rule 11 Sanctions LASK demanded a third payment of $25,000.00.

85.    That on January 10, 2013 Plaintiff paid LASK $25,000.00 wherein the majority of the fees were for activities related to LASK's claimed research and preparation of the said federal complaint.

86.    That Plaintiff advised LASK the payment was money she had in savings; that a portion was borrowed from her parents-family and that relying on them created anxiety and distress for her.

87.     That by reason of the foregoing filed federal civil rights complaint and pending motion for disqualification, on January 15, 2013, no hearing could be held on the pending family court petition, wherein based upon the standing forensic evidence-the testimony of the court-appointed psychiatrist Dr. Brandt the hearing officer continued an order limiting Plaintiff to supervised visitation.    That Plaintiff advised LASK the delay created unnecessary anxiety and distress in her.

88.     That upon information and belief,  based on  the known defects in pleadings and facing a possible Rule 11 motion for sanctions defendant LASK filed a voluntarily dismissal of the action on February 5, 2013 advising Plaintiff of the same.

89.     That on or about February 6, 2013, in furtherance of her billing scheme, in response to Plaintiff's request concerning information as to why there was a voluntary dismissal of the federal action LASK fully knowing that she was concealing the true reason of the dismissal, falsely advised Plaintiff that she needed to file an amended complaint; that it was better to re-file because the judge assigned to the case was a bad judge and would have ruled against her wherein LASK demanded a fourth payment of $30,000.00 in furtherance of her billing scheme.

90.     That Plaintiff advised LASK the payment was money she had in savings; that a portion was borrowed from her parents-family and that relying on them created anxiety and distress for her.

91.     That on February 8, 2013 Plaintiff paid LASK $30,000.00 wherein the majority of the fees were for activities related to LASK's claimed research and preparation of a second federal complaint.

92.     On February 14, 2013 defendant LASK, in furtherance of her scheme to delay and churn her billing, rather than commence an Article 78 Proceeding to compel a hearing

and determination in the matter by trial and so as to obtain a final appealable order and resolution of Plaintiff's legal claims defendant LASK filed a motion with the First Department seeking leave to appeal the January 15, 2013 temporary order wherein LASK knew she had created the reason for the delay and further knew the order was not final as appealable.

93.     Thereafter, in furtherance of her scheme to delay and churn her billing , rather than bring a motion to disqualify the law guardian or seek recusal of the hearing officer or present an Article 78 for mandamus compelling a trial of the custody and visitation matter; that in furtherance of her billing scheme, although she knew or should have known by reason of the facts and procedural posture of the case on or February 18, 2013, at the direction of LASK wherein LASK ghost wrote the correspondence, Plaintiff proceeding pro se before the Family Court sending a letter about hearing officer Burnett's actions to Edwina Richardson-Mendelson, Administrative Judge for the New York County Family Court, and Robert Mulroy, Deputy Chief Judge of the Family Court Magistrates. That Plaintiff advised LASK that her direction to appear pro-se created fear, anxiety and distress in her.

94.     In Plaintiff's letter, LASK, fully knowing threat of litigation would delay any response by the Court had Plaintiff assert that she would re-file her suit in federal court if the Court did not address her case.

95.     That at all times material hereto, Plaintiff was fearful of signing and delivering said letter to the Family Court and advised LASK of said fear, wherein thereafter for the reason of its delivery when she would ponder the letter's content and effects on her case before the Court she began to experience bouts of fear periods of sleepless nights, loss of appetite, shaking and nausea, depression and anxiety.

96.     That on March 15, 2013, in furtherance of her scheme to delay and churn her billing, LASK advised Plaintiff she was working on a second federal complaint wherein LASK demanded a fifth payment of $5,000.00.

97.     That Plaintiff advised LASK the payment was money she had been saving and that a portion was borrowed from her parents-family-that since relying on her parents created she began to experience increased periods of sleepless nights, loss of appetite, shaking and nausea, depression and anxiety.

98.     That at all times material hereto, LASK told Plaintiff to seek psychiatric help whereupon Plaintiff did advising LASK of the same.

99.     That on March 18, 2013 Plaintiff paid LASK $5,000.00 wherein the majority of the fees were for activities related to LASK's claimed research and preparation of a second federal complaint.

100.     That the family court matter was scheduled for April 4, 2013 for submission of the motions to disqualify the law guardian, wherein the Court denied the motions based in part on the federal complaint being voluntarily dismissed and LASK's failure to present opposition or papers in support of the disqualification.

101.     That at all times material hereto, in furtherance of her scheme to delay and churn her billing, LASK became argumentative with the hearing officer questioning her as to whether Plaintiff had made her angry by filing a "pro se" complaint wherein LASK knew she was the true author of the complaint and only intended on angering the judge attempting to force her disqualification for reasons of bias. The matter was adjourned until April 24, 2013.

102.    That on April 4, 2012 Plaintiff advised LASK that her demeanor towards the Court together with the delay created anxiety and distress in her and that she was concerned that the judge would retaliate against her for the complaint wherein LASK advised Plaintiff she was trying to anger her judge so that she could get her disqualified and that they need to finish the amended complaint in order to do so as her letter to the administrative judge was not working.

103.    That on April 4, 2013, in furtherance of her scheme to delay and churn her billing, LASK advised Plaintiff she was working on the amended federal complaint so that she would get both the hearing officer and law guardian disqualified wherein LASK demanded a sixth payment of $50,000.00 in furtherance of her billing scheme.

104.    That Plaintiff advised LASK the payment was money she had been avings and a portion was borrowed from her parents-family and that relying on them created and increase in her anxiety and distress for her.

105.    That on April 5, 2013 Plaintiff paid LASK $50,000.00 wherein the majority of the fees were for activities related to LASK's claimed research and preparation of a second federal complaint.

106.    That despite having the opportunity to seek an Article 78 proceeding for mandamus to compel the trail of Plaintiff's Family Court petition in furtherance of her scheme to delay and churn her billing LASK failed to commence an Article 78 proceeding wherein on April 24, 2013, the hearing of the October 2012 Order to Show Cause for contempt was resumed. Testimony was taken and the matter was continued for May 16, 2013.

107.     Thereafter, rather than bring a motion to disqualify the law guardian or seek recusal of the hearing officer or present an Article 78 for mandamus compelling a trial of the custody and visitation matter; that in furtherance of her billing scheme, on May 15, 2013, after receiving no response to her letter of February 18, 2013, at the direction of LASK Plaintiff called Richardson-Mendelson's office to ask why she had not received a response to her February letter. Plaintiff was told by the court that a response "would not be appropriate" since Plaintiff had threatened to take legal action.

108.     That Plaintiff advised LASK that her direction to appear pro se created anxiety and distress in her especially where the court had advised her that for the reason the delay in answering her letter was the claimed threat to renew the federal action.

109.     That on May 16, 2013 the Family Court hearing on the contempt Order to Show Cause of October 2012 resumed.     That in furtherance of her scheme to delay and churn her billing, despite the opportunity and right to do so, LASK failed to commence an Article 78 proceeding for mandamus to compel a trial.

110.     That on May 21, 2013 LASK advised Plaintiff her only chance was to file an "amended complaint" and that she was working on the amended federal complaint wherein LASK demanded a seventh payment of $50,000.00 in furtherance of her billing scheme.

111.     That Plaintiff advised LASK the payment was money she had been saving and a portion was borrowed from her parents-family and that relying on them created an increase in her anxiety and distress for her.

112.     That on May 24, 2013 Plaintiff paid LASK $50,000.00 wherein the majority of the fees were for activities related to LASK's claimed research and preparation of a second federal complaint.

113.   That on June 28, 2013 the Family Court hearing on the contempt Order to Show Cause of October 2012 resumed. That in furtherance of her scheme to delay and churn her billing, despite the opportunity and right to do so, LASK failed to commence an Article 78 proceeding for mandamus to compel a trial.   The matter was continued until July 24, 2013.

114.   Between June 28 and July 24, 2013, rather than seek an Article 78 for mandamus compelling a trial of the custody and visitation matter; that in furtherance of her scheme to delay and churn her billing, although she knew or should have known by reason of the facts and procedural posture of the case on July 9, 2013, LASK, wrote another letter to Richardson-Mendelson and the hearing officer Burnett, complaining of the delay and requesting immediate and consecutive trial dates.

115.   On July 11, 2013, at the direction of LASK Plaintiff again appearing pro se wrote a second letter to Douglas Hoffman, Supervising Judge of the Family Court, again requesting that he review her case.    In both instances, the court refused to respond.

116.   At all times material hereto, after July 11, 2013, based on the foregoing, Plaintiff advised LASK that she was experiencing an increase of sleepless nights, loss of appetite, shaking and nausea, depression and anxiety.

117.   That on the July 24, 2013 the Family Court hearing on the October 2012 Order to Show Cause and December 2012 motions resumed. No Article 78 for mandamus to compel a trial was filed by LASK.    The matter was continued until August 23, 2013.

118.   That on August 23, 2013 the Family Court hearing on the October 2012 Order to Show Cause and December 2012 motions resumed. No Article 78 for

mandamus to compel a trial was filed by LASK.   The matter was continued until September 23, 2013.

119.   Thereafter, rather than bring a motion to disqualify the law guardian or seek recusal of the hearing officer by presenting an Article 78 for mandamus compelling a trial of the custody and visitation matter; that in furtherance of her billing scheme, although she knew or should have known by reason of the facts and procedural posture of the case that Plaintiff had not exhausted her state court remedies; that the facts in Plaintiffs' case lacked the necessary showing of irreparable harm-injury for injunctive and declaratory relief; that by filing the action she would cause a delay in the Family Court proceedings by reason of the inherent conflicts and basis for disqualification associated with the claims asserted against the law guardian's future appearance and the claims of bias directed in the hearing officer continuing to preside in the matter on August 30, 2012 Defendant LASK initiated a second civil rights action in the Southern District of New York- 13–CV– 06132(JPO) against the Office of Court Administration, Referee Burnett; Richardson-Mendelson; A. Gail Prudenti, the Chief Administrative Judge of the Courts and supervisor of Richardson-Mendelson; Does 1–3, policymaking officials working with OCA, Richardson-Mendelson, and Prudenti (collectively, the "State Defendants"); as well as Rivieccio and Brandt. That the individual defendants were sued in their official and personal capacities.

120.   That on September 23, 2013 the Family Court trial was resumed. No Article 78 for mandamus to compel a trial was filed by LASK.    The matter was continued until October 7, 2013.

121.    That on October 7, 2013 the Family Court **trial** was resumed. This court held a hearing over 16 days, spanning a three- year period of time. Testimony in the that matter was taken on 08/19/11, 03/15/12, 03/16/12, 03/26/12, 03/27/12; 04/24/13, 05/16/13, 06/28/13, 10/07/13,   10/18/13,    12/19/13, 12/03/13, 02/07/14, 02/28/14, 04/04/14, and 05/30/14.

122.    That on October 7, 2013 LASK advised Plaintiff that she owed an accumulated bill for her work on the amended federal complaint and the family Court proceedings wherein LASK demanded an eight/ninth payment of $50,000.00 in furtherance of her billing scheme.

123.    That Plaintiff advised LASK the payment was money she had been saving and a portion was borrowed from her parents-family and that relying them created increased anxiety and distress for her.

124.    That on October 8, 2013 Plaintiff paid LASK $25,000.00 and on October 19, 2013 Plaintiff paid LASK and additional $25,000.00.

125.    That at all times material hereto, after a delay of some nineteen months and seventeen months post Plaintiff retaining LASK, in in furtherance of her scheme to delay and churn her billing although she had an opportunity and lawful capacity to do for the period commencing May 17, 2012 through October 7, 2017 no Article 78 for mandamus to compel a trial was filed by LASK.

126.    That on November 25, 2013, LASK filed a First Amended Complaint in the case bearing index number 13–CV– 06132(JPO).

127.    That on February 12, 2014 LASK advised Plaintiff she was working on the motions related to the amended federal complaint wherein LASK demanded a tenth payment of $10,000.00 in furtherance of her billing scheme.

128.   That Plaintiff advised LASK the payment was money she had been saving and a portion was borrowed from her parents-family and that relying them created increased anxiety and distress for her.

129.   That on February 19, 2014 Plaintiff paid LASK $10,000.00 wherein the majority of the fees were for activities related to LASK's claimed research and preparation of a second federal complaint.

130.   That on or about February 28, 2104 LASK filed a Second Amended Complaint in the case bearing 13–CV– 06132(JPO) asserting claims under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments (Counts I & II), legal malpractice as to Rivieccio (Count III), disgorgement of fees as to Rivieccio and Brandt (Count IV), and "declaratory and injunctive relief" (Count V). Plaintiffs seek a number of declarations regarding the constitutionality of Defendants' practices; an injunction against the continuation of such practices; "an order to bring Plaintiff Sarah before this court to be heard"; compensatory and punitive damages from Rivieccio and Brandt; interest, attorney's fees, and costs; and such other relief as may be just and proper; that Plaintiffs did not seek monetary relief from the State Defendants; that since then, Rivieccio "refuses to move the case to an immediate trial, refuses to agree to trial dates[,] and claims her schedule does not permit dates offered by the court[;]"    that and Burnett "refuse[s] to supervise and control the case in a timely manner, and refuse[s] to schedule trial dates to expeditiously end this custody case[;]" that Brandt and Rivieccio have also charged substantial fees and "maliciously inflated those fees knowing . . . Burnett will support excessive fees," totaling more than $45,000; that Burnett has a preexisting arrangement to appoint Rivieccio and Brandt, as is evidenced by their role together in

over twenty-five cases this year, and appointed Rivieccio without first consulting Sarah's parents or inquiring into Rhee-Karn's ability to pay; that Rivieccio also does not consult with Sarah or advocate her position, and she repeatedly fails to appear in court.

131.    That Defendants' moved to dismiss case number 13–CV– 06132(JPO) on February 14 and 18, 2014.

132.    On February 28, 2014 the Court held oral argument on the preliminary injunction motion whereupon Lask filed their Second Amended Complaint. The Court reserved decision.

133.    That on May 19, 2014 LASK advised Plaintiff she was working matters related to the Family Court Trial wherein LASK demanded for an eleventh payment of $26,619.00 in furtherance of her billing scheme.

134.    That Plaintiff advised LASK the payment was money she had was savings and a portion was borrowed from her parents-family and that relying them created increased anxiety and distress for her.

135.    That on May 21, 2014 Plaintiff paid LASK $25,000.00 and on October 18, 2013 Plaintiff paid LASK and additional $26,619.00 wherein the majority of the fees were for activities related to LASK's claimed research and preparation of a second federal complaint.

136.    That on June 30, 2014 LASK advised Plaintiff she was working on the motions related to the Family Court matter wherein LASK demanded a twelfth payment of $17,619.00 in furtherance of her billing scheme.

137.    That Plaintiff advised LASK the payment was money she had was savings and a portion was borrowed from her parents-family and that relying them created increased anxiety and distress for her.

138.    That on June 30, 2014 Plaintiff paid LASK an additional $17,619.00 wherein the majority of the fees were for activities related to LASK's Family Court billing.

139.    That at all times material hereto, after a delay of some nineteen months and seventeen months post Plaintiff retaining LASK, in furtherance of her scheme to delay and churn her billing although she had an opportunity and lawful capacity to do so for the period commencing May 17, 2012 through May 30, 2014, LASK failed to hire a qualified expert witness to rebut the claims and testimony of Dr. Brandt.

140.    That on or about July 25, 2014, after Plaintiff had paid LASK in excess of $315,000.00 Plaintiff and LASK terminated their Attorney Client relationship as to the New York City Family Court matter.

141.    That on October 15, 2014 the family Court issues its decision and order of custody finding that the Plaintiff failed to rebut the testimony with competent evidence before the court, as Court had accepted the report and testimony of Dr. Brandt, hearing uncontroverted testimony of Dr. Brandt on the following days, "03/15/12, 03/16/12, 03/26/12 and 03/27/12".

142.    That on September 12, 2104 the District Court issued its decision and order dismissing the Complaint in its entirety holding that Plaintiff failed to understand the appropriate federal inquiry and was not entitled to maintain her action by reason of her failure to first exhaust her state court remedies as proceeding which was proper by commencing a mandamus petition under New York's Civil Practice Rules Article 78.

143.    That at all times material hereto, LASK has published Plaintiff's pleadings which include un-redacted personal information involving Plaintiff and S. Karn on her website so as to attract new client's claiming the public benefit in doing so.

144.     That the publication was made without first advising Plaintiff of the same in violation of her written and oral statements to redact personal information concerning Plaintiff and S. Karn before publishing.

145.     That on October 27, 2014, Plaintiff made a written demand that the legal references to her and her personal affairs be removed from Defendant LASK's website. Despite the written demand and the false representations by LASK that she would, in event of inadvertence remove any personal information and her written promise to do so, LASK has refused to comply with the request and continues to improperly exploit plaintiff's legal affair causing extreme emotional distress to the Plaintiff.

146.     The Retainer expressly establishes a right of arbitration for matters involving fee dispute Retainer.

147.     That in or about March 2015 Plaintiff sent LASK a written request demanding that she proceed with arbitration wherein Plaintiff is claiming damages in excessive of $315,000.00 in unnecessary legal fees by reason of LASK billing-churning scheme whereupon LASK has invoked her 5th Amendment right to remain silent in light of the claims associated with the allegations of churning Plaintiff's file in violation of New York State Judiciary Law§ 487.

## COUNT I
### BREACH OF FIDUCIARY DUTY

148.     Plaintiff repeats and re-alleges and incorporates by reference each and every allegation contained in paragraphs "1" through "147" above.

149.     There was an attorney-client relationship among Plaintiff and Defendant LASK where during the period of Plaintiff's representation by LASK, the most confidential, fiduciary relationship existed between them.

150.   At all times material hereto, in response to her agreement to represent Plaintiff as her attorney LASK was obligated to exercise the care, skill, and diligence commonly possessed and exercised by a member of the legal profession; LASK was obligated by the attorney-client relationship to fully, fairly and competently represent Plaintiff in all respects; to act in the Plaintiff highest and best interests and to avoid self-interest fully and correctly advising Plaintiff in same manner exercised by a member of the legal profession.

151.   At all times material hereto, Plaintiff was advised by LASK and faithfully believed that she could exclusively rely on the advice received from LASK and in the trust of her decisions.

152.   At all times material herein, Plaintiff was advised-represented in her Family Court and Federal matters by the LASK, wherein LASK knew and was aware that Plaintiff would rely on her advice in her desire for a quick resolution of her Family Court claims.

153.   Although certain representations were made to achieve a favorable outcome in forcing a trial for Plaintiff in her Family Court Petition, LASK disregarded her client's interests, wishes and rights for her own purposes-financial gain and in conflict with the legal means necessary to properly advance a resolution to Plaintiff Family Court claims.

154.   At all times material hereto, in furtherance of her billing scheme intending to delay the resolution of Plaintiffs Family Court claims, LASK in her knowledge that Plaintiff was anxious to have Family Court claims resolved as quickly as possible and knowing that Plaintiff would rely on LASK's express representations that a federal action was the fastest cheapest means for resolution of her and her daughter's claims LASK obtained Plaintiff's consent to proceed with a federal complaint.

155.   At all times material hereto, LASK knew had knowledge or should have known that the federal actions had no basis in the law under the facts and procedural poster of Plaintiff's state law claims by reason of the 11th Amendment prohibition imposed under the US Constitution and the applicable case law.

156.   That as a matter of law a *writ of mandamus* via an Article 78 proceeding compelling the Family Court hearing officer to continue the trial could and should have been brought during the proceedings and prior to the court continuing to take trial testimony some nineteen months after being retained.

157.   That a competent attorney would have recognized that the proper action was to commence file a petition for *mandamus* pursuant to New York's Article 78 provisions and that pursuing a federal action which was not yet ripe and would constitute unnecessary and/or improper claim for legal fees.

158.   That the aforesaid facts as evidenced by her billing invoices demonstrates that LASK intended to delay forcing a trial of the custody/visitation claims of the Plaintiff despite her duty to file a timely *writ of mandamus* via an Article 78 proceeding compelling the family court hearing officer to continue the trial; that although she had the lawful right and opportunity to seek resumption of the custody/visitation trial LASK in furtherance of her billing scheme commencing in May 2012 and through December 19, 2013 for a period of nineteen months failed to seek such an order compelling resumption of the trial and instead instigated hostility in the proceeding stalling all opportunities to settle the underlying matter for hers own financial gain where instead of diligently and vigorously pursuing plaintiff's legal claims seeking a swift and immediate trial of the Family Court LASK continued to engaged in self-serving dilatory

tactics including commencing a federal civil rights action on December 21, 2012, then withdrawing the action to avoid sanctions; filing a second action on August 30, 2013 wherein she knew or should have known the relief she was seeking was improper-unnecessary and not ripe under federal law wherein said filings impact on the Family Court proceeding resulting in further delays, in unnecessary motion practice and allowing LASK to further her bill churning scheme.

159.    At all times material hereto, LASK intentionally and/or willfully failed to advise Plaintiff on matters of the law or advise Plaintiff in manner where she knew or should have known the statements including those concerning the federal actions violated her fiduciary duty to Plaintiff by doing all of the acts and omissions as heretofore alleged; including among other things, by failing to truthfully, properly counsel and advise Plaintiff in seeking federal claims without first exhausting her state court remedies as required by the 11th Amendment to the US Constitution wherein Plaintiff was forced to incur excessive and unnecessary legal fees by generally mishandling, mismanaging Plaintiff's claims.

160.    That LASK falsely advised and gave Plaintiff counsel on her Family Court claims where the manner undertaken abandoned or otherwise improperly undertook the representation of Plaintiff for the purposes of her own desires in attorney LASK pursuing a doomed federal action against certain state actors without first exhausting state court remedies including all of the available writs to compel review any state court proceeding or lack thereof.

161.    In doing or failing to do all of the above described acts and omissions constituting Defendant's breach of her fiduciary duties as owed to Plaintiff.

162.    LASK's breach of fiduciary duty was a proximate cause of the loss sustained by the Plaintiff, wherein Plaintiff sustained damages, including but not limited to, legal fees incurred in the sum of $315,000.00; loss in her direct Family Court claims for custody and visitation through prolonged unnecessary unprofessional and prohibited litigation tactics that were time consuming, costly, and entirely ineffective.

163.    The acts and omissions constituting the breach of Defendant's fiduciary duties were willful, reckless, grossly negligent and careless or were committed with oppression, fraud intending to delay the resolution of Plaintiff's Legal claims for the financial gain of Defendant within the meaning of the law.

164.    But for the foregoing, Plaintiff would not have been injured and LASK would not have received payment for services not otherwise necessary to performed.

165.    At all stages of her representation of the Plaintiff attorney LASK disregarded Plaintiff's rights and sought to maximize her own fee recovery at the expense Plaintiff where among other things, LASK purposefully dragged out the legal process in order to lay claim to unnecessary fees.

166.    She    failed    to    communicate    with    the    Plaintiff,    made    overt misrepresentations to her and failed to make full and complete disclosures of pertinent information.    At times, LASK delayed and so badgered and harassed the Plaintiff for fees so as to cause her extreme emotional distress.

167.    During her representation of Plaintiff, attorney LASK breached her fiduciary duty to Plaintiff in violation of the Rules of Professional Conduct and sections of the Business & Professions Code. At all times material hereto, LASK knew and was aware that Plaintiff had not yet exhausted her opportunity for judicial review of her claims during the Family Court proceedings.

168.    Judiciary Law§ 487(2) provides, in pertinent part, that an attorney who "willfully delays his client's suit with a view to his own gain" is guilty of a misdemeanor and may be liable in treble damages.

169.    But for the foregoing, LASK would not have received payment for services which were not otherwise necessary to be performed.

## COUNT II.
### NEGLIGENCE

170.    Plaintiff repeats and re-alleges and incorporates by reference each and every allegation contained in paragraphs "1" through "169" above.

171.    During her representation Plaintiff relied exclusively on LASK for advice and counsel on the legal proceedings and claims to be presented on her behalf.

172.    LASK was obligated by the attorney-client relationship to fully, fairly and competently represent Plaintiff in connection with retaining her as counsel.

173.    At all times hereto, Plaintiff was advised by LASK that she could rely on her advice to proceed in her legal claims.

174.    That LASK became attorney of record May 17, 2012 wherein LASK knew of the New York City Family Court's constitutional violations of Plaintiff's due process rights to parent and familial association among other constitutional violations and that the same had been ongoing during the aforesaid period by reason of "interim" orders without hearings, which could not be appealed unless a final order was issued.

175.    That LASK was the attorney of record for Plaintiff during a period of time wherein matters of legal recourse remained actionable within the statutory time limits for forcing the New York City Family Court to commence a trial of Plaintiff's petition, by

implementing an Article 78 Proceedings directed at compelling a trial of the Plaintiff's custody/visitation petition such that Defendant owed a duty to Plaintiff to perform the services as requested and avoid unnecessary billing, avoid delays in her representation of the Plaintiff by obtaining a swift resolution of Plaintiff's legal claims.

176.    At all times material hereto, LASK knew or should have known that Plaintiff could have initiated Article 78 proceedings challenging "whether a determination was made in violation of lawful procedure; that an Article 78 petition was the proper vehicle for challenging state actions taken in violation of the Federal Constitution; that when the Family Court proceedings are being conducted in a manner which violates federal law an aggrieved party may challenge such determinations under Article 78, Section 7803(3); that her arguments were doomed-not legally tenable for two reason; her failure to exhaust Plaintiff's remedies in state court, wherein she failed to actually file a petition for relief and second no order was issued or could be issued which forever barred Family Court litigants from bringing Article 78 proceedings .

177.    That a competent attorney would have recognized that the proper action was to commence and file a petition for *mandamus* pursuant to New York's Article 78 provisions and that pursuing a federal action which was not yet ripe would constitute unnecessary and/or improper claim for legal fees.

178.    At all times hereto, Plaintiff would not have pursued a federal claim but for LASK's assurances as counsel.

179.    That LASK's failure to a file petition seeking to compel the resumption of the Family Court trial for custody and visitation via an Article 78 proceeding constitutes a cause of action for negligence.

180.   LASK failed to exercise reasonable care, skill, and diligence in performing legal services for Plaintiff and was negligent in advising Plaintiff to pursue federal claims wherein LASK should have realized the claim was not ripe for federal adjudication and that the filing would have a delaying effect on resolution of the Plaintiff's Family Court claims and was otherwise without legal support. At all times material hereto, LASK knew or should have known federal courts presume that forum court is capable of vindicating federal constitutional rights, and an adequate opportunity for judicial review of those claims.

181.   That LASK pursuit of the action in federal court wherein she knew or should have known the same was not ripe constitutes a cause of action for negligence.

182.   That at all times material hereto, LASK could have raised Plaintiff's constitutional due process claims in the Family Court and failed to do so wherein the Family Court would have been bound by the Federal Constitution and failed to do so.

183.   At all times material hereto, LASK knew or should have known that Plaintiff had an adequate opportunity for judicial review of her claims in state court because they were capable of appealing the decisions of the Family Court upon obtaining a final decision and order of the Family Court Petition.

184.   At all times material hereto, LASK knew or should have known that it was necessary and that Plaintiff must have exhausted her state appellate remedies before seeking relief in the Federal District Court by reason of her seeking leave to appeal on the January 2013 order.

185.   At all times material hereto, LASK knew or should have known that Plaintiff was also able to appeal the First Department's denial of the motion seeking leave to appeal to the New York Court of Appeals and failed to do so.

186.   At all times material hereto, LASK failed to exercise Plaintiffs claims and exhaust her appellate remedies, wherein by reason of the foregoing Plaintiffs claims in federal court were presumptively barred.

187.   That at all times material hereto, LASK misunderstood the appropriate inquiry necessary for federal intervention as to whether the state's procedural remedies could provide the relief sought and not whether the state *will* provide the constitutional ruling which the plaintiff was seeking.

188.   That despite the express retainer language establishes that if anything Ms. LASK uploaded were done so by chance or mistake concerning information of the clients that was inadvertently not removed and that the client wanted removed, upon notifying Lask via e-mail that it will be immediately corrected;.

189.   That despite Plaintiff's written demand to remove all personal information about her and her daughter although demand was served upon defendant LASK, LASK has recklessly and/or negligently carelessly failed to redact the personal information and other identifiers concerning Plaintiff and S. Karn where said information continues to appear on her website to date.

190.   That LASK's failure to redact and otherwise remove the personal information and identifiers of Plaintiff and S. Karn as aforesaid constitutes a cause of action for negligence.

191.    That despite having the Family Court matter proceed forward at no time prior to December 2013 and up to May 2014 did LASK obtain an expert to rebut the testimony of the Court appointed psychiatrist.

192.    That LASK failure to obtain an expert to rebut the claims against Plaintiff in the Family Court constitutes a cause of action for negligence.

193.    Defendant LASK's conduct was foreseeable, such that she knew, or should have known that she was acting recklessly, negligently and/or carelessly and that such conduct would instill genuine fear and actual physical harm in Plaintiff and manifest itself in physical symptoms wherein

194.    Plaintiff suffered and continues to suffer injury including but not limited to her experiencing increased periods of sleepless nights, loss of appetite, shaking and nausea, depression and anxiety.

195.    That Plaintiff-client incurred actual damages as a result of the LASK's actions or inaction.

196.    But for the foregoing departure from the legal standard owed by LASK and which should have been afforded to Plaintiff by her, Plaintiff would not have suffered injury in her failure to present evidence in rebuttal to the forensic evidence of the Family Court appointed psychiatrist.

197.    But for the foregoing departure from the legal standard owed by LASK and which should have been afforded to Plaintiff by her, Plaintiff would have prevailed in the underlying action or would not have paid for unnecessary legal fees.

198.    That LASK's negligence was a proximate cause of the injuries sustained by the Plaintiff.

### COUNT III.
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

199.    Plaintiff repeats and re-alleges and incorporates by reference each and every allegation contained in paragraphs "1" through "198" above.

200.    That at all times material hereto, LASK was in a fiduciary relationship with Plaintiff and owed her a duty of care not to act in a manner inconsistent with her legal claims and to avoid self-serving interest which would cause harm to Plaintiff.

201.    That including but not limited to the foregoing, LASK's billing scheme; her use of false invoices consisting of churned-unnecessary legal services under her plan to create hostility in others while she knew of Plaintiff's emotional state and financial limitations pressuring her to borrow money from her family to pay for legal services which she knew were unnecessary and lacked being procedurally ripe, her retainer, her website, her written and oral statements to Plaintiff and other; her demands on Plaintiff to file pro se letters with the Family Court causing fear, sleepless nights, loss of appetite, shaking and nausea, depression and anxiety in Plaintiff, LASK failure to obtain an expert to rebut the claims against Plaintiff in the Family Court constitutes a cause of action for negligent infliction of emotional distress as the conduct of LASK's was so egregious, extreme in degree and outrageous in character as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community.

202.    As a proximate result of defendant's reckless, negligent and/or careless acts or omissions Plaintiff has sustained emotional distress as and for the payment for unearned and unnecessary legal fees of not less than $315,000.00.

203.    As a further proximate result of LASK's conduct and the consequences proximately caused by her in the actions taken and those which should have been taken, as hereinabove alleged, plaintiff suffered severe emotional distress and mental suffering, fear, sleepless nights, loss of appetite, shaking and nausea, depression and anxiety damage in a sum to be determined at trial.

204.    But for the foregoing, Plaintiff, in addition to actual damages, is entitled to recover exemplary damages for the sake of example and by way of punishing Defendants.

### COUNT IV.
### FALSE ADVERTISING DECEPTIVE TRADE PRACTICES ACT

205.    Plaintiff repeats and re-alleges and incorporates by reference each and every allegation contained in paragraphs "1" through "204" above.

206.    Plaintiff was a consumers as defined in the New York State General Business Law §§ 349, 350 (" N.Y. GBL").

207.    The defendant engaged in at least one of the false, misleading, or deceptive acts or practices listed in the N.Y. GBL §§ 349, 350.

208.    LASK's Retainer, her Website and the content therein were and are a trap, a device and artifact designed to allow her to convince clients of her false qualifications, services and legal accomplishments wherein she uses her client(s) legal claims in a manner which allows her to exploit the client(s) legal claims through media exposure, wherein LASK churns client(s) files and generates enormous and unnecessary legal bills; wherein the Retainer contains false statements, material misrepresentations and other deceptive statements or otherwise omissions which created a false impression such as those understood by Plaintiff concerning LASK's billing and her use of Plaintiffs case-pleadings on her website such as the claim that the media follows

defendant LASK; that any posting to her Website was for the benefit of the public; that no personal information concerning Plaintiff or her daughter would be posted on her Website and that if any personal information were disclosed it would be immediately removed from the Website on demand; that despite demand to remove the personal content of Plaintiff and her daughter the Website still contains personal information; that there are omissions which created a false impression of the actual facts and truth such as those understood and experienced by Plaintiff including the outcome of her legal claims.

209.   The Plaintiff detrimentally relied on the false, misleading, or deceptive acts and practices of the Defendant wherein Plaintiff viewed Defendant's website, read and executed her retainer as well as relied on LASK oral statements concerning the her education and/or other credentials as well as her claimed public advocacy to similar victims of family court delays and other abuses.

210.   That LASK's false, misleading, deceptive acts or practices were a producing cause of the plaintiff's injury of not less than $315,000.00 as and for her payment of falsely relied upon statement producing unnecessary legal fees.

211.   But for the foregoing, Plaintiff, in addition to actual damages of not less than $315,000.00 as and for unnecessary payment of legal fees Plaintiff is entitled to recover exemplary damages for the sake of example and by way of punishing Defendants.

## COUNT V.
## MAIL/WIRE FRAUD

212.   Plaintiff repeats and re-alleges and incorporates by reference each and every allegation contained in paragraphs "1" through "211" above.

213.    That at all times material hereto LAS knew Plaintiff would rely on her retainer, website claims and her statements of expertise for advice and trust in her decisions as a claimed expert in the matters for which she represented Plaintiff.

214.    At all times material hereto attorney ("LASK") acted with a fraudulent, purposeful, and ongoing scheme involving a pattern of willful misconduct, reckless and/or intentional wrongful activities where LASK improperly exploited the affairs of plaintiff and her child; where Defendant misrepresented her qualifications and the quality of her accomplishments concerning her legal skills so as to fraudulently induce Plaintiff to retain her services and to enter into an attorney-client relationship with her so as to fraudulently induce Plaintiff to make payments to her; where by means of the fraud defendant demanded, via the US mail courier services, the Internet wire services and wrongfully received by wire or check in excess of $315,000.00 from Plaintiff.

215.    But for the foregoing, Plaintiff, in addition to actual damages, is entitled to recover exemplary damages for the sake of example and by way of punishing Defendants.

216.    LASK made the false representations and omissions by use of the US mail couriers and internet wire services described above in in violation of 18 USC 1943 and 1944support of her scheme to defraud Plaintiff.

217.    LASK made the false representations and omissions described above, and carried out the scheme described above, with intent to deceive Plaintiff.

218.    Plaintiff justifiably relied upon LASK's misrepresentations and omissions.

219.    Plaintiff was directly damaged in an amount in excess of $315,000.00 by LASK's fraud which, as intended, created justified reliance and the trust by the Plaintiff.

220.    But for the foregoing, Plaintiff, would not have engaged the legal services of LASK and made payment to her.

221.    In addition to actual damages, Plaintiff is entitled to recover exemplary damages for the sake of example and by way of punishing Defendant.

### COUNT IV.
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

222.    Plaintiff repeats and re-alleges and incorporates by reference each and every allegation contained in paragraphs "1" through "221" above.

223.    That at all times material hereto, LASK was in a fiduciary relationship with Plaintiff and owed her a duty of care not to act in a manner inconsistent with her legal claims and to avoid self-serving interest which would cause harm to Plaintiff.

224.    That including, but not limited to the foregoing, LASK's billing scheme-her use of false invoices consisting of churned-unnecessary legal services under her plan to create hostility in others while she knew of Plaintiff's emotional state and financial limitations pressuring her to borrow money from her family to pay her legal fees-services which she knew were unnecessary as they lacked being procedurally ripe; her retainer; her website postings and her refusal to remove said postings; her written and oral statements to Plaintiff and others; her demands on Plaintiff to file pro se letters with the Family Court and her failure to retain an expert to rebut the Family Court claims of the Court appointed psychiatrist caused and continues to cause Plaintiff sleepless nights, loss of appetite, shaking and nausea, depression and anxiety in Plaintiff constitutes a cause of action for negligent infliction of emotional distress as the conduct of LASK was so egregious, extreme in degree and outrageous in character as to go beyond all possible

bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community.

225.    As a proximate result of defendant's reckless, negligent and/or careless acts or omissions Plaintiff has sustained emotional distress as and for the payment for unearned and unnecessary legal fees of not less than $315,000 causing sleepless nights, loss of appetite, shaking and nausea, depression and anxiety.

226.    As a further proximate result of defendant's conduct and the consequences proximately caused by it, as hereinabove alleged, plaintiff suffered severe emotional distress and mental suffering, fear apprehension and anxiety, inability to regularly work and is entitled to damages to be proven at trial for the infliction of emotional distress; where by reason of the foregoing,

227.    But for the foregoing, Plaintiff, in addition to actual damages, is entitled to recover exemplary damages for the sake of example and by way of punishing Defendant.

## COUNT VII.
### UNJUST ENRICHMENT

228.    Plaintiff repeats and re-alleges and incorporates by reference each and every allegation contained in paragraphs "1" through "227" above.

229.    The payment-money that Defendant LASK derived from the financial transaction involving her legal representation-services of Plaintiff concerning her Complaint for *inter alia* her due process violations by way of an action brought pursuant to 42 USC 1943 as filed in the US District Court for the Southern District of New York was obtained unjustly, by means of deceit, omission and/or misrepresentations.

230.    That the sum taken and claimed as unjust and so demanded for return is in excess of $75,000.00 and at least $315,000.00.

231.    But for the foregoing omissions, misleading, deceptive and unfair conduct by Defendant LASK, Plaintiff would not have retained LASK's services concerning her claims to be pursued and billed.

232.    Because the Defendant's retention of the money was derived though omissions, misleading, deceptive and unfair conduct of a fraudulent and unconscionable nature without a lawful right to take such funds it was, therefore, unearned, and Defendant was unjustly enriched by retaining that money.

233.    Defendant's retention of the unearned benefit of the money as a result of a fraud perpetrated on the Plaintiff would be inequitable and constitute unjust enrichment.

234.    Defendant's retention of that money violates fundamental principles of justice, equity and good conscience and must be returned and an order/judgment of disgorgement should be made of the defendant LASK with payment of pre-judgment interest.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs demands judgment:

1)    On each of their claims and causes of action in an amount to be so stated therein or otherwise found to exist by a jury, including any award for punitive damages;

2)    For plaintiffs' attorneys fees and costs of suit; and

3)    For whatever additional relief the Court may determine to be just and equitable.

Dated on this 21st day of December 2015.

*Douglas R. Dollinger, Esq.*

DOUGLAS R. DOLLINGER,, ESQ. (5922)
Attorney Plaintiff   Representative

50 Main Street-Suite 1000
White Plains, New York 10606
Tel. 845.915.6800
Fax. 845.915.6801
ddollingeresq@gmail.com


I have read the foregoing Verified Complaint and know the contents thereof.    The contents are upon personal knowledge except as to matters therein stated to be alleged upon information and belief and as to those matters they are believe to be true and which have been provided to me by the Plaintiff and based on an investigation and research of relevant documents obtained in this matter, as well as publically available materials related to all other facts alleged in this Complaint.

*Douglas R. Dollinger, Esq.*

DOUGLAS R. DOLLINGER,, ESQ. (5922)
Attorney Plaintiff   Re   presentative
50 Main Street-Suite 1000
White Plains, New York 10606
Tel. 845.915.6800
Fax. 845.915.6801
ddollingeresq@gmail.com