UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARGARET RHEE-KARN,<br><br>        Plaintiff,<br><br>Vs.<br><br>SUSAN CHANA LASK, ESQ., A/K/A SUSAN LUSK, A/K/A SUSAN LESK,<br><br>        Defendant. | Case No.:15-09946<br><br>**AMENDED VERIFIED**<br>**CIVIL COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW, MARGARET RHEE-KARN ("Plaintiff") by and through her attorneys, The Law Offices of Douglas R. Dollinger, Esq., P.C. & Associates alleging and complaining upon personal knowledge and, upon information and belief, based on an investigation and research of relevant documents obtained in this matter, as well as publically available materials related to all other facts alleged in this Complaint, claiming as follows:

## I.
### NATURE OF THE ACTION

1. This action exists as a legal malpractice claim brought by Plaintiff against her former attorney SUSAN CHANA LASK, Esq., a/k/a SUSAN LUSK a/k/a SUSAN LESK, ("LASK") for claims involving both negligence and a breach of fiduciary duty concerning violations of New York State Judiciary Law§ 487, as well as for claims of fraud/misrepresentation, unjust enrichment, invasion of privacy with a resulting-infliction of emotional distress where by reason of Defendant's legal

malpractice, misconduct-fraud/misrepresentations the defendant was able to engage in bill churning during the course of the Plaintiff's representation where by reason of Defendant's misconduct Plaintiff suffered and continues to suffer from bouts of severe emotional distress related to her misconduct.

2.     Plaintiff retained-hired attorney LASK based on her publically claimed expertise in domestic relations matters dealing with her legal claim involving custody, support and visitation where she was seeking representation in matters of her infant child before the New York City Family Court, New York County.

3.     At all times material hereto, Plaintiff had a stated goal to obtain a quick and expeditious resolution of the custody, support and visitation proceedings so as to avoid, unnecessary cost and continuing emotional distress to her and her infant daughter associated with custody, support and visitation proceedings.

4.     Instead of following Plaintiff's retained and express desires defendant LASK embarked on a course of conduct in an undertaking of well-recognized jurisdictionally deficient and unsupported legal claims before The United States District Court for the Southern District of New York against the State of New York, the assigned judge to Plaintiff's Family Court case and other claimed state actors.

5.      At all times material hereto, LASK misled Plaintiff deceptively convincing her to pursue federal claims against the aforesaid state actors for a deprivation of her and her infant daughter's constitutional and civil rights under circumstances which defendant LASK knew were not ripe for or supported by either the US Constitution, statutory or case law applicable to Plaintiff's claims without first exhausting all of the available state court remedies provided for under New York's own judicial system.

6. At all times material hereto, the cost to Plaintiff was unnecessary legal fees in excess of three hundred fifteen thousand ($315,000.00) dollars; unwanted media exposure to the press and unwanted exploitation of Plaintiff and her daughter's private affairs-information on LASK's website as occasioned in Plaintiff's family court claims such that LASK's misconduct knowingly caused an exacerbation of Plaintiff's then existing distressed emotional state and which has now manifested in permanent feeling of hopelessness in having lost full custody and visitation with her daughter.

7. Plaintiff seeks a declaration establishing the respective rights to her and her daughter under a written retainer agreement she had with Defendant LASK.

8. Plaintiff seeks to establish that the fees claimed by the Defendant LASK are based on false representations and claims, and the costs are improper, unreasonable and unconscionable.

9. Plaintiffs further seek to establish that because of the breach of their ethical, fiduciary and statutory obligations, the Defendant LASK should be required to disgorge and forfeit their right to any fees procured as a result of her wrongful conduct.

10. Plaintiffs further seek damages for the emotional distress caused by the attorney's fraudulent conduct, as well as an award of punitive damages for her use of her website and an order prohibiting the continued publication of her personal legal claims where the same are being used to deceive the public and otherwise constitutes malicious conduct.

## II.
### JURISDICTION AND VENUE

11. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1332 in the complete diversity of citizenship among the parties with the amount in controversy exceeding the sum of $75,000.00.

12. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that Defendant's businesses is located within the Southern District of New York, and the events giving rise to this claim occurred within the boundaries of the Southern District of New York.

## III.
### SUPPLEMENTAL JURISDICTION

13. Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action and within the original jurisdiction of this court that they form part of the same case or controversy.

## IV.
### THE PARTIES

**Plaintiff:**

14. MARGARET RHEE KARN was and is a resident of the City of New York.

**Defendant:**

15. SUSAN CHANA LASK, a/k/a SUSAN LUSK, a/k/a SUSAN LESK is a resident of the State of New Jersey and an attorney licensed to practice law in the State of New York with offices located at 244 Fifth Avenue, Suite 2369, New York, New York 10001.

## V.
### FACTUAL BACKGROUND

16. At all times material hereto, and prior to April 2010 Plaintiff was married to Kenneth Karn. Plaintiff is the biological and natural mother of an infant child ("S. Karn"). Kenneth Karn is the child's biological and natural father.

17. On April 23, 2010 after the Plaintiff and Kenneth Karn had divorced, Plaintiff filed a petition for full custody/visitation of the infant child styled: *Margaret Rhee*

*Karn vs. Kenneth Karn* with the matter being venued in the New York City Family Court. S. Karn's rights were represented by a court appointed law guardian. At the time, Plaintiff had primary custody of her daughter.

18. On November 17, 2010, Kenneth Karn asked the court to divide custody evenly between himself and Plaintiff. The court granted his request without a hearing and issued a conforming order.

19. On August 19, 2011, the referee in the proceedings held a hearing on the order. After receiving hearsay testimony from Respondent Ken Karn and accepting other hearsay testimony, including consideration of a report of the court appointed forensic psychiatrist and the law guardian for S. Karn which Plaintiff claimed was false and otherwise untrue; without hearing testimony from Plaintiff the referee reduced Plaintiff's visitation and granted primary custody to Kenneth Karn; continue the hearing without allowing Plaintiff to testify or cross-examine Respondent Kenneth Karn.

20. The matter-decision and order was appealed to the First Department of New York State's Supreme Court Appellate Division. On March 20, 2012 the court dismissed the appeal of the August 19, 2011 order on the grounds that the order was non-final and thus not appealable as of right, and that neither the Family Court nor the First Department had given Plaintiff permission to appeal. *Matter of Rhee-Karn v. Karn,* 2012 N.Y. Slip Op. 02045 (1st Dep't Mar. 20, 2012).

21. Plaintiff was frustrated with the passage of time and with her loss of primary custody and reduced time/visitation with S. Karn without affording her an opportunity to present her claims of falsehood as to the allegations before the Court.

22. Plaintiff believed the false claims presented to the hearing officer-referee were strategic, designed to delay adjudication of her parental rights by her former husband's counsel as well as the law guardian where there was a tactical acceptance of the false and hearsay testimony by the hearing officer such that the matter was causing emotional distress in Plaintiff and S. Karn by reason of their separation and the loss of their rights.

23. To Plaintiff, based on conversations with her former counsel it appeared their strategy was to continue to use the weakness of the Family Court's judicial process by continuing to make false claims involving Plaintiff receiving interim orders so as to indefinitely avoid a trial and a final adjudication of Plaintiff's parental rights.

24. In or about May 2012 Plaintiff was seeking new counsel to represent her in the custody proceedings and conducted research using the Internet whereupon she was attracted to defendant LASK's website for the reasons of its claims and content in relation to advocacy of public interest and parental rights.

25. The website was specific in content advancing claims that defendant LASK specialized in family law practice including the fact that she had been successful in having a law guardian removed in another case and other matters where defendant LASK made claims designed to create a false belief in her legal accomplishment or clients' rights, her legal skills and education in family law as well as constitutional law which were intended to advance advocacy of similarly situated individuals who were also experiencing problems with resolution of their family Court claims and a loss of their constitutional rights.

26. After reading the website claims, in reliance of them, in or about May 2012, Plaintiff approached defendant LASK for assistance in resolving her custody and visitation matters and wanted to know her rights.

27. Plaintiff explained to defendant LASK that more than two (2) years had passed since her family court petition was filed and that there had not been a trial in the matter, further advising defendant LASK of her claims concerning the delaying tactics discussed with her former counsel and the failed appeal.

28. Plaintiff explained that she and her infant daughter had been alienated such that she and S. Karn were suffering emotionally by means of Kenneth Karn's attorney obtaining interim court orders designed to reduce their visitation based on the false claims of the law guardian, uncontested findings of the court appointed psychiatrist which Plaintiff claimed were collusive among her former husband's counsel creating a false prejudicial-antagonistic assessment of her parental rights to the hearing officer.

29. Plaintiff advised defendant LASK that she wanted a hearing in the matter, she wanted a new law guardian appointed for S. Karn as soon as possible, the delays were having an impact on her emotional state she was having sleepless nights, anxiety about the mounting cost for legal representation and was in jeopardy of losing her job by reason of the numerous court appearances and the impact of the emotional strain on her at work in her job performance.

30. Her express goal was, as explained, based on the March 20, 2012 decision and order of the Appellate Division for the Frist Department, for the need to have a final resolution of the matter as quickly as possible wherein Plaintiff inquired about LASK's website posting including her claimed expertise in family law, removing the law guardian.

31. Defendant LASK confirmed her activities-success in her direct involvement of having a law guardian replaced and told Plaintiff that she was an expert in both state and constitutional law; that she had a case that even went to the US Supreme Court.

32. Defendant LASK went on to explain to Plaintiff that The Uniform Rules for Trial Courts *22 NYCRR §205.14,* Uniform Rules of the Family Court §205.14 and *CPLR §2219(a)* mandate custody cases conclude with final orders within 90 days from the date of filing a custody petition.

33. Defendant LASK also explained that the Family Court Act §1112 prohibits an appeal of custody and visitation orders until a final decision is made at the end of a trial and deems with appellate Court's holding that interim custody and visitation orders which are temporary are not appealable.

34. Plaintiff explained that she was aware of the law and fact that interim orders were generally not appealable and that was why she wanted to proceed to a final decision of the matter she did not want to have her and her daughter held captive to Kenneth Karn's attorney manipulation of the Family Court proceedings

35. Defendant LASK told Plaintiff she was not the first to complain of these tactics; the family court's failure to comply with the law was well known wherein defendant LASK agreed to represent Plaintiff in her state law claims agreeing that she would immediately seek to have the law guardian replaced and force the Court to hold a hearing and make a final decision in the matter of her custody and visitation rights.

36. Thereafter, on or about May 17, 2012 defendant LASK presented Plaintiff with a written retainer agreement for her services and representation in the custody/visitation proceedings before the New York City Family Court. [**Exhibit "A".**]

37. The retainer provided an estimate that the matter would cost between "$70, 000-100,000.00." The Retainer established a minimum flat fee of $25,000.00 plus a mandatory $200.00 fee for disbursements for the period commencing May 12, 2012 and up to July 31, 2012.

38. The Retainer limited defendant LASK's involvement to the family court proceedings providing a billing fee-rate to be applied and calculated at $650.00 an hour, billable at increments of .25 hourly, wherein by construction defendant owed faithfully at a minimum 38.75 hours for this period with excess hours during the minimum flat fee period May 12, 2012 and up to July 31, 2012 to be billed at a rate of $650 per hour.

39. Section VIII of the Retainer Agreement provided that "during this initial retainer period" May 18, 2012 through July 31, 2012 attorney will do the following:

   a. Conduct in-depth interview with client;
   b. Review, analyze and digest documents submitted by Client, including appellate filings/decision;
   c. Conduct    research;
   d. Draft and file the substitution of attorney/communications to attorneys, court and child's attorney;
   e. One court appearance limited to 4 hours during this retainer period;
   f. Begin trial strategy and prepare with client.

40. An additional term of the Retainer Agreement, Section IX advised Plaintiff that the media follows defendant LASK; that based on her case being filed the media may be attracted to the matter; that defendant LASK had the right to use **"redacted"** copies of any pleading filed in Plaintiff's case on her website with the removal of all personal information such as the "client's name, personal info and case    information".

41. Defendant LASK claimed that the postings were for the purpose of assisting others-the general public-in understanding similar cases as may relate to them.

42. The specific language of the Retainer Agreement provided as follows:

"**MEDIA/WEBSITE**"

"Client understands that the media follows Ms. Lask's cases, or may become involved in this particular case in some way just by virtue of its filing. Client also understands that Ms. Lask sometimes uploads case documents to her website (i.e.-pleadings, motions, anything basically filed or to be filed with the court), which she does redact-meaning she removes the Client's name, personal info and case information. This uploading is done to assist others like yourself in understanding similar cases. Client agrees and gives Ms. Lask permission to upload any documents in this case provided they are redacted. If anything Ms. Lask uploads by chance mistakenly has information of yours that was inadvertently not removed and you want removed, you will promptly notify Ms. Lask via e-mail and it will be immediately corrected. Client understands that this can be a mistake and not intentional by any means. Client may receive the redacted document before it is uploaded to review it and inform if anything has inadvertently not been removed. (i.e.-Client's name, address, child's nickname). In the event of media attention, you will not speak to any media about your case and will always refer them to Ms. LASK and immediately notify Ms. Lask if anyone has attempted to contact you regarding your case. You and Ms. Lask will decide what, if anything, to say to the media."

43. The retainer expressly establishes the scope of the work to the Family Court trial in New York.

44. In reliance on LASK's Retainer Agreement and her belief in the above sited content of defendant's Website as well as the attestations of defendant LASK as to her understanding and agreement to perform in the manner Plaintiff was seeking her services; for a quick resolution of her legal claims, on May 17, 2102 Plaintiff

executed-returned the retainer and paid LASK $25,200.00 for her trial representation in the New York City Family Court custody/visitation proceedings.

45. Thereafter, on or about June 4, 2012 LASK formally appeared in the family court matter by filing a substitution of attorney with the clerk of the Family Court, and with her former spouse's counsel and the law guardian for S. Karn thus becoming the attorney of record for Plaintiff on the matters pending in and before the New York City Family Court.

**Defendant's Scheme-Acts of Deception:**

46. That at all times material hereto, it has been the planned strategy of LASK to use her Website to lure unsuspecting consumers to retain her legal services where her scheme constitutes a trap designed to allow her to exploit her client(s) legal affairs for her own media and financial gain.

47. The scheme operates by LASK intentionally delaying the resolution of the client(s) cases for the purposes of media attention and for churning their files allowing her to illegally recover exorbitant-unnecessary legal fees.

48. LASK's favorite method and pattern is to create a **conflict** among opposing counsel, the parties to the case and in most instances the courts judges and/or hearing officers.

49. That at all times material hereto, Plaintiff's request was for a quick resolution of her legal claims was known by LASK and expressed at the time of her interview.

50. Unknown to Plaintiff was that the manner LASK would seek to exploit her; LASK used the same pattern perpetrated on others conflicting the parties thus causing delays' in resolving the legal claims where in the case of Plaintiff, as she often does, LASK's intended to play on Plaintiff's emotions by using the violations of Plaintiff's

parental rights by the Family Court so as to obtain the fees while she delayed resolution of the claims; where she knew the actions-strategy to be taken by her would be antagonistic to any settlement; and would not be as was requested by Plaintiff to quickly resolve her claims but would instead only delay the resolution of Plaintiff's legal claims by creating hostility in the matter.

51. That at all times material hereto, LASK's conduct was/is a chronic, extreme pattern of legal delinquency involving multiple clients, attorneys and the courts, including Plaintiff, wherein in furtherance of her billing scheme LASK's misrepresentations and desire to create conflict were directed at the adversarial parties, the courts, and were otherwise undertaken to churn unnecessary legal fees where documents and arguments were submitted to the Plaintiff and the Court in violation of New York State Judiciary Law§ 487.

52. That at all times material hereto, in furtherance of her scheme in or about June 2012, LASK contacted Plaintiff falsely advising her that she had done extensive research into federal law relating to the delays in her case and that she had determined based on the case law that her and her daughter's constitutional rights were being violated by the New York State legal system and in particular the New York City Family Court by reason of it allowing strategic delays in the resolution of her claims; allowing the case to continue for in excess of 90 days under the pretense of interim-temporary orders; further advising plaintiff that she wanted to prepare a summons and compliant for the violations of her and her daughter's civil rights case in federal court and that this was the "__fastest and cheapest way__" to resolve the case.

53. Defendant LASK claimed she had already researched the constitutional violations which she identified as violation of their 1st and 14th Amendment rights and

that there were violations of Plaintiff's and her daughter's civil rights which would be best addressed by immediately bringing an action pursuant to 42 USC §1983 requesting injunctive and declaratory relief of the state court proceedings.

54. At all times material hereto, the statements were knowingly and intentionally false or misleading made by defendant LASK for media exploitation and financial gain in delaying resolution of the Family Court matter with the knowledge that the action would further alienate the parties through antagonistic claims; wherein the approach would create a conflict in the Family Court proceedings delaying the case; that her conduct in commencing an action would not be in accord with the Plaintiff's stated goal to allow her to resolve her legal issues as quickly as possible; that the manner of approach was not legally supported by her research and that except as to defendant LASK's own media and financial benefit there would be no useful purpose in commencing such an action as the claims were not yet ripe for a federal constitutional claim involving due process claims without first exhausting Plaintiff's state court remedies.

55. At all times material hereto, defendant LASK's research had already revealed that there existed limitations to commencing federal actions against the state and state actors imposed by the 11th Amendment to the US Constitution requiring Federal courts to abstain from exercising jurisdiction over constitutional claims seeking declaratory or injunctive relief when (i) there is an ongoing state proceeding (ii) involving an important state interest and (iii) the plaintiff has an adequate opportunity for judicial review of their constitutional claims in state court during or after the proceeding. *Christ*

the King Regional High Sch. v. Culvert*, 815 F.2d 219, 224 (2d Cir. 1987) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619 (1986) (relying upon *Younger v. Harris*, 401 U.S. 37, 49, 54 (1971))).

56.     That at all time material hereto, in reliance on LASK's knowingly false claims of ripe constitutional violations and that commencing a federal action would be the "**fastest and cheapest way**" to resolve the case Plaintiff agreed to allow LASK to prepare, file and serve summons and complaint for the prosecution of her claims in the United States District Court for the Southern District of New York.

57.     That at all times material hereto, in furtherance of her billing scheme the LASK engaged in conduct which was planned to delay the family court proceeding by rejecting settlement talks while she was preparing the federal court complaint where her plan was to intentionally create a hostile relationship among herself Respondent Kenneth Karn's counsel, the law guardian for S, Karn, Rosemary Rivieccioe, the court appointed forensic psychologist Dr. Stephanie Brandt and the hearing officer Edwina Richardson-Mendelson wherein in furtherance of her scheme she intentionally sent explosive and toxic e-mails personally attacking their skills and competency as well as accusing them of conspiring to deny Plaintiff her parental rights.

58.     For instance, in or about the beginning of June 2012, in furtherance of her scheme to delay the proceeding, fully aware of the plaintiff's stated goal and desire to expeditiously resolve her custody/visitation matters LASK after her review of the Plaintiff's family court filings; seeking a way to employ her plan discovered that there was a hearing scheduled for September 7, 2012 wherein the Court appointed physiatrist Dr. Stephanie Brandt was to present continuing testimony in the matter of forensic findings as related to the family court petition.

59. In furtherance of her billing scheme LASK intentionally created hostility among Plaintiff and Dr. Brandt where by knowledge of the scheduled September 7, 2012 hearing, in June 2012, LASK notified Dr. Brandt of her need to attend the hearing to occur in or about September 2012, although she knew the date to be September 7, 2012, advising Brandt that she should block out a three (3) week period for her appearance sometime close to the hearing date in September 2012 and that she would get back to her with a specific date for trial.

60. That in furtherance of her billing scheme LASK intentionally failed to notify Dr. Brandt of the hearing date or her required appearance and never intended to get to trial; that by reason of the failure of Dr. Brandt to appear the Court adjourned the scheduled hearing of September 7, 2012 and rescheduled the matter for October 22, 2012. That Plaintiff advised LASK the delay created anxiety and distress in her.

61. Thereafter, LASK in furtherance of her billing scheme sent Brandt an e-mail falsely claiming she had missed the scheduled court appearance causing unnecessary delay and expense to plaintiff and otherwise intentionally creating hostility and prejudice in Dr. Brant towards Plaintiff wherein at all times LASK had intentionally failed to properly notify Dr. Brandt.

62. Just as she had done with Dr. Brant LASK was intent on creating as much hostility with the law guardian as she could wherein on or about October 16, 2012, defendant LASK received an e-mail from the law guardian for S. Karn requesting a response by defendant LASK to follow-up on a proposed settlement offer which had not been presented by defendant LASK as promised since June 2012.

From: RRIVIECCIOESQ@aol.com Sent: Tuesday, October 16, 2012 9:39 AM

To: susanlesq@verizon.net Cc: cssesq1@aol.com

Subject: Karn

Good morning-

I write again in furtherance of your stated desire, Susan, to negotiate a settlement in this matter. To date, I have not been proffered any resolutions. Is one to be expected, as the trial resumes next week.

Also, the Court has made it clear that your client is to remit payment of my outstanding fees. She has not done so. I truly do not wish to present a motion to compel or to seek contempt, so I ask that you encourage your client to remit payment.

Thank you.

63. That in response to said e-mail LASK sent an e-mail rejecting settlement talks and received one from the law guardian concerning her bill.

\* \* \*

From: "Susan Chana LASK Esq" Date: Tue, 16 Oct 2012 15:34:44 -0400 To: <RRIVIECCIOESQ@aol.com>

Subject: 10-16-12SL-RR Karn

That desire, Ms. Rivieccio, was in the summer and I raised it again before the Judge in chambers and You were unprofessional enough to laugh and make irrelevant commentaries. As well, YOU ARE THE LAWYER
FOR THE CHILD— Ask your client what she wants and get a Lincoln hearing too because this is the most disgraceful record I have seen.
To date my review of the entire file and YOUR BILLS shows you never state your client's desires; only date you have refused to provide her an appropriate response per the disciplinary rules and fee arbitration.

Read the rules and act appropriately, but do not use the judge for your threats and as your personal puppet to force payment against the Rules and the law.
Finally, your non-appearance last week is deplorable-or did your
client direct you not to appear?

\* \* \*

From: rrivieccioesq@aol.com Sent: Tuesday, October 16, 2012 5:00 PM To: Susan Chana LASK Esq

Subject: Re: 10-16-12SL-RR Karn

As to the bill, she has NOT questioned any entry. I do not have one letter or email from her on this issue. I will include that fact in my OTSC regarding payment.

\* \* \*

64. That in early October 2012 Kenneth Karn filed an order to show cause claiming contempt violations of the standing restrictions on the Court's visitation order of August 19, 2011 returnable on or about October 11, 2012.

65. That upon information and belief, on October 11, 2012, although LASK had received the order to show cause and all of its exhibits LASK falsely claimed she had not received the documents and required the order to show cause be reserved wherein the matter was made returnable for October 22, 2012. That based on the foregoing, Plaintiff advised LASK the delay created anxiety and distress in her.

66. That on October 22, 2012, although she knew in advance she would not be appearing, without presenting prior notice to the Court, LASK claimed and alleged a medical excuse for her non-appearance in person and appeared telephonically for both the continuing trial of the custody matter and on the order to show cause filed by Kenneth Karn as related to a claim of contempt of the temporary visitation order.

67. That at all times material hereto; Plaintiff was present in the Family Court and could hear the telephonic exchange between the hearing officer and LASK.

68. That LASK knew or should have known the manner of her demeanor and the telephonic appearance created anxiety and distress in the Plaintiff.

69. Rather than provide for an adjournment in advance of the case coming before the Court or provide that the matter be covered by counsel, LASK proceeded telephonically wherein she intentionally hung up on the Court claiming she was not competent to appear due to her medical condition. That the matter was adjourned November 30, 2012.

70. By reason of her misconduct-hanging up on the court the hearing officer was angered. That the manner of her demeanor and LASK's hanging up the telephone on the hearing officer created anxiety and distress in the Plaintiff whereupon Plaintiff advised LASK of her feelings and concerns.

71. That at all times material hereto, although LASK knew or should have known the federal action was not yet legally ripe LASK advised Plaintiff she was working on the federal complaint and that she should not worry she would not be in state court much longer.

72. That on or about November 1, 2012 LASK demanded a second payment of $25,000.00 in furtherance of her billing scheme. That on November 6, 2012 Plaintiff paid LASK $25,000.00 where in the majority of the fees were for activities related to LASK's claimed research and preparation of the federal complaint.

73. That Plaintiff advised LASK the payment was money she had in savings; that a portion was borrowed from her parents-family and that relying on them created anxiety and distress for her.

74. That on November 30, 2012 the matter was adjourned due to inclement weather the matter was rescheduled to December 3, 2012.

75. On the morning of the scheduled hearing of December 3, 2012 although she had sufficient time and opportunity between the hearing of October 22, 2012 to avoid any further delays during the scheduled hearing of December 3, 2012 LASK intending to cause a delay in the matter served her response papers to the outstanding October 2012 Order to Show Cause brought by Kenneth Karn and also served a separate Order to Show Cause on behalf of Plaintiff seeking an amendment to her visitation order of August 19, 2011 just before the hearing. By reason of the late filings the matter was adjourned to December 6, 2012. . That Plaintiff advised LASK the foregoing delay created anxiety and distress in her.

76. On December 6, 2012 LASK again appeared telephonically. That the telephonic appearance created unnecessary anxiety and distress in the Plaintiff. That the matter was adjourned until January 15, 2013. That thereafter Plaintiff advised LASK the foregoing telephonic appearance and delay created anxiety and distress in her.

77. By reason of her October 22, 2012, misconduct, LASK's delaying tactics where the matter was adjourned-delayed to January 15, 2013 for the period from at least September 7, 2012 through January 15, 2013 the matter was delayed with the result being limited visitation between Plaintiff and S. Karn. That Plaintiff advised LASK the foregoing delay created anxiety and distress in her.

78. That the delay in serving said order to show cause for modification of her visitation rights and Plaintiff's response to the pending October 2012 motion of Kenneth Karn on December 3, 2012 was intentional and a further delaying tactic used to create hostility and increase LASK's billing cycle. That Plaintiff advised LASK the foregoing delay created anxiety and distress in her.

79. Thereafter, rather than bring a motion to disqualify the law guardian or seek recusal of the hearing officer by presenting an Article 78 for mandamus compelling a trial of the custody and visitation matter; that in furtherance of her billing scheme, although she knew or should have known by reason of the facts and procedural posture of the case that Plaintiff had not exhausted her state court remedies; that the facts in Plaintiffs' case lacked the necessary showing of irreparable harm-injury for injunctive and declaratory relief; that by filing the action she would cause a delay in the Family Court proceedings by reason of the inherent conflicts and basis for disqualification associated with the claims asserted against the law guardian's future appearance and the claims of bias directed in the hearing officer continuing to preside in the matter on December 21, 2012 Defendant LASK initiated a civil rights action in the Southern District of New York- 12–CV–9354 (NRB) against "Referee Marva A. Burnett, individually and as a state actor for the County Family Court; Rosemary Rivieccio, Esq., individually and as the lawyer for the child & Dr. Stephanie Brandt, individually and as the forensic psychiatrist and the City of New York".

80. In general the Complaint alleged that the family court has a "known custom & policy of interfering with litigants' constitutional rights", that defendant Burnett usurps her powers to violate plaintiffs' constitutional rights in collusion with defendant Rivieccio "as their custom and policy is to abuse a broken system"; that the Plaintiff "was never found to be an unfit parent"; that the defendant "Burnett usurps her powers to abuse plaintiff by refusing to advise her of her parental rights; that defendant "Burnett usurps her powers to abuse plaintiff by denying her hearings for over two and half years to *sua sponte* interfere with her parental rights; that defendant "Burnett's bias is evident