# KENNETH W. CRAIG
## Attorney at Law

**ECF FILING:**  July 21, 2017
United States District Courthouse
500 Pearl Street
New York, New York 10007-1312
Attn: Chambers Hon. Loretta A. Priska

Re: <u>Karn vs. Lask</u>-Case No: 15-09946

Your Honor:

    In response to the July 18, 2017 letter(s) **(DE 59-60.)** of the Defendant Susan Lask and her request for a pre-motion conference for permission to file a Rule 12(b) motion or any other motion to dismiss the Second Amended Complaint ("SAC") **(DE 57.),** the application should be denied.[1]

    For the most part, her arguments present nothing more than factual issues and not the elements of the law. These are facts which would need to be resolved by a jury only after completion of fact and paper discovery as there are material issues in dispute. In each instance of argument she fails to consider the facts as actually pled and simply offers pleadings-documents which are intentionally presented out of context in relation to the factual allegations of the SAC and which eliminate key language as pled.

    The Defendant opens her arguments **(DE 59-60.)** by stating that the SAC **falsely alleges in Count II,** one of the multiple allegations of negligence, that she "failed to obtain an expert to rebut the claims against Plaintiff in the Family Court . . . ." proceedings." **(DE 57 ¶¶ [191-192.)** She presents **Exhibits A and B (DE 59-1/60-1)** to "prove: that she retained Dr. Gould in September, 2013 and the Court accepted his report.

    What she omits is the prior <u>factual allegation</u> at **(DE 57 ¶139.),** as repeated, re-allege and incorporated by reference . . . . paragraphs "1" through "169" as to this Count, that "after a delay of . . . . some seventeen months post Plaintiff retaining LASK, in furtherance of her scheme to delay and churn her billing although she had an opportunity and lawful capacity to do so for the period commencing May 17, 2012 through May 30, 2014, Lask <u>failed to hire a</u> **qualified** <u>expert witness to rebut the claims</u> **and testimony** of Dr. Brandt**." (Emphasis added.)**

    Defendant continues to argue that Plaintiff also fraudulently affirms "That on October 15, 2014 the family court issue[d] its decision and order of custody finding that the Plaintiff failed to rebut the testimony with **competent evidence**" of the court appointed forensics Dr. Brandt. **(DE 57 ¶141.)** (Emphasis added.)

    Despite Defendant's claims that the "October 15, 2014 decision proves there was no such findings." Defendants claim is in opposition to the record. At page "4" of the decision and order Defendant's Exhibit B **(DE 59-1/60-1.)** the record confirms that the "court heard the **uncontroverted testimony of Dr. Brandt** on the following days, 03/15/12, 03/16/12. 03/26/12 and 03/27/2012.

    Why the Defendant, after being retained in June of 2012, did nothing to present direct testimony of the retained expert and only submitted a report, is not simply a question of strategy but begs the question of negligence in presenting rebuttal evidence in a competent form/manner as the reason for not doing so is a question of fact. This especially true in light of the direct testimony offered by Dr. Brandt and its impact on the Family Court's findings.

    Briefly, on several minor points, New York law recognizes that an individual under the age of 18 who remains unemancipated is an infant or minor. And, Ms. Lask has in fact refused to answer or even acknowledge Plaintiff's lawful demands.

---

[1] For the reason that the response addresses both **(DE 59-60.)** Counsel request the Court grant/allow additional two pages to address both of Defendant's filings. The double submission is inappropriate.

Turning to the specific allegations of defective Counts:

The claim that-Count I is duplicative of Count II is untrue. The case law cited in the argument "*Le fevre* v. *Rosen,* 2015 WL 8958231, at *4 (N.D.N.Y. Dec. 15, 2015)" actually supports the claims for a breach of fiduciary duty and a separate claim for negligence-legal malpractice. Each are predicated on different factual, as well as overlapping, allegations and seeks damages unique as to those facts supporting an independent claim from one-another. *MIG. Inc.* v. *Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.,* 701 F. Supp. 2d 518,532 (SDNY, 2010).

Count I Breach of Fiduciary Duty

The damages being sought in Count I are distinct as to the facts presented in support of the claimed fiduciary violations-file churning-in violation of New York's Judiciary Law§ 487(2) which provides, in pertinent part, that an attorney who "willfully delays his client's suit with a view to his own gain" is guilty of a misdemeanor and may be liable in treble damages. The factual claims in the SAC are precisely just that. They allege a cause of action based on factual pattern pled supporting intentional/willful delay for Defendant's own gain. **(DE 57 ¶¶ 46-63 & 148-169.)**

Count II Negligence

Count II **(DE 57 ¶¶ 170-198.)** is related to the pure acts of negligence as supported by the factual allegation for the legal services offered and performed by the defendant and whether she breach the standard of care required of her.

It is alleged that the Defendant Lask failed to exercise reasonable care, skill, and diligence in performing legal services for Plaintiff and was negligent in advising her to pursue federal claims wherein she knew or should have known the claim was not ripe for federal adjudication; that the filing was otherwise without legal support for her failure to first exhaust state court remedies including her failure to pursue an Article 78. (**DE 57** *Passim.*)

The federal Court in its decision cited that plaintiff was required to first exhaust her state court remedies under New York law including New York's Civil Practice Rules Article 78. **(DE 57¶142. Exhibit "A" hereto DE 61-1.)**

At **(DE 57 ¶¶170-198.)** the SAC alleges multiple acts of malpractice including that but for the departures from the legal standard owed by Defendant Lask, Plaintiff would have prevailed in the underlying action **or would not have paid for unnecessary legal fees**. Moreover, it alleges that but for Defendant's negligence plaintiff would not have suffered damages and that the negligence was a proximate cause of the injuries sustained by the Plaintiff. **(DE 57 ¶198.)** This claim is factually supported throughout the SAC as well.

Whether Plaintiff's conduct as alleged by the Defendant contributed to the outcome of the Family Court findings as a possible defense to an offset on damages is not a proper basis for a claim that no cause of action exists. What is more, although the Court made finding related to the Plaintiff's conduct and testimony these findings involve facts-testimony which were instigated by or at the direction of the Defendant including the fact that Defendant approached the New York Post not Plaintiff. (See below Defendant's retainer and her right to media exploitation.)

Counts III and VI (listed as IV) Negligent infliction of Emotional Distress

On these Count's Plaintiff would withdraw Count IV **(DE 57 ¶¶ 222-207.)** as it appears to be duplicative. However, Count III **(DE 57 ¶¶ 199-204.)** is not, nor is it conclusory in its terms and is "predicated on both shared facts as well as different factual allegations which establish the core

elements of the cause. It does not seek the same damages as those supporting a claim for a violation of fiduciary duties or a claim of legal malpractice.

By reason of the facts set forth in support of the SAC this claim does not involve claims for emotional distress for damages in a legal malpractice action involving representation in adoption or custody matters. The factual assertions are related to the Defendant's billing scheme before the federal court and are independent and directed to plaintiff emotional state related to the churning claims. **(DE 57 ¶¶ 199-204.)**; meaning her use of false invoices consisting of churned-unnecessary legal services under her plan to create hostility in others while she knew of Plaintiff's emotional state and financial limitations; pressuring her to borrow money from her family to pay for legal services which she knew were unnecessary and lacked being procedurally ripe. **(DE 57 ¶¶ 72,73, 85-87, 90 and throughout.)** This includes the planned use of her retainer, website, written and oral statements to Plaintiff and other matters such as her demands on Plaintiff to file pro se letters with the Family Court. **(DE 57 ¶¶ 199-204.)** These, acts and others caused fear, sleepless nights, loss of appetite, shaking and nausea, depression and anxiety in Plaintiff. **(DE 57 ¶¶ 95, 97, 116, 194, and 199-204.)**

Plaintiff has properly pled the appropriate standard, Defendant's conduct was so egregious, extreme in degree and outrageous in character as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community and was a proximate result of defendant's conduct. **(DE 57 ¶¶ 199-204.)**

Count IV False Advertising Deceptive Trade Practices 349.350

The SAC satisfies each of the element required in *Stutman v. Chem. Bank,* 95 N.Y.2d 24, 29, 731 N.E.2d 608, 709 N.Y.S.2d 892 (2000); accord *Spagnola v. Chubb Corp.,* 574 F.3d 64, 74 (2d Cir. 2009). that because her website is/was "a trap, a device and artifact which was designed to allow her to **convince clients** (the public) *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25, 647 N.E.2d 741, 623 N.Y.S.2d 529 (1995). of her false qualifications, services and legal accomplishments," that plaintiff and others will and have "detrimentally relied" upon it during said representation wherein Plaintiff paid $315,000 in legal fees by reason of the Defendants misconduct. **(DE ¶¶ 143-145 and ¶¶ 206-211.)**

Next, the Defendant's asserts that the statute of limitation of three years requires dismissal of the claim for the reason that the period for the claim of false advertising runs from May, 2012 to May, 2015, and not December 2015.

What Defendant fails to recognize or avoids is the fact that the accrual date of the claim. There are several issues at play in determining the accrual date for this Count, especially where plaintiff was unaware of her cause of action due to misleading conduct of the defendant ...." *Zerilli–Edelglass v. N.Y.C. Transit Auth.,* 333 F.3d 74, 80 (2d Cir.2003) (citing *Miller v. Int'l Tel. & Tel. Corp.*,755 F.2d 20, 24 (2d Cir.1985)).

Furthermore, Plaintiff claims the matter of accrual was stayed during her representation by Defendant. Plaintiff was a victim-consumer of the defendant-Ms. Lask. who was engaged in false, misleading and/or deceptive conduct throughout her representation of Plaintiff until at least July 2014. The facts include ongoing use of her website and the media exploitation of Plaintiff's. **(DE ¶¶ 143-145 and ¶¶ 206-211.)**

Another example of her false advertising and deception relates to her retainer; Defendant Lask claims the Media follows her cases, however, the facts will show that it was Defendant who regularly seeks out the media attention and that in this case by doing so the Family Court in its decision **(DE 59-1/60-1 Exhibit "A" at page 6.)** referenced the matter as an instance where Plaintiff was "evasive, unreliable and at the times non-existent.

Based on conversation with my client the testimony will establish that Plaintiff was told-directed in her answers by the Defendant both in court and to the media.

Count V Mail/Wire Fraud

Plaintiff agrees to withdraw the claim as a separate cause of action.

Count VII-Unjust Enrichment

Plaintiff agrees that under New York law "the existence of a valid and enforceable contract precludes an unjust enrichment claim relating to the subject matter of the contract." *Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd.,* 930 F.Supp.2d 532, 545 (S.D.N.Y. 2013) (collecting cases); *Beth Israel Med. Ctr. v. Horizon Blue Cross* & *Blue Shield of New Jersey, Inc.,* 448 F.3d 573, 587 (2d Cir. 2006).,However, this Count of the SAC is not based upon the May, 2012 retainer Plaintiff entered into with Ms. Lask for legal services from June, 2012 through July, 2014. **(DE 57 ¶140.)**

Plaintiff alleges "through "omissions, misleading, deceptive and unfair conduct" that Ms. Lask was unjustly enriched (**DE 57 ¶¶ 228-234.)** for matters outside that retainer and involving the matter before the US District Court claims.

The written retainer **(DE 61-2 Exhibit "B".)** limits the legal services**:**

> "Client hereby employs attorney to represent her in a **Family Court trial** in New York captioned. All fees paid shall be the immediate property of the Attorney. This retainer covers all Attorney time until August 1, 2012, and shall include the work as outlined in **section VIII** herein." (Emphasis added.)

SECTION VIII provides**:**

**SCOPE OF CASE WORK**

Attorney shall during this initial retainer period do the following:

a.   Conduct in-depth interview with client;

b. Review, analyze and digest documents submitted by Client, including appellate filings/decision;

c.   Conduct research;

d. Draft and file the substitution of attorney, communications to attorneys, court and child's attorney;

e.   one court appearance limited to 4 hours during this retainer period;

f.   Begin trial strategy and prepare with client.

The retainer also provides that:

In no circumstances shall Attorney be required under this agreement to:

c) Represent Client in any litigation herein or proceedings in any other lawsuits, actions or proceedings, even if arising out of Client's conduct in this case or a matter litigated in this case.

      Under the facts as pled and the limitation of her own retainer the claim of Unjust Enrichment Count VII is a matter not covered by the written Retainer Agreement should not be dismissed.

      For the reasons set forth above, including Plaintiff concessions, there is no basis for a motion to dismiss and the Court should deny the request for a pre-motion conference.

      In the event the Court grants Defendant's application plaintiff would seek to amend the SAC to conform with any pleading deficiencies alleged.

      Finally, for the reason that the Defendant has set forth in detail the basis for her requested motion practice the matter of whether Defendant may or may not be granted permission to file her Motion to Dismiss can be answered *sua sponte* and Counsel would if the Court deems a conference necessary request to appear telephonically.

Respectfully,

*[signature: Kenneth W Craig]*

Ken Craig, Esq.
CC: S. Lask.