**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------
MARGARET RHEE-KARN

                              Plaintiff,

        -against-

SUSAN CHANA LASK,


                              Defendant.
━━━━━━━━━━━━━━━━━━━━━━━━━━━━
SUSAN CHANA LASK,

                       Counter -Plaintiff,

          -against-


MARGARET RHEE-KARN, KENNETH CRAIG
& DOUGLAS R. DOLLINGER,
                       Counter-Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━━
SUSAN CHANA LASK,

                       Third-Party Plaintiff,

          -against-


KENNETH CRAIG &
DOUGLAS R. DOLLINGER,

                 Third-Party Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━━

                              CIVIL ACTION

                              CASE NO. 15 cv 09946 (LAP)


                       ANSWER, AFFRMATIVE DEFENSES,
                       COUNTERCLAIMS AND THIRD-PARTY
                         COMPLAINT ON BEHALF OF
                        DEFENDANT SUSAN CHANA LASK


                              JURY DEMAND


                        THIRD-PARTY COMPLAINT

        Defendant/Counterclaimant-Plaintiff, SUSAN CHANA LASK as and for her answer to the

complaint of the plaintiff, sets forth as follows by which the below numbered paragraphs and

headings are coordinated with the complaint as follows:

**IN RESPONSE TO THE PARAGRAPHS UNDER**
**THE HEADING "NATURE OF THE ACTION" (this title is denied)**

1.  Paragraphs 1-10 of the Complaint are precatory in nature and do not require a response. To the
    extent the statements in Paragraphs 1-10 of the Complaint purport to allege facts giving rise to
    the causes of action alleged, they are all denied.

2. Denied.

3. Denied.

4. Denied.

5. Denied, and in fact Defendant expressly warned plaintiff not to pursue a federal claim.

6. Denied.

7. This allegation is unintelligible and incapable of an answer, and is denied.

8. Denied.

9. Denied.

10. Denied.

**IN RESPONSE TO THE PARAGRAPHS UNDER**
**THE HEADING "JURISDICTION AND VENUE" (this title is denied)**

11. The allegations contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendants, they are denied.

12. The allegation contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

**IN RESPONSE TO THE PARAGRAPHS UNDER**
**THE HEADING "SUPPLEMENTAL JURISDICTION" (this title is denied)**

13. The allegation contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

**IN RESPONSE TO THE PARAGRAPHS UNDER**
**THE HEADING "THE PARTIES"(this title is denied)**

14. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein and refers all questions of law to the Court for a determination of same.

15. Denied, except admits that Defendant is licensed in New York with an office there.

**IN RESPONSE TO THE PARAGRAPHS UNDER**
**THE HEADING "FACTUAL BACKGROUND" (this title is denied)**

16. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein and refers all questions of law to the Court for a determination of same.

17.  Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein and refers all questions of law to the Court for a determination of same.

18. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein.

19. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein.

20.  Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein.

21. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein.

22. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein.

23. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein.

24. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein.

25.  Denied. Defendant alleges further that this paragraph relates directly to the cause of actions dismissed by this court's September 30, 2018 Order that specifically found there was no issue cause of action claimed regarding a website.

26. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein. Defendant alleges further that this paragraph relates directly to the cause of actions dismissed by this court's September 30, 2018 Order that specifically found there was no cause of action claimed regarding a website.

27.  Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein, and specifically denies the statement "that there had not been a trial in the matter" as patently fraudulent as trial started before Defendant entered the case as plaintiff's former counsel David Scott completed four days of cross-examination testimony of the court appointed forensics expert, Dr. Stephanie Brandt, and Plaintiff's complaint at paragraph 141 admits those four days of cross-examination occurred as "03/15/12,03/16/12,03/26/12 and 03/27/12" . Therefore, this paragraph must be stricken as an allegation made indefinite or erroneous by other allegations in the same complaint.

28.  Denied.

29. Denied.

30. Denied. Defendant alleges further that this paragraph relates directly to the cause of actions dismissed by this court's September 30, 2018 Order that specifically found there was no cause of action claimed regarding a website.

31. Denied.

32. Denied.

33. Denied.

34. Denied.

35. Denied.

36. Denied as to "thereafter" as it relates to allegations that are denied, but admit as to a retainer was presented on or about May 17, 2012.

37. With respect to this paragraph, the Court is referred to the original document for a complete and accurate statement of its contents; accordingly, this paragraph is denied.

38. With respect to this paragraph, the Court is referred to the original document for a complete and accurate statement of its contents; accordingly, this paragraph is denied.

39. With respect to this paragraph, the Court is referred to the original document for a complete and accurate statement of its contents; accordingly, this paragraph is denied.

40. With respect to this paragraph, the Court is referred to the original document for a complete and accurate statement of its contents; accordingly, this paragraph is denied. Furthermore, this paragraph relates to Counts I, IV and V and an allegation of "redacted", all that were dismissed by this court's Orders, dated August 9, 2017 and September 30, 2018, and therefore should be stricken.

41. Denied.  Furthermore, this paragraph relates to Counts I, IV and V and an allegation regarding a website, all that were dismissed by this court's Orders, dated August 9, 2017 and September 30, 2018, and therefore should be stricken.

42. With respect to this paragraph, the Court is referred to the original document for a complete and accurate statement of its contents; accordingly, this paragraph is denied.

43. With respect to this paragraph, the Court is referred to the original document for a complete and accurate statement of its contents; accordingly, this paragraph is denied.

44. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein. Furthermore, this paragraph relates to Counts I, IV and V and an allegation regarding a website, all that were dismissed by this court's Orders, dated

August 9, 2017 and September 30, 2018, and specifically found there was no issue raised regarding a website, and therefore this should be stricken.

45. Denied, except admit that Defendant appeared in the case.

**IN RESPONSE TO THE PARAGRAPHS UNDER THE HEADING**
**"DEFENDANT'S SCHEME-ACTS OF DECEPTION" (this title is denied)**

46. Denied. Furthermore, this paragraph relates to Counts I, IV and V that were dismissed by this court's Orders, dated August 9, 2017 and September 30, 2018, and therefore should be stricken.

47. Denied. Furthermore, this paragraph relates to Count IV and V that were dismissed by the Court's August 9, 2017 and September 30, 2018 Orders, and therefore should be stricken.

48. Denied. Furthermore, this paragraph relates directly to Count I that that was dismissed by the court's September 30, 2018 Order, and therefore should be stricken.

49. Denied.

50. Denied.  This paragraph relates directly to Count I that that was dismissed by the court's September 30, 2018 Order, and therefore should be stricken.

51. Denied. Furthermore, this paragraph relates directly to Counts I, IV and V that were all dismissed by the court's August 9, 2017 and September 30, 2018 decisions, and therefore should be stricken.

52. Denied.

53. Denied.

54. Denied.

55. Denied.  Furthermore, the allegations herein purport to state conclusions of law, which do not require an answer.

56. Denied. Furthermore, this paragraph relates to Counts I, IV and V that were dismissed by the Court's August 9, 2017 and September 30, 2018 Orders, and therefore should be stricken. Defendant further alleges that the documentary evidence proves that Defendant expressly warned plaintiff that a federal action would be expensive and likely be dismissed and plaintiff insisted on pursuing a federal action despite defendant's express warning, advice and notice.

57. Denied. Furthermore, this paragraph relates to Counts I, IV and V that were dismissed by the court's Orders on August 9, 2017 and September 30, 2018, and therefore should be stricken.

58.  Denied. Furthermore, this paragraph relates to Counts I, IV and V that were dismissed by the court's Orders on August 9, 2017 and September 30, 2018, and therefore should be stricken.

59. Denied. Furthermore, this paragraph relates to Counts I, IV and V that were dismissed by the court's Orders on August 9, 2017 and September 30, 2018, and therefore should be stricken.

60. Denied. Furthermore, this paragraph relates to Counts I, IV and V that were dismissed by the court's Orders on August 9, 2017 and September 30, 2018, and therefore should be stricken.

61. Denied. Furthermore, this paragraph relates to Counts I, IV and V and a "billing scheme" that were dismissed by the court's Orders on August 9, 2017 and September 30, 2018, and therefore should be stricken.

62. With respect to this paragraph, the Court is referred to the original document for a complete and accurate statement of its contents; accordingly, this paragraph is denied Furthermore, this paragraph relates to Count I and creating "hostility" that was dismissed by the court's Order dated September 30, 2018, and therefore should be stricken.

63. With respect to this paragraph, the Court is referred to the original document for a complete and accurate statement of its contents; accordingly, this paragraph is denied Furthermore, this paragraph relates to Counts I that was dismissed by the court's Order dated September 30, 2018, and therefore should be stricken.

64. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein. Defendant further alleges that there were numerous Orders to Show Cause and other motions filed by Kenneth Karn and the Law Guardian against plaintiff because of her contempt of court orders, her refusal to pay court appointed experts and the Law Guardian despite orders directing her to pay, and suspension of her visitation because of her misconduct in that directly as a result of plaintiff's misconduct she delayed and interfered with the custody proceedings, as confirmed in the Family Court's final decision of October 21, 2014, including at FN 1 therein.

65. Denied. Furthermore, this paragraph relates to Counts I and the emotional distress Counts III and IV (mislabeled IV and should be VI) and an allegation of delaying the case that was dismissed by the court's Order on  September 30, 2018, and therefore should be stricken.

66. Denied.

67. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein.

68. Denied. Furthermore, this paragraph directly relates to emotional distress Counts III and IV (mislabeled IV and should be VI) that were dismissed by the court's decision on September 30, 2018, and therefore should be stricken.

69. Denied. Denied. Furthermore, this paragraph directly relates to emotional distress Counts III and IV (mislabeled IV and should be VI) that were dismissed by the court's decision on September 30, 2018, and therefore should be stricken.

70. Denied. Furthermore, this paragraph directly relates to emotional distress Counts III and IV (mislabeled IV and should be VI) that were dismissed by the court's decision on September 30, 2018, and therefore should be stricken.

71. The allegations contained in this paragraph state conclusions of law, which, do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

72. Denied. Furthermore, this paragraph directly relates to Counts I, IV and V and alleges a "billing scheme"  which all such counts and "billing scheme" were dismissed by the court's decision on  September 30, 2018, and therefore should be stricken.

73. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein.  Furthermore, this paragraph directly relates to emotional distress Counts III and IV (mislabeled IV and should be VI) that were dismissed by the court's decision on September 30, 2018, and therefore should be stricken.

74. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein.

75. Denied.  Furthermore, this paragraph directly relates to emotional distress Counts III and IV (mislabeled IV and should be VI) and an alleged "delay" that were dismissed by the court's decision on September 30, 2018, and therefore should be stricken.

76. Denied.  Furthermore, this paragraph directly relates to emotional distress Counts III and IV (mislabeled IV and should be VI) and an alleged "delay" that were dismissed by the court's decision on September 30, 2018, and therefore should be stricken.

77. Denied.  Furthermore, this paragraph directly relates to emotional distress Counts III and IV (mislabeled IV and should be VI) and an alleged "delay" that were dismissed by the court's decision on September 30, 2018, and therefore should be stricken.

78. Denied. Furthermore, this paragraph directly relates to emotional distress Counts III and IV (mislabeled IV and should be VI) and an alleged "delay" that were dismissed by the court's decision on September 30, 2018, and therefore should be stricken

79. With respect to this paragraph, the Court is referred to the original document for a complete and accurate statement of its contents; accordingly, this paragraph is denied in its entirety except it is admitted that on December 21, 2012 Plaintiff Rhee-Karn personally appeared and filed at the SDNY clerk's office a federal complaint. Denied. Furthermore, this paragraph directly relates to emotional distress Counts I, IV and V and an alleged and "billing scheme" "delay" that were all dismissed by the court's decision on September 30, 2018, and therefore should be stricken.

80. With respect to this paragraph, the Court is referred to the original document for a complete and accurate statement of its contents; accordingly, this paragraph is denied.

81. The allegations contained in this paragraph state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

82. Denied. Defendant further alleges that this allegation is a patent fraud upon the court as plaintiff and her counsel know that there was never a Rule 11 letter, communication, motion nor any threat thereof by any party to Defendant. By reason of this fraud upon the court, this paragraph and complaint should be stricken.

83. Denied. Furthermore, this paragraph directly relates to Counts I, IV and V, and allegations of a "billing scheme" and emotional distress Counts III and IV (mislabeled as IV) that were dismissed by the court's Orders on August 9, 2017 and September 30, 2018, and therefore should be stricken.

84. Denied. Furthermore, this paragraph directly relates to Counts I, IV and V, and allegations of a "billing scheme" and emotional distress Counts III and IV (mislabeled as IV) that were dismissed by the court's Orders on August 9, 2017 and September 30, 2018, and therefore should be stricken. Defendant further alleges that the statement in this paragraph of "Rule 11 Sanctions (sic)" is part and parcel of plaintiff and her counsel's fraud on this court that led this court to issue an order concluding there were Rule 11 sanction demands against defendant when there never were, and this fraud mandates striking this paragraph and dismissing the complaint.

85. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein.

86. Denied. Furthermore, this paragraph directly relates to Counts I, IV and V, and allegations of emotional distress Counts III and IV (mislabeled as IV) that were dismissed by the court's Orders on August 9, 2017 and September 30, 2018, and therefore should be stricken.

87. Denied. Furthermore, this paragraph directly relates to Counts I, IV and V, and allegations of a "delay" and emotional distress Counts III and IV (mislabeled as IV) that were dismissed by the court's Orders on August 9, 2017 and September 30, 2018, and therefore should be stricken.

88. Denied, except admit that a voluntary dismissal was filed on February 5, 2013. Defendant further alleges that the statement in this paragraph of a "Rule 11 motion for sanctions" is part and parcel of plaintiff and her counsel's fraud on this court that led this court to issue an order concluding there were Rule 11 sanction demands against defendant when there never were, and this fraud mandates striking this paragraph and dismissing the complaint.

89. Denied. Furthermore, to the extent that this paragraph directly relates to Counts IV and V and allegations of a "billing scheme" that were dismissed by the court's decision on September 30, 2018, and therefore should be stricken. Defendant further alleges that paragraphs 82, 84 and 88 of the complaint unequivocally state that the 2012 Federal Complaint was voluntarily dismissed because parties in that action served Rule 11 notices to Defendant (which is false) and this paragraph contradicts that by now affirming that the dismissal was because of the assigned judge; thus, this paragraph must be stricken as an allegation made indefinite or erroneous by other allegations in the same complaint.

90. Denied. Furthermore, this paragraph directly relates to the emotional distress Counts III and IV (mislabeled as IV) that were dismissed by the court's Order on September 30, 2018, and therefore should be stricken.

91. Denies knowledge or information sufficient to form a belief as to each and every allegation contained herein.

92. Denied, except admits that a motion seeking leave to appeal was filed and Article 78 relief was sought. Furthermore, this paragraph relates to Counts I, IV and V and states "scheme to delay and churn her billing" and references an "Article 78", all of which were dismissed by the court's September 30, 2018 Order, and this paragraph should be stricken with respect to those dismissed allegations.

93. Denied. Defendant further alleges that plaintiff refutes this false allegation that a motion to disqualify the law guardian did not exist as in her paragraph 83 plaintiff admits that there

was a pending disqualification motion; thus, this paragraph must be stricken as an allegation made indefinite or erroneous by other allegations in the same complaint. Furthermore, this paragraph relates to Counts I, IV and V and states "scheme to delay and churn her billing" and references an "Article 78" and motion to disqualify the law guardian and also relates directly to the emotional distress Counts III and IV (mislabeled IV), all of which were dismissed by the court's September 30, 2018 Order, and this paragraph should be stricken with respect to those dismissed allegations.

94. Denied.

95. Denied. Furthermore, this paragraph directly relates to the emotional distress Counts III and IV (mislabeled as IV) that were dismissed by the court's Order on September 30, 2018, and therefore should be stricken.

96. Denied. Furthermore, this paragraph relates to Counts I, IV and V and states "scheme to delay and churn her billing" that were dismissed by the court's Order of September 30, 2018, and this should be stricken.

97. Denied. Furthermore, this paragraph directly relates to the emotional distress Counts III and IV (mislabeled as IV) that were dismissed by the court's Order on September 30, 2018, and therefore should be stricken.

98. Denies knowledge or information sufficient to form a belief as to each and every other allegation contained herein.  To clarify, Defendant further alleges that the filings of the Law Guardian, attorney for the husband Ken Karn, the Forensics Expert and other parties directed plaintiff to seek psychiatric help.

99. Denies knowledge or information sufficient to form a belief as to each and every other allegation contained herein.

100. Denied.

101. Denied. Furthermore, this paragraph relates to Count I and an allegation of a delay that were dismissed by this court's September 30, 2018 decision, and this should be stricken.

102. Denied. Denied. Furthermore, this paragraph directly relates to the emotional distress Counts III and IV (mislabeled as IV) that were dismissed by the court's Order on September 30, 2018, and therefore should be stricken.

103. Denied. Denied. Furthermore, this paragraph relates to Counts I, IV and V and states " billing scheme" that were dismissed by the court's Order of September 30, 2018, and should be stricken.

104.  Denied. Furthermore, this paragraph directly relates to the emotional distress Counts III and IV (mislabeled as IV) that were dismissed by the court's Order on September 30, 2018, and therefore should be stricken.

105.  Denied.

106.  Denied. Furthermore, this paragraph directly relates to Counts I  and allegations of an Article 78 and "scheme to delay and churn her billing" that were dismissed by the court's Order on  September 30, 2018, and therefore should be stricken.

107.  Denied. Furthermore, this paragraph directly relates Count I and a "billing scheme" and "Article 78" that were dismissed by the court's Order on September 30, 2018, and therefore should be stricken.

108.  Denied. Furthermore, this paragraph directly relates to the emotional distress Counts III and IV (mislabeled as IV) that were dismissed by the court's Order on September 30, 2018, and therefore should be stricken.

109. Denied, except admitted that the Family Court held hearings against plaintiff due to her contempt of court orders. Furthermore, that this paragraph directly relates to Counts I, IV and V and allegations of "churn her billing" and "scheme to delay" that were all dismissed by the court's Orders on August 9, 2017 and September 30, 2018, then this should be stricken.

110.  Denied.  Furthermore, that this paragraph directly relates to Counts I, IV and V and allegations of "billing scheme" that were dismissed by the court's Orders on August 9, 2017 and September 30, 2018, then this should be stricken.

111.  Denied. Furthermore, this paragraph directly relates to the emotional distress Counts III and IV (mislabeled as IV) that were dismissed by the court's Order on September 30, 2018, and therefore should be stricken.

112. Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph

113.  Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph.  Furthermore, that this paragraph directly relates to Counts I, IV and V and allegations of "billing scheme" and an "Article 78" that were dismissed by the court's Orders on August 9, 2017 and September 30, 2018, then this should be stricken.

114.  Denied.  Furthermore, that this paragraph directly relates to Counts I, IV and V and allegations of an "Article 78", delay and "churn her bill" that were all dismissed by the court's Orders on August 9, 2017 and September 30, 2018, then this should be stricken.

11

115.  Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph.

116.  Denied. Furthermore, this paragraph directly relates to the emotional distress Counts III and IV (mislabeled as IV) that was dismissed by the court's Order on September 30, 2018, and therefore should be stricken.

117.  Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph. Furthermore, this paragraph directly relates to Count I and allegations of an Article 78 that were dismissed by the court's Order on September 30, 2018, and, therefore, should be stricken.

118.  Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph. Furthermore, this paragraph directly relates to Count I and allegations of an Article 78 that were dismissed by the court's Order on September 30, 2018, and therefore should be stricken.

119.  Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph. It is admitted that a civil rights complaint was filed by plaintiff personally appearing before and filing with the SDNY clerk. The Court is referred to the original document for a complete and accurate statement of its contents and admits an amended complaint was filed. Furthermore, this paragraph directly relates to Counts I, IV and V and allegations of an Article 78, billing scheme and motion to disqualify the law guardian that were all dismissed by the court's Orders on August 9, 2017 and September 30, 2018, and therefore this paragraph should be stricken. Furthermore, the allegation regarding a disqualification motion of the law guardian not before the court is refuted in the complaint at paragraphs 83 and 93, making this allegation indefinite or erroneous by other allegations in the same complaint, and should therefore be stricken.

120.  Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph.  Furthermore, this paragraph directly relates to Count I and allegations of an Article 78 that were dismissed by the court's Order on September 30, 2018, and therefore this paragraph should be stricken.

121.  Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph.

122.  Denied. Furthermore, to the extent that this paragraph directly relates to Counts I, IV and V and an allegation of a "billing scheme", that were all dismissed by the court's Orders of August 9, 2017 and September 30, 2018, and therefore this should be stricken.

123. Denied. Furthermore, this paragraph directly relates to the emotional distress Counts III and IV (mislabeled as IV) that was dismissed by the court's Order on September 30, 2018, and therefore should be stricken.

124. Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph.

125. Denied. Furthermore, this paragraph directly relates to Counts I, IV and V and allegations of an Article 78, billing scheme and motion to disqualify the law guardian that were all dismissed by the court's Orders on August 9, 2017 and September 30, 2018, and therefore this paragraph should be stricken.

126. Admit.

127. Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph. Furthermore, this paragraph directly relates to Counts I, IV and V and allegations of a billing scheme that were all dismissed by the court's Orders on August 9, 2017 and September 30, 2018, and therefore this paragraph should be stricken.

128. Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph. Denied. Furthermore, this paragraph directly relates to the emotional distress Counts III and IV (mislabeled as IV) that was dismissed by the court's Order on September 30, 2018, and therefore should be stricken.

129. Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph.

130. With respect to this paragraph, the Court is referred to the original document for a complete and accurate statement of its contents; accordingly, this paragraph is denied and Defendant only admits that a complaint was filed.

131. Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph.

132. Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph. Admit only to the extent that at some point there was oral argument and a complaint was filed.

133. Denied. Furthermore, this paragraph directly relates to Counts I, IV and V and allegations of a billing scheme that were all dismissed by the court's Orders on August 9, 2017 and September 30, 2018, and therefore this paragraph should be stricken.

134.  Denied. Furthermore, this paragraph directly relates to the emotional distress Counts III and IV (mislabeled as IV) that was dismissed by the court's Order on September 30, 2018, and therefore should be stricken.

135.  Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph.

136.  Denied. Furthermore, this paragraph directly relates to Counts I, IV and V and allegations of a billing scheme that were all dismissed by the court's Orders on August 9, 2017 and September 30, 2018, and therefore this paragraph should be stricken.

137.  Denied. Furthermore, this paragraph directly relates to the emotional distress Counts III and IV (mislabeled as IV) that was dismissed by the court's Order on September 30, 2018, and therefore should be stricken.

138.  Denies knowledge or information sufficient to form a belief as to each and every allegation contained in this paragraph.

139.  Denied. Defendant further alleges that this allegation is a patent fraud by plaintiff and her counsel as the documentary evidence proves that Defendant had a qualified expert witness named Jonathan Gould, PHD who was ready, willing and able to testify but plaintiff prevented his appearance because she deliberately breached her contract with the him and refused to pay fees that were due for his services after she used and manipulated him to write a report for her, and she refused to pay his fees for him to appear in court, all as sworn to in Dr. Gould's declaration (see Defendant's Counterclaim, **Exh. I**[1]). Also, Plaintiff admitted in writing numerous times that she would not use Dr. Gould after she manipulated Defendant to interview numerous experts, then had Defendant work with Dr. Gould and waste her valuable time strategizing the case for his testimony, only to dismiss Dr. Gould over Defendant's objection**.** Furthermore, to the extent this paragraph relates to Counts I, IV and V and allegations of a billing scheme that were all dismissed by the court's Orders on August 9, 2017 and September 30, 2018, and therefore that should be stricken.

140.  Denied, except admits that on July 25, 2014 the attorney-client relationship terminated.

141.  With respect to this paragraph, the Court is referred to the original document attached hereto as **Exhibit A** for a complete and accurate statement of its contents; accordingly, this paragraph is denied. Furthermore, this paragraph and paragraph 27 of the Complaint admit that there was a trial on "03/15/12, 03/16/12,03/36/12 and 03/27/12 which were the four days of

---

[1] All exhibits are true and correct copies of the original and are incorporated herein as if set forth in their entirety.

trial that plaintiff's former counsel, David Scott, cross-examined the court appointed forensic expert, Dr. Brandt, which the purpose of said cross-exam was to controvert the testimony of Dr. Brandt.  Furthermore, plaintiff and her counsel know that cross-examination was conducted and deceived and defrauded this court by seizing an error on the Family Court's decision by using the word "uncontroverted" when the fact was that the expert's testimony was controverted by four days of cross-examination. This fraud on the court by plaintiff and her counsel mandate striking this paragraph and the complaint

142.  With respect to this paragraph, the Court is referred to the original document for a complete and accurate statement of its contents; accordingly, this paragraph is denied. The allegations contained in this paragraph state conclusions of law, which, do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.  Furthermore, this paragraph relates to Count I and raises the "Article 78" issue, all of which was dismissed by the court's Order of September 30, 2018, thus, this should be stricken.

143.  Denied. Defendant further alleges that this paragraph relates to Counts I, IV and V and states allegations of a publication on a website that was dismissed by the court's Orders of August 9, 2017 and September 30, 2018, thus, this should be stricken.

144.  Denied. Defendant further alleges that this paragraph relates to Counts I, IV and V and states allegations of a publication on a website that were all dismissed by the court's Orders of August 9, 2017 and September 30, 2018, thus, this should be stricken.

145.  Denied. Defendant further alleges that this paragraph relates to Counts I, IV and V and states allegations of a publication on a website and directly relates to the emotional distress Counts III and IV (mislabeled as IV) that were all dismissed by the court's Orders of August 9, 2017 and September 30, 2018, thus, this should be stricken.

146.  With respect to this paragraph, the Court is referred to the original document for a complete and accurate statement of its contents; accordingly, this paragraph is denied.

147.  Denied.  Defendant further alleges that this paragraph is impermissible and should be stricken as it relates to Counts IV and V and an allegation of "billing-churning scheme" and Judiciary Law 487 that were all dismissed by this court's August 9, 2017 and September 30, 2018 Orders. Furthermore, plaintiff commits a patent fraud on the court to allege that Defendant  "invoked her 5th Amendment right to remain silent in light of the claims" as that never happened.

**IN RESPONSE TO THE PARAGRAPHS UNDER
THE HEADING "Count I-Breach of Fiduciary Duty"
(This Count was dismissed by this Court's September 30, 2018 Order, and the heading is denied)**

148.  Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

149.  Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

150.  Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

151. Denied. This paragraph was dismissed by this Court's September 30, 2018 Order. Denied.

152.  Denied.This paragraph was dismissed by this Court's September 30, 2018 Order. Denied.

153.  Denied. This paragraph was dismissed by this Court's September 30, 2018 Order..

154.  Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

155.   Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

156.   Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

157.  Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

158.  Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

159.  Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

160.  Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

161.  Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

162.   Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

163.  Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

164.  Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

165.  Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

166. Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

167. Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

168. Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

169.  Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

**IN RESPONSE TO THE PARAGRAPHS UNDER THE
HEADING" Count II-Negligence" (This Heading is Denied)**

170.  Defendant repeats and re-alleges her answers contained in Paragraphs 1 through 170 and
the headings above as if fully set forth herein.

171. Denies knowledge or information sufficient to form a belief as to each and every allegation
contained herein.

172.  The allegations contained in this paragraph to state conclusions of law which, do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

173.  Denied.

174.  The allegations contained in this paragraph to state conclusions of law which, do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

175.  The allegations contained in this paragraph to state conclusions of law which, do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

176.  The allegations contained in this paragraph to state conclusions of law which, do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.  Defendant further alleges that this paragraph completely relates to an Article 78 proceeding that this court's Order of September 30, 2018 dismissed as not stating a cause of action, thus this paragraph should be stricken.

177.  The allegations contained in this paragraph to state conclusions of law which, do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.  Defendant further alleges that this paragraph completely relates to an Article 78 proceeding that this court's Order of September 30, 2018 dismissed as not stating a cause of action, thus this paragraph should be stricken.

178.  Denied. Defendant further alleges that the documentary evidence in the counterclaims filed herewith prove that plaintiff insisted on pursuing a federal claim over Defendant's warning that it would be expensive and likely dismissed.

179.   The allegations contained in this paragraph to state conclusions of law which, do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.  Defendant further alleges that this paragraph completely relates to an Article 78 proceeding that this court's Order of September 30, 2018 dismissed as not stating a cause of action, thus this paragraph should be stricken.

180.  The allegations contained in this paragraph to state conclusions of law which, do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.  Defendant further alleges that the documentary evidence in the counterclaims proves that plaintiff insisted on pursuing a federal claim over Defendant's warning that it would likely be expensive and dismissed.

181. The allegations contained in this paragraph to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

182. The allegations contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

183. The allegations contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

184. The allegations contained in this paragraph are incomprehensible and purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

185. The allegations contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

186. The allegations contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

187. The allegations contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

188. The allegations contained in this paragraph are incomprehensible, and to the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied. Defendant further alleges that this paragraph regarding "uploading documents" is impermissible and should be stricken as this court's September 30, 2018 Order found that there was no cause of action regarding uploading documents and a website.

189. The allegations contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied. Defendant further alleges that this paragraph regarding "uploading documents" is impermissible and should be stricken as this court's September 30, 2018 Order found that there was no cause of action regarding uploading documents and a website.

190. The allegations contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.  Defendant further alleges that this paragraph regarding "uploading documents" is impermissible and should be stricken as this court's September 30, 2018 Order found that there was no cause of action regarding uploading documents and a website.

191. Denied. Defendant further alleges that this allegation is a patent fraud by plaintiff and her counsel as the documentary evidence proves that Defendant had a qualified expert witness named Jonathan Gould, PHD who was ready, willing and able to testify but plaintiff prevented his appearance because she deliberately breached her contract with the him and refused to pay fees that were due for his services after she used and manipulated him to write a report for her, and she refused to pay his fees for him to appear in court, all as sworn to in Dr. Gould's declaration (see 1/30/19 Dr. Gould Declaration, **Exhibit I** to Defendant's Counterclaim). Also, Plaintiff admitted in writing numerous times that she would not use Dr. Gould after she manipulated Defendant to interview numerous experts, then had Defendant work with Dr. Gould and waste her valuable time strategizing the case for his testimony, only to dismiss Dr. Gould over Defendant's objection.  Further, plaintiff's complaint admits at paragraphs 7 and 141 that her former counsel David Scott cross-examined the court appointed forensic expert for four days to controvert her testimony.

192. The allegations contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.  Defendant further incorporates herein as if stated in its entirety Defendant's answer in paragraph 191 above, proving plaintiff's patent fraud upon this court that defendant did not have an expert, and warranting dismissal of this complaint as a fraud upon the court.

193. The allegations contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.    Furthermore, this paragraph directly relates to the emotional distress Counts III and IV (mislabeled as IV) that were all dismissed by the court's Orders of August 9, 2017 and September 30, 2018, thus, this should be stricken.

194. Denied. Furthermore, this paragraph directly relates to the emotional distress Counts III and IV (mislabeled as IV) that were all dismissed by the court's Orders of August 9, 2017 and September 30, 2018, thus, this should be stricken.

195. The allegations contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

196. The allegations contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied. Defendant further incorporates herein as if stated in its entirety Defendant's answer in paragraph 191 above, proving plaintiff's patent fraud upon this court that defendant did not have an expert, and warranting dismissal of this complaint as a fraud upon the court.

197. The allegations contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

198. The allegations contained in this paragraph purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

**IN RESPONSE TO THE PARAGRAPHS UNDER THE HEADING**
**"Count III Negligent Infliction of Emotional Distress"**
**(This Count was dismissed by this Court's September 30, 2018 Order and this heading is denied)**

199. Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

200. Denied.This paragraph was dismissed by this Court's September 30, 2018 Order.

201. Denied.This paragraph was dismissed by this Court's September 30, 2018 Order.

202. Denied.This paragraph was dismissed by this Court's September 30, 2018 Order.

203. Denied.This paragraph was dismissed by this Court's September 30, 2018 Order.

204. Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

**IN RESPONSE TO THE PARAGRAPHS UNDER THE HEADING**
**"Count IV False Advertising Deceptive Trade Practice Act"**
**(This Count was dismissed by this Court's September 30, 2018 Order and this heading is denied)**

205. Denied.This paragraph was dismissed by this Court's September 30, 2018 Order.

206. Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

207. Denied.This paragraph was dismissed by this Court's September 30, 2018 Order.

208. Denied.This paragraph was dismissed by this Court's September 30, 2018 Order.

209. Denied.This paragraph was dismissed by this Court's September 30, 2018 Order.

210. Denied.This paragraph was dismissed by this Court's September 30, 2018 Order.

211. Denied.This paragraph was dismissed by this Court's September 30, 2018 Order

**IN RESPONSE TO THE PARAGRAPHS UNDER**
**THE HEADING "Count V Mail/Wire Fraud"**
(This Count was dismissed by this Court's August 9, 2017 Order and this heading is denied)

212. Denied. This paragraph was dismissed by this Court's August 9, 2017 Order.

213. Denied. This paragraph was dismissed by this Court's August 9, 2017 Order.

214. Denied. This paragraph was dismissed by this Court's August 9, 2017 Order.

215. Denied. This paragraph was dismissed by this Court's August 9, 2017 Order.

216. Denied. This paragraph was dismissed by this Court's August 9, 2017 Order.

217. Denied. This paragraph was dismissed by this Court's August 9, 2017 Order.

218. Denied. This paragraph was dismissed by this Court's August 9, 2017 Order.

219. Denied. This paragraph was dismissed by this Court's August 9, 2017 Order.

220. Denied. This paragraph was dismissed by this Court's August 9, 2017 Order.

221. Denied. This paragraph was dismissed by this Court's August 9, 2017 Order.

**IN RESPONSE TO THE PARAGRAPHS UNDER THE**
**HEADING "Count IV Negligent Infliction of Emotional Distress"**
(This Count was dismissed by this Court's August 9, 2017 and
September 30, 2018 Orders and this heading is denied)

222. Denied.This paragraph was dismissed by this Court's August 9, 2017 and September 30, 2018 Orders.

223. Denied.This paragraph was dismissed by this Court's August 9, 2017 and September 30, 2018 Orders.

224. Denied.This paragraph was dismissed by this Court's August 9, 2017 and September 30, 2018 Orders.

225. Denied.This paragraph was dismissed by this Court's August 9, 2017 and September 30, 2018 Orders.

226. Denied.This paragraph was dismissed by this Court's August 9, 2017 and September 30, 2018 Orders.

227. Denied. This paragraph was dismissed by this Court's August 9, 2017 and September 30, 2018 Orders.

**IN RESPONSE TO THE PARAGRAPHS UNDER**
**THE HEADING "Count VII Unjust Enrichment"**
**(This Count was dismissed by this Court's September 30, 2018 Order and this heading is denied)**

228. Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

229. Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

230. Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

231. Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

232. Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

233. Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

234. Denied. This paragraph was dismissed by this Court's September 30, 2018 Order.

## AS AND FOR AN ANSWER TO THE "WHEREFORE" CLAUSE

The allegations contained in the Wherefore Clause of the Complaint purport to state conclusions of law, which do not require a response. To the extent these allegations infer the existence of facts supporting a claim for relief against Defendant, they are denied.

**FACTS COMMON TO ALL AFFIRMATIVE DEFENSES ,**
**COUNTERCLAIMS  & THIRD PARTY COMPLAINT**

**Rhee-Karn Has an Established Vindictive History**
**of Cheating Professionals Out of Money She Owes**

1. Rhee-Karn has an established history of manipulating and scamming lawyers and other professionals by retaining them, using their services and requesting specific services from them and refusing to follow counsel's advice as she undermines her own case, then she falsely accuses her counsel and everyone else she brings into the case of malpractice, threatens lawsuits and she files lawsuits, including the case at bar, to swindle professionals out of money she owes them or has paid.

2. In her custody case, that is the underlying case in the case at bar, in January, 2009, Rhee-Karn retained Jonathan Factor, Esq. (**Exhibit B**[2]-see his billing), used him for some two years, then terminated him the day before a scheduled October 6, 2010 hearing regarding settling her case (**Exhibit C**).

3. The October 6, 2010 transcript shows other counsel in the case affirming that Factor was handling Rhee-Karn's settlement, but she fired him to interfere with it (**Exhibit D, see also Exh. B**-9/2/10 settlement billing).

---

2 Lask's Answer contains Exh. A, so this Exhibit is "B" considering this is part of the same filing and pleadings.

4. On October 12, 2010, Rhee-Karn retained David Scott, Esq. (**Exhibit E**)**,** used him for two years, including starting her trial, then terminated him by her May 16, 2012 letter accusing him of legal malpractice and refusing to pay his bill because she says, "I feel it is only fair that the balance on my account would compensate for these errors." (**Exhibit F).**

5. Rhee-Karn forced David Scott to sue her for $40,855.76  in fees due him in the pending New York County Supreme Court, Index No. 651976/18(**Exhibit G).**

6. After firing David Scott, Rhee-Karn retained Lask and used her for two years and ignored her advice and counsel, then Rhee-Karn committed a fraud on this court by her present complaint against Lask in furtherance of her scheme to extort Lask.

7.  In 2012, Rhee-Karn refused to pay the Law Guardian some $10,000 in fees in contempt of an August 9, 2010 Order, accused the Law Guardian of misconduct, then forced the Law Guardian to file a motion demanding payment that to date Rhee-Karn never paid.

8. On January 31, 2011, the Family Court appointed Dr. Stephanie Brandt and ordered that Karn to pay her fees based upon Rhee-Karn's requested for a court appointed forensics expert (**Exhibit H**); then Rhee-Karn  accused Dr. Brandt of misconduct and refused to pay Dr. Brandt's fees in contempt of the court's Order.

9.  On September 5, 2013, Rhee-Karn executed a contract retaining Jonathan Gould, PhD to provide a peer-review of Dr. Brandt's forensic report and she requested his testimony at her trial, but after Dr. Gould provided his October 2, 2013 expert report to her and submitted his bill for $1,400.00 as a balance due and a request for half of a  $15,000.00 retainer to secure his appearance for trial, Rhee-Karn kept his expert report to use it for her case, refused to pay Dr. Gould his fees, including the $1,400.00 due for his services (**Exhibit I-1/30/19 Gould declaration with exhibits**).

10. On October 27, 2014, Rhee-Karn tried to manipulate a fourth attorney, Peter Lomtevas, Esq., to represent her after she falsely accused her prior attorneys and made it impossible for them to represent her.  Rhee-Karn paid Lomtevas $3,000.00 to review her case to determine if he would represent her, then she gave him an unexpected 2,375 pages of documents to review for that small fee and refused to provide him 8 months of documents, despite his repeated requests (**Exhibit J-**11/14/14 Lomtevas Report).

11. After Lomtevas completed his work, Rhee-Karn sent him a November 14, 2014 e-mail accusing him of legal malpractice and demanding that he return her money by threatening him with ethics in her false accusation that "I am concerned because there was never a retainer agreement" between her and Lomtevas (**Exh. J**).

12. Lomtevas' November 21, 2014 report to Rhee-Karn gave his honest opinion that her case suffered because she violated court orders and he found her to be, among other things, manipulative, uncooperative, and she engaged in fantasies (**Exh. J**).

13. On January 29, 2015, Rhee-Karn lashed out by suing Lomtevas in the New York County Civil Court, Index 143/2015, which was dismissed after Lomtevas answered (**Exhibit K**).

**Dollinger and Craig Have an Established History of**
**Unethical Conduct and Filing Fraudulent Complaints to Extort**
**Professionals, Including Targeting Susan Chana Lask, Esq.**

14. Dollinger and Craig engage in unethical conduct and frauds upon numerous courts. They unethically list "Kenneth Craig, Esq. as counsel" on Dollinger's New York letterhead in violation of DR 1-102 (a)(4) (22 NYCRR 1200.3 [a][4]), 2-101(a) (22 NYCRR 1200.6 [a]), 2-102 (a) (22 NYCRR 1200.7 [a]) and 1-102 (a)(7) (22 NYCRR 1200.3 [a][7]), to deceive potential clients that Craig is a New York attorney.

15. Upon information and belief, Craig uses that fraudulent letterhead designation to engage in the unauthorized practice of law with Dollinger's consent. Robert Sexaur affirms that Dollinger and Craig deceived him that Craig was a New York attorney, then Dollinger and Craig abandoned his case, leading to a dismissal (**Exhibit L-** 6/10/17 Sexauer Dec**.)**

16. Similar to Rhee-Karn's refusals to pay her bills, numerous judgments exist against Dollinger from legal service companies, including some $20,000 in judgments by Counsel Press, Appellate Press and Appeal Press, LLC that he used for his cases.

17. Some examples of Dollinger and Craig's frauds on the court and sanctions are as follows:

   a. On September 2, 2014, in *Indiezone, Inc. et. al. v. Todd Rooke, et al.* , Case No. 13-cv-04280-VC, Federal Judge Chabria dismissed that case upon finding that Dollinger committed fraud by filing a "vexatious and fraudulent suit", and sanctioned Dollinger $93,365.92. To date, Dollinger refuses to pay that judgment of violation of 22 NYCRR 603.4[e][1][iv]; and

   b. Despite Judge Chabria's clear finding that Dollinger lied and committed fraud on the court, Kenneth Craig appeared as counsel to Dollinger, just as he did in the case at bar, to continue the lies and fraud by an appeal to the Ninth Circuit, where Craig's lies can be viewed at https://www. ca9.uscourts.gov/ media/view_video.php?pk_vid=0000012577, which that video shows the panel's astonishment at his behavior. After the 9th Circuit denied that ruse, Craig and Dollinger continued the fraud with an unbalanced filing before the United States Supreme Court, that was naturally denied;

   c. In *96 Broadway LLC, et al v. City of Newburgh et al*, SDNY #07-06689, Dollinger congested the docket for years with his false filings then refused to appear before Judge Preska in contempt of her Order, leading to dismissal;

d.  In *Sexauar v. Intellicel*, SDNY #14-4314 and #15-2469, Dollinger congested the docket for years with his false filings to blackmail CEO Dr. Victor to pay Dollinger $3,00,000.00, but when Dr. Victor would not be extorted, Dollinger certified to Judge Castel that he was medically unfit to practice law, leading to dismissal of the case;

e.  After certifying to Judge Castel that he was "medically unfit" to practice law, within a month Dollinger filed the case at bar against Lask, which he worked on before and during his telling Judge Castel he was medically unfit, and he proceeded before Judge Preska for a year without informing her that he obtained an order from Judge Castel that he was medically unfit;

f.  In *Franzone v. the City of NY* et al, EDNY # EDNY 13-0582 (the "Franzone case"), Dollinger and his co-conspirator in their numerous fraudulent filings, Georgette Franzone, filed a prolix and unbalanced complaint against over 20 individuals and entities falsely accusing them of crimes where Dollinger clogged that docket for years with baseless filings until Judge Gershon made clear his filing was baseless and she dismissed his complaint.

g.  In *In Franzone v. Lask,* SDNY #14-03043, Dollinger and his co-conspirator Franzone filed the same prolix and fraudlent complaint against Lask as his other complaints against other parties and exactly the same as the case at bar.  That case too was dismissed, and the court issued orders against Dollinger for sealing documents and disqualifying him after he violated ethics and uploaded confidential documents to extort Lask and he lied to the court that he was not once her counsel.

h.  The *In re Charbel Elias*, 2014 WL 1248042 (EDNY, 2014) decisions details how Dollinger and Franzone lied to the court, leading to dismissal of their fraudulent filings;

i.  In SDNY #05-03097, Judge McMahon dismissed Dollinger's *pro se* complaint when he defied a court order to appear after dragging that frivolous case on for seven years;

j.  In *Divot Golf Corp. v. Citizens Bank*, No. 02-CV-10654-PBS, 2003 U.S. Dist. LEXIS 187, at *4 (D. Mass. Jan. 8, 2003) Dollinger was sanctioned because he  "failed his Rule 11 duty to make a reasonable inquiry into the facts and law before filing the Amended Complaint, despite being put on notice by defendants of serious factual and legal deficiencies in the original Complaint," and  the court found  Dollinger's "misstatements [were] even more egregious … given that defendants had already shown them to be false." *Id.* at *7.

**Rhee-Karn Seeks Dollinger & Craig to File a Complaint**
**Against Lask Knowing they Commit Frauds to Extort Professionals**

18. In August, 2014, Lask told Rhee-Karn about an unbalanced and unethical attorney named Douglas Dollinger who files fraudulent complaints to extort professionals, and Lask showed Rhee-Karn Dollinger's fraudulent cases, including the Franzone case that Dollinger and Craig pursued against her in retaliation to her cooperating with a disciplinary committee and other litigants against Dollinger, to which Dollinger sought revenge.

19.  Knowing that Dollinger sought revenge against Lask for exposing his frauds and that Dollinger and Craig file fraudulent complaints, Rhee-Karn contacted Dollinger to extort and harass Lask with her present fraudulent complaint in this court.

**THE FRAUDULENT SCHEME PERPETRATED BY RHEE-KARN, WHO CONSPIRES WITH DOLLINGER & CRAIG TO COMMIT FRAUD AND FILE SHAM COMPLAINTS AGAINST LASK**

20.  Rhee-Karn entered into an illegal agreement and conspired with Dollinger and Craig to file false and fraudulent complaints and other filings against Lask in the Southern District of New York and, upon information and belief, she entered into her conspiracy with them in or about September, 2015,

21.  In furtherance of her malicious motives and conspiracy, Rhee-Karn designed a scheme for the purpose of extorting Lask for money based on her filing fraudulent complaints and other court filings, making them so confusing and full of lies and offensive accusations, including accusations of crimes, to disparage her and harm her career by those filings so she will pay Rhee-Karn to stop.  Rhee-Karn employed Dollinger and Craig as her co-conspirators to help her execute her scheme of fraud and extortion.

22.  Rhee-Karn, Dollinger and Craig agreed among themselves to aid and abet each other in carrying out the conspiracy and scheme.

23. In furtherance of the conspiracy, Rhee-Karn paid Dollinger and Craig money, including the filing fee, for them to carry out the scheme with her, and with the knowledge and consent of the each conspirator,  they all did so by filing the following fraudulent complaints in this court, entitled "Margaret Rhee-Karn v. Susan Chana Lask":

- December 21, 2015, Rhee-Karn's initial complaint;

- September 16, 2016, Rhee-Karn filed an amended complaint;

- February 9, 2017, Rhee-Karn filed a second amended complaint;  and

- July 3, 2017,  Rhee-Karn filed a third amended complaint mislabeled "Second" amended complaint.

24. Each of the above stated Rhee-Karn complaints were verified by Dollinger and Craig that they read the complaints, signed it based upon their personal knowledge and "based on an investigation" by them that the contents of the complaints were true.

**25.** Contrary to their verifications, the complaints are frauds on this court and duplicate the sham complaints Dollinger filed against Lask in the Franzone case, including duplicating the same false accusations of (a) crimes, (b) Lask pleading the 5th, (c) GBL violations  and (d) emotional distress that were  dismissed by this court explaining why such allegations can not be pled.

## RHEE-KARN & HER CO-CONSPIRATORS' FRAUDS IN THE COMPLAINT

26. Rhee-Karn and her co-conspirators Dollinger and Craig filed complaint after complaint in this court, and for years insisted on prosecuting them, knowing they are frauds, culminating in the last July 3, 2017 complaint duplicating the prior complaints, that are disproven by the documentary evidence, as the following paragraphs prove.

## RHEE-KARN'S COMPLAINT IS RIFE WITH FRAUDULENT & DEROGATORY EPITHETS AGAINST LASK TO INFLAME THIS COURT & DEFLECT IT FROM ITS JUDICIAL DUTIES

27.  In the case at bar, Rhee-Karn, Dollinger and Craig spin a web of lies to the point they make the ultimate fraud upon this court at paragraph 147 that Lask "invoked her 5th amendment right to remain silent in light of the claims associated with the allegations of churning Plaintiff's file in violation of New York State Judiciary Law 487".  There was never an invocation of a 5th Amendment right, and that same lie was made in their complaint in the Franzone  case.

28.  Their paragraphs 95 and 107 fraudulently state that Lask wrote letters for Rhee-Karn to send to Supervising Judges when Rhee-Karn admits in her e-mails at that time that she took it upon herself to write those letters and she called the courts on her own.

29.  Their paragraph 82 fraudulently states that Lask was threatened with Rule 11 sanctions by her adversaries who "advised her of the perfidious nature of the claims."  That never happened, and Rule 11 sanctions or threats were never made to Lask.

## -RHEE-KARN'S STATEMENT THAT AN EXPERT WAS NOT RETAINED IS A PATENT FRAUD

30.  Complaint paragraph 139 fraudulently states that Lask  "failed to hire a qualified expert witness to rebut the claims and testimony of Dr. Brandt" and paragraph 191 fraudulently states that  "at no time prior to December 2013 and up to May 2014 did  Lask obtain an expert to rebut the testimony of the court appointed psychiatrist."

31.  Counter-Claim Defendants' frauds on this court that an expert was never hired is irrefutably proven as nationally known forensics expert Dr. Gould was retained on

September 5, 2013 by a contract executed by Rhee-Karn and Lask for him to work with

Lask and testify if requested (see **Exh. I-** 1/30/19 Gould Dec., Exh. A).

32.  Dr. Gould's January 30, 2019 declaration affirms that Rhee-Karn refused to pay his bills

after she used his services, and she refused to pay him to appear to testify in breach of his

contract, which prevented him from testifying when he was ready, willing and able to.

33.  Counter-Claim Defendants' frauds on this court that an expert was never hired is proven

by Rhee-Karn's declarations in her November 21, 2013, December 16, 2013 and March 1,

2014 e-mails to Lask that she refused to pay Dr. Gould and did not want him to testify,

over Lask's objection, to wit:

-11/21/16 Lask forwards Dr. Gould's email to Karn regarding his fees due and Karn writes back, "Don't you agree We can't commit to him because there is no transparency to this case.  Frankly I don't think we need him - we'll use his report for the federal and complaint to the panel" and Lask responds "I don't agree because I always told you no matter what you need a good record in case of appeal. What you're doing now is exiting your strategy."

-12/16/13 Lask emails Rhee-Karn a detail of how Rhee-Karn has violated her retainer and court orders, and states, "Confirming you directed me that you will not use an expert forensics to rebut Brandt's report. I detailed this with you for over a year and do not want to repeat my position that it is needed if you want an appealable record. Anyhow, it looks like you don't have Gould as you informed me you do not like  his report and I informed you that is the report they provide." and Rhee-Karn responds by referring to Dr. Gould as "Dr. G" that,  "I don't want to use Dr. G…(yet I do believe his report which I paid for is something I can use when filing a complaint to the state board, court panel, right?) …but bringing him in is a waste of his time and money".

-3/1/14 Rhee-Karn again confirms her prior refusals to use Dr. Gould as she confirms her former attorney David Scott did enough with cross-examining Dr. Brandt and she states, "no need for any forensic expert to fly in from NC (meaning Dr. Gould is from North Carolina) to  make this interpretation --a lay person knows  that a dead hermit crab has NO RELEVANCE TO PARENTING.. any lay person would say the same thing."
(**Exhibit M**).

34. Rhee-Karn's Complaint paragraph141 fraudulently states that the October 15, 2014 Family

Court order found that Lask "failed to rebut the testimony with competent evidence before

the court and Dr. Brandt's testimony and report were accepted as "uncontroverted

testimony" on 3/15/12, 3/16/12, 3/26/12 and 3/27/12; yet that paragraph proves itself a

fraud by affirming that Dr. Brandt's testimony was rebutted and controverted because

"3/15/12, 3/16/12, 3/26/12 and 3/27/12" are the dates that Rhee-Karn's  former counsel

David Scott, Esq. had Dr. Brandt on the stand for four days and conducted an in-depth

cross-examination of her, and he completed that on March 27, 2012.

35. An attorney is capable of cross-examining a forensics expert, which Rhee-Karn admits that his cross-examination was thorough and completed in her March 1, 2014 e-mail to Lask where she details the cross-examination and affirms that "read the cross with Dr. Brandt March 15th transcript start on page 35-45. These pages alone is enough to discredit the report."(see **Exh. M**)

36. Attached hereto are the transcripts of David Scott's cross-examination of Dr. Brandt on "3/15/12, 3/16/12, 3/26/12 and 3/27/12", proving his thorough and complete examination, and that Dr. Brandt was concluded as a witness on March 27, 2012 (**Exhibit N**); which concluded six months prior to Lask's first appearance in court on September 7, 2012 when the court confirmed that Brandt was concluded and Rhee-Karn was already on the stand, as "there was Dr. Brandt, there was cross by Ms. Solomon, there was cross by Ms. Rivieccio, and I believe that was it, so the next witness was your witness which was supposed to be the mother I believe" and the father's counsel confirmed that "Yes, and she (Rhee-Karn) was in the middle of her direct." (**Exhibit O**).

**-RHEE-KARN ACCUSING LASK OF IMPROPERLY
FILING FEDERAL COMPLAINTS IN FACE OF RULE 11
THREATS BY ADVERSARY COUNSEL IS A PATENT FRAUD**

**37.**  Rhee-Karn's Complaint paragraph 82 fraudulently states that after Lask served a December 24, 2012 federal complaint, her adversaries threatened her with Rule 11 sanctions and "advised her of the perfidious nature of the claims", and paragraphs  84, 88 and 89 continue that fraud regarding threats of sanctions.

38. Lask expressly informed Karn from January to August, 2013, including emails that  "I advised many times that a federal complaint before the family court case terminates is subject to dismissal as federal courts rule they will not interfere with family court proceedings" and "I am being realistic as to the state of the law that weighs against you. You may be paying a lot of money only for this to be dismissed", and Rhee-Karn's January 8, 2013 e-mail confirms Lask's warnings eight months prior that "as you were saying we may not get into the federal courts"  and Rhee-Karn continues in March 26, 2103 confirming that the reason for withdrawing the first December, 2012 Federal Filing was to exhaust an appeal (**Exhibit P**-see emails); yet over Lask's warnings, Rhee-Karn insisted on the course of conduct to file a federal complaint (Exh. P), and she accepted the benefits of Lask's services in making a good-faith argument for a *Younger* exception and to satisfy

Rhee-Karn's objective for a possible similar ruling from the Federal court in the Bridgette Marks' case where an SDNY Federal Court Judge invited her to return to his court if the Family Court did not end that trial; hence, giving some force and effect from the federal court to a state court that cases should not languish, which Judge Oetken as well recognized in his decision in the Rhee-Karn case (**Exhibit Q**).

**THIS COURT ISSUED AN ORDER THAT ERRONEOUSLY FOUND
AGAINST LASK BECAUSE THIS COURT RELIED UPON AND RECITED
WORD FOR WORD THE FRAUDS IN THE RHEE-KARN COMPLAINT**

39.  On September 30, 2018, this court found that a cause of action for legal malpractice was stated against Lask because "Rhee-Karn alleges that Lask's failure to call an expert witness to rebut the testimony of the court-appointed psychiatrist ".

**40.**  On September 30, 2018, this court's decision finds a cause of action for malpractice against Lask by repeating Rhee-Karn's fraudulent accusation of Rule 11 threats against Lask as "this conclusion is supported by the fact that, after filing the 2012 Federal lawsuit, Rhee-Karn alleges that the New York City Law Department and other named defendants' counsel challenged her claims as procedurally defective and "perfidious,", while also threatening to bring sanctions against Lask under Fed. R. Civ. P. Rule 11 for filing a frivolous claim. (TAC 82). Accordingly, Lask's decision to file the 2012 Federal action was negligent."

41. In the  next paragraph of the decision, this court found the 2014 Federal action was also a malpractice claim against Lask because Rhee-Karn alleged that Lask's research proved the "Federal actions were not supported by law."

42. None of the things that the court recited based upon Rhee-Karn's complaint happened, specifically threats of a Rule 11 by any counsel and Rhee-Karn concealed Lask's warnings regarding the Federal actions and there was rebuttal of the court appointed forensics expert by David Scott's four days of cross-examination of Dr. Brandt that concluded March 27, 2012, and, at Rhee-Karn's direction, Lask was extra cautious to have Dr. Jonathan Gould ready, willing and able to testify even after that rebuttal concluded but for Rhee-Karn terminating Dr. Gould and refusing to pay his bills (**Exh. I**).

**AFFIRMATIVE DEFENSES**

As separate and distinct defenses to the Complaint, Defendant Lask, without conceding that she bears the burden of proof as to any of them, alleges the following defenses and also gives

notice that she intends to rely upon such other and further affirmative defenses as may become available during discovery in this action and reserves the right to amend her Answer to assert any such defenses up through and including at time of trial.

**FIRST AFFIRMATIVE DEFENSE**

43. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

44. Plaintiff's Complaint fails to state a cause of action upon which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

45. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

46. Plaintiff's Complaint is barred in whole or in part by reason of the applicable statute of limitations.

**THIRD AFFIRMATIVE DEFENSE**

47. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein..

48. This Court lacks jurisdiction for diversity and the monetary amount is under $75,000.00.

**FOURTH AFFIRMATIVE DEFENSE**

49. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

50. Plaintiff's alleged damages are not proximately caused by Defendant's actions and/or omissions.

**FIFTH AFFIRMATIVE DEFENSE**

51. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

52. The documentary evidence proves dismissal of plaintiff's complaint is warranted

**SIXTH AFFIRMATIVE DEFENSE**

53. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

54. Plaintiff's complaint is barred by "Informed Consent" whereby Defendant as a lawyer explained the material risks of the proposed course of conduct and the reasonable available alternatives, including expressly advising Plaintiff that a Federal complaint would likely be dismissed and an expensive endeavor and not to terminate Dr. Gould.

**SEVENTH AFFIRMATIVE DEFENSE**

55. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein..

56. Plaintiff's complaint is barred by "waiver", whereby Plaintiff, as a client, knowingly and voluntarily waived her right to heed Defendant's advice after Defendant gave her advice.

**EIGHTH AFFIRMATIVE DEFENSE**

57. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

58. That by refusing to heed Defendant's advice not to file a federal complaint and not to fire Dr. Gould, plaintiff knew the "inherent risks" incident thereto and had full knowledge of the risks thereof, so that whatever damages were sustained by the plaintiff as alleged in the Complaint arose from and were caused by reason of such risks voluntarily undertaken by the plaintiff and such risks were assumed and accepted in performing and engaging in said activities.

**NINTH AFFIRMATIVE DEFENSE**

59. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

60. Any injury sustained by Plaintiff is the result of the culpable conduct, negligence, carelessness and want of ordinary care of Plaintiff and/or parties or third parties over whom the Defendant had no control.

**TENTH AFFIRMATIVE DEFENSE**

61. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

62. Plaintiff ratified all acts of Plaintiff, even what she alleges to be unauthorized acts are ratified, and expressly and implicitly consented to the actions alleged to have caused her damage, including that Plaintiff failed to object, and in fact insisted on the course of conduct that Defendant file a federal complaint, and Plaintiff accepted the benefits of Defendant's services, including that the Federal complaint was filed to satisfy Plaintiff's objective to make a public statement about court corruption.

**ELEVENTH AFFIRMATIVE DEFENSE**

63. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

64. The complaint is barred by Judicial Estoppel, which precludes a party who took one position in a prior legal proceeding from assuming a contrary position in another action. The doctrine rests upon the principle that a litigant should not be permitted to lead a court to find a fact one way and then contend in another judicial proceeding that the same fact should be found otherwise. Here, Plaintiff insisted in the Family Court that she did not want Dr. Gould to testify after Defendant had secured him, and in this court Plaintiff affirmed exactly the opposite that there never was an expert by concealing the fact that Plaintiff deliberately terminated Dr. Gould by refusing to pay him for his services, directed

Lask not to use Dr. Gould, which lies and frauds, including by omission, caused this court to conclude in its Order of September 30, 2018 that there was never an expert and led this court to hold that was a cause of action for legal malpractice, which said holding was based on Plaintiff's frauds on this court.

**TWELFTH AFFIRMATIVE DEFENSE**

65. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

66. Defendant Lask at all times relevant hereto acted reasonably and in good faith, and did not breach any applicable duty or obligation.

**THIRTEENTH AFFIRMATIVE DEFENSE**

67. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

68. Any losses that may have been sustained by Plaintiff, all of which are denied, were caused or substantially contributed to by reason of Plaintiff's own culpable conduct, negligence, carelessness and want of ordinary care.

**FOURTEENTH AFFIRMATIVE DEFENSE**

69. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

70. The Complaint is barred in whole or in part by reason of the equitable doctrines of pari delicto, unclean hands, waiver and estoppel.

**FIFTEENTH AFFIRMATIVE DEFENSE**

71. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

72. Any recovery to the Plaintiff, which Defendant denies is appropriate, is subject to set-off by Defendant's proof of claim.

**SIXTEENTH AFFIRMATIVE DEFENSE**

73. Defendant Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

74. Plaintiff's claims are barred in whole or in part by reason of the attorney-judgment rule, including Defendant's strategic choices while representing Plaintiff.

**COUNTERCLAIMS AGAINST COUNTER-DEFENDANT RHEE-KARN**

75. Pursuant to Fed. R. Civ. P. 13(a), these are compulsory counterclaims arising out of the transaction or occurrence that is the subject matter of the opposing party's, Rhee-Karn's, claim.

**PARTIES TO THE COUNTERCLAIMS**

76. Counterclaim-Plaintiff Lask is an attorney licensed to practice in the State of New York.

77. Counterclaim-Defendant Rhee-Karn is a citizen of the State of New York.

78. Counterclaim-Defendant Kenneth Craig is, upon information and belief, a citizen of North Carolina, appears *pro hac vice* in this court for the pending case and has verified under oath the complaints against Lask.

79. Counterclaim-Defendant Douglas R. Dollinger is, upon information and belief, a citizen of New York, who initiated the Rhee-Karn complaints against Lask in this court, and has verified under oath the complaints against Lask in this court.

**AS AND FOR A FIRST COUNTERCLAIM (Fraud on the Court)**
**(Against All Counter Claim Defendants)**

80. Counter-Plaintiff Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

81. Counter-Claim Defendants lied to this court in their sham complaint to defraud the court and prevent it from performing its impartial task of judging the case.

82. Their lies in their fraudulent complaint seriously affect and undermine the integrity of the normal process of adjudication and its truth-seeking function.

83. This action seeks relief from the September 30, 2018 Order that relied and recited Counter Claim Defendants' lies and frauds and from the case continuing based on Counter-Claim Defendants' fraudulent filings, and this counterclaim action is the only way to prevent the grave miscarriage of justice that Counter-Claim Defendants continue with their frauds in this court.

84. Furthermore, the fraud is a conspiracy between Rhee-Karn and her counsel Douglas Dollinger and Kenneth Craig who have an established history of the same frauds on the courts, wherein they perpetrate the fraud, and they continue to force this litigation knowing their complaint is a patent fraud.

85. As a consequence of their lies, and as they intended, the impact of Counter-Claim Defendants' lies led this court to make conclusions in its September 30, 2018 Order that

recites word for word their lies as the basis for the court finding that legal malpractice was alleged.

86.  Lask lacked any opportunity at the pleading and motion to dismiss stage of this case to correct or prove the lies because at that stage this court was bound to accept Rhee-Karn's pleadings as true, and Lask's motion to reconsider the September 30, 2018 Order  could not correct  the fraud on the court as the court will not look beyond Rhee-Karn's sham pleading or accept anything from Lask on that matter.

87. The benefit Counter-Claim Defendants derived by inducing the erroneous Order is to compel Lask to expend her valuable time and money defending against their fraudulent filing, which not only satisfies their vindictive and malicious purposes, but also their objective to use the erroneous Order to extort and extract a monetary settlement from Lask and even a judgment based on their fraud on this court.

88. As a result of Counter-Claim Defendants' frauds on this court, this court was deceived into issuing an order against Lask directly based on Rhee-Karn's frauds and Lask is thereby damaged by this court reciting Rhee-Karn's frauds in its Order claiming Lask was negligent when she was not.

89.  As a result of Counter-Claim Defendants' frauds on this court, Rhee-Karn's fraudulent complaint should be dismissed.

90. As a result of Counter-Claim Defendants' frauds on this court,  Lask suffered damages in an amount to be determined at trial, but in no event less than $1,000,000.

91. Counter-Claim Defendants' conduct was malicious and outrageous and warrants the imposition of punitive damages.

## AS AND FOR A SECOND COUNTERCLAIM (Fraud)
## (Against Counter-Claim Defendant Rhee-Karn)

92. Counter-Claim Plaintiff Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein. never intended to abide by the contract

93. Rhee-Karn made material misrepresentations of fact to Lask by (a) concealing that Rhee-Karn owed substantial legal fees to her former counsel David Scott, and (b) entering into the retainer with Lask knowing that at the tie she executed the retainer, Rhee-Karn did not

intend to abide by its terms, did not intend to heed Lask's advice and counsel and that Rhee-Karn would flout her responsibilities thereunder and defy orders of the court, causing excessive contempt and other hearings against Rhee-Karn to the detriment of Lask having to perform services above and beyond the retainer, to the exclusion of Lask's other clients and business, and that Rhee-Karn intended to and knew that she would later falsely accuse Lask to extort her to return all of her money.

94. Rhee-Karn did the foregoing with the intent to induce reliance by Lask to enter into the retainer with her, and Lask justifiably relied on Rhee-Karn's representations to abide by the retainer and follow her advice and court orders, and pay her for services rendered, and Lask would not have entered into an agreement with Rhee-Karn if she knew the truth that Rhee-Karn did not pay her former counsel's bill, falsely accused professionals of malpractice, and that she would defy court orders and ignore Lask's counsel.

95. Pursuant to the contract and in further breach thereof, Lask performed services and billed for such, amounting to $21,000 that Karn refused to pay in breach of said contract.

96. As a result of Counter-Claim Defendant Rhee-Karn's illegal and unlawful conduct, Counter-Claim Plaintiff Lask has suffered damages, including that Rhee-Karn has failed to pay fees due on that contract as a result of her breaches in an amount of $21,000, that Lask has lost business while handling Rhee-Karn's case to the exclusion of her other clients and new business while Rhee-Karn never intended to honor her contract with Lask, that Lask has expended $7,500.00 in legal fees in this case to rectify Rhee-Karn's frauds and breaches, which fees are compounding as Rhee-Karn's fraudulent case continues, and there are further damage amounts to be determined at trial, but in no event less than $1,000,000.

97. Counter-Defendant Rhee-Karn's conduct was malicious and outrageous and warrants the imposition of punitive damages.

**AS AND FOR A THIRD COUNTERCLAIM (Civil Conspiracy to Commit Fraud)**
**(Against All Counter-Claim Defendants)**

98. Counter-Claim Plaintiff Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

99.   Counter-Claim Defendant Rhee-Karn and the other Counter-Claim Defendants intentionally, knowingly and willfully participated in this scheme to extort Lask by perpetrating a fraud on this court by committing overt acts and making misrepresentations and/or failing to provide material information to the court, in furtherance of Rhee-Karn's

agreement with her co-conspirators Dollinger and Craig, including but not limited to those representations set forth above.

100.    From December, 2015 to July, 2017, over a period of one and a half years, Rhee-Karn and her co-conspirators Dollinger and Craig filed four complaints, all verified under oath as true, that are all lies and constitute a fraud on this court.

101.    Each complaint filed is in furtherance of Rhee-Karn, Dollinger and Craig's scheme to extort Lask and deprive her of legal fees duly paid for her services, in addition to harassing her by this fraudulent complaint and interfering with her livelihood.

102.    Rhee-Karn and her co-conspirators Dollinger and Craig could have withdrawn from their conspiracy, but to date, now over three years, they insist on pursuing their illegal scheme in this court, and have procured an erroneous order repeating their frauds.

103.    Counter-Defendants' conduct was malicious and outrageous and warrants the imposition of punitive damages.

104.  As a result of Counter-Claim Defendants illegal and unlawful conduct, Counter-Claim Plaintiff Lask has suffered damage amounts to be determined at trial, but in no event less than $1,000,000.

## AS AND FOR A THIRD COUNTERCLAIM (Aiding and Abetting Fraud)
## (Against All Counter-Claim Defendants)

105.  Counter-Claim Plaintiff Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

106.  Each Counter-Claim Defendant had actual knowledge of, intended to assist and encouraged, participated in, and gave assistance and encouragement to each other in their scheme to perpetrate a fraud upon the court to harm Lask.

107.  Each Counter-Claim Defendant substantially assisted and encouraged the other in the aforementioned schemes and conspiracy, and their individual conduct was a substantial factor in causing the fraudulent conduct described above.

108.  As a result of Counter-Claim Defendants illegal and unlawful conduct, Counter-Claim Plaintiff Lask has suffered damage amounts to be determined at trial, but in no event less than $1,000,000.

109.  Counter-Claim Defendants conduct was malicious and outrageous and warrants the imposition of punitive damages in an amount to be determined at trial, but in no event less than $1,000,000.

## AS AND FOR A FOURTH COUNTERCLAIM (Breach of Contract)
### (Against Counter-Claim Defendant Rhee-Karn)

110.  Counter-Claim Plaintiff Lask repeats and re-alleges all of the foregoing paragraphs as if fully set  forth herein.

111.  Counter-Claim Plaintiff entered into a retainer agreement with Counter-Claim Defendant Rhee-Karn to provide legal services and Rhee-Karn was obligated to pay for those services and act lawfully and abide court orders and follow Lask's counsel

112.  Rhee-Karn deliberately and intentionally breached the contract numerous times to cause Lask to do further work by Rhee-Karn refusing to follow court orders, causing additional hearings and refusing to pay Lask for her services rendered.

113.  Counter-Defendant Rhee-Karn's conduct was malicious and outrageous and warrants the imposition of punitive damages.

114.  As a result of Counter-Claim Defendant Rhee-Karn's unlawful conduct, Counter-Claim Plaintiff Lask has suffered damages, including that Rhee-Karn has failed to pay fees due on that contract in an amount of $38,000 and that Lask has expended $7,500.00 in legal fees that continue to grow in this case to rectify Rhee-Karn's breach of contract, and there are further damage amounts to be determined at trial, but in no event less than $1,000,000.

## AS AND FOR A FIFTH COUNTERCLAIM (Abuse of Process)
### (Against All Counter-Claim Defendants)

115.  Counter-Plaintiff Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

**116.**  Counter-Defendant Rhee-Karn obtained a summons in this action to compel Lask to appear before this court for Rhee-Karn's false and fraudulent filings.

117.  Using that summons, Counter-Defendant Rhee-Karn initiated, filed and pursued four complaints in this action that were intended to be, and are, false and fraudulent, with the primary purpose of the lawsuit brought by Rhee-Karn is not the purpose for which they may properly be instituted, namely to obtain damages.

**118.**  Instead, Rhee-Karn filed the fraudulent complaints to extort and extract from Lask money to be paid to Rhee-Karn and her co-conspirators, Dollinger and Craig, whether by an erroneous order of this court or judgment against Lask or payment by Lask based on Rhee-Karn's fraudulent and extortive pleadings and to interfere with Lask's business, law office and put her to the trouble and expense of litigation.

119.  In fact, because of Rhee-Karn's fraudulent filings, this court issued an erroneous September 30, 2018 order reciting Rhee-Karn's frauds, to the detriment and damage of Lask; including her paying legal fees and losing business and other money from her business to have to defend against Rhee-Karn's fraudulent filings and the erroneous order based directly on Rhee-Karn's frauds.

120.  Counter-Defendant Rhee-Karn's conduct was malicious and outrageous and warrants the imposition of punitive damages.

121.  As a result of Counter-Claim Defendants illegal and unlawful conduct, Counter-Claim Plaintiff Lask has suffered damages, including $7,500.00 in legal fees that are compounding as Rhee-Karn's fraudulent case continues, and there are further damage amounts to be determined at trial, but in no event less than $1,000,000.

### AS AND FOR A FIFTH COUNTERCLAIM (Prima Facie Tort)
### (Against All Counter-Claim Defendants)

122.  Counter-Plaintiff Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

123.  Counter-Claim Defendants  intentional inflicted harm upon Lask by their fraudulent complaint, without excuse or justification and motivated solely by malice by their act or series of acts of filing fraudulent complaints before this court and committing a farud on this court to harm Lask.

124.  Counter-Defendant Rhee-Karn's conduct was malicious and outrageous and warrants the imposition of punitive damages.

125.  As a result of Counter-Defendant Rhee-Karn's illegal and unlawful conduct, Counter-Plaintiff Lask has suffered damages , including special damages of $7,500.00 in legal fees that are compounding as Rhee-Karn's fraudulent case continues, a general loss of customers as Lask cannot attend to her business due to the time required to defend against Rhee-Karn's fraudulent lawsuit, in which the case docket speaks to that, and there are further damage amounts to be determined at trial, but in no event less than $1,000,000.

**CONCLUSION**

WHEREFORE, and as to each and every Count set forth above, Counter-Plaintiff Lask demands judgment against Counter-Claim Defendants Rhee-Karn, Dollinger and Craig, and each of them jointly and severally, in an amount to be determined at trial, but in no event less than $1,000,000, together with interest unpaid and due and owing to her, plus punitive damages as set forth herein above that Counter-Claim Defendants conduct was, and continues to be by their continuing frauds on this court, so outrageous as to evince a high degree of moral turpitude and shows such wanton dishonesty as to imply a criminal indifference to civil obligations and their conduct is intentional, malicious, outrageous, and otherwise aggravated beyond mere negligence, particularly their continuing frauds on this court, and as dismissal of the Complaint of Plaintiff Rhee-Karn, together with attorneys fees, costs and disbursements and any other relief as the Court may deem just and proper.

**THIRD PARTY COMPLAINT AGAINST**
**KENNETH CRAIG & DOUGLAS DOLLINGER**
**PARTIES**

1.  Third Party Plaintiff  Lask is an attorney licensed to practice in the State of New York.

2.  Third Party Defendant Kenneth Craig is, upon information and belief, a citizen of North Carolina, appears *pro hac vice* in this court for the pending case and has verified under oath the complaints against Lask.

3.   Third Party Defendant Douglas R. Dollinger is, upon information and belief, a citizen of New York, who initiated the Rhee-Karn complaints against Lask in this court, and has verified under oath the complaints against Lask in this court.

**AS AND FOR A FIRST COUNT (Judiciary Law 487)**

4.  Third Party Plaintiff Lask repeats and re-alleges all of the foregoing paragraphs as if fully set forth herein.

5.  Section 487 provides that an attorney or counselor who is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

6.   Third Party Defendants are attorneys who intentionally and willfully filed a fraudulent complaint in this court that they knew was fraudulent by falsely accusing Lask of (a) failing to have a qualified expert in the Rhee-Karn custody case and (b) being threatened with Rule 11 sanctions by her adversaries who  specifically  "advised her of the perfidious nature of the claims." of her federal complaints  when the facts are clear that Rhee-Karn terminated the expert Lask had and there was never a Rule 11 threats by any of Lask's adversaries.

7.   Third Party Defendants are attorneys who intentionally and willfully filed a fraudulent complaint in this court that they knew was fraudulent by further falsely accusing Lask of invoking her 5th Amendment right when that never happened, accusing Lask of writing letters to court supervising judges for Rhee-Karn when that never happened and accusing Lask of not controverting the court's expert when the complaints they drafted affirm that there were four days of cross-examination by Rhee-Karn's former attorney David Scott, Esq. and that exam was rested on March 27, 2012, before Lask entered the case.

8.   Those fraudulent statements were made under verification by Third Party Defendants, including they verified they conducted an investigations and reviewed documents before they verified that fraudulent complaint.

9.   Those frauds on this court caused the court to consider them as true and recite them in its September 30, 2018 decision against Lask, and to her the detriment and damage.

WHEREFORE, and as to each and every Count set forth above, Third-Party Plaintiff Lask demands judgment against Third-Party Defendants, and each of them jointly and severally, including her legal fees expended in this action, and in an amount to be determined at trial, but in no event less than $1,000,000, together with interest unpaid and due and owing to her, plus punitive damages, together with attorneys fees, costs and disbursements and any other relief as the Court may deem just and proper.

Dated: February 4, 2019               **LAW OFFICES OF SUSAN CHANA LASK**

                                       /s Susan Chana Lask

                                       _____

                                       Susan Chana Lask, Esq.
                                       244 Fifth Avenue, Suite 2369
                                       New York, NY 10001
                                       (917) 300-1958

**VERIFICATION**

I am the Defendant, Counter-Claim-Plaintiff and Third-Party Plaintiff herein. I have read the foregoing Answer, Affirmative Defenses, Counterclaims and Third-Party Complaint and know the contents thereof to be true based upon my personal knowledge and review of my books and records, except as to those matters stated to be alleged upon information and belief, and as to those matters I believe them to be true.


/s Susan Chana Lask

_____

Dated: February 4, 2019                          Susan Chana Lask, Esq.