**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARGARET RHEE-KARN, | **Case No.:15-09946-DLC** |
| Plaintiff, | |
| | **Plaintiff's  Notice  and** |
| -vs- | **Cross Notice of Appeal** |
| | |
| SUSAN CHANA LASK, ESQ., a/k/a | |
| SUSAN LUSK, A/K/A SUSAN LESK, | |
| Defendant. | |

**NOTICE IS HEREBY GIVEN,**  that Plaintiff,  MARGARET RHEE-KARN, Plaintiff in the above named case, hereby appeals to the United States Court of Appeals for the Second   Circuit from the Order granting in part and denying in part her motion for Summary Judgement entered in this action on the 4th day of March , 2020, Dist Ct. Doc. 226, and from the Oder of Dismissal  entered in this action on the 6th day of April, 2020 Dist. Ct. Doc. 235. Exhibits "A" & "B".

Dated: May 1, 2020

_____
MARGARET RHEE-KARN
Plaintiff-Appellant-Appellee Pro-Se
402 East 90 St. Apt 4E
New York, New York 10128

**EXHIBIT "A"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                       :
MARGARET RHEE-KARN,                    :        15cv9946 (DLC)
                                       :
                    Plaintiff,         :        OPINION AND ORDER
                                       :
          -v-                          :
                                       :
SUSAN CHANA LASK, ESQ. A/K/A SUSAN     :
LUSK, A/K/A SUSAN LESK,                :
                                       :
                    Defendant.         :
                                       :
---------------------------------------X

APPEARANCES:

For plaintiff:
Kenneth W. Craig
39 Caroline Ln.
Pisgah Forest, NC 28768
(828) 275-5532

Douglas Richard Dollinger
The Law Offices of Douglas R. Dollinger, P.C. & Associates
570 County Route 49
Middletown, NY 10940
(845) 915-6800

For defendant:
Howard B. Mankoff
Marshall, Dennehy, Warner, Coleman and Goggin
425 Eagle Rock Avenue
Roseland, NJ 07068
(973) 618-4118

Susan Chana Lask
Law Offices of Susan Chana Lask
244 Fifth Ave., Ste. 2369
New York, NY 10001
(917) 300-1958

DENISE COTE, District Judge:

On December 21, 2015, Margaret Rhee-Karn commenced this legal malpractice action against Susan Lask, her attorney for over two years in a child custody dispute before the Family Court of the State of New York, County of New York ("Family Court").  On October 18, 2019, the parties filed cross-motions for summary judgment.  Rhee-Karn's motion for summary judgment is granted in part, as is Lask's motion for summary judgment.

## Background

The following facts are undisputed or taken in the light most favorable to the non-moving party, unless otherwise noted.[1] In May 2012, Rhee-Karn visited Lask's professional webpage while conducting online research related to her pending child custody dispute before the Family Court.  In a telephone consultation, Rhee-Karn explained to Lask that her child custody dispute had been pending before the Family Court for over two years without a trial.  During this time, the Family Court had issued an interim order against Rhee-Karn that limited her visitation rights with her child.  An appeal of this interim order had been

---

[1] Lask argues that Rhee-Karn's summary judgment motion should be denied because her Rule 56.1 Statement improperly makes legal arguments and relies on allegations in the Third Amended Complaint.  The Court has relied only on admissible evidence in the record, including affidavits, emails, and court documents. The legal arguments made in the Rule 56.1 Statements of the parties have been ignored.

2

denied by the Appellate Division.  Rhee-Karn told Lask that she wanted to obtain a final disposition in the Family Court proceeding as soon as possible.  She also informed Lask that she was concerned that her child's state-appointed attorney and the court referee were biased against her.

On May 12, 2012, the parties executed a written retainer agreement (the "Retainer Agreement") for Lask's services and representation of Rhee-Karn in the Family Court proceeding.  The Retainer Agreement provided an estimate that the representation would cost approximately $70,000 to $100,000.  It also established a minimum flat fee of $25,000 plus a mandatory $200.00 fee for disbursements during the period of May 2012 to July 31, 2012.  According to the Retainer Agreement, Lask's hourly rate was $650.00 an hour, billable at 15 minute increments.

I.  Federal Court Actions

On September 1, 2012, Lask emailed Rhee-Karn suggesting that she file a motion to stay the Family Court proceedings "on a constitutional issue that the entire proceedings are tainted" because Rhee-Karn's child had not received notice of her right to obtain independent counsel.  On November 13, Lask sent Rhee-Karn another email explaining that Family Court is "by statute a court of limited jurisdiction -- meaning, it excludes its ability to determine constitutional issues."  Lask remarked that

3

Family Court would purport to have "no authority" over constitutional issues raised before it.  On December 9, Lask emailed Rhee-Karn again, this time informing her that she had found a "US Supreme Court case that permits the federal court to issue an injunction in state court proceedings if there is irreparable harm."

On December 21, Lask filed an action in the United States District Court for the Southern District of New York against the referee in the Family Court proceeding, the law guardian, and a court-appointed forensic psychiatrist.  See Complaint, Rhee-Karn v. Burnett, No. 12cv9354 (NRB) (S.D.N.Y. Dec. 21, 2012) (the "First Federal Action").  The complaint alleged that the Family Court had a "known custom" of committing constitutional violations against litigants and that the individual state actors named as defendants had abused their powers by, among other things, causing delay in Rhee-Karn's Family Court proceedings.  On February 5, 2013, the case was voluntarily dismissed.

Following dismissal of the First Federal Action and while the Family Court action was still pending, Lask and Rhee-Karn continued to email about the possibility of filing a second action in federal court.  On May 15, 2013, Lask emailed Rhee-Karn explaining that she had spoken to an attorney who had confirmed that federal cases should be brought following the

4

conclusion of proceedings in family court.  Lask wrote, "No federal court is going to get involved."  The same day, Rhee-Karn responded stating that she did not think "if [they] didn't file the federal [they]'d be closer to a decision" in Family Court.  On May 19, 2013, Lask emailed Rhee-Karn, with a quote: "Where others might give up, extraordinary people keep trying new ideas and combinations until they find what works."  The quote was followed by the statement, "Let's go FEDERAL!"

In early June 2013, Lask contacted Thomas Shanahan, an attorney who had pursued an action in the Southern District of New York alleging that an interim order issued in Family Court that transferred custody of his client's children to their father violated his client's constitutional rights.  See Complaint, Marks v. Aylsworth, No. 04cv4090 (GBD) (S.D.N.Y. June 1, 2004).  Shanahan informed Lask that the federal court had set a "date certain and told [Shanahan] that [the federal court] would reconsider if the Family Court did not issue a final appealable decision by that date."

On August 28, 2013, Lask emailed Rhee-Karn a "final complaint" alleging constitutional violations to be filed in federal court.  She wrote, "I advised many times that a federal complaint before the family court case terminates is subject to dismissal as federal courts rule they will not interfere with family court proceedings."  She continued that while the

"complaint is solid re alleging immunity does not exist because
[the defendants] were malicious," "a federal court can still
dismiss this."  "I am being realistic as to the state of the law
which weighs against you.  You may be paying a lot of money only
for this to be dismissed," she advised.  Lask also demanded a
$25,000 retainer, as well as a $500 fee for disbursements.  Her
hourly billing rate was now $700, and she required a 40%
contingency recovery.  All other terms of the Retainer Agreement
governed.

On August 30, 2013, Lask filed a second civil rights action
in the Southern District of New York naming the Office of Court
Administration, the referee in the Family Court proceeding, the
Chief Administrative Judge, the law guardian, and others as
defendants.  See Complaint, Rhee-Karn v. Burnett, No. 13cv6132
(JPO) (S.D.N.Y. Aug. 30, 2013) (the "Second Federal Action").
On February 28, 2014, Lask filed a second amended complaint,
which the defendants moved to dismiss on April 10.  On September
12, 2014, the court dismissed the action on the basis of Younger

abstention.[2]  Rhee-Karn v. Burnett, No. 13cv6132 (JPO), 2014 WL
4494126, at *7 (S.D.N.Y. Sept. 12, 2014).[3]

II.  State Court Proceedings

While pursuing these actions in federal court, Lask also
represented Rhee-Karn in the ongoing child custody dispute in
Family Court.  On August 29, 2013, the Family Court referee
issued an Order authorizing Lask to provide that court with a
copy of a report from Jonathan Gould, Ph.D., for the purpose of
a peer review evaluation of the court-appointed forensic
psychiatrist, Dr. Stephanie Brandt.  Dr. Brandt had testified in
the Family Court proceedings on four occasions in March 2012 and
submitted reports to the court.  Gould's peer review report was
intended to provide an opinion on Dr. Brandt's methods and
procedures, not to provide a second opinion on parental fitness.

---

[2] Younger abstention requires that federal courts abstain from
exercising jurisdiction over constitutional claims seeking
declaratory or injunctive relief where (1) there is an ongoing
state proceeding, (2) involving an important state interest, and
(3) the plaintiff has an adequate opportunity for judicial
review of her constitutional claims in state court during or
after the proceeding.  Christ the King Regional High Sch. v.
Culvert, 815 F.2d 919, 224 (2d Cir. 1987); see also Younger v.
Harris, 401 U.S. 37, 49 (1971).  The doctrine is based upon
notions of comity and federalism and recognizes that state
courts are presumptively capable of vindicating constitutional
rights.  Diamond "D" Cons. Corp. v. McGowan, 282 F.3d 191, 198
(2d Cir. 2002).

[3] State law claims for legal malpractice and disgorgement that
were brought against Rhee-Karn's former counsel in Family Court
also were dismissed.  2014 WL 4494126, at *7.

On September 5, 2013, Gould and Rhee-Karn executed a
Statement of Understanding, which provided that Rhee-Karn would
accept full financial responsibility for Gould's fees.  On
September 10, Lask emailed Rhee-Karn to relay a conversation
that she had had with Gould.[4]  Lask explained that Gould would
not "state anything regarding [Dr. Brandt's] negligence," and
that Gould had expressed concern that the Family Court judge
would not accept Gould's testimony because Gould had only a
Ph.D., while Dr. Brandt had a medical degree.

On November 6, Gould provided Lask with his peer review
report reviewing the reports Dr. Brandt had submitted to the
Family Court.  On November 7, Lask emailed Rhee-Karn critiquing
both the quality and expense of Gould's report.  She noted that
Gould had not "even review[ed] Brandt's testimony" and had
already spent $5,000 on a "form document he cut and past [sic]."
She advised that she could "bring out Brandt's deficiencies in
[] closing argument" rather than have Gould testify.  Rhee-Karn
agreed.  In late November and December, Rhee-Karn emailed Lask
on at least two occasions explaining that she preferred to not
submit Gould's report to the Family Court or call him to testify

---

[4] In support of this statement, Rhee-Karn cites an exhibit that
was attached to her opposition to Lask's motion to dismiss.
Lask objects to this statement as "not properly supported by
citations to the record."  Because this statement is supported
by an exhibit in the record, this Court relies on it.

before the Family Court.  On March 1, 2014, Rhee-Karn emailed
Lask again explaining that her former counsel in the Family
Court proceeding had cross-examined Dr. Brandt, and conveying
her assessment that the cross-examination was "enough to
discredit [Dr. Brandt's] report."  It appears, therefore, that
Gould's report was never submitted to the judge presiding over
the Family Court proceedings and he was not called to testify
there.

On October 15, 2014, a decision issued from the Family
Court granting sole legal and physical custody to the father of
Rhee-Karn's child, subject to Rhee-Karn's rights of visitation.[5]
The court explained that it had heard testimony from Dr. Brandt,
as well as both parents, the child's babysitter, and the
maternal grandmother, but had not credited the testimony of the
babysitter and grandmother.  In addition to citing the reports
and testimony of Dr. Brandt as the basis for granting the father
sole custody, the Family Court cited Rhee-Karn's own testimony
and conduct throughout the proceedings.  In particular, the
court cited Rhee-Karn's refusal to provide straightforward and
reliable testimony, including about the leak of sensitive
information concerning her child to the New York Post, her

---

[5] This decision was affirmed by the Appellate Division, First
Department on February 16, 2016.

violation of numerous court orders, her loss of employment, and
her move to three separate homes during the court proceedings.
The Family Court also cited the father's testimony demonstrating
that he was financially and physically able to support the
child, as well as his residence in the same home throughout the
proceedings.

III.   Procedural History

Rhee-Karn filed this action on December 21, 2015, bringing
claims against Lask for legal malpractice, breach of fiduciary
duty, negligent infliction of emotional distress, unjust
enrichment, and deceptive acts or practices that arose out of
Lask's representation of Rhee-Karn during her child custody
dispute.  On September 14, 2017, Lask moved to dismiss the Third
Amended Complaint for failure to state a claim pursuant to Rule
12(b)(6), Fed. R. Civ. P.  An Order of September 30, 2018
granted dismissal of the claims, except those for legal
malpractice.  In particular, the September 30 Order determined
that Rhee-Karn had stated claims for legal malpractice in
connection with Lask's decision to file the First and Second
Federal Actions, as well as Lask's failure to retain a qualified
expert witness to rebut the testimony of Dr. Brandt.[6]

---

[6] On February 5, 2019, Lask asserted counterclaims against Rhee-
Karn, as well as Rhee-Karn's attorneys in this action.  The
counterclaims primarily allege that Rhee-Karn and her attorneys
committed fraud on the court by initiating this action against

Following months-long letter writing campaigns by both parties lodging insults and accusations against each other and causing unnecessary, non-merits-based delay, on August 1, 2019, the Honorable Loretta A. Preska filed an Order recusing herself from this case after referring the matter to the United States Marshal.  As described in Judge Preska's August 1 Order, Lask had begun stalking Judge Preska and her chambers staff, and Lask had informed Judge Preska that Lask had investigated chambers IP addresses and had monitored certain sites visited.  This case, therefore, was reassigned to this Court on August 14.

On October 18, 2019, Lask moved for summary judgment, arguing that Rhee-Karn had failed to submit timely, admissible expert reports in support of her legal malpractice claims, could not establish each element of a legal malpractice claim, and had failed to prosecute her case.  The same day, Rhee-Karn cross-moved for summary judgment on her legal malpractice claims.  These motions became fully submitted on November 22.

## Discussion

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to

---

Lask.  Litigation on the counterclaims has been bifurcated from Rhee-Karn's legal malpractice claims, and they are not the subject of these cross-motions for summary judgment.

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary
judgment is appropriate when the record taken as a whole could
not lead a rational trier of fact to find for the non-moving
party."  Smith v. Cnty. of Suffolk, 776 F.3d 114, 121 (2d Cir.
2015) (citation omitted).  The moving party bears the burden of
demonstrating the absence of a material factual question, and in
making this determination, the court must view all facts in the
light most favorable to the non-moving party.  See Eastman Kodak
Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992);
Gemmink v. Jay Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015).  On
cross-motions for summary judgment, the court must construe the
evidence in each case in the light most favorable to the non-
moving party.  Wandering Dago, Inc. v. Destito, 879 F.3d 20, 30
(2d Cir. 2018).

     Once the moving party has made a showing that the non-
movant's claims cannot be sustained, the party opposing summary
judgment "must set forth specific facts demonstrating that there
is a genuine issue for trial."  Wright v. Goord, 554 F.3d 255,
266 (2d Cir. 2009) (citation omitted).  "[C]onclusory
statements, conjecture, and inadmissible evidence are
insufficient to defeat summary judgment."  Ridinger v. Dow Jones
& Co., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted).
Only disputes over material facts will properly preclude the
entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).  "An issue of fact is genuine and material
if the evidence is such that a reasonable jury could return a
verdict for the nonmoving party."  Cross Commerce Media, Inc. v.
Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

    "In a diversity action based on attorney malpractice, state
substantive law, here that of New York, applies."  Nordwind v.
Rowland, 584 F.3d 420, 429 (2d Cir. 2009) (citation omitted).
"To prevail on a claim for legal malpractice under New York law,
a plaintiff must establish: (1) attorney negligence; (2) which
is the proximate cause of a loss; and (3) actual damages."  Id.
(citation omitted).  "For a defendant in a legal malpractice
case to succeed on a motion for summary judgment, evidence must
be presented in admissible form establishing that the plaintiff
is unable to prove at least one of the essential elements."
Rubens v. Mason, 387 F.3d 183, 189 (2d Cir. 2004) (citation
omitted).

    To establish negligence, a plaintiff must demonstrate that
"an attorney's conduct fell below the ordinary and reasonable
skill and knowledge commonly possessed by a member of his
profession."  Achtman v. Kirby, McInerney & Squire, LLP, 464
F.3d 328, 337 (2d Cir. 2006) (citation omitted).  An "error of
judgment" or a "selection of one among several reasonable
courses of action" does not establish malpractice.  Id.
(citation omitted).  A malpractice action also is "unlikely to

13

succeed where an attorney erred because an issue of law was unsettled or debatable." Kempf v. Magida, 832 N.Y.S.2d 47, 49 (App. Div. 2007). "[A]n attorney may be liable," however, "for a failure to conduct adequate legal research." Id. An attorney also may be liable for "ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." Achtman, 464 F.3d at 337 (citation omitted). Establishing negligence generally requires expert opinion evidence, although "the requirement . . . may be dispensed with where ordinary experience of the fact finder provides sufficient basis for judging the adequacy of the professional service." Estate of Nevelson v. Carro, Spanbock, Kaster & Cuiffo, 686 N.Y.S.2d 404, 405-06 (App. Div. 1999) (citation omitted); see also Boye v. Rubin & Bailin, LLP, 56 N.Y.S.3d 57, 63 (App. Div. 2017). Expert opinion evidence also is unnecessary where the attorney's conduct falls below any standard of due care. Northrop v. Thorsen, 848 N.Y.S.2d 304, 308 (App. Div. 2007).

To establish proximate cause, "a plaintiff must show that he or she would have prevailed in the underlying action or would not have incurred any damages, but for the lawyer's negligence." Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer, 835 N.Y.S.2d 534, 536 (2007); see also Rubens v. Mason, 527 F.3d 252, 255 (2d Cir. 2008). New York courts have recognized that an attorney

14

who negligently advises her client to file an unmeritorious action may be liable for legal malpractice.  Bd. of Managers of Bay Club v. Borah, Goldstein, Schwartz, Altschuler & Nahins, P.C., 948 N.Y.S.2d 347, 348 (App. Div. 2012).

Damages in a legal malpractice action must be "actual and ascertainable." Rudolf, 835 N.Y.S.2d at 536. They are "designed to make the injured client whole." Id. at 537 (citation omitted).  Damages may include expenses incurred in defending the validity of an unmeritorious action, Bd. of Managers, 948 N.Y.S.2d at 348, as well as "litigation expenses incurred in an attempt to avoid, minimize, or reduce the damage caused by the attorney's wrongful conduct." Rudolf, 835 N.Y.S.2d at 537 (citation omitted).

The cross-motions for summary judgment each address three separate categories of expenses associated with Lask's representation of Rhee-Karn.  Rhee-Karn seeks an award based on the legal fees and expenses billed in connection with each of the two federal actions, as well as the action in Family Court. Lask in turns seeks summary judgment in her favor regarding each of these categories.

I.   Federal Court Actions

Rhee-Karn is entitled to summary judgment on her legal malpractice claim in connection with Lask's filing of the First Federal Action.  A few months after she was retained to

15

represent Rhee-Karn in Family Court, Lask suggested to Rhee-Karn
that she file the First Federal Action.  Before filing the
action on December 21, 2012, Lask informed Rhee-Karn that the
Family Court lacked jurisdiction to hear constitutional claims
and that proceeding in federal court was supported by U.S.
Supreme Court caselaw.  The evidence in the record demonstrates
that Lask did not research, much less advise on, any of the
pitfalls of bringing an action in federal court prior to the
filing of the First Federal Action.  Indeed, the evidence in the
record demonstrates that Lask first researched these issues in
May 2013, several months after the action was voluntarily
dismissed on February 5, 2013.  Lask's failure to research the
law underlying the First Federal Action is not an error of
judgment or a strategic decision gone wrong.  It is the type of
negligent conduct that falls below any standard of care and for
which no expert opinion is necessary.[7]  Lask's negligence also
was the but for cause of all of the legal expenses Rhee-Karn
incurred in connection with the First Federal Action.  Had Lask

---

[7] Rhee-Karn has submitted an expert affidavit in support of her
motion for summary judgment on her claims alleging that the
filing of the two federal court actions constituted legal
malpractice.  The parties dispute whether (1) Rhee-Karn timely
filed the report, (2) the expert is conflicted out of opining in
this action because he represented Rhee-Karn in her appeal of
the custody decision in Family Court, and (3) the expert's
report should be inadmissible under Rule 403, Fed. R. Evid.

researched the relevant law, she would not have advised Rhee-Karn to pursue her constitutional claims in federal court. Rhee-Karn is therefore entitled to damages for the legal fees she incurred in connection with the First Federal Action.[8]

Lask, however, has shown that she is entitled to summary judgment dismissing Rhee-Karn's legal malpractice claim for filing the Second Federal Action.  Ample evidence in the record establishes that Lask researched the relevant issues and advised Rhee-Karn against filing another federal action as early as May 2013.  Lask repeated these warnings in written communications on multiple occasions prior to the filing of the action on August 30, 2013.  For example, on May 15, 2013, Lask told Rhee-Karn that any federal action should be brought after the conclusion of Family Court proceedings and advised her that "[n]o federal court is going to get involved."  On August 28, she stated, "I am being realistic as to the state of the law which weighs against you."  Although Rhee-Karn argues that Lask was unaware of, or failed to explain, the intricacies of the law supporting Lask's advice, in particular the Younger abstention doctrine, Rhee-Karn does not dispute that Lask repeatedly advised her against filing the Second Federal Action.  These warnings

---

[8] Lask is incorrect that these damages are speculative.  The legal fees Rhee-Karn incurred from the First Federal Action constitute actual and ascertainable damages.  Bd. of Managers, 948 N.Y.S.2d at 348.

demonstrate that Lask's conduct did not fall below the ordinary and reasonable skill and knowledge commonly possessed by a member of the legal profession.[9]  See Achtman, 464 F.3d at 338. Rhee-Karn has submitted no evidence that raises a material question of fact on this issue.

## II.  State Court Action

Lask is also entitled to summary judgment on Rhee-Karn's legal malpractice claim to the extent it is addressed to her representation of Rhee-Karn during the Family Court action. Rhee-Karn claimed that Lask committed legal malpractice when she failed to hire a qualified expert to rebut the testimony of Dr. Brandt, the forensic psychiatrist appointed by the Family Court. But, the undisputed evidence shows that Lask's failure to call a qualified expert to rebut Dr. Brandt's testimony was not the but for cause of the Family Court's decision to award full custody to the father of Rhee-Karn's child.  Rhee-Karn does not dispute that the absence of a qualified expert for rebuttal was not the but for cause of the Family Court decision.

---

[9] In her February 5, 2019 answer to the TAC, Lask asserts numerous affirmative defenses arguing that she advised Rhee-Karn against pursuing the federal actions.  An affirmative defense is "a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true."  Saks v. Franklin Covey Co., 316 F.3d 337, 350 (2d Cir. 2003) (citation omitted).  While an attorney may defeat a legal malpractice claim by arguing that she adequately advised her client, such an argument is not an affirmative defense.  See Achtman, 464 F.3d at 338.

And while the Family Court did describe Dr. Brandt's testimony as "uncontroverted," the court referenced many other factors underlying its decision.  For instance, the court explained that Rhee-Karn refused to answer questions by opposing counsel even after the court advised her that negative inferences could be drawn from this refusal.  The court also determined that Rhee-Karn provided evasive and unreliable testimony when asked about sensitive information that was leaked about the case and her child to the New York Post.  On the other hand, the court found that the father's testimony revealed that he is financially and physically able to support his child.  The court also noted that the father had resided in the same home throughout the custody dispute, while Rhee-Karn had moved three separate times and had recently informed the court that she was no longer employed.  Finally, the court highlighted that Rhee-Karn had violated several orders of the court during the pendency of the case and deemed it certain that Rhee-Kharn would not likely follow court orders if she were awarded sole custody. On this record, there is no dispute that the alleged negligence was not the but-for cause of Rhee-Karn's loss of child custody.

In addition, in opposition to Lask's motion for summary judgment, Rhee-Karn has not submitted a report from a qualified

expert,[10] much less one that takes issues with Dr. Brandt's
report and testimony.  Without such evidence, Rhee-Karn has
failed to raise a question of fact regarding causation.[11]

Although the financial impact is negligible in this action,
the parties also dispute whether summary judgment may be granted
regarding the fees Rhee-Karn paid to Gould.[12]  Rhee-Karn alleges
that Gould was not qualified to rebut Dr. Brandt's testimony.
Lask has shown that she is entitled to summary judgment on this
theory, as well.  First, Rhee-Karn has cited no caselaw
supporting her proposal to dispose with the proximate cause
requirement in this context.  Second, to the extent Rhee-Karn
alleges that she is entitled to damages limited to the expenses
she incurred in retaining Gould, she is wrong.  Even if a client
could recover any time an attorney's negligent conduct were the
but for cause of the client's expense, Rhee-Karn has not

_____

[10] The expert reports Rhee-Karn submitted do not address Lask's
representation of Rhee-Karn in the Family Court proceedings.

[11] Rhee-Karn argues that summary judgment may not be granted to
Lask because Lask failed to call a qualified expert to rebut Dr.
Brandt's testimony.  This argument misapprehends the shifting of
burdens on summary judgment.  Here, the record evidence supports
Lask's motion.  The burden shifts to Rhee-Karn to present
evidence raising a question of fact.  She has not done so
through presenting either an expert affidavit to demonstrate
Lask's professional failings, or the availability of evidence to
rebut Dr. Brandt.

[12] It appears that Gould was paid $5,000, while the fees and
expenses in connection with Lask's representation of Rhee-Karn
involve hundreds of thousands of dollars.

demonstrated that Lask was negligent in causing her to incur
these fees.  The only fees that Rhee-Karn paid to Gould was for
his peer review of Dr. Brandt's report.  While Rhee-Karn
provides evidence suggesting that Gould was unqualified to
provide rebuttal testimony, there is no evidence demonstrating
that Gould was unqualified to perform the more limited service
of a peer review report.[13]  Rhee-Karn therefore has failed to
demonstrate that she incurred expenses that were proximately
caused by Lask's alleged negligence.

III.  Failure to Prosecute

Lask's motion to dismiss Rhee-Karn's claims for failure to
prosecute is denied.[14]  In considering whether to dismiss a case
for failure to prosecute, courts consider

> whether: (1) the plaintiff's failure to prosecute
> caused a delay of significant duration; (2) plaintiff
> was given notice that further delay would result in
> dismissal; (3) defendant was likely to be prejudiced
> by further delay; (4) the need to alleviate court
> calendar congestion was carefully balanced against
> plaintiff's right to an opportunity for a day in
> court; and (5) the trial court adequately assessed the
> efficacy of lesser sanctions.

---

[13] Indeed, evidence in the record demonstrates that Gould was
qualified to issue a peer review report, namely the Family
Court's August 29, 2013 Order authorizing Gould to do so.

[14] Lask principally refers to Rhee-Karn's filing of expert
reports on September 27, 2019, the last date of discovery.  Lask
argues that Rhee-Karn should have identified her expert to Lask
prior to this date.

In re World Trade Center Disaster Site Litig., 722 F.3d 483, 486
(2d Cir. 2013) (citation omitted).  These factors do not weigh
in favor of dismissing this case.  In particular, Lask has not
shown that Rhee-Karn was ever warned that delays in producing
discovery material would cause her case to be dismissed.

### Conclusion

Rhee-Karn's October 18 motion for summary judgment is
granted in part, as is Lask's October 18 motion for summary
judgment.  Rhee-Karn is granted summary judgment on her legal
malpractice claim addressed to the filing of the First Federal
Action.  Lask is granted summary judgment on the legal
malpractice claims addressed to the filing of the Second Federal
Action and her representation of Rhee-Karn in Family Court.  A
concurrently filed Order will set forth a schedule governing the
further conduct of proceedings in this case.


Dated:     New York, New York
           March 4, 2020


                                _____
                                DENISE COTE
                        United States District Judge

**EXHIBIT "B"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
MARGARET RHEE-KARN,                    :
                                       :
                         Plaintiff,    :
                                       :
          -v-                          :          15cv9946 (DLC)
                                       :
SUSAN CHANA LASK, ESQ., A/K/A SUSAN    :          ORDER
LUSK, A/K/A SUSAN LESK,                :
                                       :
                         Defendant.    :
---------------------------------------X

DENISE COTE, District Judge:

On March 27, 2020, the defendant filed a letter with the Court reporting that counsel for the plaintiff, Kenneth Craig, died on February 17, 2020. On March 28, 2020, the defendant filed a notice of voluntary dismissal in connection with her counterclaims and third-party claims in this action. On March 30, Douglas Dollinger, Esq. requested that he be substituted for Kenneth Craig as counsel for the plaintiff. The same day, the defendant's counterclaims and third-party claims were dismissed without prejudice, and Douglas Dollinger was ordered to file a notice of appearance by April 3, 2020, should he wish to appear in this action. No such notice of appearance was filed. Accordingly, it is hereby

ORDERED that the Clerk of Court shall close this case.

Dated:    New York, New York
          April 6, 2020

                              _____
                                        DENISE COTE
                              United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of May 2020 I, MARGARET RHEE-KARN Plaintiff-Appellant-Appellee Pro-Se residing at   402 East 90 St. Apt 4E, New York, New York 10128 caused true and correct copies of the **Notice of Appeal and Cross Appeal together with Exhibits "A" & "B"**  to be served by the US MAIL or OVERNIGHT delivery  upon all parties and there counsel as follows:

The Estate of Kenneth W. Craig, Esq.,
39 Caroline Ln.
Pisgah Forest, NC 28768

Douglas Richard Dollinger
The Law Offices of Douglas R. Dollinger, P.C. & Associates
570 County Route 49
Middletown, NY 10940

For defendant:
Howard B. Mankoff
Marshall, Dennehy, Warner, Coleman and Goggin
425 Eagle Rock Avenue
Roseland, NJ 07068

Susan Chana Lask
Law Offices of Susan Chana Lask
244 Fifth Ave., Ste. 2369
New York, NY 10001

Dated: May 1, 2020

_____
 MARGARET RHEE-KARN
 Plaintiff-Appellant-Appellee Pro-Se
 402 East 90 St. Apt 4E
 New York, New York 10128