UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MARGARET RHEE-KARN,

Plaintiff, New York, N.Y.

v. 15 Civ. 9946 (DLC)

SUSAN CHANA LASK, a/k/a "SUSAN LUSK," a/k/a "SUSAN LESK,",

Defendant.

------------------------------x

October 28, 2022
2:00 p.m.

Before:

HON. DENISE L. COTE,

U.S. District Judge

APPEARANCES

THE LAW OFFICES OF DOUGLAS R. DOLLINGER, P.C. & ASSOCIATES
Attorneys for Plaintiff
BY: DOUGLAS R. DOLLINGER

LAW OFFICES OF ALEXANDER M. DUDELSON
Attorneys for Defendant
BY: ALEXANDER M. DUDELSON

(Case called)

THE DEPUTY CLERK: Is counsel for plaintiff ready to proceed?

MR. DOLLINGER: I am.

THE DEPUTY CLERK: Please state your appearance.

MR. DOLLINGER: Douglas Dollinger, 570 County Route 49, Middletown, New York, 10940, on behalf of the plaintiff Margaret Rhee-Karn.

THE DEPUTY CLERK: For the defendant?

MR. DUDELSON: Good afternoon, your Honor. Alexander Dudelson, 26 Court Street, Brooklyn, New York, for the defendant.

THE COURT: Welcome, everyone. Please, be seated.

This case arose out of a child custody dispute and the plaintiff was the client who had retained the services of the defendant attorney. There has been a long history in this litigation and there was a decision entered by this Court with respect to summary judgment practice and I know counsel are familiar with that, it was my decision of March 4th, 2020. the Court of Appeals has ruled on this and largely affirmed me, and we are left with a single issue in the case and that is the determination of the amount due to the plaintiff pursuant to a summary judgment ruling, essentially how much the defendant has to repay the plaintiff for attorneys fees or otherwise in connection with what is termed the first federal action. I had

ruled in a prior order that the billing records from the period October 24th, 2012 to February 5, 2013, appeared to be the pertinent records containing the entries at issue.

The parties have identified those portions of billing records that record the defendant's work on behalf of the plaintiff. They've identified those portions that are in dispute and not in dispute pursuant to a recent order of this Court. I have the plaintiff's letter of October 24th and defendant's submission of October 26th. The plaintiff seeks something close to $49,000. The defendant believes that something less than $7,000 is owed.

So, I'm going to use today to try to further narrow the gap because I think the submissions indicate that it can be narrowed but there may be factual issues that remain, and then we will just set this case down for trial if there are factual disputes that remain. The burden, of course, would be on the plaintiff.

So, to make sure that we are all working from the same set of documents, because I'm going to be very hands-on in these comments, I'm going to ask my law clerk to distribute the relevant records from the defendant's files. These were included with the October 24th submission.

Let's just deal with a couple of general arguments first. The defendant makes an argument that the plaintiff can't recover any fees associated with research in connection

with the first federal action because there was malpractice for not doing enough research, therefore do something research can't be malpractice. I deny that argument. The fact that there was inadequate research meant, among other things, that, among other things, contributed to the malpractice. That doesn't mean that the plaintiff can't recover the fees associated with the inadequate research. So, many of the defendant's objections were linked to that argument and therefore they're denied as a matter of law. So, the plaintiff can recover the entries associated with research.

The defendant identified certain state court litigation entries or entries related to the state court litigation as opposed to the first federal action and I will hear the parties on that today but I would rule, as a matter of law, that if those entries are related to the state court litigation they're not recoverable here as work associated with the first federal action. As I noted before, there was an underlying child custody dispute in state court. Those fees for the state court litigation are not recoverable here. There is an argument made by defense counsel that there is not subject matter jurisdiction since the $75,000 threshold does not exist any longer. That's not how it works in federal court, it is really the amount in controversy at the time the action is filed. I will just give you one citation, that's *Pyskaty v. Wild World of Cars*, 856 F.3d at 229. So, I do have

subject patter jurisdiction that continues.

So, let's look at the document together and I think the first complaint by the defendant, the first objection by the defendant is with respect to the October 24th entry and -- I'm sorry -- I think the October 25th entry, and I am going to deny that objection. It is based on the issue of research and that argument must be denied. And, for the same reason, the objection to the November 2nd, November 6th, and November 7th entries must be denied.

I think the next objection is for November 19, and that's on the same ground and that is denied, as is the November 28th, November 29th, and December 2nd.

So, I think that takes us to the first entry that we need to discuss in any detail and that's the December 6th entry. But, before I go further, let me make sure that there is no further argument by Mr. Dudelson for entries before December 6th.

Since I have rejected your argument regarding research, Mr. Dudelson, anything else?

MR. DUDELSON: Well, your Honor, the research that is referenced in these entries may not necessarily be directly related to the first federal action, that's one issue.

THE COURT: You did not make that argument in your letter.

MR. DUDELSON: Well, I certainly made the

representation that certain entries were related to a hybrid of actions that the defendant was representing the plaintiff on.

THE COURT: Actually, that argument was made --

MR. DUDELSON: Also --

THE COURT: I'm sorry. I just want make sure I capture this correctly. I think that argument was made in the first full paragraph on page 2 of your October 26th letter.

MR. DUDELSON: And if I just may, your Honor? Also, there are specific references in the entries that you have just cited, for example, 11/19, e-mails to RR.

THE COURT: OK. Let's go in order.

MR. DUDELSON: OK. Sure. I'm sorry.

THE COURT: OK. So, what is the first entry that you want to bring into dispute?

MR. DUDELSON: I would even dispute research on civil rights cases because that research was related also to --

THE COURT: So the date?

MR. DUDELSON: I apologize, your Honor. 10/25. At that time Ms. Lask was working on the complaint to the administrative judge in the family court case so that very much was directly related to that proceeding.

THE COURT: Is that a civil rights case?

MR. DUDELSON: Well, the complaint that was made to the administrative judge related to the delay on the underlying family court case so it would be, in a sense, related to a

civil rights case. She was alleging that there was a delay and that her constitutional rights were being affected by the delay in the family court matter.

Each one of these entries, your Honor, and I would just like to say that --

THE COURT: So --

MR. DUDELSON: I'm sorry, your Honor.

THE COURT: Counsel, we are at the end of a very long litigation. We are going to try to identify the issues in dispute and we will set them down for trial. That's what we are doing today.

MR. DUDELSON: Understood.

THE COURT: We are not going to have argument about the history or complaint generally, we are just going to try to narrow the issues for trial.

MR. DUDELSON: And I am not looking to relitigate, your Honor.

THE COURT: OK.

MR. DUDELSON: All I am saying is that each one of these entries --

THE COURT: We are not going to talk about each one of these entries. We are going to talk about, with specificity, what entry you are challenging. OK? And why.

So, on October 25th there is an entry reflecting four hours of work and you challenge which portions of that entry?

MR. DUDELSON: I actually challenge all of it because the complaint that's referenced there is also in reference to the libel case that Ms. Lask handled for the plaintiff, which we do reference in our submission.

THE COURT: And when was the libel complaint filed?

MR. DUDELSON: That I don't -- I don't even know if it was filed.

THE COURT: When was it drafted?

MR. DUDELSON: That I don't -- I don't have that information with me. I don't even have my client here, your Honor.

THE COURT: Well, I'm sorry, counsel. That's not an excuse.

MR. DUDELSON: No, I understand, but I appraised the Court of the reason.

THE COURT: No. You're counsel, we are going to try to accomplish a lot at today's conference. The first federal complaint was filed on December 21st, and as you see on the October 24th entry, it says: Drafting federal complaint.

MR. DUDELSON: Yes. I see that.

THE COURT: OK. And you are not disputing that concerns the first federal action so we are looking at October 25, when it says "drafting complaint," and that's the one you are disputing right now.

MR. DUDELSON: That's correct.

THE COURT: And you are disputing that "drafting complaint" may not refer or does not refer to the federal complaint referenced in the entry the day before?

MR. DUDELSON: Yes. Yes.

THE COURT: Do you have any good faith basis for that?

MR. DUDELSON: Only the communications with my client.

THE COURT: Well, that's -- counsel, I don't know what you are saying there.

MR. DUDELSON: Being told by my client that my client performed the services rendered in this matter.

THE COURT: And she told you that that complaint was not the first federal action complaint?

MR. DUDELSON: This was in reference to the libel case.

THE COURT: That's what she told you.

MR. DUDELSON: Yes, your Honor.

THE COURT: OK. And I think the next entry you dispute is what? What date?

MR. DUDELSON: 11/2, on research issues. These are not necessarily research on the first federal action.

THE COURT: I don't believe that's an argument you made in your submission. Did I overlook that? The argument you made about research is how can that be compensable because it's not negligent to do research.

MR. DUDELSON: That was -- it wasn't -- I mean it

wasn't narrowed to the scope -- that was one of the arguments, it is that work performed on these bills was unrelated to the first federal action as well.

THE COURT: Well, you specified where that was and that's your first full paragraph on page 2.

MR. DUDELSON: I understand, but I was under the -- in writing, in drafting this, it was the intention for -- that certain research was not -- not all of the research in these entries were related to the first federal action.

THE COURT: Can you show me where you said that in your letter?

MR. DUDELSON: I don't know if I specifically said the word "research" but I will take a look. In the second paragraph I reference all the different proceedings that Ms. Lask handled. I said: Next, plaintiff's highlights include Ms. Lask's research of custody proceedings and other services unrelated to the first federal action.

That's the one, two, three, four, five -- the sixth, the full paragraph.

THE COURT: I'm sorry. The sixth line in your full paragraph on the second page?

MR. DUDELSON: No. I apologize. Second page -- well, second page, first full paragraph, first line.

THE COURT: OK. So you are disputing, on November 2nd, research issues, research with respect to which piece of

litigation?

MR. DUDELSON: On that date?

THE COURT: Yes. I am just agreeing that you placed that in dispute, counsel. Thank you.

MR. DUDELSON: I'm sorry, your Honor.

THE COURT: Let me ask plaintiff's counsel, Mr. Dollinger, on November 6 there is six hours of work referenced for two different projects. The plaintiff is only seeking recovery for the first project, draft federal complaint. She's not seeking recovery for research/review cases, as I understand it. How have you chosen to allocate that six hours of work?

MR. DOLLINGER: Your Honor, first, I think that in looking at that particular entry I meant the entire -- the entire degree of research that was done.

I would like to point something out to the Court that may help in the analysis here. The Court may recall that Ms. Lask entered or requested reargument on the summary judgment motion. And if you recall, in her own hand she highlighted all of the hours that we've put here in yellow, claiming that they were done as a result of the first action but she shouldn't -- but she was arguing that it wouldn't affect the second action. So, I ask the Court that perhaps you may want to look at that entry.

THE COURT: Do you have a copy of that document?

MR. DOLLINGER: My apologies, your Honor, I --

THE COURT: Let me see if we can pull it up.

MR. DOLLINGER: But you will see --

THE COURT: Do you have the date? Do you have anything?

MR. DOLLINGER: Your Honor, I wasn't --

THE COURT: You don't.

MR. DOLLINGER: No, your Honor. My apologies. I believe it was March 20 -- around 25th, 2019, she moved to reargue and she argued those issues.

THE COURT: We are going to try to find the document.

MR. DOLLINGER: Your Honor, she argued them in front of the Court of Appeals, the very same issues.

THE COURT: Please be seated.

MR. DOLLINGER: Thank you, your Honor.

THE COURT: You didn't refer to this document, did you, Mr. Dolinger, in your submission?

MR. DOLLINGER: Actually, no, and I apologize, your Honor. I thought it was apparent from the face of the billing invoices that that's what Ms. Lask was saying.

THE COURT: My law clerk may have found the correct document. He is going to look at it now to see if -- actually, Mr. Dollinger, can you find what you are referring to? If you had the document, would you be able to locate what you are referring to?

MR. DOLLINGER: Your Honor, I will be able to send it to the Court.

THE COURT: No. I have time right now. If you saw this document, could you point it out?

MR. DOLLINGER: I am certain I could.

THE COURT: Great. We will give it to you.

MR. DOLLINGER: Thank you so much.

THE COURT: So, let me give counsel a moment here.

MR. DOLLINGER: The part, your Honor, and the one that -- I am referring to Docket 228-1, and your Honor, Ms. Lask had presented within that motion -- the motion was reargument for reconsideration on the summary judgment motion -- she presented an invoice for the January 24th, 2013 period. In that invoice she highlighted certain entries and some of the entries you have actually referred to. More importantly, when she went to the Court of Appeals, she highlighted additional notations advising the Court that she had in fact done this research and it would have been duplicative. So, she's made the admission that these entries were done, in fact, for that purpose.

THE COURT: If you will take a pen and mark up what you think the admission is in that memorandum with its attachment?

MR. DOLLINGER: Two things. My apologies, your Honor. I want to be sure I understand what you are saying. First,

they are highlighted here, some of them. OK. You can see them there, they are highlighted here.

THE COURT: OK. If you can pass them to my --

MR. DOLLINGER: Yes, your Honor.

What I wanted to point out to the Court is the ones that went to the Court of Appeals were much more specific and detailed and I think they narrow the issue substantially.

THE COURT: OK. I see highlighting that begins on October 25 with entries from October 25, and run through January 24th. I would need to see the statement and the memorandum that bears this attachment to understand what the highlighting purports to indicate to the Court --

MR. DOLLINGER: Yes, your Honor.

THE COURT: -- which you wish to construe as an admission against a party opponent.

MR. DOLLINGER: Your Honor, I'm referring on the admission related to the Court of Appeals and what was presented to the Court of Appeals, which is a bit different than what is in this file -- your file -- but it is part of the appendix that went to the Court of Appeals. And it shows clearly a highlighted certain number of entries, more so than here. I apologize, I just followed them that's why I added them in mine. I just assumed they would have been part of this record.

THE COURT: So, are you representing to me that the

highlighting in your submission to me a few days ago just adopted the highlighting that the defendant made in her submission to the Court of Appeals?

MR. DOLLINGER: That's my -- yes, your Honor. I -- yes. I will leave it at that.

THE COURT: OK.

MR. DOLLINGER: So, your Honor, I respectfully pulled that document and sent it to defense counsel for him to look at it and maybe he wants to change his argument.

THE COURT: Well, it would have been helpful to have that explanation in your October 24th letter, counsel.

MR. DOLLINGER: Yes, ma'am. Yes, your Honor.

THE COURT: But it's not too late. If there is an admission by the defendant that these entries are the entries related to the first federal action then that's that. So, that could cut through a lot of this. But, I take it the position of the plaintiff is if I accept that as an admission, that the plaintiff isn't seeking anything above that.

You have relied on that and the defendants' filing before the Court of Appeals.

MR. DOLLINGER: Yes, your Honor; that, and going over the document with the invoices directly with my client and trying to understand her mindset and trying to figure out what the key entries are, in other words, capital C was client, R was a reference to something else. The point is, I accumulated

what is there and I based my findings on what was in the record and what Ms. Lask actually admitted to.

THE COURT: So, have you requested more, recovered for more than what the defendant, you report, admitted before the Court of Appeals?

MR. DOLLINGER: Yes, your Honor, only because --

THE COURT: OK. Can you point us to those entries?

MR. DOLLINGER: They would have been the entries for -- and I apologize to the Court, I didn't mean to enlarge the Court's order but they were entries after February 5th, I believe there were a couple of -- to May. OK? Now the reason I did that, your Honor, I would like to explain this. Those are -- the first entry or first notice to my client that there was anything or the possibility of having the action dismissed was May 15th, and if the Court looks at the entries, Ms. Lask actually started her 1983 action in July of 2012. That's when she started doing research. But, I narrowed it because I believe that those were the pertinent dates that the Court wanted to know about. It amounts to about seven hours total on either side of what the Court gave as the dates October 24th through February 5th, which is a substantial sum, about $4,500.

THE COURT: So, looking at the entries after February 5th there is an entry on February 13 reflecting, I expect, a telephone call with the first deputy clerk and research family court referee jurisdictional issues. That doesn't seem related

to the first federal action.

MR. DOLLINGER: You would be absolutely right, your Honor. Your Honor, that's my interpretation of what Ms. Lask was doing with the clerk when she was trying to figure out, well, do they have jurisdiction.

THE COURT: With what clerk?

MR. DOLLINGER: With the Court.

THE COURT: You don't call clerks in federal court the way you do in state court and there is not a first deputy clerk.

MR. DUDELSON: Your Honor, I think it is the First Department, Appellate Division First Department.

THE COURT: First department clerk. Well, that's certainly not in federal court.

MR. DOLLINGER: I now agree, your Honor.

THE COURT: OK. So, we are removing the request for February 13.

February 18th, review APPLT exhibits.

MR. DOLLINGER: Your Honor, I am going to remove that because I now see what she was doing, and based on what you described to me, I can understand. But, based on the e-mails that I have read, Ms. Lask was researching the issue in family court and state court on that matter. I understand what she was doing now.

THE COURT: And that includes February 22nd, you are

removing that one as well?

MR. DOLLINGER: That one is a mixed bag but I agree that it would be maybe within her discretion. But, up until February 5th, I think we are solid.

THE COURT: And then you have entries on March 30th, April 3rd, April 30th, and May 2nd.

MR. DUDELSON: I believe that period of time was after the first federal action was --

THE COURT: Dismissed.

MR. DUDELSON: Withdrawn.

THE COURT: So, those four indications plaintiff is withdrawing.

MR. DOLLINGER: My apologies. May I hear the date again, your Honor?

THE COURT: You have highlighted March 30th, April 3rd, April 30th, and May 2nd.

MR. DOLLINGER: Your Honor, to speed things along, yes, we will remove them, but the plaintiff wants you to be aware that she is still discussing the first action because there hadn't been determination about the second action yet.

THE COURT: Well, there were active state court proceedings during this period of time and these do not clearly refer to the dismissed federal action.

MR. DOLLINGER: Understood, your Honor.

THE COURT: OK. So, we perhaps have narrowed issues.

Let's set a schedule. If the plaintiff is going to rely on the defendant's admissions as to entries, admissions made either to this Court or to the Court of Appeals, it can get me a submission with respect to what it believes are the defendant's admissions as to her work on the first federal action.

Can you do that by next Tuesday?

MR. DOLLINGER: I'm certain I can, your Honor.

THE COURT: That's October 31; and I will give defense counsel to November 2nd, next Thursday, for a response. We have the plaintiff withdrawing a request for reimbursement for items that fall outside the October 24th to February 5th framework. If the defendant has in fact admitted that the entries that fall within that framework, it was work that related to the first federal action, I don't think there is a need for a trial or any issues that remain in dispute. If there is a need for a trial, with respect to any remaining factual issue, let's choose a trial date right now.

MR. DUDELSON: Your Honor, can I just get my calendar from my pocket?

THE COURT: Yes.

Counsel, I think I associated the wrong dates with the days next week. So, next Tuesday is November 1, next Thursday is November 3. So, the plaintiff's submission is due November 1, the defense submission is due November 3.

So, counsel, would you approach and we are going to

choose a January day for any trial, I think a half day would be enough. Approach Mr. Whertvine, and off the record we are going to choose a half day for a trial.

(Discussion off record)

THE COURT: Mr. Whertvine, will you announce, please, for the record, a date chosen for a trial, should one be necessary?

THE DEPUTY CLERK: February 7th, at 9:30 a.m.

THE COURT: Good. So we should know next week whether we need a trial, and if there is a trial that is necessary, we have a date. I don't know if there is anything else that we need to do today.

Mr. Dollinger, is there anything else we need to do?

MR. DOLLINGER: Not today, your Honor.

THE COURT: Thank you.

Mr. Dudelson, anything further?

MR. DUDELSON: Nothing from the defendant, your Honor.

THE COURT: Thank you. Thank you very much.

o0o