O88RHEF

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   MARGARET RHEE-KARN,

4                  Plaintiff,

5            v.                              15 CV 09946

6   SUSAN CHANA LASK, ESQ., A/K/A
    SUSAN LUSK, A/K/A SUSAN LESK,,
7
                   Defendant.
8                                           Trial
    ------------------------------x
9                                           New York, N.Y.
                                            August 8, 2024
10                                          9:15 a.m.

11  Before:

12                      HON. ROBERT W. LEHRBURGER,

13                                          U.S. Magistrate Judge
                                            -and a Jury-
14

15                          APPEARANCES

16  LAW OFFICE OF DOUGLAS R. DOLLINGER, ESQ., P.C.
         Attorney for Plaintiff
17  BY:  DOUGLAS R. DOLLINGER

18  WOODS LONERGAN, PLLC
         Attorney for Plaintiff
19  BY:  LAWRENCE R. LONERGAN

20  KEAHON, FLEISCHER & FERRANTE
         Attorney for Defendant
21  BY:  JOSEPH FERRANTE

22  Also Present:  Susan Chana Lask, Esq., Pro Se
                   Eugene Brodkin, IT (Plaintiff)
23

24

25

O88RHEF

```
1              (Trial resumed)
2              THE COURT:  Good morning.  Please be seated.
3              All right.  So I just want to go over a couple of
4     things.  We were going to discuss exhibits.  Do we need to
5     discuss anything there?
6              MR. DOLLINGER:  We do, your Honor.
7              MS. LASK:  Your Honor, one second.  I forgot my -- I
8     left my bag right in the hallway.  Could we just wait until I
9     go get it?
10             THE COURT:  Go ahead.
11             MS. LASK:  If you give me five minutes -- it's not
12    there.
13             MR. FERRANTE:  It's right there.
14             MS. LASK:  Not that one.  It's on the eighth floor.
15    My glasses and everything are in it.
16             THE COURT:  Go get it.
17             All right.  We were about to discuss exhibits.  So,
18    Mr. Dollinger, what do we need to discuss there?
19             MR. DOLLINGER:  Your Honor, prior to exhibits, I'd
20    like to make a motion, an application to the Court for
21    dismissal of the affirmative offense in this case, and I'll
22    explain why if you'll allow me.
23             THE COURT:  Okay.
24             MR. DOLLINGER:  All right.  Your Honor, if you recall,
25    there's a first federal action and a second federal action.
```

O88RHEF

```
 1    The first federal action occurred with the following on
 2    December 21, 2012.  The second federal action commenced on
 3    November -- pardon me, on August 30, 2013.  That case was
 4    dismissed or substituted by another complaint that was filed on
 5    November 25, 2013.  That case was dismissed by filing another
 6    amended -- a second amended complaint, one that was heard and
 7    is operative in this case, because this is the one filed on
 8    February 28, 2014 -- pardon me, yes, February 28, 2014, where
 9    Judge Oetken rendered his decision.
10            Those two extremes, December 21st and February 28,
11    2014, those two extremes, okay, everything in the middle means
12    nothing, because this is the operative complaint, and this is
13    the complaint that would have benefited or is the basis for any
14    benefit offered to the plaintiff.  Nothing else.  Pardon me.
15    Unless you can show me, and unless it were put into evidence
16    that there was a benefit by using anything from the first
17    amended complaint in the fourth and final second amended
18    complaint of February 28, I don't believe that the defendant
19    has in any way met the burden to show that there is a benefit
20    that she could rely on and she can show this jury for an
21    offset.
22            MS. LASK:  Your Honor, may I?
23            THE COURT:  Yes, I just want to clarify, again, the
24    Court is not applying an offset.  It's applying just the rule
25    of damages.
```

O88RHEF

1             Yes.  Go ahead.

2             MS. LASK:  We had this argument before Rule 21.  He

3    keeps working backwards in every order and every argument.

4             THE COURT:  Let's not make personal attacks.  Just

5    tell me what the argument is.

6             MS. LASK:  Well, it's the same as in July, but his

7    position is there was an amended complaint.  The second action

8    was found not to be legal malpractice.  That's all we need to

9    do.

10            MR. DOLLINGER:  That's not the issue.

11            MS. LASK:  What was filed was used, and if he had that

12   issue, then he should have brought it up before the jury.

13            THE COURT:  Yes, he should, and the evidence is

14   closed.  None of that is coming in.

15            MS. LASK:  Thank you.

16            THE COURT:  None of that is relevant to the argument,

17   you cannot make it, and your motion is denied.

18            MR. DOLLINGER:  Brief follow up, Judge.  How would I

19   know what the defendant's evidence was going to be?  What

20   you've done, is you've created a vacuum.

21            THE COURT:  No.  I don't --

22            MR. DOLLINGER:  Please let me finish.

23            THE COURT:  You could have cross-examined.

24            MR. DOLLINGER:  No, I couldn't.  That's the point.

25   You limited the evidence and wouldn't let me bring it in.  You

O88RHEF

1    yourself excluded them.

2            And I believe the Court of Appeals will say you cannot

3    do this.  You know that and I know that.  Rule 15, provides

4    that once she filed them, the complaint before them was

5    nonoperative in any way, shape or form.  And, in fact, the

6    courts -- the Second Circuit has continuously said to the

7    district courts, once it's filed, once it's superseded, it has

8    no effect.  You know it and I know it, okay?

9            I'm simply saying to you, the way to cure it, and if

10   the court wants to hear a cure, I'd present that --

11           THE COURT:  Go ahead.

12           MS. LASK:  Your Honor --

13           THE COURT:  No.

14           I'm listening, counsel.

15           MR. DOLLINGER:  Thank you, your Honor.

16           MS. LASK:  Your Honor.

17           THE COURT:  No.  I'm listening to counsel.  Let him

18   proceed.

19           MS. LASK:  Oh.  My glasses are lost, so I'm having a

20   hard time seeing.

21           MR. DOLLINGER:  Your Honor, the way that I would

22   recommend I cure it, to avoid all this, the jury can be told

23   that there were two complaints beyond the August 30 complaint.

24   They can make their own comparison and determine whether or not

25   the paragraphs that were presented in the January -- pardon me,

O88RHEF

1    in the August complaint are reflected in either of the two

2    complaints.  They have the power to do that, and they should be

3    doing it.  All right?

4          That's how I would recommend to cure it, because I do

5    believe any other way we're going to be back here because the

6    Court of Appeals is going to say, he's right.  Once it's out,

7    it's out.  That's my argument.

8          Thank you, sir.

9          THE COURT:  All right.  Thank you.

10         I'm denying the motion.  I don't think there's

11   anything that needs to be cured.

12         Were there arguments you wanted to make to rephrase

13   this issue if you are concerned about documents that were

14   excluded and you wanted to raise it in light of the evidence

15   that defendant had presented, you could have presented it

16   before the close of evidence.  The motion is denied.

17         MR. DOLLINGER:  Thank you.

18         THE COURT:  All right.

19         MR. FERRANTE:  I would also like to make a motion,

20   your Honor.

21         THE COURT:  Go ahead.

22         MR. FERRANTE:  In order to preserve our rights, of

23   course, I'm making a motion pursuant to Federal Rule of Civil

24   Procedure 50(a)(1), which states, if, during a trial by jury, a

25   party has been fully heard on an issue and there is no legally

O88RHEF

```
 1 │ sufficient evidentiary basis for a reasonable jury to find for
 2 │ that party on that issue, the Court may determine the issue
 3 │ against the party.
 4 │         Our jury instructions that were provided to us prior
 5 │ to trial says the extent to which, if any, the work last
 6 │ performed in connection with the first federal action during
 7 │ the relevant time period was also used for the federal -- for
 8 │ the second federal action, Karn is not entitled to recover fees
 9 │ paid for that work that Lask performed for the first federal
10 │ action during the relevant time period that was used for a
11 │ second federal action.
12 │         The time period, we've gone over it, the October date
13 │ to the February date.  Our case, we presented both actions.  We
14 │ did go through them.  We went through them paragraph by
15 │ paragraph.  We went through extensive billing to show work that
16 │ was done, when it was done, and the plaintiffs on cross never
17 │ even addressed it, that issue, which is the only issue, which
18 │ is the work that was done being reused in the second complaint.
19 │ They didn't ask a single question about it, which I would take
20 │ as a tacet acceptance of the fact that the first one had all of
21 │ it in the second one, as we showed, and including the
22 │ demonstrative exhibit, which made it even clearer and easier to
23 │ understand.
24 │         They didn't ask one -- from my memory, they didn't ask
25 │ one question.  They did not put them back on the ELMO.  They
```

O88RHEF

1    did not look at it.  They did not question it.  So how could

2    they have possibly met their burden by simply putting their

3    client on the stand, showing her some invoices, and her just

4    repeating over and other again, yes, all federal, all federal,

5    all federal, all federal?  That was it.  And we did the same

6    thing and we lowered it down.

7            So I don't think they could possibly have met the

8    burden to disprove the work in the relevant time period was

9    reused.  Our burden is listed in your Honor's instructions as

10    "must prove by a preponderance of the evidence the extent of

11    the work, if any, from the first federal action that was reused

12    in the second federal action."  I think we met that beyond a

13    preponderance.

14            We showed it literally paragraph by paragraph, if any

15    from the first, reused in the second.  We showed all of it,

16    every bit of it.  So I don't see how they can claim to have met

17    their burden.  And they had an opportunity to address it, but

18    they decided to just make personal attacks on the attorney.

19            So we made our -- I mean, we made our case to the

20    jury.  We proved our preponderance.  They did not.  So I

21    believe this should be a directed verdict in our favor.

22            THE COURT:  I'll deny that motion.  It's a factual

23    question for the jury as to the amount expended for the first

24    federal action and the extent to which they believe it was

25    reused in whole or in part.

O88RHEF

```
 1            There are fact issues about how much of what the
 2    plaintiff claims was devoted to the first federal action
 3    actually was used.  The defendant contends that it's only 5.1
 4    hours, so, actually, there's a factual issue there.  Then
 5    there's a factual issue about the extent reused.  The jury is
 6    entitled to assess the credibility of the witnesses.  I'll
 7    leave it to them.
 8            MS. LASK:  Your Honor, I appreciate what you said, but
 9    very specifically --
10            THE COURT:  The motion is denied.
11            MS. LASK:  Okay.
12            THE COURT:  Exhibits.
13            MR. LONERGAN:  Yes.  After we -- after the Court was
14    in recess, I spoke with counsel and indicated that there were
15    three or four exhibits that we hoped would be sent to us last
16    night.  I did not see any, so --
17            MR. FERRANTE:  We have them here.
18            THE COURT:  Okay.  Look, I just want a list of the
19    exhibits that are going in to the jury, and I have a list of
20    what I understand, and I'll read them out, but they have to
21    have copies.  It is counsel's obligation to have copies.  If
22    you do not have copies for the jury, I'll give them from my
23    notebooks.
24            So, on the plaintiff's side, it is Exhibit Two -- that
25    I have a clean copy of -- Exhibit Three, which is the summary
```

O88RHEF

1    demonstrative that the plaintiffs -- I'm sorry, that the

2    defense put together; and then there was an Exhibit Four that

3    they identified yesterday, which were the excerpts from the

4    Second Circuit.

5             So, are there clean copies of those exhibits that are

6    marked and which we can give to the jury?

7             MS. LASK:  Of plaintiff's side?

8             THE COURT:  Yes.

9             MS. LASK:  I don't have plaintiff's exhibits.

10            THE COURT:  As I said, I can provide Exhibit Two if

11   need be.  I do not have a clean copy of Three, and I do not

12   have a copy of Four, as none was provided.

13            My deputy has actually found a second copy of what I

14   have, so I do have a clean copy of Three.

15            MR. LONERGAN:  Your Honor.

16            THE COURT:  Go ahead.

17            MR. LONERGAN:  Exhibit Four.

18            THE COURT:  Please hand it to the deputy.

19            MR. DOLLINGER:  Judge, I just want to clear the record

20   for myself.  I just want to note I properly took the exception

21   on my motion, so I'd just like you to accept the motion.

22            THE COURT:  Understood.  When I deny a motion, you

23   don't need to take the exception.

24            MR. DOLLINGER:  I understand that, Judge, but I don't

25   want to get there and find I do.

O88RHEF

```
1          THE COURT:  Okay.  On the defendant's exhibits, the
2    ones I have that were used were One, Two, Three, Four, Five
3    Six, 17, 19, 20 and 21, which was the highlighted version of
4    the second federal complaint.
5          Am I missing something, counsel?
6          MS. LASK:  Any on the cross that I used?
7          THE COURT:  There were some that were used on the
8    cross but I wasn't admitting them as exhibits.
9          MS. LASK:  Your Honor, I think you missed an exhibit.
10   If I remember, you said One, Two, Three, Four, Five and Six,
11   and then I think you went to 17 and 19.
12         THE COURT:  I said 17, 19, 20 and 21.
13         MS. LASK:  Okay.  You missed 14 of ours in our index.
14         THE COURT:  Okay.  I have that.  You are correct.
15         Was there anything else?
16         MR. DOLLINGER:  None for the plaintiff, your Honor.
17         THE COURT:  Are there any more for the defendant?
18         MS. LASK:  I'm going to make a quick motion as well.
19   I just want to keep the record.  You're not going to like it,
20   but --
21         THE COURT:  You're entitled to make a motion.
22         MS. LASK:  It's a motion for a mistrial for
23   intentional deception in some of the things that were said by
24   this counsel, plaintiff's counsel, which were a big problem.
25   He said as I was on the stand -- Mr. Lonergan I think his name
```

O88RHEF

1   is --

2                THE COURT:  How do you pronounce your name, sir?

3                MR. LONERGAN:  Lawrence Lonergan.

4                MS. LASK:  So Mr. Lonergan, his tone, and you did tell

5   him at some point to keep it down, and it was hard for me to

6   respond when someone's yelling at me like that.  But that's a

7   start, and I'm trying to answer the best I can.  And, your

8   Honor, again, it's very hard to be there as an attorney on the

9   other side of the table on that witness stand.  It's scary.

10  I've never been in the position.  And I'm an attorney.  I'm

11  defending my honor, myself.

12               He was making accusations of crimes.

13               Ms. Karn, please don't stare at me.

14               It's hard when she does that.

15               He was accusing me of white collar crimes.  But

16  here's -- I'm going to give you outright deceits.  First, one

17  number, what was wrong, he's yelling at me, shaking his head.

18  The jury's looking.  I'm watching the women looking at him.

19  One lady turned red from her chest, neck, and face, the woman

20  sitting near him, as he was yelling.  And then he went and

21  muttered so the jury can hear, "it's like pulling teeth with

22  her."  It makes me even more nervous.  I'm like, oh, my God.

23  He's poisoning the jury.

24               It goes further, your Honor.  He was disparaging me

25  before them and absolutely lied.  And the word is lied.  And

O88RHEF

1   I'm going to tell you what he did.  Then he went right into

2   poisoning their minds.  Ms. Lask, your LinkedIn, don't you call

3   yourself an expert there?

4            First of all, your Honor, we had this discussion, no

5   media, no this.  And LinkedIn has nothing to do with anything,

6   your Honor.  I don't know even know how he was going into that.

7   But here's the lie.  No, I never did call myself an expert,

8   because I know ethics.  I stand by my life.  And I actually go

9   after attorneys when they do it.  Unless you're certified, like

10  in matrimony or something, you can't say "expert."  I will

11  never use the word "expert."  Now, am I a media expert?  I

12  appear in different media when they call me in, yes, but I

13  looked in my LinkedIn, and I know I don't use the word

14  "expert."  And it's not there.  He lied.

15           And they are -- I saw them looking.  They're like, oh,

16  my God.  She's a -- so now we have a jury that's like, oh,

17  she's an expert in matrimonial, or an expert in this, and

18  holding me to a higher standard.  In any event, it was a lie,

19  and it didn't happen.

20           He also violated your order hands down and started

21  going into my education.  And your rule number one -- you know,

22  you said it, but nothing applies to plaintiff's counsel.  They

23  don't care.  And he went right into education.  Do you have a

24  J.D.?  Something about me --

25           Do not look at me, Ms. Karn.

O88RHEF

1          Are they allowed to turn around like that?

2          THE COURT:  I actually think Ms. Karn is if she wants

3   to see someone speak, and sometimes it's helpful to see someone

4   speak.  She's just turning her head to watch you speak.  She's

5   not saying anything.  But from her vantage point where she is,

6   I think it's fine.

7          MS. LASK:  Your Honor, the lie, the deliberate lie,

8   and then he goes into education.  Right.  Do you even have a

9   J.D.?  And I saw four of them turn around and, look, wait, is

10  she really a lawyer, J.D.?

11         They're not dumb, this jury.  They're very smart women

12  and men.  The one man's very smart.  Smart people.  A lot of

13  them have corporate backgrounds and this and that.  When they

14  heard that, I saw them turn around, and I could almost read

15  their mind like, wait, what's going on?

16         He had no business doing it.  Your order said not to

17  do it.  When I complained in back and you told them they can't

18  do it, there was an order.  But you said, well, he's new here.

19  He just walked in.  That does not except anyone.  He was not

20  new.  He clearly was on it for a while.  He's -- just the big

21  surprise of the trial was he put in his notice the day of the

22  trial.  Oh.  Okay.  So he's here now.  We know, the biggest --

23  you know, the elephant in the room.

24         But it doesn't matter if he appeared an hour before

25  trial and did what he did.  He is obligated as an attorney to

O88RHEF

1    know your orders, and Mr. Dollinger is here anyway and he knew

2    the orders.  He's obligated to follow them, but he went and

3    disrespected everything and did that.  I was prejudiced so many

4    times by that.

5           Hold on.  Oh, and then to go over and over again, as

6    if I -- you know, that calendar of yours, I mean he did it so

7    repeatedly, there's actually a law about that, where he kept

8    repeating, you know, who else could corroborate your calendar?

9    And my attorney did -- I think we went to the back or

10   somewhere, I forgot, but I remember him saying, he's accusing

11   her of a crime.  I said it on the stand, are you accusing me of

12   a crime?  I think I even said it.  It was made to disrupt me.

13   There is no business for Mr. Lonergan to come here and go over

14   that.

15          And, by the way, last thing, we had a very detailed

16   order on that calendar.  The eve of trial, when I flew into

17   Florida, paid for a hotel and did all these things, and I was

18   ready last year in July, another big surprise happens.  You

19   know, all of a sudden we're told that that calendar was a fake,

20   and trial was done.  We could have -- so, if you remember, and

21   I have the transcript, Mr. Dollinger said to this Court, I have

22   an expert that will tell you, your Honor, this minute.  And he

23   lied.

24          And he also lied about don't stand -- and I'll tell

25   you why I'm using the word lie.  Judge Karas just recently put

O88RHEF

```
 1    out an order in a transcript and confronted Mr. Dollinger.  I

 2    don't even know why he is in his courthouse.  He has a $95,000

 3    sanction over his head for lying to a federal court that was

 4    confirmed by the circuit court.  And the law is that a lawyer

 5    -- the Court has a right to not let a lawyer in the courtroom

 6    with that sanction.

 7            He has sanctions.  We're lawyers.  If I had a

 8    sanction, I better pay it or I can't come and argue, because if

 9    I don't pay it, I'm emboldened to come into this courtroom and

10    continue the same misconduct.

11            THE COURT:  I have no say over that ruling.  I don't

12    know about that ruling.  If there's a compliance issue, that's

13    for the judge and for whoever is in that litigation with

14    Mr. Dollinger.

15            MS. LASK:  I diverted a little bit.

16            MR. DOLLINGER:  Intentionally.

17            MS. LASK:  No.  I just --

18            MR. DOLLINGER:  I need one minute.

19            THE COURT:  Yes.  Ms. Lask, as we've established, you

20    like to talk, and you do go into a lot of areas and you're

21    responsible for what you say, just as counsel on the other side

22    is responsible for what they say in court.

23            MR. DOLLINGER:  May I be heard, Judge, just briefly?

24            THE COURT:  Yes.

25            MR. DOLLINGER:  Judge, I will apologize for what
```

O88RHEF

| | |
|---|---|
| 1 | happened with the J.D. issue.  What happened was Mr. Lonergan |
| 2 | was speaking to the plaintiff.  The plaintiff really just |
| 3 | doesn't know that there was this order -- |
| 4 | THE COURT:  That's not an excuse.  That's your |
| 5 | obligation to -- |
| 6 | MR. DOLLINGER:  I'm not saying it's an excuse.  I'm |
| 7 | explaining it, simply saying if you want to create a curative, |
| 8 | that's fine.  Understood. |
| 9 | The next issue, Judge, I'm tired of these personal |
| 10 | attacks.  I agree with you they don't belong here.  Any |
| 11 | sanction by any judge anywhere -- the Court should recognize |
| 12 | I've not been disciplined. |
| 13 | MS. LASK:  That's not true. |
| 14 | MR. DOLLINGER:  And, Judge, you know what?  I've |
| 15 | listened to my client and was in error, and that was it.  And, |
| 16 | you know what, Judge?  It happens.  In 35 years of practicing, |
| 17 | this is what happened, this little sliver -- |
| 18 | THE COURT:  Are you talking about whatever she |
| 19 | referred to in the other case? |
| 20 | MR. DOLLINGER:  Yes.  All I'm saying -- |
| 21 | THE COURT:  We don't need to address this.  I know |
| 22 | nothing about it.  We're not addressing it. |
| 23 | MR. DOLLINGER:  Thank you, Judge. |
| 24 | THE COURT:  Mr. Lonergan, do you want to say anything |
| 25 | given the accusations? |

O88RHEF

```
 1            MR. LONERGAN:  Well, I did nothing I don't ordinarily
 2   do as a trial attorney cross-examining a witness that I found
 3   extremely evasive and avoiding answering any questions I have.
 4            My sense is the jury has already formed an opinion of
 5   counsel by the way she conducted cross-examination of Maggie
 6   Karn.  That is what this jury is reacting to.  They're not
 7   reacting to a question I asked that was not even answered.
 8   They are reacting to this attorney witness's demeanor as she is
 9   comporting herself.  And I believe that that is -- of what
10   looks she's getting, whatever she's doing, I got somewhat
11   frustrated as I was trying to elucidate responses on cross.  I
12   don't believe I ever yelled.
13            THE COURT:  Go ahead.
14            MR. LONERGAN:  It was really, Judge, nothing more than
15   I ever do with a difficult witness, and that's all I was --
16            MS. LASK:  Your Honor, just one quick thing, and it's
17   not because I -- to clear the record, he just deflected to
18   something completely different.  When he gets up on that podium
19   and he asks something, and this was a lie about my LinkedIn, he
20   knows better.
21            When he gets up on the podium and says, education, do
22   you really have -- do you have a J.D., they didn't look because
23   they formed an opinion of me.  Could you see their faces like
24   what, what's that?  They were confused, like, is she really a
25   lawyer?
```

O88RHEF

 1          You know, he's not answering the question.  Why did he

 2    defy your order when it straight out said -- and why did we

 3    have to spend ten minutes in the hallway explaining to him,

 4    here's the order, you were not supposed to do it?

 5          That's all I'm going to say.

 6          MR. LONERGAN:  Your Honor.

 7          THE COURT:  All right.  No.  Let me address -- there

 8    was a motion for a mistrial.  That motion is denied.

 9          With respect to the comment about "expert" from

10    plaintiff counsel in cross-examination, "expert" can be

11    construed in many ways, and the witness was perfectly able and

12    did deny that that's how she represents herself.  There's no

13    prejudice from that.

14          With respect to the question about education, that was

15    improper.  There had been a ruling previously, and plaintiff's

16    counsel is at fault for that.  And it is no excuse that counsel

17    is recently in the case or that the client wasn't properly

18    informed.  In any event, there's no prejudice, because, A, I

19    sustained the objection.  I made it clear to the jury that that

20    was proper.  And, B, I agree with Ms. Lask that Mr. Lonergan

21    was pretty aggressive in his tone of voice and examination.  I

22    don't think he yelled.  He just has a loud voice.  But clearly

23    it was sort of attack mode, as was Mr. Ferrante at times.  And

24    so I don't find any prejudice from that except to the lawyers.

25          In other words, it could just as easily be that a

O88RHEF

1    juror was turning red because they were horrified by how

2    counsel was attacking the witness.  So I have no idea what

3    jurors are thinking.  Neither do you.  Everything has been --

4    that needed sustaining as an objection was, and I find that

5    there is no prejudice.

6          With respect to that calendar of yours, I do not

7    believe that the counsel for the plaintiff made any accusations

8    about crime, and they were questioning reliability and veracity

9    of that document, which they are entitled to do.  So the

10   motion's denied.

11         All right.  Now, back to the exhibits.  So, to be

12   clear, for the defense, Exhibits One, Two, Three, Four, Five,

13   Six, 14, 17, 19, 20, and 21.  I have my notebook.  I have taken

14   out the exhibits that don't belong there, but I need -- if you

15   have 21, I need that as a supplement.  So if you have 21 from

16   yesterday, could you please bring that to the deputy.

17         Court officer, if you could please tell them to --

18   thank you.

19         MS. LASK:  Your Honor, on Exhibit One, we did not put

20   the civil cover sheet in.  We didn't show it.  Exhibit One was

21   the complaint, and then there was a cover sheet on top of it.

22   He did not show that at all.  He did not put that in.  So just

23   to be --

24         THE COURT:  Okay.  We can take that out.

25         MS. LASK:  Thank you, your Honor.  I just want to be

O88RHEF

1    perfectly --

2              THE COURT:  It is out.

3              MS. LASK:  We don't have a copy.  He's going to be

4    using it for his closing.

5              MR. FERRANTE:  I can hand it up after.

6              THE COURT:  Yes.

7              MR. FERRANTE:  Okay.  Good.

8              THE COURT:  All right.  So 21 will be handed up after

9    the closings.

10             Then, on the jury instructions, I just wanted to let

11   you know and get your approval.  If anyone disagrees, that's

12   fine.  I was just trying to streamline a couple things for the

13   jury since they've already heard it, but you'll tell me if you

14   want it in there.  And it's not a lot at all.

15             On instruction six, impartiality, I was just going to

16   strike the first line:  "A lawsuit is a civilized method of

17   determining differences between people."

18             Does anyone object to that line being removed?

19             Mr. Dollinger?

20             MR. DOLLINGER:  No, sir.

21             MS. LASK:  Would that be because it was uncivilized --

22             THE COURT:  That is why.

23             MS. LASK:  Really?

24             THE COURT:  Yes.

25             MS. LASK:  I hit it.  Yes.  I mean, if you want to

O88RHEF

1    streamline it --

2            THE COURT:  Counsel, if you're addressing the Court,

3    please stand.

4            I think my credibility is on the line, and I'm not

5    going to repeat that line.

6            MS. LASK:  No.  I'm fine with it.

7            THE COURT:  Okay.  The other one is on jury

8    instruction ten, in circumstantial evidence and direct

9    evidence, I'll still instruct them on all that.  I was just

10   going to take out the example and not go through the raining

11   issue.

12           MS. LASK:  Yes.

13           THE COURT:  Is that okay, Mr. Dollinger?

14           MR. DOLLINGER:  Yes.

15           THE COURT:  For the defense?

16           MS. LASK:  Yes.

17           THE COURT:  Okay.  That was it.

18           MS. LASK:  Okay.

19           THE COURT:  The verdict sheet I'm going to hand out,

20   just to make sure you do have copies, if for any reason you

21   want to use it.

22           MS. LASK:  Oh, your Honor, so, at closing, can we put

23   the verdict sheet -- can we use the verdict sheet, you know, on

24   the ELMO?

25           THE COURT:  Mr. Dollinger or Mr. Lonergan, any view on

O88RHEF

1    that?

2              MR. LONERGAN:  I didn't hear the question.

3              THE COURT:  She would like to use the verdict sheet

4    and put it up on the ELMO.

5              MS. LASK:  They're going to get it anyways.

6              MR. LONERGAN:  Yes.  I don't see a problem.

7              THE COURT:  Yes.  It's fair practice. I do it.  I

8    allow it, and particularly in a case like this, where it's

9    fairly simplified.

10             All right.  We're going to proceed with the closings,

11   and then the instructions.

12             Are counsel ready to proceed on their closings?

13             Mr. Dollinger?

14             MR. LONERGAN:  Yes.

15             MS. LASK:  Your Honor, I have one thing.

16             THE COURT:  Yes.

17             MS. LASK:  The Court order about getting those checks

18   off, I don't see it went up.  I don't know what happened.  And

19   the checks are still there.

20             THE COURT:  Okay.

21             MR. FERRANTE:  Your Honor --

22             THE COURT:  Hold on, please.  Hold on.

23             MR. FERRANTE:  I'm sorry.

24             THE COURT:  Okay.  Yes.  You were speaking,

25   Mr. Ferrante.

O88RHEF

```
 1              MR. FERRANTE:  Did you say there were going to be some
 2    preliminary instructions prior to closing?
 3              THE COURT:  No, just going to closings, and then
 4    instructions.
 5              MR. FERRANTE:  If that's the case, can we have ten
 6    minutes to straighten out -- I don't want to fumble around.  I
 7    want to put things in order.
 8              THE COURT:  I don't want you to fumble around either,
 9    but you shouldn't need ten minutes.
10              MR. FERRANTE:  Five minutes.  I just didn't want to
11    fumble around.
12              And can I move the podium to face them or --
13              THE COURT:  You can tilt --
14              MR. FERRANTE:  Just get it tilted so I can look at
15    them.
16              THE COURT:  You can tilt it obviously.
17              MR. FERRANTE:  Okay.  Is the ELMO up?
18              THE DEPUTY CLERK:  Counsel, just be mindful the
19    microphones are picking up everything.
20              MR. DOLLINGER:  Thank you.
21              Your Honor, may I go out to the hall with my client
22    for a moment?
23              THE COURT:  Yes.
24              MR. DOLLINGER:  Thank you.
25              THE COURT:  Make it quick.  You've all got two
```

O88RHEF

1    minutes.

2              (Recess taken.)

3              THE COURT:  Let's get to the table, please, so we can

4    bring in the jury.

5              Let's bring in the jury, please.

6              (Continuing on next page)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

O88RHEF

```
 1              (In open court; jury present)
 2              THE DEPUTY CLERK:  All rise.  Jury entering the
 3    courtroom.
 4              THE COURT:  Good morning, jurors.
 5              Everyone please be seated.
 6              Sometimes I tell my kids that when I have to hear an
 7    apology over and over, that's not an acceptable apology,
 8    because you haven't modified your behavior.  I feel kind of
 9    like that, because I'm apologizing to you again for the delay
10    this morning, but as I have said, there really are issues that
11    have to be dealt with that come up that I don't necessarily
12    know are going to come up.  Not unsurprisingly, issues become
13    more complicated than you think they do.
14              So thanks for bearing with us.  We're going to do
15    closing arguments, and then instructions, and then the case is
16    yours.
17              Okay.  Let's have closings.
18              Defense.
19              MR. FERRANTE:  Thank you, your Honor.
20              Good morning, everybody.
21              I want to start by thanking all of you for your time,
22    for your attention, for bearing with us.  I want to thank you
23    for all of that.
24              When we first spoke --
25              THE DEPUTY CLERK:  Counsel, if you could utilize the
```

O88RHEF

1    microphone?

2           Thank you.

3           MR. FERRANTE:  When we first spoke, I started with an

4    apology, which was about the reading and the mathematics, and I

5    think I came through on all the promises I had given you about

6    showing you all the actual documents, paperwork, and everything

7    else that supports our case.  And I apologize for that reading,

8    but thank you for bearing with me.

9           So the story in this case is that Ms. Karn had four

10   attorneys for two years in a complicated custody case before

11   she ever hired Ms. Lask, and Ms. Lask used every legal strategy

12   she could to defend her rights in that custody case.  It was

13   Ms. Lask who found the family court laws mandating cases need

14   to be addressed in 90 days.  She argued that to Referee

15   Burnett, you heard that name along the way, in the family

16   court, for Ms. Karn's constitutional rights to see her child

17   were being violated.

18          As Ms. Lask's research proved, parents have rights to

19   association with their children, unless a complaint finds them

20   unfit.  Before Ms. Lask was hired, the family court had already

21   taken custody away from Ms. Karn.  You remember that.  In other

22   words, before Ms. Lask was brought into the case, she had an

23   uphill battle.  But she used everything in her legal arsenal to

24   fight for Ms. Karn.

25          She even filed an Article 78 complaint.  You guys saw

O88RHEF

that.  She filed an appeal in state court.  You saw that.  She

filed complaints to the top judges in the family court.  And

Ms. Karn even wanted to sue everyone, the judges, her husband

for interfering with her rights.  So Ms. Lask simultaneously

started drafting a federal complaint to get to a higher court

to try to address the issues that the family court was refusing

to hear.

        But Ms. Karn took the draft complaint on December 21

and filed it, and after Ms. Lask discovered that filing, she

immediately pulled it back.  We showed you the voluntary

dismissal, which was dated February 4th, 2013.  We went over

this.  And she filed it from her computer using the ECF system

we discussed, as lawyers have access to, to file electronically

from their office by the push of a button.

        That draft we've been referring to as the first

complaint, we saw that yesterday, and you heard Ms. Karn

testify that absolutely nothing happened with that filing.  It

went out and five weeks later, using the computer, Ms. Lask

filed that document, and that case was pulled back.  Ms. Lask

immediately corrected that mistake, a mistake that Ms. Karn

filed of course.

        Now, this complaint, this case called that filing

negligence, and sometimes it mentions the word "malpractice."

In this case, negligence and malpractice are the exact same

thing.  It's basically a mistake.  Ms. Karn testified that

O88RHEF

1    Ms. Lask corrected that mistake, as we all heard.

2         Ms. Lask can only be found to have committed

3    malpractice if there were any damages from that filing, and

4    that's what we're here to determine.  But there was no damage.

5    We proved that.  Not only did Karn testify that it was

6    withdrawn by Ms. Lask, but it has been established that Ms.

7    Karn in a March 26, '13, email, which we looked at yesterday --

8    "don't they know that we're going to bring back the federal?

9    But because of the appeal, we withdrew.  Also, next time we

10   should include Ken on that and Cheryl."  We looked at that

11   email yesterday.

12        And, yes, Ms. Lask had even filed an appeal as part of

13   her legal arsenal, and Karn undeniably states she wants that

14   first complaint refiled as soon as the appeal ends.

15        I think we also established that Karn comes before you

16   blaming everyone else for her personal issues, as she went

17   through four attorneys, violated court orders, lost custody of

18   her child, but came into this case and blamed Ms. Lask for her

19   own behavior, somehow demands that her legal fees for the exact

20   services she wanted should be refunded.

21        In fact, we know that nine months later, in August of

22   2013, that second complaint was, in fact, filed.  It's called

23   the second complaint.  You've heard it called the second

24   action.  However, you want to refer to it, it was filed August

25   of 2013.  And in this case, in this case, none of that was

O88RHEF

found to be malpractice or negligence.  None of the handling of
the state custody case was found to be negligent or
malpractice.  Nothing that Ms. Lask did outside of that filing
of that first complaint was found to be incorrectly done.  And
as I just showed you, again, it was immediately corrected when
found out.

So our burden of proof, we do have a burden in this
case, our burden was to prove to you guys that, by a
preponderance of the evidence, which is -- the judge will
explain it to you, it's more likely than not, that the first
federal action was reused in the second federal action.  And we
did prove that.  And because of that, Ms. Karn cannot get back
fees for those services.

You'll hear the judge mention the word "windfall."
She cannot get the benefit of work and then ask for her money
back, work that she wanted done, work that she got done.  We
showed you the first federal complaint.  We showed you the
second federal complaint.  We showed you how they went
together.  We even had a demonstrative exhibit with
highlighting on it to make it even easier.  We showed it to
you.  We proved it.  All of this is in here.

As Ms. Karn stated in that e-mail that I showed you,
we were going to refile.  And she got exactly what she wanted
and more since Ms. Lask worked on additional facts of course,
as she explained, because there was a nine-month period of time

O88RHEF

1    that of course had to be updated.  That was the demonstrative

2    exhibit that we had shown you yesterday.  And, as you remember,

3    we went through all the pages.  Everything in white was in that

4    first complaint.  You'll be able to review anything you'd like

5    to review between the first, the second, and the demonstrative

6    when you start your deliberations.

7         I want you to remember when I was finished questioning

8    Ms. Lask, the plaintiffs had an opportunity to cross-examine

9    her.  They didn't ask a single question about the complaints.

10    Not a single one.  They didn't put it on the screen.  They

11    didn't question her about which paragraph this is or which

12    paragraph that was.  It was just personal attacks, attacks on

13    shorthand, claiming that their client could never understand it

14    when, in fact, we showed you yesterday an email where she's

15    literally using the exact same shorthand.  Referee, R.R.

16         If you remember, when we were talking about forensics

17    and psyche evaluations and all that different stuff, it's right

18    here in this email.  Ms. Karn was moving along and was totally,

19    totally involved in this case.  That email that says, we're

20    going to refile, that came in after she had already paid for

21    the first complaint.  She had already paid for all of the work

22    done in her custody case.  You saw all the entries.  You saw

23    all the information.  You saw all of it.  It didn't say, could

24    we go over the bill?  No.  It didn't.  She wanted the work.

25    She got the work done, and it was good work.

O88RHEF

1          Now, I don't want to speak too much about this, but I

2     do want to mention that Ms. Karn's testimony very much admitted

3     that she had a lot going on.  There was a lot happening.  And

4     she kept -- excuse me, she kept rehashing, kind of bringing

5     back the custody information.

6          She threw numbers out there.  There was 300,000.

7     There was this much money, that much money.  Her attorneys

8     opened with a number, 60,000.  Then they said a little above

9     40,000.  Then they gave you a demonstrative exhibit just around

10    40,000.  It kept changing.  And her $40,000 number was

11    literally taking every single billing entry for the time

12    period, which we know is October to February, and said, yes,

13    that was work for federal, that was work for federal, that was

14    work for federal, when you saw there was many, many, many

15    different things going on.

16          She was always on the phone with her, emailing with

17    her.  She was involved all along the way, and she just got up

18    there and said everyone of those, yes, yes, yes, as if no other

19    work was being done.  And I just think that was disingenuous.

20          We showed you that the actual first -- fees paid for

21    the first federal complaint were around three and a half to

22    $4,000, because it was prepared from using the work that was

23    being done for the Article 78, complaint for the Article 78.

24    You guys remember all that as well.  We went through all that.

25    And a lot of that information led to the federal complaints.

O88RHEF

1          You remember my client speaking about every inch, I'm

2     working over here, and I'm working over here, I'm dropping some

3     things over here.  She got the benefit of all of that, all of

4     that work.

5          And this whole thing about the distraction that was

6     put up by the plaintiffs about shorthand, do you remember them

7     refusing to look at the detailed billing when they were

8     questioning my client?  They just kept saying, what about this

9     line?  What did you do?  From a ten-year-old bill?

10          My client asked over and over and over again.  Well,

11     just give me my calendar entries, and I can explain it to you,

12     but they refused to look at it.  They refused to put it up

13     again.  The email I just showed you says she knew the

14     abbreviations, she was using them herself.  Don't buy that.

15          Now, for the sake of argument, let's just say for --

16     the fees paid for the first were more.  The judge is going to

17     in fact instruct you, and you're going to hear from the judge

18     that it's an arithmetic issue.  Take whatever the fee was,

19     subtract all of it from the first federal complaint, and see

20     what was used in the second.  And we did that arithmetic

21     problem for you.

22          I'm sorry I don't have that demonstrative exhibit, but

23     you remember the one where we listed out the dates and times,

24     and they put it up and we put our numbers next to it.  So what

25     you have to do in this case is you have to do an arithmetic

O88RHEF

1  problem.  You have to figure out what exactly was used, what

2  exactly was paid for.  Don't take their number for it.  Do the

3  arithmetic yourself, and come up with a number.  We came up

4  with a number between three and 4,000.  And you take that

5  number, and if it was used in the second complaint, then she

6  got the benefit of those payments.  And she did.  We showed

7  you.  As we showed you, again, don't forget, all of the time is

8  the first complaint.  All of it.  All of that.

9          Remember when I told you guys that there was going to

10  be a test at the end?  This is the test.  This is what you're

11  going to be presented with when the judge is done instructing

12  you about how you're supposed to go about figuring this case

13  out.

14          The malpractice that's listed there, it could also be

15  interchanged with negligence.  That's the first complaint that

16  was pulled back.  It was a mistake.  It was corrected, and

17  nothing happened on that case.  Nothing went further.  It was

18  pulled back about five weeks later by Ms. Lask at her desk, on

19  a computer, with the press of a button.

20          I believe that we have proven beyond a preponderance,

21  we have proven to you that everything that is used in the first

22  is in the second.  The number here is zero.  She got the

23  benefit.

24          Thank you for your time.  I appreciate all of it.

25  Have a nice morning.

O88RHEF

1              THE COURT:  Thank you, counsel.

2              Mr. Dollinger or Mr. Lonergan?

3              MR. LONERGAN:  Your Honor, I'll be handling the

4     closing.

5              THE COURT:  All right.

6              MR. LONERGAN:  If it please the Court.

7              Ladies and gentleman of the jury, good morning.

8              Again, first I want to thank you for your service, so

9     I will.  It's August, summer.  No one wants to schlep down to

10    lower Manhattan to preside over a civil trial worth $70,000.

11    We definitely appreciate what you've done.  So we thank you for

12    that.

13             Let's get on so you can begin deliberations.  I just

14    want to go through background to refresh your recollection.

15    You heard the following testimony during trial.

16             Our client, Margaret, Maggie Rhee-Karn, originally

17    retained as an attorney Ms. Chana Lask to handle a child

18    custody --

19             THE DEPUTY CLERK:  Counsel, a little louder.

20             MS. LONERGAN:  Maggie Rhee-Karn explained to attorney

21    Lask her case was pending in family court more than two years

22    without a trial.  During that time, the family court had issued

23    a temporary order against her limiting her visitation rights.

24    So you heard about that, with her child, Sarah.

25             Maggie told Attorney Lask that she wanted to obtain a

O88RHEF

final result in the family court action as soon as possible.
However, for strategic reasons, Attorney Lask recommended to
Maggie that in addition to the proceedings in family court,
Maggie should also file an action in federal court specifically
to address issues of federal constitutional law.

Attorney Lask instructed Maggie that the latest in the
family court proceedings denied Maggie her right of familial
association with her child, Sarah.  Attorney Lask we say
wrongly advised Maggie that the family court did not have
authority to rule on constitutional claims, and that such a
claim could be pursued in federal court.

Maggie, with Attorney Lask, with her counsel, filed
what we've called the first federal action December 21, 2012,
and then just six weeks after filing the first federal action,
Attorney Lask voluntarily dismissed the first federal action.
Nine months later, summer, August 30, Attorney Lask filed what
we call the second federal action.  About a year later, the
Court dismissed the second federal action on the basis the
Court would not interfere with the state court family action
and that Maggie's constitutional arguments could be raised in
the state court proceeding.

While pursuing the federal court actions, Attorney
Lask continued to represent Maggie, as we said, in the state
family court actions.  Eventually, the family court issued a
decision granting legal and physical custody of the child to

O88RHEF

1    her father and not Maggie.  And Maggie received only visitation

2    rights.  So it didn't go too well for Maggie.

3           Maggie then sued Attorney Lask for malpractice.  The

4    Court already ruled on the merits of the claim, finding

5    Attorney Lask was liable for malpractice for filing the first

6    federal action without having sufficiently researched and

7    advised Maggie that the federal constitutional claim could have

8    been made in the state court action without also having to file

9    a federal action.  So this is kind of where we are with this.

10           So this is important.  The Court determined the many

11    hours of research conducted by Attorney Lask were ill-guided

12    and pointless and useless, leading to a pleading that was

13    withdrawn by Attorney Lask.  So the research done by Ms. Lask

14    before filing was deemed by that Court to be insufficient.  So

15    it is difficult to posit how such insufficient research could

16    have been used on the second complaint.  We're going to circle

17    back to that, though.

18           So this case presents a pretty straight forward issue.

19    As outlined by the Court at the inception of the trial, the

20    only issue decided here on this trial is the amount of damages.

21    It's undisputed that the attorney, Susan Chana Lask, has

22    already been deemed to have committed malpractice, and so is

23    really fighting an uphill battle from the getgo.

24           Attorney Lask cannot argue that she did not do harm to

25    Maggie Karn, only that Maggie suffered no harm as a result.

O88RHEF

1    Yet it is also undisputed that Maggie paid enormous sums of

2    legal fees to Attorney Lask.

3            As the Court clarified regarding damages, that is what

4    amount of monetary damages did Maggie incur because of

5    defendant Susan Chana Lask's malpractice with respect to the

6    first federal claim.  Again, it is not in dispute that Attorney

7    Lask committed malpractice and Maggie was in some way

8    overcharged by Attorney Lask for time wasted in pursuant of

9    that first federal action.

10           So then the Court says the measure of damages will be

11   determined based on legal fees paid by Maggie Karn to Attorney

12   Lask between October 24 of 2012 and February 5th of 2013.  It's

13   undisputed that Maggie Rhee-Karn paid Attorney Lask in excess

14   of $340,000 during the course of the representation.  And then

15   between that period, October 24, 2012, and February 5th, 2012,

16   which is the period in question, if you add up Attorney Lask's

17   billing from that time, we come up with 111.5 hours, resulting

18   in charges of $72,475 for that period, for that what they call

19   a narrow window of time.  There was still in excess of $72,000.

20           Throughout this period --

21           THE COURT:  I'm sorry, counsel.  I need to interrupt.

22           For what period did you say there was 72,000 --

23           MR. LONERGAN:  That's from if you do the math from

24   October 24 of 2012 through February 5th -- 4th of 2013.  The

25   entire amount -- the entire amount during that time.

O88RHEF

1          THE COURT:  Okay.  Got it.

2          MR. LONERGAN:  I did the math.

3          THE COURT:  Okay.  No.  I understand.

4          MR. LONERGAN:  I implore you to do the math yourself

5     when you go back, just add up the time, and that's what you

6     see.

7          Throughout this period Attorney Lask worked on a

8     federal complaint that was ultimately withdrawn, and it was

9     later found to have been the product of malpractice.  The Court

10    instructed in the beginning of the trial that you are now

11    tasked with determining the amount of legal fees paid by Maggie

12    Karn to Attorney Lask in connection with the first federal

13    action that should be reimbursed to Rhee-Karn.  It's an

14    interesting phrase, "in connection with," right?

15         So you heard extensive testimony regarding the fees

16    incurred in connection with the first federal action.  It's in

17    connection with.  It seems to me to be a very broad term.

18         So Attorney Lask has tried to show that basically no

19    time was spent in connection with the first federal action.

20    This is impossible.  It's impossible.  You can go through the

21    complaint.  It's impossible that there was no time spent during

22    that time on the first federal complaint.

23         The complaint in the first federal action was a huge

24    undertaking by Attorney Lask, and that's the point she tried to

25    distance herself from throughout the trial.

O88RHEF

```
 1              So we'll take a look at the first federal complaint.
 2     The first federal complaint, which is in evidence as
 3     Defendant's I believe Two, okay, let me take a look at this.
 4     This document was filed December 21, 2012; 235 paragraphs, 9
 5     separate causes of action, and several exhibits.  It's quite a
 6     piece of work.  And you can look through it and you can flip
 7     through it.  We're not going to read it.  I don't want to keep
 8     you folks any longer than I have to.
 9              But it's a substantial document.  Okay.  It was not
10     written by Maggie.  This was signed, written by Attorney Lask.
11     Let's be 100 percent clear on that.  We just heard testimony
12     that Maggie filed this document.  That is such what we call a
13     red herring in the law.  Okay.  It's divergence.  It doesn't
14     matter.  This document -- you're a lawyer and you submit a
15     document in federal court and it has your name on it, and it
16     does, it has your name.  Then if there's a problem with it, you
17     don't wait five, six weeks to withdraw it.
18              If you have a problem with something like that, when
19     found -- they're saying it was Maggie's fault.  Maggie's not a
20     lawyer.  She's a lay person.  She does what her lawyer tells
21     her to do, depending on her trusting her.  And now there's --
22     I've not seen a bigger example of blaming the victim than I
23     have seen in this case.  That is really what this is about.
24     They're blaming Maggie for filing this complaint.  They're
25     blaming Maggie for not looking at the time sheets closely
```

O88RHEF

enough.  It's all on Maggie.  And yet it's Attorney Lask that

committed malpractice.  That's why we're here today to

determine what those damages are.

All right.  So Attorney Lask's counsel said in closing

that Ms. Lask immediately corrected the mistake that Maggie

Karn filed.  That's a horrible, horrible thing to say.  This

lawyer needs to stand up and take ownership for this.  This is

her filing, her pleading in federal court.  It's got her name.

So to foist that on Maggie, it's beyond the pale.  It really

is.

All right.  During that time that passed, so it's

December 21st through February 5th, plenty of time, if Attorney

Lask had a real problem with Maggie, she would have gone right

in.  She would have gone the following day, the following week,

and done something about it.  She couldn't.  I guess when

Attorney Lask kind of woke up and saw that this really was not

the right way to go, that this was not a viable path, a viable

way to go, she withdrew it.  Maggie didn't withdraw that

complaint.  Attorney Lask did.  So let's please not lose sight

of that.

I want to keep on sort of that phrase, "in connection

with."  So sort of like the theme here, because if you look at

it, it really applies to all charges even remotely related to

the federal complaint, okay?  So Attorney Lask has contended

that she was working on many different things at the same time

O88RHEF

1    while working on the federal complaint.  I submit to you

2    everything done in the Article 78 proceeding, everything done

3    in the state court proceedings, everything done in family

4    court, all was in connection with the federal court case.

5    That's what engendered the federal court case.  That's why they

6    went to federal court, because all of that was not going the

7    way they wanted.  Okay.

8            So "in connection with," again, is a broad term.  I

9    think they can bring that all together.  I think my sense is

10   during that time all of the charges, all of those charges

11   during that time are rendered in connection with the federal

12   complaint, and I'm -- it's inextricably linked.  And I really

13   would take that from the testimony of Attorney Lask herself,

14   who says there's so much going on, I'm writing them and one is

15   informing the other.  Good.  I agree, it all informs the other,

16   so it all was in connection with the federal court complaint.

17           We can even go through again.  I don't want to take

18   too much time, but, I mean, all of the examples here, I would

19   think it would be beneficial.  We have the initial work, so

20   we'll go down to -- let me get my cheat sheet here -- beginning

21   at 10/24.  R.R. C emails.  Begin drafting federal complaint.

22   Teleconferences with client.  How can we say that that's all on

23   -- five hours on the federal complaint?  Because this document

24   says it is.  This document says federal complaint right there.

25   Five hours, okay?

O88RHEF

1          Now, to say anything else on that line item, is not

2    linked to that, I think is disingenuous.  So I want you to keep

3    that in mind.  When you go back in to your deliberations, I'd

4    ask you to just keep that in mind as you go from 10/24, which

5    is on page 1458, and then as you go through to 2/4, which is on

6    1461.  You can do the math.  You can write the hours -- $650 an

7    hour, okay?  That's quite an hourly rate.  But I implore you to

8    do that math and to keep this in mind, that it is in connection

9    with the federal complaint.  About these entries, these charges

10   are so poorly drawn and stated that virtually anything can be

11   shown to be in connection with the first federal action.

12         Now, and I asked on cross, I said, why not make it

13   clearer?  I will tell you that counsel makes these entries

14   unclear really at her own peril, okay, because now you can go

15   ahead and construe those as you deem fit.  Say, well, is it in

16   connection with the federal action?  I'm going to tell you it

17   has to be.  It has to be, because it's within that timeframe.

18   It's October 24, February 5th -- so about three and a half

19   months.

20         The federal complaint informs everything.  Again, it's

21   the reason that they have to go to federal court in the first

22   place, or want to go to federal court, not that it wasn't the

23   right thing to do, was because these other issues were not

24   going the way they wanted.

25         All right.  Attorney Lask stated, everyone does it

O88RHEF

```
 1   this way, and that's why she does it.  Again, I say, you do it
 2   at your peril, because it leaves it open to all kinds of
 3   conjecture.
 4           So I submit to you that all time spent by Attorney
 5   Lask from October 24, 2012, to February 4, 2013, was rendered
 6   in connection with the first federal action.  Attorney Lask
 7   herself spoke about --
 8           Could you just hold it down?
 9           Attorney Lask herself spoke of how intertwined all the
10   work was, so how can we extricate work on the first federal
11   action.  Attorney Lask was asked on cross-examination about
12   these entries and how vague and imprecise they were, especially
13   the word "complaint," which was twisted like taffy into all
14   kinds of work that she was doing.
15           I tried to make this point, too, on cross.  Attorneys,
16   you know, we're required to be straight forward and transparent
17   with our clients.  I submit to you that the bills rendered to
18   Maggie Karn were so vague and indecipherable as to really seem
19   improper.  We're supposed to avoid the appearance of
20   impropriety.  Given the wiggle room that counsel afforded
21   herself here, there's something going on.  It smacks of some
22   sort of way for her to manipulate this and to -- and this jury
23   to her interpretation of what these items are.  And of course
24   she does it in a self-serving way, to her interest.  So I ask
25   you to keep that in mind.
```

O88RHEF

1          We're going to talk about credibility a little bit,

2    too.  So I'll say that the manner in which Attorney Lask spun

3    the descriptions of those charges in her favor is dubious to

4    say the least.  This is a little technical.  The fact that

5    Attorney Lask referred to the Article 78 petition as a

6    complaint further muddies the water and really calls her

7    credibility into question.

8          Look, we learn as attorneys early on in law school and

9    as associates the nomenclature, okay?  You don't call a

10   petition in a special proceeding a complaint.  You get laughed

11   at, okay?  It's -- you get derided, a partner to an associate.

12   If an associate does that, you are derided.  It's the wrong way

13   to do that.

14         Attorney Lask has been practicing for decades.  She

15   knows.  She knows the difference between a petition and a

16   complaint.  Article 78 petition.  It's a term of address.  The

17   same way the judges in the State Supreme Court, we don't call

18   them judges.  They are Justices of the Supreme Court.  If you

19   call them a judge, it's incorrect.  It's the language that we

20   speak.  And I know that it's the language that Attorney Lask

21   speaks.  So for her to call that document -- it's a verified

22   petition.  It's in a special proceeding.  It's in a certain

23   court, done in certain different procedure.  It's not a

24   complaint.

25         So I submit to you that Attorney Lask calling that

O88RHEF

document a complaint is fudging, okay?  She's looking at this,

at the time sheets, and trying to drive down the amount that

she's going to have to reimburse my client.  And she's looking

at this, you know, and saying, well, let's really lump that

into the complaint group, so that I can say it's not part of

what we were working on.  Again, even the Article 78 petition

was rendered in connection with the federal court complaint.

It just all intertwined.

Okay.  This brings us to the calendar entries.  So you

heard me talk to counsel about them.  Now, we have a document

that Attorney Lask wrote for her own purposes, was never

corroborated by other documents or witnesses, and was never

provided to Maggie Rhee-Karn prior to this litigation.  This is

the ultimate self-serving, self-proving document.

The calendar entries I submit have none of the

markings of anything other than a Word document that could have

been concocted from whole cloth at any time during the

litigation.  Even the entries, as Judge Lehrburger himself

noted, there were discrepancies between Attorney Lask's

testimony that no time was spent on the federal action and her

own calendar entries during her testimony.  It was obvious even

to the Court.

Maggie Rhee-Karn testified that she never saw the

entries until recently, but she puts the blame -- I'm sorry,

but Attorney Lask somehow puts the blame again on Maggie for

O88RHEF

1    not having read the time sheets, for not having complained in

2    time, like she got away with it, like there's a waiver of some

3    kind.  It doesn't pass the giggle test, folks.

4          We submit that the calendar entries are useless

5    secondary evidence and really shouldn't be afforded much

6    weight.  We have the document.  We have the best evidence.

7    Okay.  This is the best evidence that we have, and it shows

8    that all of this time was rendered in the connection with --

9    the time frame we're talking about, was rendered in connection

10   with the second complaint.

11         It may have been that Attorney Lask was working on

12   other matters at the time.  However, again, the guiding

13   principle is whether these charges were rendered in connection

14   with the first federal action.

15         Attorney Lask has insisted that virtually none, or 5.1

16   hours, of these charges were rendered in connection with the

17   first federal action.  Frankly, it's incredible.  By

18   incredible, I mean I don't believe it.  It's not credible at

19   all.  It's just -- I don't get that.  Attorney Lask spoke of a

20   great amount of overlap in her work, that her research related

21   to several different aspects of work for Maggie, yet all of

22   that work can be said to be in connection with the first

23   federal action.

24         Okay.  As we proceed through the evidence, please be

25   mindful of credibility and believability, and we respectfully

O88RHEF

submit that Attorney Lask's statements that none of the
enumerated work was connected to the first federal action is
simply not credible or believable.

Okay. So we'll talk about the second federal action.
Attorney Lask alleges all the work she performed for the first
federal action was recycled for the second federal action, so
let's do a hard stop right there. First of all, the Court
already found that the research conducted by Attorney Lask
before filing the first federal action was insufficient, right?
So how could that then insufficient research have been
recycled, okay?

I also wish that Attorney Lask had put before the
Court, put before the jury her time sheets from the second
federal complaint, and how much time she spent, and how much
work she had. That she really did not need to go back over
things -- well, let's see. Let's show us. Let's show us what
those time sheets were. We never saw those. We don't know if
Maggie was double billed. We don't know. And I submit to you
that was on Attorney Lask really to come up with those time
sheets to show, look, on the second complaint, I only spent a
quarter of the time, I only spent a third of the time. They're
not here. We don't know. So I ask you to take that into
consideration as well.

All right. So you have some other instructions. You
know that you're permitted to draw reasonable inferences based

O88RHEF

on facts that have been proved.  However, you shouldn't get
into guesswork.  Please look at the evidence that's put before
you.

Think about the motivations that Attorney Lask has to
lean her testimony in the direction of showing that no time was
spent on the first federal action, despite, again, any work in
connection with the federal action being refundable.  Look at
the bills.  Look at the calendar entries.  There are issues of
credibility of Attorney Lask's testimony and her exhibits.

All right.  I note also, as to the calendar entries, I
didn't see any meta data, I didn't see any time stamps sort of
showing that, when it was done, and it was done when it was
said it was done.  And in a court of law, to bring a document
like that, without any kind of support or corroboration, I
don't see how it's supportable.

All right.  So I'd ask you to look at the credibility
of the witnesses.  You heard Maggie testify heartfelt.  She
went through a really tough time, only now to be blamed as a
victim by Attorney Lask.  So I'd ask you to go back into your
deliberations, look at the totality of the circumstances here,
and I'm going to urge you to see that all of the time that was
spent in that window was rendered in connection with the first
federal complaint, which was withdrawn, later found to have
been malpractice, and award damages to the plaintiff in the
amount of $72,475.

O88RHEF

1              Thank you for your service.

2              THE COURT:  Okay.  We're going to proceed to

3    instructions.

4              MS. LASK:  Your Honor.

5              THE COURT:  Yes.

6              MS. LASK:  I apologize, but I have some objections,

7    and I'd like to --

8              THE COURT:  Okay.

9              MS. LASK:  Obvious --

10             THE COURT:  Let's --

11             MS. LASK:  Thank you.

12             THE COURT:  Why don't you take the jury back to the

13   jury room.

14             Please don't talk about the case quite yet, and we'll

15   have you back in after we resolve these issues.

16             THE DEPUTY CLERK:  All rise.  Jury exiting the

17   courtroom.

18             Quiet.

19             (Continued on next page)

20

21

22

23

24

25

O88RHEF

```
 1                (In open court; jury not present)
 2                THE COURT:  Okay.  Please be seated.
 3                Ms. Lask, you wanted to raise some objections.
 4                MS. LASK:  Yeah.  He told them it was my burden to
 5      produce these bills.  He told them it was my burden and that's
 6      not the burden that we went over in July and was stated.  My
 7      bill was only -- it was their burden to show bills.  They
 8      decided not to.
 9                THE COURT:  Hold on.  Wait.  Wait.  Wait.  Let's just
10      be really clear what we're talking about.
11                So there were the bills, the invoices that were
12      produced that are in Plaintiff's Exhibit Two and were used.  So
13      I just want to make sure I understand what you were referring
14      to.
15                MS. LASK:  So he was talking about -- they got in what
16      we discussed this morning, and he confused them with the second
17      complaint.  And he said, Ms. Lask should have shown you all the
18      bills afterward, and that was not what was ruled on in July.
19      And my burden was only to show what was done in the first went
20      to the second.
21                Your Honor, I could have charged 300,000 for the
22      first, but if all that work went into the second, it doesn't --
23      you know, that's -- that was my burden, not to show -- and what
24      they did is they got into the second.  It was their burden to
25      bring the bills, and there needs to be instruction now to the
```

O88RHEF

1    jury so they understand, otherwise he just put a doubt in their

2    head and said, well, look at her; she failed her burden.  And I

3    did not.

4         We did the burden that the judge, your Honor, directed

5    us in July.  So we need to clear that up with the jury.  He

6    completely --

7         Tell me when you're ready, because I don't have my

8    glasses.  I can't see.

9         THE COURT:  Was there something else?

10        MS. LASK:  Yes.  He talked about metadata as if

11   that's, you know, that's a burden as well.  It is not.  He was

12   saying things that weren't even in the testimony, so every --

13   you know, he was testifying himself.  But to even say, look at

14   her, she didn't bring metadata about the -- first of all,

15   that's confusing.  Who knows -- that is not my burden, what the

16   metadata is on the papers I brought in, the underlying, and as

17   your Honor will remember, we also went over the entire

18   discovery, the documents -- the underlying bills.  Exhibit Six.

19   And it was agreed and it was known that they did not come and

20   get the discovery.  And all of a sudden he basically testified

21   and said, she never produced it.  That's not true.

22        THE COURT:  He didn't say that.  He said you didn't

23   provide it before the litigation -- that you didn't provide it

24   before the litigation.  He said very specifically --

25        MS. LASK:  Yes, and only recently she just saw it.

O88RHEF

1    But, in any event, going into the metadata, that is confusing.

2    That is not a burden.  It's not required.

3         He said I was supposed to corroborate my underlying

4    with metadata.  It's papers, and that is not my burden to

5    corroborate with metadata.  And they need to know that.

6         What else did he -- and then he said Joe Ferrante's

7    closing was testimony, when 90 percent of his, 50, 60 percent

8    of his was testimony.

9         THE COURT:  Don't worry.  They will have an

10    instruction that none of what the lawyers say is evidence.

11         MS. LASK:  I'm very concerned of him changing the

12    burden.  He knows what the burdens are, and we have had a very

13    long, detailed conference on that.

14         THE COURT:  Okay.  So let me address that.

15         MR. FERRANTE:  The only other thing, your Honor, I

16    would say is that in connection with all the work, it is very

17    clear in the law and orders of this case, that all the work

18    outside of October 24 to February 5th was reviewed and deemed

19    proper.  No malpractice.  No negligence.  All the state custody

20    work, the 78, everything in the case, because obviously this

21    case began differently.  It got whittled down by the time we

22    got here.

23         So insinuating, again, in connection with everything

24    she ever did, that's just simply not true, and it's outside the

25    parameters of this case.

O88RHEF

1          THE COURT:  Okay.  Let me address those.  I'm going to

2    take them in reverse order, because the "in connection with" --

3    plaintiff's counsel was very specific, that it was within the

4    period, the relevant period.  He wasn't talking about actions

5    outside.

6          The reason I intervened and asked a question is

7    because I was -- my antenna went up on the 72,000, because

8    their Exhibit Three, their summary document on hours and money

9    is 62 hours for 40,300, and based on what Mr. Lonergan told me,

10   I thought what you were going to be saying is that the total

11   amount expended for that period was 72, but your claim is that

12   only 62 hours, or 40,300, is what you are attributing to the

13   federal action.  So I'm having a problem with how you're saying

14   72 when you have Exhibit Three that you put up and it's 62

15   hours for 40,300.

16          MS. LASK:  Your Honor --

17          THE COURT:  And --

18          MS. LASK:  Okay.

19          THE COURT:  -- one of my previous rulings --

20          MS. LASK:  Yes.

21          THE COURT:  -- said damages limited to $49,500.

22          So I am going to give an instruction to the jury that

23   the totality of the work during that period is not attributed

24   to the federal action, and that while there may have been work

25   of that extent during that time, it's still their job to

O88RHEF

1  determine what was attributed to the first federal action.

2  Okay?

3         MS. LASK:  Your Honor, how do we correct that he just

4  put in their heads it's a $72,000 case?

5         THE COURT:  I just told you I'm going to give an

6  instruction to correct it.

7         MR. DOLLINGER:  Your Honor, with that -- pardon me.

8  With that option, as long -- you know the ruling from the Court

9  of Appeals from Judge Preska is very interesting, because they

10  didn't use the word "limited."  They used the words "connected

11  with," okay?  I think that's a very broad, broad term, and I

12  think the Court was well aware of what was going on here.

13         They saw -- Judge, they actually saw the invoices and

14  they recognized what needed to be done here.  All we're looking

15  for is to make the plaintiff whole again, and that period, as

16  you've instructed, was from the 24th of October, '12, to

17  February 4th, '13.

18         And, your Honor, the 49,000 that you pointed out,

19  while I agree with it in part, I'd also like the Court to

20  consider the following:  That the amendment can be made based

21  on the circumstances and the proof presented at trial relative

22  to damages.  And I believe that we've established that that

23  proof is the $72,000 and not the 49,000, because the Court is

24  effectively limiting what the jury has a right to determine.

25         MR. LONERGAN:  Judge, I really just want to pick up on

O88RHEF

1    that.  One of the reasons that it went -- in writing the

2    closing, that that occurred to me was Attorney Lask's own

3    statements on this trial about how intertwined all the work

4    was.  That was her testimony.  She had everything melding

5    together.  So how is -- and she said in her direct testimony

6    that she was working on all of these matters at the same time,

7    and that they all affected each other.  So when I'm writing

8    this closing and I'm looking at this in connection with -- I

9    said, well, look, argument certainly can be made that

10   everything was -- that everything that Attorney Lask was doing

11   was related, it was in connection with the federal complaint.

12   Again, as much because that was a curative pleading, they will

13   uncure the pleading in the sense it was looking to address what

14   was happening in the state court in the custody, in the divorce

15   proceedings.

16           That's really where that came from, Judge.  It did not

17   come from whole cloth.  I listened to the testimony, and that's

18   really where it took me on my closing.

19           MS. LASK:  Your Honor, my testimony was not that at

20   all.  It was intertwined, but I also testified I wasn't going

21   to double bill her, the majority of work was Article 78.  Then

22   I took the Article 78, put it into the appeal, and was drafting

23   the same complaint at the same time.

24           The Article 78 -- all the work to get to the 78 was my

25   testimony that to do it I had to go through all the transcripts

O88RHEF

1    and everything.  I wasn't going to double bill her.  So that

2    was not my testimony, number one.

3         Number two, their testimony, and they put in front of

4    the jury that the upper limit that you ordered -- they never

5    said 72,000, and he just put it in their head.  So, you know,

6    their own exhibit in there and their own testimony, nothing

7    changed.

8         THE COURT:  Okay.  What I think is appropriate is

9    because that 72,000 figure and the argument that everything in

10   that period was attributable to the federal complaint is a new

11   argument that has only come out in closing, and that is not the

12   evidence that's before the Court -- the testimony from the

13   plaintiff was that she was attributing 62 hours, 40,300, to the

14   federal complaint, and I do not think it is appropriate in

15   closing to have raised that for the first time.

16        So I am going to give an instruction.  Just give me a

17   minute to write it out.

18        All right.  I'm going to give the following

19   instruction:  During closing, you heard plaintiff's counsel

20   refer to a figure of $72,000.  That refers to the total amount

21   charged for all of the work Ms. Lask performed from October 24,

22   2012, to February 4th, 2013.  Plaintiff's claim is only for the

23   subset of the work that was performed in connection with the

24   first federal complaint.  I remind you that plaintiff testified

25   to a summary of hours pertaining to what she attributed to the

O88RHEF

```
 1   first federal complaint.  That's Plaintiff's Exhibit Three.
 2             MS. LASK:  Your Honor.
 3             THE COURT:  Yes.
 4             MS. LASK:  And could we summarize and give them the
 5   number in Exhibit Three, the number that --
 6             THE COURT:  I'm going to refer them to Exhibit Three.
 7   They can figure that out.  They have it in the testimony as
 8   well.
 9             MS. LASK:  Your Honor, his referring -- all work
10   performed subject to claim, her claim is only to the first --
11   he testified -- no one sat here, we didn't calculate that, we
12   do not know if that number, 72K, is a number -- if that's the
13   total.
14             MR. DOLLINGER:  He just --
15             THE COURT:  That's also a valid point.
16             MS. LASK:  Yeah.
17             THE COURT:  I will adjust this accordingly.  That
18   refers to the total amount that --
19             MR. LONERGAN:  Your Honor.
20             THE COURT:  Hold on.  To a total amount charged that
21   plaintiff's attorney said was charged.  His testimony about
22   that is not evidence.  You, the jury, can make your own
23   calculations.
24             MR. LONERGAN:  Your Honor, that's exactly what I told
25   them.
```

O88RHEF

1          MS. LASK:  It doesn't matter.

2          MR. LONERGAN:  I said, this is my calculation.  It's

3     in evidence, it's a matter of tallying them out.  And I said,

4     go ahead and --

5          MR. DOLLINGER:  Do it yourself.

6          THE COURT:  I want to make sure they understand from

7     the Court --

8          MR. LONERGAN:  Thank you, Judge.

9          THE COURT:  From the Court, that that's an

10    instruction.

11          Okay.  We're going to move on to another issue that

12    Ms. Lask raised.  She raised concerns about the so-called

13    underlying data and whether it was corroborated or not.  Again,

14    that's fair game.  The Court has never ruled that the plaintiff

15    couldn't question the reliability or authenticity of that

16    document.  In terms of questioning Ms. Lask about it, they

17    chose not to take a deposition, but they asked questions about

18    it here at trial, which they're allowed to do.

19          With respect to the burden issue, as I have explained

20    in the instructions repeatedly, and as counsel has themselves

21    noted, including Mr. Ferrante I believe in his closing, the

22    burden is on Ms. Lask to show what portion of the charges

23    attributed to the first federal action were reused for the

24    second federal action.  If that's going to be based on her

25    underlying notes, then it is her obligation to -- if there is

O88RHEF

1    any additional information she had wanted to bring about those

2    notes, to bolster them, she could have.  So I don't think

3    anything needs correcting there.

4            I do have more of a question, though, about the first

5    issue she raised, which is the burden to produce the billing

6    for the second federal action, and what I can't recall,

7    although Ms. Lask has alluded to this, Ms. Lask, you have

8    suggested that there was a previous ruling in regard to billing

9    records that may relate to the federal action.

10            What are you referring to?

11            MS. LASK:  On July 24, 2023, when we spent about two

12    and a half hours, they actually started talking about billing,

13    and you said the burden of proof is yours, and the only burden

14    of proof for defendant is to show what was in the first and the

15    second.  And -- in fact, because I remember Mr. Dollinger said,

16    you mean burden of persuasion, and you said no, defendant's

17    burden of proof is only this.  And he started this morning

18    again --

19            THE COURT:  But you just said you referred to both the

20    first and second federal action, it was your burden to show

21    what in the first was reused in the second.

22            MS. LASK:  But not by billing.

23            THE COURT:  Whether it's billing or not, I'm asking,

24    was there a ruling --

25            MR. DOLLINGER:  No.

O88RHEF

| | |
|---|---|
| 1 | THE COURT: -- that said billing entries that were |
| 2 | sent to the plaintiff or underlying data for that came at a |
| 3 | later period in connection with the second federal action could |
| 4 | not be presented?  I don't believe I gave such an instruction. |
| 5 | MS. LASK:  No, there was a ruling -- no.  But I think |
| 6 | it's very confusing when he starts saying her burden was to |
| 7 | bring the bills in and she didn't, and it's not my burden. |
| 8 | THE COURT:  Again, with respect to the part about |
| 9 | deducting what may have been reused, I've made that clear. |
| 10 | It's in the instructions.  Your own counsel confirmed it.  It |
| 11 | is your burden, and if those bills could have helped show that, |
| 12 | which they might have been relevant to, then you could have |
| 13 | dealt with that and produced them.  So that was fair game. |
| 14 | I am not giving an instruction about that, although I |
| 15 | will be giving instructions about the burden of proof for sure. |
| 16 | MR. DOLLINGER:  Can I go back?  May I ask one |
| 17 | question? |
| 18 | THE COURT:  Yes, Mr. Dollinger. |
| 19 | MR. DOLLINGER:  Your Honor, I don't like to belabor |
| 20 | things, but you yourself presented and created a window.  The |
| 21 | 49,000, which is what you suggested was the amount in that |
| 22 | period -- do you recall that 49,000 in damages? |
| 23 | THE COURT:  Yes.  Go ahead. |
| 24 | MR. DOLLINGER:  Okay.  My apologies. |
| 25 | So when I calculated this, I took out that difference |

O88RHEF

1  assuming I was able to do as the Court of Appeals noted "in

2  connection with."  So I'm asking the Court say, well, maybe it

3  shouldn't exceed 49,000, okay?  That would seem to me to be

4  more reasonable than to just simply say, well, let's limit it

5  to only what's happened in the federal, because, again, they

6  themselves raised it.  It's not a huge sum of money, but $9,000

7  is $9,000.

8       THE COURT:  I'm not referring to 40.  I am not

9  referring to 49.  I am simply referring to the exhibit that you

10  provided.

11       MR. DOLLINGER:  Yes, sir, but what I'm asking, are you

12  limiting it to that amount?

13       THE COURT:  I am not giving them instruction that they

14  are limited to that.

15       MR. DOLLINGER:  Oh.  Thank you, your Honor.

16       MS. LASK:  Your Honor, I thought your Honor's order

17  limited the upper limit.

18       THE COURT:  It said that was the amount claimed by the

19  plaintiff, and there's a credibility issue now about which

20  entries pertain to the federal action.  I'm not going to say

21  that there's a specific limit, and no one asked for that in

22  the instructions, so I'm not giving it.

23       I think we can bring back in the jury if there's not

24  anything else.

25       Mr. Ferrante?

O88RHEF

1           MR. FERRANTE:  Can I use the restroom, your Honor?

2           THE COURT:  Yes.  Go ahead.

3           (Recess taken.)

4           THE COURT:  You can bring back the jury.

5           (Continued on next page)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

O88RHEF

1           (In open court; jury present)

2           THE DEPUTY CLERK:  All rise.  Jury entering the

3    courtroom.

4           THE COURT:  All right.  Everyone please be seated.

5           Before I deliver the full set of instructions that I

6    am going to give you, I want to address something that was said

7    in plaintiff's closing.  During closing, you heard counsel for

8    Ms. Karn refer to a figure of $72,000.  That refers to the

9    total amount of time that he said was charged for all of the

10   work Ms. Lask performed from October 24, 2012, to February 4th,

11   2013.  His testimony, or his statement, I should say, about

12   that amount is not evidence.  You, as the jury, will make your

13   own determinations.

14          Plaintiff's claim is only for the subset of that work

15   that was performed in connection with the federal complaint.  I

16   remind you that plaintiff testified to a summary of what she

17   said she attributed to the first federal complaint, and that's

18   Plaintiff's Exhibit Three, which you will get with all the

19   other exhibits.

20          All right.  Members of the jury, we now come to that

21   portion of the trial where you are instructed on the law

22   applicable to the case and you then retire for your final

23   deliberations.

24          You have now heard all the evidence introduced by the

25   parties, and through arguments of their attorneys you have

1    learned the conclusions that each party believes should be

2    drawn from the evidence presented to you.  I remind you again,

3    the only issue you're being asked to decide is damages.

4           This charge, that is, the instructions I'm going to

5    give you are divided roughly into two parts.  Most of them

6    pertain to general principles of law that apply in most civil

7    cases, including this one, and then I have some instructions

8    specific to the damages issue.

9           As I warned you at the outset, many of these

10   instructions are going to be the same as what you heard before

11   we embarked upon opening statements and the evidence.  However,

12   there will be some new material, particularly near the end, so

13   please listen to everything I say.

14          It is basic to the administration of any system of

15   justice that the decision on both the law and the facts be made

16   fairly and honestly.  As jurors, you are here to administer

17   justice according to the law and the evidence.  You are to

18   perform this task with complete fairness and impartiality, and

19   without bias, prejudice, or sympathy for or against the

20   plaintiff or the defendant.

21          As the jurors, your fundamental duty is to decide from

22   all the evidence that you heard and the exhibits that have been

23   submitted what the facts are.  You are the sole, exclusive

24   judges of the facts.  You pass judgment upon the weight of the

25   evidence.  You determine the credibility of the witnesses.  You

O88RHEF

resolve such conflicts as there may be in the testimony, and
you draw whatever reasonable inferences you decide to draw from
the facts as you have determined them.

On the other hand, and with equal emphasis, you are
required to accept the law as it is given to you in this charge
and in any other charges.  That is, instructions that I've
given to you during the course of the trial.  Whether you agree
with the law as given by me or not, you are bound by it.

The process by which you arrive at your verdict is,
first, to decide from all the evidence what the facts are; and,
second, to apply the law as I give it to you to the facts as
you have decided them to be.  The conclusion thus reached will
be your verdict.

So I'm now going to explain what is included in
evidence and what is not.  The sworn testimony of the
witnesses, regardless of which side called them, or called the
witness, is evidence.  The evidence also includes all the
exhibits received in evidence, regardless of which party
produced the exhibit.  Some exhibits are designated as
plaintiff's exhibits.  Some as defendant's exhibits.  That is
for administrative purposes only, and you should not draw any
inference from whether an exhibit is identified as a
plaintiff's or defendant's exhibit.

The defendant also included the factual stipulation
that I read you at the outset of the case and that you must

O88RHEF

1    take as true for purposes of the case.  I'm going to read the

2    stipulation again.

3              The stipulation was that all amounts charged by the

4    defendant for services rendered in connection with legal

5    matters relevant to the events at issue in this trial were paid

6    in full by the plaintiff.

7              The evidence also includes any facts or events I took

8    judicial notice of.  You must accept them as true for purposes

9    of the case even though no direct evidence has been introduced

10   proving them to be true.

11             By contrast, certain things are not evidence and may

12   not be considered by you in reaching a verdict.  These include

13   the following:

14             First, statements, arguments and questions by the

15   lawyers are not evidence, nor are my own statements to you.

16             Second, objections by the lawyers are not evidence.

17   The lawyers have an obligation to their clients to make an

18   objection when they believe evidence is offered improperly

19   under the Rules of Evidence.  The Court's ruling on an

20   objection should not influence you.  If I sustained the

21   objection, then you should ignore the question asked.  If I

22   overruled the objection, then you should treat the answer like

23   any other.

24             Third, testimony that the Court has stricken or told

25   you to disregard is not evidence and must not be considered.

O88RHEF

1   Sometimes evidence may be admitted for a limited purpose.  If I
2   instructed you that an item of evidence is received for a
3   limited purpose only, you must follow that instruction.

4           Fourth, statements that I may have made concerning the
5   evidence are not evidence.  Nothing that I say or did during
6   the course of the trial is intended to indicate and should not
7   be taken by you as indicating what your verdict should be.

8           Lastly, anything you may have seen or heard outside
9   the courtroom is not evidence and must be disregarded.  You are
10  to decide the case solely on the evidence presented here in the
11  courtroom.

12          As I said, you are to consider only the evidence in
13  the case, but in your consideration of that evidence, you are
14  not limited to the testimony and exhibits and the evidence I
15  just described to you.  You are permitted to draw reasonable
16  inferences based on facts that you find have been proved.
17  Inferences are deductions or conclusions that reason and common
18  sense lead you to draw from facts that have been established by
19  the evidence in the case.  Inferences are not, however,
20  guesswork made without a reasonable basis in the evidence.

21          In drawing inferences, you should exercise your common
22  sense.  So, while you are considering the evidence presented to
23  you, you are permitted to draw from the facts you find to be
24  proven any reasonable inferences that you think are justified
25  in light of your own sense and life experiences.

O88RHEF

1          You are to consider both direct and circumstantial

2     evidence in reaching your verdict.  One kind of direct evidence

3     is witness testimony about something they know by virtue of

4     their senses, something they have seen, felt, touched or heard.

5     Direct evidence may also be in the form of an exhibit.

6          Circumstantial evidence is evidence that tends to

7     prove one fact by proof of other facts.  That is all there is

8     to circumstantial evidence.  You infer on the basis of reason

9     and experience and common sense from an established fact the

10     existence or non-existence of some other fact.

11          Circumstantial evidence is of no less value than

12     direct evidence.  It is a general rule that the law makes no

13     distinction between direct and circumstantial evidence, but

14     simply requires that you the jury decide the facts in

15     accordance with a preponderance of all the evidence, both

16     direct and circumstantial.

17          In deciding what the facts are, as I said, you will

18     consider all the evidence, but that does not mean you must

19     accept all evidence as true.  You must decide which testimony

20     to believe and which testimony not to believe.

21          You are the sole judges of the credibility of the

22     witnesses and the weight their testimony deserves.  You have

23     had the opportunity to observe the witnesses.  It is your job

24     to decide how believable each witness was in her testimony.

25     Your determination of the issue of credibility will depend upon

O88RHEF

the impression that the witness made upon you as to whether or
not that witness was telling the truth or giving you an
accurate version of what occurred.

You may choose to disbelieve all or part of any
witness's testimony.  Often, it is not what a person says but
how he or she says it that moves us.  In making that decision,
you may take into account any number of factors, including, but
not limited to, the following:  The witness's opportunity to
see, hear, and know about the events she described; the
witness's ability to recall and describe those things; the
witness's manner in testifying.  Was the witness candid and
forthright or did the witness seem as if she was hiding
something or being evasive or suspect in some way?  How the
witness's testimony on direct examination compared with her
testimony on cross-examination.  The reasonableness and
probability of the witness's testimony in light of other
evidence in the case.  Whether the witness has any possible
bias, any relationship to a party, in this case they are the
parties, and hostility towards any party, any motive to testify
falsely, or any possible interest in the outcome of the trial;
and whether a witness's testimony was contradicted by her other
testimony, the testimony of another witness, or other evidence.

In other words, what you must try to do in deciding
credibility is to size up the witness in light of her demeanor,
the explanations given, and all of the other evidence in the

O88RHEF

1    case.

2            Always remember you should use your common sense, your

3    good judgment, and your own life experience.  Inconsistencies

4    or discrepancies in the testimony of a witness or between the

5    testimony of different witnesses may or may not cause you to

6    discredit testimony.

7            In weighing the effects of a discrepancy, you should

8    consider whether it pertains to a matter of importance or an

9    unimportant detail, and whether the discrepancy results from an

10   innocent error or intentional falsehood.  If you find that any

11   statement made by a witness on the stand is false in whole or

12   in part, you may disregard the particular part you find to be

13   false, or you may disregard the witness's entire testimony as

14   not worthy of belief.

15           It is entirely within your discretion to judge the

16   credibility of the witnesses, to weigh the relative truth and

17   falsity of their testimony, and to determine the weight to be

18   given to their testimony as a whole.

19           The plaintiff, Ms. Karn, Margaret Karn, has the burden

20   to prove her claim for damages by a preponderance of the

21   evidence.  To establish a claim by preponderance of the

22   evidence means to prove that something is more likely so than

23   not so.  In other words, a preponderance of the evidence means

24   that there is evidence that when considered and compared with

25   the evidence opposed to it produces in your minds the belief

O88RHEF

that what is sought to be proved is more likely true than not true.

A preponderance of the evidence means the greater weight of the evidence. It does not mean the greater number of witnesses for each side or the greater length of the time taken by each side. Instead, you must make this determination based on the quality and persuasiveness of the evidence, the weight and effect it has on your minds.

In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is in balance or evenly divided between the parties, in other words, that it is equally probable that one side is right as it is that the other side is right, or that the evidence produced by the party having the burden of proof is outweighed by evidence against her claim, then you must decide that issue against the party having the burden of proof. So long as you find that the scales tip, however slightly, in favor of the party with the burden of proof, that what the party claims is more likely true than not true, then the element will have been proved by a preponderance of the evidence.

Some of you may have heard of proof beyond a

O88RHEF

```
1   reasonable doubt, which is the standard for a criminal trial.
2   That standard does not apply here, and you should put it out of
3   your mind.
4         I'm now going to provide substantive instructions
5   about the law of damages that you will be applying here.
6   Again, the only issue you are being asked to determine is the
7   amount of damages, if any, to be awarded.
8         Ms. Karn, the plaintiff, seeks an award of
9   compensatory damages.  Compensatory damages are meant to make
10  an injured party whole from the damage caused by a defendant's
11  wrongful actions.  A party is not entitled to a damages award
12  that would provide her with a windfall, that is, more than the
13  amount needed to make her whole.
14        As I've mentioned, the Court already has determined
15  that the defendant, Ms. Lask, was negligent in filing the first
16  federal action without providing appropriate research and
17  providing adequate advice.  You now will determine what losses,
18  if any, were incurred by Ms. Karn, the plaintiff, as a result
19  of Ms. Lask's negligence in failing to sufficiently research
20  and advise Ms. Karn in connection with the first federal
21  action.
22        In particular, your task is to determine the amount of
23  fees, if any, for which Ms. Karn should be reimbursed by
24  Ms. Lask because of Ms. Lask's negligence in connection with
25  the first federal action.  Put another way, you are to
```

O88RHEF

determine which fee, that's legal fees, if any, Ms. Karn would

not have paid but for Ms. Lask's negligence.  That requires you

to determine the work Ms. Lask performed in connection with the

first federal action between October 24, 2012, and

February 5th, 2013, which period of time we'll refer to as the

relevant time period.

You also will determine the amounts paid by Ms. Karn

for that work and the extent to which, if any, the work

Ms. Lask performed in connection with the first federal action

during the relevant period was also used for the second federal

action.  Ms. Karn is not entitled to recover fees paid for work

that Ms. Lask performed for the first federal action during the

relevant time period those were used in the second federal

action.

You have seen and heard evidence about the tasks

performed and legal fees billed by Ms. Lask for her legal

services.  The parties dispute which tasks during the relevant

time period were performed for the first federal action and the

extent to which, if at all, Ms. Karn benefited from those tasks

in connection with the second federal action, even though the

first federal action was dismissed.  As the fact finder, you

will resolve those disputes.

As plaintiff, Ms. Karn must prove that she incurred

actual damages.  Damages cannot be left to conjecture,

guesswork, or speculation.  However, proof of damages with

O88RHEF

1   absolute or mathematical certainty is not required.  Instead,

2   damages must be proven with a reasonable degree of certainty.

3           As the plaintiff, Ms. Karn must prove by a

4   preponderance of the evidence the amount of damages, if any,

5   caused by Ms. Lask's negligence.  The defendant, Ms. Lask,

6   however, must prove by a preponderance of the evidence, the

7   extent of work, if any, for the first federal action that was

8   reused in the second action.

9           All right.  What you're about to hear is entirely new,

10  although it may have certain things from before embedded in it,

11  but I can't promise.

12          You are about to go into the jury room and begin your

13  deliberations.  It is your duty as jurors to consult with one

14  another and deliberate with a view towards reaching agreement.

15  Each of you must decide the case for yourself, but you should

16  do so after consideration of the case with your fellow jurors.

17          You should not hesitate to change an opinion when you

18  are convinced that it is wrong.  Your verdict must be unanimous

19  on each and every question that you must decide.  In this case,

20  it is one question.  However, you are not bound to surrender

21  your honest convictions concerning the effect or weight of the

22  evidence for the mere purpose of returning a verdict or solely

23  because of the opinions of other jurors.

24          Discuss and weigh your respective opinions

25  dispassionately without regard to sympathy, without regard to

O88RHEF

1    prejudice or favor for either party, and adopt the conclusion

2    that in your good conscience appears to be in accordance with

3    the truth.

4            You may discuss the case only when all of you are

5    present in the jury room.  If only some of you are present, the

6    jury is not fully formed and cannot deliberate.

7            In the jury room, you will have access to the trial

8    exhibits.  If you want any witness testimony read back, you may

9    also request that.  Please remember that it is not always easy

10   to located what you might want, so try to be as specific as you

11   possibly can in making your request.

12           Your request for testimony, or any other communication

13   with the Court, should be made to me in writing, signed by your

14   foreperson, and I'll talk about that in a minute, along with

15   the date and time, and given to one of the court officers.  Do

16   not tell me or anyone else how the jury stands on any issue

17   until after an unanimous verdict is reached.

18           When you retire to the jury room, you should select

19   one member of the jury as your foreperson.  That person will

20   preside over the deliberations and speak for you in open court.

21   I have prepared a special verdict form for you to use in

22   recording your decision.  The verdict form is made up of

23   questions concerning the issues in the case.  Here there is one

24   question for you to answer on the verdict form.

25           The question reads:  What amount of damages, if any,

O88RHEF

do you find were caused by Defendant Lask's malpractice with
respect to the first federal action?

No inference is to be drawn from the way the verdict
form is worded as to what the answer should be.  The question
is not to be taken as any indication that I have any opinion as
to how it should be answered.

Before the jury attempts to answer the question on the
verdict form, you should read through the verdict form, it's
very short, and make sure everyone understands the question.
Before answering the question, you should deliberate in the
jury room and discuss the evidence that relates to the question
being answered.

When you have considered the question thoroughly and
the evidence relating to the question, you are to record your
answer on the verdict form in writing.  Remember, the answer
must be agreed upon by all of you.

After you have reached a verdict, your foreperson will
fill in the verdict form, sign and date it, and advise the
United States Marshal or other court officer outside your door
that you are ready to return to the courtroom.  Upon your
return, the verdict will be announced in open court.

Finally, I say this not because I think it is
necessary but because it is the custom in this courthouse.
Treat each over with courtesy and respect during your
deliberations, and see that justice is done all in accordance

O88RHEF

1    with your oath as jurors.

2            That concludes my instructions.  I think we have a

3    different court officer than the other day, so I'm going to

4    swear this court officer in for his obligation.

5            Can you raise your right hand?

6            (Court officer sworn)

7            THE COURT:  Thank you.

8            All right.  You may take the jury to the jury room.

9            My deputy, who always keeps me in mind, reminds me

10   that you may take your pads with you.

11           I also want to mention one thing.  As I said, you're

12   going to receive the exhibits.  Three of these are loose.  They

13   are the ones that have been marked Plaintiff's Exhibits Two,

14   Three, and Four.  Then I have a notebook that is marked

15   Defendant's Exhibits that has the exhibits that were used by

16   either party, even though it was marked as Defendant's

17   Exhibits.  Again, you should not draw any conclusion as to

18   whether it was marked as plaintiff's or defendant's.

19           THE DEPUTY CLERK:  All rise.  Jury exiting the

20   courtroom.

21           (Continued on next page)

22

23

24

25

O88RHEF

1             (In open court; jury not present)

2             THE COURT:  All right.  You may be seated.

3             So they're going to have lunch.  They've had lunch

4     delivered, or it's coming, so I imagine they'll eat that.

5             They don't have to do too much work I don't think, so

6     it's possible we'll get a verdict today.  I don't know.  But I

7     imagine they will want to be rather efficient.

8             So none of you may remain in the courtroom, but my

9     deputy, Ms. Shah, or someone else will get in touch with you as

10    soon as there's either a question from the jury or a verdict.

11    Please make yourselves readily available, and not far from

12    here, so that we don't have to keep the jury waiting if they

13    come back.

14            Thank you.

15            MR. LONERGAN:  Thank you.

16            (Recess taken)

17

18

19

20

21

22

23

24

25

O88RHEF

```
 1                        AFTERNOON SESSION

 2            MR. DOLLINGER:  Mr.  Lonergan wasn't well.  He asked

 3   if he could be excused.

 4            THE COURT:  All right.  So we have received a note

 5   from the jury that they have a verdict, and so, first, there

 6   was a note that said "we are missing the judgment form.  May we

 7   please have the verdict sheet?  Thanks."

 8            So they have had that, and they have apparently -- or

 9   we have been informed by our court officer that the jury has a

10   verdict.  So let's bring in the jury.

11                 (Continued on next page)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

O88RHEF

```
 1                    (In open court; jury present)
 2                    THE DEPUTY CLERK:  All rise for the jury entering the
 3     courtroom.
 4                    THE COURT:  All right.  Everyone be seated, please.
 5                    Who is the foreperson?
 6                    JUROR:  (Raised hand.)
 7                    THE COURT:  All right.  Has the jury reached a
 8     verdict?
 9                    JUROR:  We have.
10                    THE COURT:  Is it unanimous?
11                    JUROR:  Yes.
12                    THE COURT:  All right.  I would like to see it before
13     you read it.
14                    All right.  Madam foreperson, please read your
15     verdict.  Read the question and then the answer.
16                    JUROR:  What amount of damages, if any, do you find
17     were caused by Defendant Lask's malpractice with respect to the
18     first federal action?
19                    40,300.
20                    THE COURT:  That's dollars, right?
21                    JUROR:  Yes.
22                    THE COURT:  Okay.  $40,300.  That is the verdict of
23     the jury, and we have completed this trial.
24                    I'm going to ask you to go back in.  I'm going to come
25     speak to you for just a little bit.  I won't keep you long I
```

O88RHEF

1    promise.  That is it.

2            MR. DOLLINGER:  Thank you, your Honor.

3            THE COURT:  Counsel, you have a verdict.  It will be

4    posted.

5            We are adjourned.  Thank you.

6            THE DEPUTY CLERK:  All rise.

7            MR. DOLLINGER:  Your Honor.

8            THE COURT:  Hold on.

9            (Jury left the courtroom.)

10           MR. DOLLINGER:  Your Honor, during the course of the

11   trial, you've made certain rulings redacting information that's

12   on the public docket.  Okay.  And I support that, and that was

13   an error on my part.  But along with that, there are two

14   issues, the use of the minor's name in the pleadings, okay,

15   needs to be addressed, and I would ask that Ms. Lask diligently

16   redact her name and any identification to her.

17           The second issue is we've contacted the New York Post.

18   They will remove -- because she was a minor at the time, they

19   will remove the articles that are there that were the result

20   of, you know, a comment -- an agreement between Ms. Lask and

21   the client to go to the newspapers, but they improperly used

22   the minor's name and information.  If I could prepare an order,

23   as long as Ms. Lask doesn't object, they've said we should

24   submit the order to the Court and they will remove it.  But

25   they can't remove it without a Court order.

O88RHEF

| | |
|---|---|
| 1 | THE COURT:  All right.  I'll leave it to the parties |
| 2 | to meet and confer about that, and, yes, you can submit |
| 3 | something if you have a proposal. |
| 4 | In terms of redacting the child's name, are you |
| 5 | referring to the exhibits? |
| 6 | MR. DOLLINGER:  They're throughout the pleadings, |
| 7 | Judge. |
| 8 | THE COURT:  Okay. |
| 9 | MS. LASK:  They are in their pleadings as well. |
| 10 | They've put it -- it's been ten years. |
| 11 | THE COURT:  You're saying from the beginning of the |
| 12 | case? |
| 13 | MS. LASK:  Yes.  It's even in plaintiff's. |
| 14 | THE COURT:  That's been a long time.  Cat's out of the |
| 15 | bag way too much.  If there's some basis you have in the law, |
| 16 | meet and confer and you can write to me. |
| 17 | MR. DOLLINGER:  That's what I'll do, your Honor. |
| 18 | THE COURT:  Okay.  I'm going to ask counsel and the |
| 19 | parties not to speak to the jury. |
| 20 | MR. DOLLINGER:  Okay. |
| 21 | MS. LASK:  Your Honor, motions -- the second Rule 50 |
| 22 | motion you want in writing? |
| 23 | THE COURT:  Do you mean the motion you already made or |
| 24 | post-trial motions? |
| 25 | MS. LASK:  The 50(b). |

O88RHEF

 1              THE COURT:  What you already made, you don't need to

 2      remake.  You made it on the record.  If you have something

 3      else, you can submit it in writing.

 4              Do you have an application now, though?

 5              MS. LASK:  Well, the 50(b) is usually made in writing.

 6              THE COURT:  Yes.  That's fine.

 7              MS. LASK:  Is there a time period you want to see

 8      anything?

 9              MR. DOLLINGER:  Yes.

10              THE COURT:  Do you have a proposal?

11              MS. LASK:  I need a lot of time.  There are a lot of

12      transcripts to go through.  I need about a month.

13              THE COURT:  Mr. Dollinger?

14              MR. DOLLINGER:  Your Honor, within a week of receiving

15      whatever the motions are, 14 days.

16              THE COURT:  Okay.

17              MR. DOLLINGER:  The other issue, Judge, would be fees,

18      total fees.

19              MS. LASK:  Your Honor.

20              MR. DOLLINGER:  It's 14 days, but, you know, can I

21      approach your Honor on this with Ms. Lask, her attorney?

22              THE COURT:  Well, actually, I'm going to ask you all

23      to stay.  I'm going to not keep the jury.  I'm going to speak

24      to them and be right back.

25              MR. DOLLINGER:  Yes.

O88RHEF

```
 1              (Recess taken.)
 2              THE COURT:  I think the jurors are getting ready to
 3    leave, so I'll just wait.
 4              All right.  The door's closed, so we will --
 5              MR. DOLLINGER:  Excuse me, Judge.  I'm sorry.
 6              THE COURT:  So we were discussing the 50(b) motions,
 7    et cetera.  So, Ms. Lask, you were asking for 30 days, that's
 8    fine.
 9              Mr. Dollinger, how much time would you like after
10    that?
11              MR. DOLLINGER:  Thirty days for the Rule 50.
12              THE COURT:  All right.  If there's going to be a reply
13    --
14              MS. LASK:  Your Honor, may I have a little longer?  I
15    just realized I have an appeal between that.  May I have 45
16    days, and he has 30 days to reply?
17              THE COURT:  Mr. Dollinger, do you have a view on that?
18              MR. DOLLINGER:  I don't.
19              THE COURT:  All right.  So 45 days it is, and then
20    you'll have 30 days afterwards.  That's okay?
21              MR. DOLLINGER:  For fees?
22              THE COURT:  No.  Hold on.  We'll get to that.  This is
23    the motion on the 50(b), and then if there's going to be a
24    reply, it's going to be 14 days after that.
25              MR. DOLLINGER:  Okay.
```

O88RHEF

1              THE COURT:  Now, on attorneys' fees.

2              MR. DOLLINGER:  It's usually 14 days, Judge, but I

3     have a -- can I ask that that be enlarged?

4              THE COURT:  Yes.

5              MR. DOLLINGER:  Okay.  Also to 30 days, please.

6              THE COURT:  Okay.  So 30 days for an attorneys' fees

7     application, and then --

8              MS. LASK:  Your Honor, if I may, under what rule of

9     law are attorneys' fees when this is American rule -- I know at

10    one point you thought that, we talked about this, there was a

11    case.  But attorneys' fees in legal malpractice only come when

12    a case went wrong, like the attorney forgot to file and then

13    the other attorney comes back in and fixes it.

14             THE COURT:  Yes.  I have no idea if fees are entitled

15    or not.  I'm just saying if he has an application, he'll make

16    his application, which has to be done in good faith.  But I'm

17    not making a ruling one way or the other right now.

18             MS. LASK:  Right.  Right.

19             THE COURT:  I said that was after trial.

20             MS. LASK:  Sanctions motions you said as well after

21    trial.

22             THE COURT:  If there is a sanction motion that is

23    being made or that's already on file -- which sanction motion?

24             MS. LASK:  I wanted to file my sanctions a little

25    while ago for certain things that were happening, and you said

O88RHEF

1    let's wait until after trial.

2             THE COURT:  Is there going to be an application for

3    sanctions?

4             MS. LASK:  Yes, I think so.  I can do it around the 45

5    days.  I will try my best.

6             THE COURT:  There was one other issue that was being

7    preserved for post-trial and that was prejudgment interest, so

8    I need briefs on that.  Not all, but I need some briefing on

9    that.

10            MR. DOLLINGER:  Judge, one other issue.  I'm sorry.

11            THE COURT:  Yes.

12            MR. DOLLINGER:  As you know or as you recall, at the

13   time Judge Preska relieved or withdrew from the case, because

14   she had been stalked --

15            MS. LASK:  Your Honor, objection with this because --

16            THE COURT:  Okay.  Overruled.  But I know what's in

17   that -- it's fine.  It's attorneys' characterization.  I

18   understand the objection.  I would think the parties can be as

19   professional as possible and simply refer to Judge Preska's

20   ruling in that regard.

21            MR. DOLLINGER:  So, your Honor, there was a motion for

22   sanctions presented at the time by Mr. Craig.  By Mr. Craig,

23   okay?  That was withdrawn without prejudice before Judge

24   Preska.  Now, Mr. Craig's estate, okay, would like to get paid

25   for his portion of the legal fees, as well as the sanctions

O88RHEF

|    |    |
|---|---|
| 1 | fees that may be due, but I understand what you'll want from me |
| 2 | and I'll outline it in the motion. |
| 3 | THE COURT: Yes. That's part of your application. |
| 4 | MR. DOLLINGER: Thank you. |
| 5 | THE COURT: I'll make a ruling. |
| 6 | MS. LASK: I don't think Mr. Craig's estate is a party |
| 7 | to this. |
| 8 | THE COURT: I understand. Ms. Lask, you are making a |
| 9 | valid point. I just will take whatever motions or applications |
| 10 | that are being made. |
| 11 | So I assume that counsel will observe Rule 11, and |
| 12 | we'll see what that brings. |
| 13 | So I just want to make sure that we've covered |
| 14 | everything. So four things: The 50(b) motion, attorneys' |
| 15 | fees, prejudgment interest, and sanctions. I would like the |
| 16 | prejudgment interest issue briefed with the attorneys' fees, so |
| 17 | that will just be together, comprehensive. The 50(b), we have |
| 18 | a schedule. I would like to keep everything sort of on the |
| 19 | same track, so if I -- can you all -- well, 45 days for |
| 20 | Ms. Lask to file any of her affirmative applications. |
| 21 | Forty-five days for plaintiff to file for any affirmative |
| 22 | applications. Then you each have 30 days to respond, and each |
| 23 | have 14 days for a reply. Okay. |
| 24 | MS. LASK: So all of those motions are 45 days, even |
| 25 | the attorneys' fees and prejudgment interest? |

O88RHEF

```
 1                THE COURT:  Yes.  You can all allot your time as you
 2      see fit to making them.  Just for simplicity, I am setting
 3      everything on the same schedule.
 4                MS. LASK:  Is there a judgment filed before all this
 5      is done?
 6                THE COURT:  Before the 50(b)?
 7                MS. LASK:  Yes.
 8                THE COURT:  I do not believe so.
 9                MS. LASK:  So we wait until we get final decisions.
10      Okay.  I just wanted to know where we stand.
11                THE COURT:  Okay.  Anything else?
12                Mr. Dollinger?
13                MR. DOLLINGER:  No, your Honor.
14                THE COURT:  Ms. Lask?
15                MS. LASK:  Your Honor, in case -- because I have
16      several things, and I'm in the middle of some personal things
17      going on, and in case I need a little more time, 45 days here
18      or there --
19                THE COURT:  No.  It's a strict date.
20                MS. LASK:  It's a strict date for both parties?
21                THE COURT:  There's been so much leeway given
22      around --
23                MS. LASK:  Then their 45 days is definite?
24                THE COURT:  Yes.  That's the schedule.
25                MS. LASK:  Okay.  Good.
```

O88RHEF

1     THE COURT:  All right.  Mr. Ferrante?

2     MR. FERRANTE:  No.  I want to thank the Court.

3     THE COURT:  All right.  Look, we've had I would say

4  some difficult times during trial and I certainly wasn't happy

5  with how things unfolded, and I think it's both a matter of --

6  some of it's preparation, like having everything ready to go,

7  having copies for each other, things of that nature.  I know

8  there's animosity between folks here, and you just need to be

9  able to keep that at bay.  Everyone just needs to keep in mind

10  rule number one, like Ms. Lask said earlier, but, nevertheless,

11  I am glad to have had trial with you.  I don't think my deputy

12  would ever think those words would ever come out of my mouth,

13  but I always enjoy trial and it's always different.

14     In any event, I'll look forward to your briefing.

15     MS. LASK:  Your Honor, while we're all here, there is

16  that other case you took on.

17     THE COURT:  Yes.

18     MS. LASK:  And I don't know how it fell before you of

19  all people in the magistrates, but it fell before you.

20     THE COURT:  Yes.  The motion for remand that's

21  currently on file.

22     MS. LASK:  Right.

23     THE COURT:  That's under consideration.

24     MS. LASK:  Of course.  I'm going to add something to

25  it, because I found Mr. Dollinger's address that actually is

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O88RHEF

1    his address that he denied in his papers.  But to keep it

2    quick, is it something you feel comfortable having that case,

3    too, after all of this?

4                THE COURT:  Of course.

5                MS. LASK:  Because I'm not sure I feel comfortable.  I

6    like you.  I think you're great, but --

7                THE COURT:  Likewise.  I'm entirely neutral.

8                MS. LASK:  Don't look at me like that.  Don't make

9    faces.

10                THE COURT:  Look, please, if you want to ask me to ask

11    her, address it to me, Ms. Lask.

12                MS. LASK:  Yes, Judge, please.  She's squinting.

13                THE COURT:  As I said, she was entitled to look

14    before.

15                But, Ms. Rhee-Karn, just for purposes now, just keep

16    forward looking.

17                I'm neutral.  I feel the same towards both parties,

18    completely neutral.  I never dislike a person because of what

19    goes on in my courtroom, and I'm very forgiving, let's say.

20    Things don't stick with me in that way.  So I respect everybody

21    here, and I see no problem in my handling the other matter.

22                MS. LASK:  But how did it get to you directly is what

23    I'm asking.

24                THE COURT:  Oh, I don't know.

25                MS. LASK:  They spun a wheel?  You got it?

O88RHEF

1          THE COURT:  I honestly don't know, so --

2          MS. LASK:  Because what I'm saying is one time I had a

3     case and when he filed another case, a long time ago, Mr.

4     Dollinger, and that was completely dismissed, the same judge --

5     I had another case, completely unrelated, and it fell before

6     the same judge.  It was Judge Daniels.  And he said, Ms. Lask,

7     do you want me to recuse myself, you know, because there's this

8     malpractice in front of me.  And I said no at that point

9     because it was a different situation, but I'm not -- you know,

10    when he made me that offer I was wondering why -- I'm supposing

11    you think you could be neutral, but for me I think it's hard

12    after seeing all this.

13         THE COURT:  Frankly, it didn't occur to me that there

14    would be an issue.

15         Question, I can't remember, when it was removed,

16    Mr. Dollinger, did you mark it as related?

17         MR. DOLLINGER:  I did, yes.

18         MS. LASK:  That's what happened.

19         THE COURT:  So --

20         MR. DOLLINGER:  No.  No.  My apologies, your Honor.

21    You're talking about when we brought the --

22         THE COURT:  When this case was removed -- not this

23    case.  The other case was removed.

24         MR. DOLLINGER:  You mean the state court case was

25    removed here?

O88RHEF

1           THE COURT:  Yes.

2           MR. DOLLINGER:  I didn't indicate it was related in

3     any way, because I don't believe it is.

4           THE COURT:  Okay.

5           MR. DOLLINGER:  But that's -- again, I see no reason

6     why the Court should recuse itself.  I think the Court has

7     shown clear even handedness in every way since the beginning of

8     this case, including yelling at me pretty regularly.

9           MS. LASK:  I'll be a little more clear.

10          THE COURT:  Yes.  Go ahead.

11          MS. LASK:  Because a part of the underlying -- that

12    state case, that involved a big part of it that Mr. Dollinger

13    brought into this case and started complaining -- look, Judge,

14    she said magistrate so and so said something, and that's why I

15    feel uncomfortable.  And then I had to write back and say, we

16    didn't take it that way, but now that he's saying it, he

17    literally said that you made a statement.

18          THE COURT:  Right.

19          MS. LASK:  And I'm not saying that you're going to be

20    called as a witness.

21          THE COURT:  No.

22          MS. LASK:  No.  I saw attorneys do that in state

23    court.  They'd call a federal judge as a witness.  But they did

24    it.  I'm saying it involves you.  It involves statements you

25    made.  And it comes to a bit of, you know, prejudice, bias.

O88RHEF

1    Like you said today, I don't want the jury -- you know, my

2    reputation's on the line you said, I don't want them to

3    think -- when you took out civility in civil cases.  And it's

4    the same thing.  Would you be thinking, wait a minute, I was --

5    you know, that case had a statement.  When Ms. Karn called my

6    client and said all those bad things about me, and you had the

7    hearing and told her, you can't do this, and you did say what

8    Mr. Dudelson put in there.  It wasn't the exact words, but you

9    said it.

10          You got angry, and you wrote an order in this case,

11   and it was basically like, how dare you.

12          THE COURT:  No, I didn't get angry.  I simply was

13   being objective, to make the record clear that that was not

14   what I said, the way it was articulated in what was before me.

15   So I was just setting the record straight.

16          MS. LASK:  But --

17          THE COURT:  You are certainly free to ask me to recuse

18   myself, and -- hold on.  I'm sorry.

19          I'm not going to deprive you of that opportunity if

20   you're making a motion.

21          MS. LASK:  Yeah.  Just don't say I'm stalking, because

22   when I did the motion with Judge Preska, that's the response I

23   got.  I mean, that's my joke right now, but it was horrible.  I

24   don't want you to do it to be disrespectful to you.

25          THE COURT:  I understand.

O88RHEF

1          MS. LASK:  I just want to protect myself.

2          THE COURT:  I understand.

3          Again, I don't think there really is an issue.  I

4 don't see any way that comes in as relevant or not to the

5 merits of anything or anything that would be litigated.  But,

6 Ms. Lask, I'll take your request under advisement and I'll give

7 it some consideration, okay?

8          MS. LASK:  I appreciate it.  Yes, I do.

9          THE COURT:  Okay.  Anything else?

10         MR. DOLLINGER:  Nothing.  Thank you.

11         THE COURT:  We are adjourned.  Thank you.

12         (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25