UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

MARGARET RHEE-KARN,

                     Plaintiff,                   Case No.: 15-9946   LWR

        vs.

 SUSAN CHANA LASK, ESQ.,

                    Defendant.

_____


**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE TO THE
DEFENDANT'S RULE 50 & 59 MOTION FOR DISMISSAL OR A NEW TRIAL**


Respectfully submitted:


Douglas R. Dollinger, Esq. NYS Bar Code 2354926
Law Offices of Douglas R. Dollinger, PC
570 County Rt 49
Middletown, New York 10940
Telephone  845.741.9363
Email: ddollingeresq@gmail.com
Attorney for Plaintiff

# TABLE OF CONTENTS

**Section**                                                                  **Page**

**I. PRELIMINARY STATEMENT** ……………………………………………………...1

**II. ARGUMENTS** …..……………………………………………………………… 2

A. **The Docket & Trial Evidence Confirm the Plaintiff
   Timely Commenced Her Malpractice Action** …………….…………………..2

   1.      1. Legal Standard—New York's Continuous Representation Doctrine………......3

           2. Argument-Lask Represented Karn until at least March of 2014………………4

B. **Defendant's Failure to Timely Raise Her Argument that the
   Legal Malpractice Cause of Action was Time-Barred** …………………………5

   1. The Defendant's Failure to Raise Her Statute
      Of Limitations Defense in Her Pretrial Motion …………………………………5

   2. Legal Standard—Waiver of Limitations Defense …………………………….6

   3. Argument—Plaintiff's Claim Is Barred, It Was
      Not Raised in the Defendant's Pretrial Motion ……………………………….6

   4. The Defendant Waived Her Limitations
      Defense Under Rule 50(a)(1) …………………………………………………7

   5. Legal Standard Rule 50(a)(1) …………………………………………………8

   6. Argument—Defendant's Motion Did
      Not Address the Limitations Defense …………………………………………8

C. **Defendant's Statute of Limitations Defense Was Defectively Pled** …………………9

   1. Defendant's Shotgun Pleading Is
      Unacceptable in the Second Circuit …………………………………………9

   2. Legal Standard—The Shotgun Approach Has Been Rejected …………………9

   3. Argument—The Answer Failed to Assert Plausible Facts …………………10

D. **The Jury's Verdict Is Supported by the Record Evidence** …………………………12

   1. Plaintiff Presented Legally Sufficient
      Evidence to Support the Verdict …………………………………………12

i

## TABLE OF CONTENTS CONT.

**Section**                                                                                    **Page**

    2. Legal Standard—Rule 50(a)(1) ...................................................................12

    3. The Record Lacks Evidence to Support a Windfall or Offset ........................................12

    4.        Argument—The Jury Properly Determined Witness Credibility ........................13

**E. The Rule 59 Motion Should Be Denied—No Miscarriage of Justice** ...............................17

    1. The Verdict Does Not Constitute
        Miscarriage of Justice ...............................................................21

    2. Legal Standard—Rule 59(a) …………………................................................22

    3. Argument—No Erroneous Ruling or Misunderstanding
        of Defendant's Theory ...............................................................23

**F. Defendant's Claims of Misconduct by Plaintiff
or Her  Counsel  Do Not Justify a New Trial** ...............................................19

    1. Defendant's Claim of Misconduct Lacks Merit—No Prejudice ...................................19

    2. Legal Standard—Trial Was Fair to the Defendant ...............................................19

    3. Argument—Damages Award Not Impacted; No Prejudice ........................................19

    4. Attorney Lonergan's Closing Remarks Were Fair Comment ....................................23

**III. CONCLUSION** ...............................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                **Page**

*Bridgeforth v. Zerafa* (No. 16-CV-273, 2018 WL 11217202,
    at \*1 (S.D.N.Y. Nov. 19, 2019)…………………………………………....………6

*Carlson v. Northwell Health Inc*., 20 CV 9852 (LAP), (S.D.N.Y. May 2, 2022)……………7, 14

*Commerce Funding Corp. v. Comprehensive Habilitation Servs., I*nc.,
    No. 01 Civ. 3796 (PKL), 2005 WL 1026515 (S.D.N.Y. May 2, 2005)………..………8

*Correa v. Hosp. San Francisco*, 69 F.3d 1184 (1st Cir. 1995)…………………………… 7

*Creative Rest., Inc. v. Dyckman Plumbing & Heating, Inc*.,
    184 A.D.3d 803, 126 N.Y.S.3d 498 (2020)…..……………………………………4

*Deep v. Boies*, 53 A.D.3d 948, 863 N.Y.S.2d 269 (2008)…………………………………....6

*Duro-Last, Inc. v. Custom Seal, Inc*. (footnote 7),
    321 F.3d 1098 (Fed. Cir. 2003)……………………………………………………13

*GEOMC Co. v. Calmare Therapeutics Inc.,* 918 F.3d 92 (2d Cir. 2019)…………..…...10, 13 14

*Hernandez v. Keane,* 341 F.3d 137 (2d Cir. 2003)…………………………………………14

*ING Global v. UPS Oasis Supply Corp.,* 757 F.3d 92 (2d Cir. 2014)…………………………14

*Kim v. Hurston*, 182 F.3d 113 (2d Cir. 1999)…………………………………………....14

*Kirsch v. Fleet Street, Ltd*., 148 F.3d 149 (2d Cir. 1998)……………………………..,,,11, 12

*Koufakis v. Carvel*, 425 F.2d 892 (2d Cir. 1970)……………………………..…………14

*Kulzer v. Pittsburgh-Corning Corp.,* 942 F.2d 122 (2d Cir. 1991)………………………8

*Lambert v. Genesee Hosp.,* 10 F.3d 46 (2d Cir. 1993)……………………………………11,12

*Manley v. AmBase Corp*., 337 F.3d 237 (2d Cir. 2003)……………………………..……21

*Matter of Lawrence,* 24 N.Y.3d 320, 998 N.Y.S.2d 698, 23 N.E.3d 965 (2014)……..………4

*McCardle v. Haddad,* 131 F.3d 43 (2d Cir. 1997)………………………………..…….11, 12

*McCoy v. Feinman*, 99 N.Y.2d 295, 755 N.Y.S.2d 693, 785 N.E.2d 714 (2002)..……………...3

*Metromedia Co. v. Fugazy*, 983 F.2d 350 (2d Cir. 1992)……………………,,,.......................21

*Ordos City Hawtai Autobody Co., Ltd. v. Dimond Rigging Co., LLC,*
    695 F. App'x 864 (6th Cir. 2017)………………………………………………..8

*Parker v. Columbia Pictures Indus*., 204 F.3d 326 (2d Cir. 2000)…....………….…………6

*Piesco v. Koch*, 12 F.3d 332 (2d Cir. 1993)....................................................................14

*Potthast v. Metro-N. R.R. Co.,* 400 F.3d 143 (2d Cir. 2005)………………………..……7,8, 14

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000)………………………..…14

*Samuels v. Air Transport Local* 504, 992 F.2d 12 (2d Cir. 1993)……………………..…….11

*Schechter v. Comptroller of City of N.Y.,* 79 F.3d 265 (2d Cir. 1996)…………………………13

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Shumsky v. Eisenstein,* 96 N.Y.2d 164, 726 N.Y.S.2d 365, 750 N.E.2d 67 (2001)………......…...3

*Smith v. Lightning Bolt Prods., Inc*., 861 F.2d 363 (2d Cir. 1988)……..………………..…...14

Tal Dagan MD PC v. Resolutions Billing & Consulting, Inc.,
    24-cv-632 (RA) (S.D.N.Y. Dec. 12, 2024) ...................................................................10

*Tolbert v. Queens Coll*., 242 F.3d 58 (2d Cir. 2001)…………………………………...…...16

*Twombly (Bell Atl. Corp. v. Twombly),* 550 U.S. 544 (2007)…………………...………...10

*Zorn v. Gilbert*, 8 N.Y.3d 933, 834 N.Y.S.2d 702, 866 N.E.2d 1030 (2007)……………....4

## Statutes & Rules

New York CPLR § 214……………………………………………………………...3, 5

Fed R. Civ, P, 12(f)…………………………………………………………………6
Fed. R. Civ. P. 50……………………………………………………*Passam*
Fed. R. Civ. P. 59……………………………………………………*Passam*

## I. PRELIMINARY STATEMENT

Following a two-day damages trial ending on August 8, 2024 **(T1–T3)[1],** the jury awarded Plaintiff Margaret Rhee-Karn ("Karn") ($40,300.00) in damages arising from payment of legal fees to the Defendant Susan Chana Lask ("Lask") for negligent handling of the so-called "First Federal Action" dismissing the Defendant's claim of a windfall to the Plaintiff in reusing portions of her previously used work product in a "Second Federal Action" **(T3 352–354; 420–421 referencing final instructions; verdict at 2; ECF 452.)**

Defendant now seeks to nullify the verdict, raising a statute-of-limitations defense not presented in her Rule 50(a)(1) Motion at trial, but instead claiming she is entitled to judgment as a matter of law. Alternatively, she seeks a new trial under Rules 50 and 59 for sufficiency of evidence on Plaintiff's case and *in the Plaintiff's failure to disprove her affirmative defense to a windfall;* the Court's error concerning her claim it misapplied the law concerning her theory that the fees generated to compose the "draft" of the First Federal Action were reused in the Second Action causing prejudice to her right to credit; as well as sanctions for misconduct on the part of Plaintiff's Counsel. None has merit. **(ECF 495-1-7.)**

This Court should dismiss the Defendant's statute of limitations argument outright because she did not raise the defense in her Motion for Summary Judgment; on appeal or during pretrial submissions concerning the jury charge, nor did she raise in her Rule 50(a)(1) Motion prior to the jury rendered its verdict and instead now asserts that the belated defense exists as matter of law. **(ECF 226 & 240; 361-378; Def. Mem. 495-1.)**

The Court gave its charge for damages for the relevant period of the negligent legal tasks as October 24, 2012, to February 5, 2013. The trial included Plaintiff's account of how she paid

---

[1] **Transcripts are attached for Trial dates Aug. 6-8, 2024. T1 Pgs,1-114, T2 Pgs. 115-346; T3 Pgs. 347-441.**

thousands in fees for the first federal lawsuit that never proceeded beyond a worthless filing (**T1 63:5–18; T3 381:21–25**) and that there was no benefit to her in the second federal action. Defendant's claimed that she was working on "multiple tasks" for Karn and that as testified by her because she reused the work product in the Second Federal Action, that Plaintiff would be receiving a windfall by its use without compensation for that work, and therefore she was entitled to credit as she did not charge the Plaintiff for the reused work in the Second Federal Action and other matters.

The Jury disagreed and found her testimony lacked proof and was otherwise unconvincing or only partially credible, believing the Plaintiff, meaning a credibility determination was made by the jury after careful consideration of the evidence (noting repeated cross-examination about Lask's time entries for which they obviously believed were simply not credible.) (**T2 266:1–3**.)

It is also apparent that in the same way they determined the Plaintiff's credibility they determined there was a lack of evidence presented by the Defendant finding that she failed to establish any credit was due for the reuse of her work product, thus eliminating the windfall theory.

Even more telling of what the Jury evaluated in reaching its verdict was the Defendants antagonistic approach and how it seriously undermined any degree of credibility she may have had, essentially claiming she was the victim aggressively attacking the Plaintiff's character where it is apparent they recognized or at least believed the claimed circumstances surrounding the first federal filing (where the Defendant claimed the Plaintiff filed the First Federal Action without her knowledge or consent), was beyond farfetched, it was at a minimum untrue.

## II. ARGUMENTS

  **A. The Docket & Trial Evidence Confirm the Plaintiff Timely Commenced Her Malpractice Action Based on the Defendant's Continued Representation.**

The Defendant argues several accrual dates for her malpractice, claiming it was as early as June-July 2012, about the time she was retained but the crux of the argument identifies February 5, 2013, claiming that the Plaintiff commenced her action on February 29, 2016, outside the 3-year statute of limitation as applied to legal malpractice claims under CPLR 214. Even if the Court addresses the statute of limitation defense the record shows Judge Cote's rulings, the Court of Appeals rulings and the trial record establish that Lask's negligent advice about federal remedies and representation of the Plaintiff, as testified and argued to the jury were "intertwined" and continued even after February 5, 2013, until at the very least May 15, 2013, but more so until March 2014, when Judge Oetken dismissed the Second Federal Action making the February 29, 2016, filing timely. **(ECF 166, 167, 179 & 226 Pg. 4-7.)** [2]

1.    *Legal Standard-New York's Continuous Representation Doctrine:*

The controlling law in this case falls under New York's continuous representation doctrine concerning the federal malpractice claims. The continuous representation . . . "doctrine applies where there is continuing trust and confidence in the relationship between the parties and the attorney's continuing representation pertains to the specific matter in which the attorney committed the alleged malpractice, not merely the continuity of a general professional relationship" (*Deep v. Boies,* 53 A.D.3d 948, 950, 863 N.Y.S.2d 269 [2008] [internal quotation marks and citations omitted]; *see McCoy v. Feinman,* 99 N.Y.2d at 306, 755 N.Y.S.2d 693, 785 N.E.2d 714; *Shumsky v. Eisenstein,* 96 N.Y.2d 164, 168, 726 N.Y.S.2d 365, 750 N.E.2d 67

---

[2] Although a factual dispute was raised at trial concerning weather the Defendant's representation ended by her withdrawing or her being discharged, the distinction is of little importance. What is clear is that the Defendant represented Plaintiff until at least March 2014, when the Second Federal action was dismissed. **(T2: 152: 22.)**

[2001]; *Deep v. Boies,* 121 A.D.3d 1316, 1318, 995 N.Y.S.2d 298 [2014], *lv denied* 25 N.Y.3d 903, 2015 WL 1526052 [2015]).

"The . . . doctrine tolls the statute of limitations where there is a mutual understanding of the need for further representation on the specific subject matter underlying the malpractice claim" (*Zorn v. Gilbert,* 8 N.Y.3d at 934, 834 N.Y.S.2d 702, 866 N.E.2d 1030 [internal quotation marks, ellipsis and citations omitted]).

For the doctrine to apply ". . . there must be clear indicia of an ongoing, continuous, developing, and dependent relationship between the client and the attorney, which often includes an attempt by the attorney to rectify an alleged act of malpractice" (*International Electron Devices [USA] LLC v. Menter, Rudin & Trivelpiece, P.C.,* 71 A.D.3d at 1512–1513, 898 N.Y.S.2d 388 [internal quotation marks, ellipsis, brackets and citations omitted]; *see Leeder v. Antonucci,* 174 A.D.3d 1469, 1471, 106 N.Y.S.3d 490 [2019]; *see also Matter of Lawrence,* 24 N.Y.3d 320, 342–343, 998 N.Y.S.2d 698, 23 N.E.3d 965 [2014]; *Creative Rest., Inc. v. Dyckman Plumbing & Heating, Inc.,* 184 A.D.3d 803, 805, 126 N.Y.S.3d 498 [2020]).

2.  *Argument: Lask Represented Karn until at least March of 2014.*

There can be little to no doubt about the Defendant's legal representation concerning both the first and second federal actions that there was mutual confidence and trust in the Defendant's continued representation of the Plaintiff. **(T2 146:14-18.)** The representation dealt directly and specifically with the same issues of child custody relief being sought in federal court arising from the delays in the state family court custody proceedings and should most certainly be viewed as an attempt to correct the malpractice as the Defendant admitted.  In May 2013, she told Plaintiff she could not proceed in federal court until state law case was

concluded, answering the question on the issue of continuing representation to the specific matter. **(ECF" 226 ¶17.)**

Even more persuasive, it cannot be overlooked that the Defendant claimed she was entitled to recovery for the same work she performed between these actions and the relief sought by them. The record testimony proves there was an ongoing, continuous, developing, and dependent relationship of mutual trust and confidence between the Plaintiff and the Defendant. Plaintiff's testimony, confirmed by the Defendant herself, proved that the issues were identical and that she remained counsel of record in both actions. **(T1 59:12–18; T2 129:7–9.)** She did so at the very least until March 2014. **(ECF 226 Pgs. 4, 16 &17.)**

Defendant's own affirmative defense of a windfall or credit is and was a concession about the relevant time she represented the Plaintiff and undermines the notion that the clock expired before any of the above events terminating the attorney client prior to March 2014.

Using the filing date of this Action as February 29, 2016, and applying CPLR § 214(6), considering the continuous representation doctrine until March 2014, for damages arising from the Defendant's legal representation of the Plaintiff in the First and Second Federal Actions, the Plaintiff's filing falls comfortably within 3-year statute of limitations and the defense should be dismissed as matter of law.

**B. Defendant's Failure to Raise Her Argument that the Legal Malpractice Cause of Action as Time-Barred was not Presented at the Pretrial Conference or in Her Rule 50(a)(1) Motion and Cannot be raised Under Rule 50(b) Because it Has Been Waived.**

*1. The Defendant's Failure to Raise her Limitations Defense in Her Pretrial Motions.*

This Court should reject the Defendant's limitations argument because it was not raised in the final pretrial motions, nor at the final pretrial conference. **(ECF361. 377 & 378.)** While the Defendant attempts to avoid her failure to timely raise her limitations claim relying on case

law allowing a statute of limitations defense even after verdict, she neglects to point out that in federal court, an affirmative defense omitted from the final pretrial order, as here, is generally forfeited, even if the defense was asserted in the answer. Although she had the opportunity to do so and failed, the Defendant now seeks to present her defense as a pure question of law for the Court, attempting to interject and revive it by sidestepping the restrictions outlined in the Federal Rules of Civil Procedure and supporting case law. [3] **(Def. Mem. 495-1.)**

   *2. Legal Standard-Waiver of Limitations Defense.*

A district court may treat as waived and bar any issue that was foreseeable but not raised in a pretrial order if the evidence or issue was within the knowledge of the party seeking modification at the time. *Potthast v. Metro-N. R.R. Co.,* 400 F.3d 143, 154 (2d Cir. 2005) (quoting 6A Wright & Miller, Federal Practice and Procedure § 1527 (2d ed. 1990)); see *Parker*, 204 F.3d at 34041 (upholding a finding that a party may be barred from asserting a claim if they were aware of the relevant facts prior to and throughout the course of the litigation but failed to timely raise the issue).

   *3. Argument-Plaintiff's Claim is Barred, it was not Raised in Defendant's Pretrial Motion.*

Notwithstanding that the Defendant asserted the statute of limitations as an affirmative defense in her Amended Answer to the Amended Complaint **(ECF 121 at 41 ¶46-** "Plaintiffs

---

[3] A threshold matter for this Court's consideration is that the Defendant had more than sufficient opportunity to timely move for judgment as a matter of law on the limitations issue both pre-trial and at trial before submission of the case to the jury and failed to do so, including her response to the Plaintiff's Rule 12(f) Motion. **(ECF 166-167, 174 & 179.)** On October 18, 2019, post the filing of her Amended Answer, the Defendant moved for Summary Judgment as a matter of law under Rule 56, the appeal for the findings against her, never raising the limitations in those proceedings as a defense now before the Court. **(ECF 121, 208, 226 & 240.)** She then failed to raise the issue in her Motion in Limine. **(ECF 360-361, 378.)** The effect of the pending Motion is that the Court is being asked to consider the matter as a successive summary judgment motion. However, based on the extensive delay any consideration should be denied as prejudicial because the arguments could have been raised in those Motions early on but were not. *Carlson v. Northwell Health Inc.,* 20 CV 9852 (LAP) (S.D.N.Y. May. 2, 2022), citing, *Bridgeforth v. Zerafa,* No. 16-CV-273, 2018 WL 11217202, at *1 (S.D.N.Y. Nov. 19, 2019) (modified.)

Complaint is barred in whole or in part by reason of the applicable statute of limitations."), and although the "bare assertion" of a statute-of-limitations defense in the answer **may be sufficient**[4] to preserve that defense for trial, *Kulzer v. Pittsburgh-Corning Corp.,* 942 F.2d 122, 125 (2d Cir. 1991) because she failed to assert it in her pretrial motions and did not address the matter at trial she is now precluded from doing so.

Essentially, the Defendant's Motion seeks to impermissibly alter or otherwise change the Court's Pretrial Order and the proof at trial. By arguing the proof at trial supports the conclusion the Plaintiff's case was time barred as a matter of law.  However, a final pre-trial order "is not to be changed lightly . . . [and] [t]hat which is not alleged in the Pre-Trial Order is generally deemed waived.*" Commerce Funding Corp. v. Comprehensive Habilitation Services, Inc.,* No. 01 Civ. 3796(PKL), 2005 WL 1026515, at *6 (S.D.N.Y. May 2, 2005); accord *Ordos City Hawtai Autobody Co., Ltd. v. Dimond Rigging Co., LLC*, 695 Fed.Appx. 864, 875 (6th Cir. 2017) ("[C]ourts hold that parties generally forfeit claims or defenses not raised in the final pretrial order."); *Correa v. Hosp. San Francisco,* 69 F.3d 1184, 1195 (1st Cir. 1995). *Carlson v. Northwell Health Inc.*, 20 CV 9852 (LAP) (S.D.N.Y. May 2, 2022).  A review of the Defendant's pretrial submissions shows a complete lack of inclusion or reference to this defense and is entirely absent from the Pretrial Order.  **(ECF 378 Pg. 7-List of Affirmative Defenses to be argued at trial.)**

Because her limitations defense was never timely presented to the Court, it has been waived.

4.  *The Defendant Waived Her Limitations Defense Under Rule 50 (a)(1).*

The Defendant never raised her limitations defense under Rule 50(a)(1) prior to the case being submitted to the jury.

---

[4] See point below.  Defendant's Statute of Limitations Affirmative Defense was Defectively Pled.

*5. Legal Standard Rule 50(a)(1).*

Before a case is submitted to the jury, a party may move pursuant to Rule 50 for judgment as a matter of law ("JMOL") on the ground that there is no legally sufficient evidentiary basis for a reasonable jury to find for the opposing party on an issue essential to a claim or defense. See Fed.R.Civ.P. 50(a)(1).

The Rule requires the party making such a motion to "specify the judgment sought [under] the law and the facts on which the moving party is entitled to the judgment." Fed.R.Civ.P. 50(a)(2).

*6. Argument-Defendant's Motion was Limited it did not Address the Limitations Defense.*

Defendant's trial Rule 50 (a) Motion was limited to the sufficiency of the evidence related to the lack of evidence presented by the Plaintiff in disproving the credit due for her work product between the first and second federal actions as it was reused.  Prior to submission of the matter to the jury, Attorney Ferrante advised the Court he was seeking to preserve the Defendant's rights  .  .  .  making a motion pursuant to Federal Rule of Civil Procedure 50(a)(1), [arguing that there was] no legally sufficient evidentiary basis [plaintiff failed to oppose the Defendant's right to a credit] proof for a reasonable jury to find for that party on that issue .  .  .  [and that] the Court may determine the issue  .  .  ." **(T3  352: 23-25, 353: 1-3.)**

The Court  denied the motion, ruling that the evidence presented a factual question for the jury concerning the amount expended for the First Action and the extent to which the jury believed  the work from the First Action was reused  in the Second Action in whole or in part and any benefit to the Plaintiff. **(T3 354 9:22-25.)**  No other motion was presented to the Court by the Defendant.  The matter was submitted to the jury with the results being the verdict for the

Plaintiff for her damages ($40,300) and against the Defendant without an award for her claims of setoff or credit.

After an unfavorable verdict, Rule 50(b) allows the party to "renew" its motion. "The posttrial motion is limited to those grounds that were `specifically raised in the prior motion for [JMOL]'"; the movant **is not permitted** to add new grounds after trial. *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997) (quoting *Samuels v. Air Transport Local* 504, 992 F.2d 12, 14 (2d Cir. 1993)); see, e.g., *Kirsch v. Fleet Street, Ltd*., 148 F.3d 149, 164 (2d Cir. 1998); *Lambert v. Genesee Hospital,* 10 F.3d 46, 53-54 (2d Cir. 1993), cert. denied, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994). The statute of limitations claim asserted constitutes new grounds and must be rejected.

### C. Defendant's Statute of Limitations Defense Was Defectively Pled.

*1. Defendant's Shotgun Pleading is Unacceptable in the Second Circuit.*

Defendant's Amended Answer mentions the statute of limitations defense in a single paragraph **(ECF 121 Pg. 31 ¶46.)** and even admits that she used a shotgun approach in presenting this defense in no more than "a bare assertion".   However, she incorrectly argues that this form of pleading is acceptable practice under Second Circuit precedent.  **(ECF 495-1 Pg 4.)**

*2. Legal Standard-The Shotgun Approach has been Rejected; Plausible Facts Must be Pled.*

The Second Circuit no longer tolerates a shotgun-pleadings and has directed district courts to strike vague and ambiguous defenses that do not address any particular or individual count, or allege a plausible factual and legal basis for its attack of the complaint. *Twombly*, 550 U.S. 544 (2007)*; GEOMC Co. v. Calmare Therapeutics Inc*., 918 F.3d 92; *Tal Dagan MD PC v. Resolutions Billing & Consulting, Inc.*, 24-cv-632 (RA) (S.D.N.Y. Dec. 12, 2024)  Both rules apply here.[5]

---

[5] The cases cited by the Defendant are distinguishable based on the factual claims and legal principles at issue concerning the prior motions of the Defendants in those cases.  The affirmative defense was presented in the answers after their motions to dismiss and after summary judgment

3.  *Argument-The Answer Failed to Assert Plausible Facts:*

Notwithstanding Defendant's argument that although there was previously wide latitude to resist dismissing an affirmative defense when considering the defense, it is apparent Defendant's (statute of limitations) affirmative defense lacked specificity and otherwise fails to meet the plausibility standard set forth in *Twombly*, because it failed to present factual allegations necessary to support the defense. The Court in *Twombly* ruled plausibility must be present in a statement of facts in support of the claim and must be pled to adequately allege a particular affirmative defense.

Even before the *Twombly* decision, the Second Circuit had long held that affirmative defenses that contain only "bald assertions" without supporting facts should be stricken. *Schechter v. Comptroller of City of N.Y.,* 79 F.3d 265, 270 (2d Cir. 1996); (holding "bald assertions . . . which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy").

In March 2019, the Circuit Court of Appeals issued a new standard in its when it is asked to determine the validity of an affirmative defense. *GEOMC Co. v. Calmare Therapeutics Inc.,* 918 F.3d 92. The Court clarified and provided a three-part test a plaintiff must show, that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense.

The Complaint was filed at the outside date of February 29, 2016. The Amended Answer was filed on February 5, 2019. **(ECF 121.)** Despite the 36-month opportunity to gather facts and properly plead the defense, she failed to present a single fact in her Amended Answer to

---

were denied. Here the Amended Answer was filed prior to the Defendant's Motion for Summary Judgment and the limitations argument is post appeal where it was not raised.

support the plausibility of the defense.[6] There were no genuine, substantial or disputed questions of when the First and Second Federal Complaints were filed, when the claim accrued, when the Plaintiff filed her Malpractice Complaint or the law concerning the legal malpractice statutes of limitations such that Plaintiff satisfies the first and second elements of the test. *GEOMC, Id.*

Considering the Second Circuit's decision on this issue it is apparent Defendant failed to plead facts to support her affirmative defenses not only as plausible claims but with enough particularity to provide proper notice of the defense related to the claims despite the 36-month opportunity to do so.

Because this defense was not plausibly pled, and by extension to the lack of facts legally sufficient to support the law to the claim, the Defendant has failed to properly plead this defense and Plaintiff has demonstrated sufficient prejudice, satisfying all three of the elements set forth in *GEOMC, Id.*

Consequently, the Court should find the limitations defense is defective and dismiss the Defendant's argument in its entirety. [7]

---

[6] Noteworthy, the Defendant's factual portion of her Amended Answer was CAPTIONED "FACTS COMMON TO ALL AFFIRMATIVE DEFENSES, COUNTERCLAIMS & THIRD-PARTY COMPLAINT." Controlling on the issue of plausibility is that there was not a single fact pled supporting the Statue of Limitations defense related to the legal malpractice claim. Instead, Plaintiff spent more than 8 pages consisting of 42 paragraphs creating a false narrative attacking Plaintiff and her Counsel, and then dismissed the action. **(ECF 121 Pg. 22-29.)**

[7] The Court should also consider Plaintiff submitted a Motion to Strike **(ECF 166-167.)** prior to the Summary Judgment Motions and Judge Cote's Summary Judgment decision. **(ECF266. )** Although the Defendant opposed that motion, she never pursued the statute of limitations defense in her Motion for Summary Judgment, Motion in Limine, nor at the final pretrial hearing that she was asserting such a defense. where the Court and parties outlined final issues to be tried—there was no mention of a time-bar defense for the jury). By waiting until after trial, Defendant effectively waived or abandoned the defense *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1108 (Fed. Cir. 2003). It appears that due to Judge Preska recusal, Judge Cote did not directly rule on Plaintiff's 12 (f) Motion, nor did this Court.

### D. The Jury's Verdict is Supported by the Record Evidence And Their View of the Witness Testimony and Credibility.

*1. Plaintiff Present Legally Sufficient Evidence to Support the Verdict.*

(The Court should reject the Defendant's Rule 50(a)(1) argument that there was complete absence of evidence supporting the verdict, such that the resulting award was sheer surmise and conjecture, or there was overwhelming amount of evidence in her favor such that a reasonable and fair verdict could not be found against her, relying on the standard set forth in *Hernandez v. Keane*, 341 F.3d 137, 143-44 (2d Cir. 2003).

*2. Legal Standard-50(a)(1):*

Rule 50(a)(1) requires a movant to show that "a reasonable jury would not have a legally sufficient evidentiary basis to find for" the opponent. *Tolbert v. Queens Coll.,* 242 F.3d 58, 70 (2d Cir. 2001*).* In ruling on a motion for JMOL, the trial court is required to consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in their favor from the evidence. *Id.*

The jury's verdict cannot and should not be lightly disturbed. *Koufakis v. Carvel*, 425 F.2d 892, 904 (2d Cir. 1970). The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 367 (2d Cir. 1988) (internal quotation marks omitted); see also *Kim v. Hurston*, 182 F.3d 113, 117 (2d Cir. 1999); *Piesco v. Koch*, 12 F.3d 332, 343 (2d Cir. 1993). In making its evaluation, the court should "review all of the evidence in the record," *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2110, 105 (2000).

*3. The Record Lacks Evidence to Support the Defendant's Burden of a Windfall or an Entitlement to-Credits for Reuse of Her Work Product.*

To begin with, there is a significant problem with the Defendant's argument for JMOL concerning the burden of proof and lack of record evidence.   The argument muddies the distinction concerning the legal standard to be applied to the sufficiency of evidence between the Plaintiff's burden of proof for damages sustained by the Defendant's malpractice and the proof offered by the Defendant to sustain her claimed right to recovery of a windfall or credits by reusing portions of the allegations in the First Federal Action and incorporating them into Second Federal Action. **(ECF 495-1 Pgs. 7-8.)**[8]

Defendant claimed that she was working on "multiple tasks" which were different from the First Federal Action, separate from her other tasks and that the billing related to the First Federal Action represented only a small portion of her billing for the relevant period, the claim was disproven by the record evidence and was properly rejected by the jury. Although Plaintiff presented evidence explaining and proving her claim, the Defendant failed to present proof or explain her claim for Plaintiff's windfall or her entitlement to credit by presenting more than a comparison between the First and Second Complaints and simply claiming the work was repeated or reused, never explaining its use as a benefit or properly submitting billing invoices to establish her claim for a credit concerning the work product at issue. Notwithstanding Defendant's argument otherwise, it was not Plaintiff's burden to do so.

The Court recognized this very issue during post-closing arguments at the charge conference, holding that "with respect to the part about deducting what may have been reused" Defendant's own counsel confirmed it was her burden, and that her own "bills could have helped . . . , meaning of course

---

[8] The same is true of Defendant attack of Attorney Lonergan concerning her claims of misconduct. The argument continuously misrepresents the fact and her burden on the issue. Mr. Lonergan's statements were not evidence. They were fair comment, and the Court advised the jury that they were not evidence. See Point "E" hereafter.

had she introduced her own invoices and explained the lack of billing and how it benefited Plaintiff it might have been considered by the jury for the purposes of a credit. **(T3 407:8-15.)**

The Defendant's failure to do so undermines her claim the verdict is "clearly erroneous" that Karn received "a windfall". (Def. Mem. at 10.) The jury found that the First Federal Action fees did not seamlessly "transfer" to the Second Federal Action. Plaintiff testified she still had to pay fresh attorney's fees because the first was incompetent or ill-advised from the start. **(T1 84:16– 25; T2 295:5–14.)**

Hence, there was no "proof of a windfall." The verdict awarding $40,300 presumably accounted for any partial overlap of the intertwined work reducing the invoice sum from $72,000 to $40,300, where the jury simply rejected the claim of a benefit to Plaintiff, or any credit owed to the Defendant.

Applying the above standards to the facts and evidence presented to the jury, means that when this Court considers the evidence in the light most favorable to the Plaintiff as the non-movant; its assessment of the weight to the evidence, means it should not substitute its judgment for that of the jury's. Its evaluation must only be based on a review of all the evidence in the record. In this case, the lack of evidence in support of the Defendant's claims leaves little to no discretion in this matter, the Plaintiff met her burden and the Defendant did not. *Tolbert, Smith and Reeves. Id.*

Clearly, there is more than enough evidence in the record to support the jury's conclusion that Defendant's negligence caused Plaintiff to pay for useless legal services and no credit was due. The jury did as Defense Counsel invited them to do, they did the "math" and Defendant's evidence did not add up to a **credit. (T1 52: 4-11 &T3 373:4-8.)**

For these reasons Defendant's Rule 50 motion for insufficiency fails and the Court should deny the Motion.

### 4.  Argument: The Jury Properly Determined the Witnesses Credibility. .

The Defendant seeks to have this Court substitute the Jury's right and responsibility for evaluating credibility of witnesses, the strength of physical evidence, and the overall context of the case to determine how persuasive each piece of evidence was in reaching their verdict.

Apparently, they found the Defendant's testimony unconvincing or only partially credible. Their findings were in line with the juries evaluation that Defendant's advice telling Plaintiff to pursue (and pay for) the federal action that was filed December 21, 2012, then voluntarily dismissed on February 5, 2013—that this caused Plaintiff to incur fees for effectively useless work, and that any duplicative work was of no benefit to the Plaintiff in the second action, especially where its benefit was left unexplained.

Liability for the legal malpractice concerning her claim had previously been decided by Judge Cote and then appealed. **(ECF 226 & 240.)** The Court charged the jury as agreed between the parties, instructing them that their task was to determine recoverable damages for the First Federal Action and each parties burden of proof. **(T3 411-424.)**

This two-day trial included Plaintiff's account of how she paid thousands for a federal lawsuit that never proceeded beyond a worthless filing. The jury accepted Plaintiff's testimony, finding it credible of her claims. **(T1 63:5–18; T3 381:21–25.)** Persuasive to the question of credibility made by the jury was the Defendant's own manner of testimony. **(T2 266:1–3)** (where they obviously noted there was a repeated evasive manner to the cross-examination about her time entries and that her testimony was not credible).

The evidence proved to the jury's satisfaction after they carefully weighed and considered the testimony that by and large Plaintiff's testimony was credible and disregard the Defendant's claims as not, awarding the sum of $40,300.00 as damages to Karn.

The Defendant's own credibility was seriously undermined by her antagonistic examination of the Plaintiff, falsely accusing her of wrongdoing-portraying her as a bad person. After hearing the evidence, the jury thoughtfully determined that, although Lask claimed the Plaintiff improperly filed the first action without her permission, that it was the Defendant who orchestrated the filing on December 21, 2012. **(T1 63-64:25-7; T2 142:1-12; 143:19-25; 144:1-9.)** (Karn testifying she went to 500 Pearl Street 'because [Ms. Lask] asked me to file it,' signing Lask's name)." **(T2. 56–59.)** The jury saw it as more believable than Lask's claim-testimony that she had only sent a draft and no knowledge of the filing and that he could have filed via Pacer.

They followed the prior court holdings that the Defendant was negligent, having failed to properly research the legal issues leading to the need for the immediate dismissal of the Action. **(T1 59:2–10; T1 63:5–14; T2 142:1–12.)**

The defendant never explained why the first action was voluntarily dismissed except that it was a draft differing it from the second action where the jury apparently determined the fact that it was paid for, and that it had no value even if it was reused in the second action.

In the end, this Court must "disregard all evidence favorable to the moving party that the jury is not required to believe" and must draw all reasonable inferences in the verdict's favor. *ING Global v. UPS Oasis Supply Corp.,* 757 F.3d 92, 97 (2d Cir. 2014).

The jury followed the Court's instructions and rejected the Defendants testimony, recognizing her lack of billing proof and determined the damages amount caused by Defendant

Lask's malpractice with respect to the First Federal Action holding that it was $40,300. (**ECF 452.**) The verdict award is well within the range of reason.

### E. The Rule 59 Motion Should be Denied There was no Error by the Court and Verdict is Not a "Miscarriage of Justice".

*1. The Verdict does not constitute a Miscarriage of Justice.*

The Defendant next moves for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure assert her claim that the jury's verdict amounts to a miscarriage of justice and as such she is entitled to a new trial.

*2. Legal Standard:*

Rule 59(a) provides that "[a] new trial may be granted in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted . . . " Fed R Civ P 59(a). Rule 59(a) motions are granted only if the verdict is "seriously erroneous" or would result in a "miscarriage of justice." *Manley v. AmBase Corp.*, 337 F.3d 237, 244–45 (2d Cir. 2003).

Under the Rule a court's decision whether to grant a new trial is "committed to the sound discretion of the trial judge." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir.1992). Despite a court's discretion, a district court "should not grant a new trial unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Smith v. Lighting, Inc.,* 1998 WL 527307 (2d Cir.1998). *Piesco v. Koch,* 12 F.3d 332, 344 (2d Cir.1993) (reversal warranted only if "the verdict is a miscarriage of justice").

*2. Argument: There was no Erroneous Ruling or Misunderstanding by the Court Concerning the Defendant's Theory of the Case.*

In addressing the Defendant's argument concerning the Court's claimed error in misunderstanding of her claim to credits, resulting in a windfall to Karn and miscarriage of justice to her. In support of the

reasoning offered for error the Defendant argues that "[t]he court treated this . . . "action", [the first action] as if Lask filed and prosecuted it when she did not  . . ."  She claims this error was prejudicial.

 The cornerstone of this argument alleges that: "[a]t the August 6, 2024 trial, Karn admitted that she took a complaint and filed it herself on December 21, 2012, at the court by signing Lask's name on it, then on February 5, 2013 Lask e-filed on ECF an FRCP 41 Voluntary Withdrawal of Karn's filing before issue joined, and no litigation or prosecution occurred**." (T1 63-64:25-7; T24 142:1-12; 143:19-25; 144:1-9.)**

According to the Defendant, this error allowed the jury to falsely believe that  Plaintiff  filed the December 21, 2012, Complaint with her knowledge, essentially undermining her claims that because the Frist Federal Action was only a draft not intended to be filed; that the case was voluntarily withdrawn on February 5, 2013; that because her work product was minimal as it related to the First Federal Action  at the time of the draft; that her billing was for other worked performed; and that when it was reused in the Second Federal Action Karn was receiving a windfall.  **(Def. Mem. Pg. 3 fn.)**

The claim is belied by the record and the Defendant's failure to explain the benefit of the draft's use in the Second Federal Action. Simply showing their repetition was only half her burden and did not explain the benefit that created the credit.  It left the jury to consider Plaintiff's testimony alone and what value if any there was to her if the first case was deemed to be legal malpractice.

The Court did not refuse to limit the issue of damages related to drafting the December 21, 2012, Complaint, and instructed the jury that the period of damages was from October 2012

through February 2013. It allowed the jury to answer the fact issue of what was connected to the damages in the First Federal Action.

In truth, any prejudice stemmed from Defendant's own, or her co-counsel's, repeated and distorted claim, the errant filing, a fact the jury rejected. **(T2 266:1–3; T2 275:20–25; T2 330:2–5.)** The jury carefully reviewed opposing testimony concerning the billing entries for the relevant period—October 24, 2012, to February 5, 2013—and concluded that Plaintiff was damaged in the amount awarded.

There was no error, and the verdict does not constitute Miscarriage of Justice.

### F.  The Defendant's Claims of Misconduct by Plaintiff' or Her Counsel are Without Merit and do not Justify a New Trial.

*1.  Defendant's Claim of Misconduct at Trial Lacks Merit She suffered no Prejudice.*

The Defendant moves under Rule 59 for a new trial on countless grounds alleging prejudice by reason of misconduct by Plaintiff and her Counsel during trial. This Court ruled there was no prejudice and denied the motion for a mistrial and other matters and followed the agreed upon jury charge.

*2.  Legal Standard- The Trial was Fair to the Defendant.*

A new trial may be granted if the court determines that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Montgomery Ward Co. v. Duncan,* 311 U.S. 243, 251 (1940).

*3.  Argument-The Damages Award was not Impacted by the Court's Treatment of the Plaintiff.*

For the most part, beyond  the Defendant's argument of the Court misunderstanding concerning her legal theory she also claims the Court treated her unfairly at trial, arguing the Court abused her in overruling her objections to direct, cross testimony and evidence while

sustaining Plaintiff's objections to evidence and during direct and cross-examination as well as during Attorney Lonergan's closing summation, each lacks merit.[9]

Her line-by-line arguments citing the record and references to prejudicial testimony, claiming the use of evidence which had previously been excluded or restricted by the Court is unsupported by her citations or otherwise misstatements of both fact and law, including her erroneously shifting the burden of proff on her case to the Plaintiff, meaning the arguments only typify the Defendant's misunderstanding of her own burden of proof to credits and Plaintiff's right to prove her claim for damages within the rules of advocacy and trial procedure.[10]   Indeed, The Defendant's arguments are proven unavailing by an overall review of the record.   An examination of the Court's rulings demonstrates the lack of prejudice to the Defendant, making her claims as framed less than faithful such that the Court must deny a new trial.

For instance, turning to the issue of Counsel violating the Court's pretrial order concerning the Defendant's education and that it was not open to attack. The Court rejected Defendant's motion for a mistrial to the claim of prejudice obviously recognizing that the order came with a caveat that her education could not be attacked, that is, *unless the Defendant opened the door.* She did, her direct examination of the Plaintiff included her educational background where the purpose was to establish Plaintiff was a sophisticated client in the legal matters concerning the federal actions related to her interaction with the Plaintiff and in the claimed ensuing shared of blame for the

---

[9] The Defendant's claims related to misconduct are mixed with objections related to Plaintiff's direct and cross testimony as well as her own direct testimony cross and recross.   The arguments objection and testimony at trial and now before the Court were and are an attempt to undermine the Court's roll and deliberately attack and demean Plaintiff and her Counsel in what was the Plaintiff's right to have the jury to assess the case.   The defendant continuously attempted to move the critical issues of credibility away for the jury and have them made by the Court.

[10] The Court should consider the fact that the Defendant herself was and is acting as both the defense counsel and as her own witness making objections confusing to the jury on the issues before the Court because her arguments were lost to the distinction between advocacy-defense and assertions of her own claims.

Defendant's malpractice. Keeping in mind the inquiry concerning Plaintiff's educational and Defendant's direct testimony of her own background of 30 years plus experience into play she made the issue of her interaction with Plaintiff fair game and, more importantly the question went no further than being asked. It was shut down by the Defendant's objection with the Court ultimately finding no prejudice resulted. **(T3 357-361; 365; 7-25 to 366:1-10.)** Moreover, not only was the inquiry regarding Attorney Lask's educational background immediately curtailed by the court upon her objection, but it may have appeared to the jury that attorney Lonergan inquiry cast Attorney Lask in a sympathetic light.

The Court obviously recognized that any claim the jury saw the question as indicating the Defendant was acting criminally or otherwise is simply speculative and was overcome by her own unchallenged testimony that she was a licensed attorney for 30 plus years. Most certainly her testimony eliminated any chance of a belief by the jury that the Defendant was acting improperly.

Next, the Defendant cites "counsel's conduct" as having improperly referenced certain fees or retainer totals as grounds for a new trial. **(Def. Mem. at 11–12.)** She claimed the testimony to the total fees paid was a violation of the Court's order. The claim materially changes the context of what was ordered or agreed to related to the full extent of fees paid because the record exchange proves the Court only ruled that the checks concerning payment could not be introduced as they would confuse the jury. **(T1 Pgs. 6-15:6-7.)**

Based on the Defendant's stipulation that all the payments claimed were made to the Defendant there could be not basis for an objection to testimony on payment. The Court did not rule on excluding testimony of payment at trial. The transcript references made by the Defendant relate to pretrial matters of evidence-exhibits, not testimony. And, notwithstanding the Court's ruling to revisit the matter at trial, the exhibits were not used.

The Plaintiff testified concerning the fee amounts paid during the entire period she was represented by the Defendant. The Defendant was seeking credit for her future work she claimed was reused. The testimony was relevant and certainly not prejudicial, how else could the jury have gotten the full picture of any right to a credit; against what amount. The argument is baseless in all respects.

However, in part, this explains why the Defendant failed to meet her burden of proof related to her affirmative defense of credit due, never submitting evidence of payment to the jury establishing the benefits and credits she claimed were provided to and owed by the Plaintiff but excused. Instead, she withheld the proof she did not rebill for the same work and improperly believed the jury would accept that a comparison of the First Federal Complaint to the Second was sufficient to establish credit owed against her claims.

The Defendant contends prejudice by Attorney Lonergan referencing these amounts testing her billing entries alleging that she was being accused of wrongdoing in her billing engaging in "subterfuge". However, because the question related to clarity concerning the entries and the Plaintiff's understanding of the bill there was no prejudice.

Noteworthy, although the Defendant claims that the Court sustained an objection to the claimed improper comment on this topic when in fact the opposite is true, the record shows the Court overruled the objection and directed the Defendant to answer the question. **(T2 279:15.)**

The Defendant also claims Attorney Lonergan engaged in personal attacks accusing her of lying when it is clear he is questioning her about the vagueness of her billing entries. **( T2 284:16-25 to 28:1-2; 286:12-15.)** He did not integrate false statements at trial or in his closing summation and the cases cited by the Defendant are factually distinctive. The questions were to the factual testimony statements and evidence which were of record.

4.  *Attorney Lonergan's Summary of the Facts and Evidence Constitute Fair Comment.*

Addressing the Defendant claims concerning the window of damages and Attorney Lonergan's reference to $72,000 in fees paid during the damages period during closing argument.  The Court gave a curative instruction, or otherwise clarified the limits on the issue of damages removing any claim the statement misled the jury. **(T3 410: 1-19.)**

An examination of Mr. Lonergan's summation shows that it was nothing more than the Plaintiff's right to persuade the jury by shaping and placing emphasis on the strength of her case aligned with the evidence traceable back to the admissible testimony heard and evidence submitted to the jury.   None of the Defendant's arguments concerning the Court's errors, the Plaintiff or her Counsels' alleged misconduct constitute a basis for an "erroneous result".

The comments by Attorney Lonergan do not rise to the level of what has been held to be so prejudicial as to require a new trial. "Not every improper or poorly supported remark made in summation irreparably taints the proceedings; only if counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury, should a new trial be granted." *Matthews v. CTI Container Transport Int'l, Inc.,* 871 F.2d 270, 278 (2d Cir. 1989).

The arguments fail to meet the standard for a new trial.  The Court correctly denied the Motions at trial rule on the evidence, and nothing presented by the Defendants justifies a finding otherwise.

Whether directly, as presented in her argument that the Court misunderstood her claims creating a prejudice overruling her objections or sustaining counsel(s) for Plaintiff's objections  to her defense or indirectly the Defendant's claims that  the Court's rulings created an atmosphere of partiality based on its rulings during trial effectively favoring the Plaintiff thereby presenting itself as an advocate for the Plaintiff by allowing testimony and evidence to be presented to the jury over her objections, in spite of

these claims, the record shows, that each side was subject to frequent objections and rulings from the Court. The Court repeatedly admonished both sides to "stick to the issues" **(T2  257–258).**

In the end, because the record does not support the claimed "foul" and its claimed effect  as referenced to the alleged wrongdoing the comments and exchanges at trial do not rise to the standard that "the jury was influenced by improper conduct[,]"  which created an irreparable prejudice and  no new trial is warranted.

Accordingly, all of Defendant's post-trial motions should be denied.

### III.    CONCLUSION:

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's post-trial motions in their entirety and enter final judgment consistent with the jury's verdict holding that:

1.  Defendant's belated statute-of-limitations challenge is waived, untimely, and contrary to the Court's findings of continuing representation well into March 2014.

2.  The jury's verdict is fully supported by the testimony, billing records, and the Court's instructions.

3.  No prejudice or misconduct warrants granting a new trial under Rules 50 & 59 because the trial was fair, any fleeting improprieties were handled by judicial instructions, and the final award properly reflects the jury's reasoning after weighing of the facts.

 Dated: January 24, 2025.

Respectfully Submitted:

*Douglas R. Dollinger, Esq.*

Douglas R. Dollinger, Esq. NYS Bar Code 2354926
Law Offices of Douglas R. Dollinger, PC
570 County Rt 49
Middletown, New York 10940
Telephone 845.741.9363
Email: ddollingeresq@gmail.com
Attorney for Plaintiff

**Page 24 of 25**

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2024, the foregoing Response to the Defendants Fed. R. Civ.

P 50 & 59 Motions together with the Exhibits was filed on the Court's ECF Docket upon all counsel

of record and that all parties to the action are represented by counsel.

*Douglas R. Dollinger, Esq.*
Douglas R. Dollinger, Esq. NYS Bar Code 2354926
Law Offices of Douglas R. Dollinger, PC
570 County Rt 49
Middletown, New York 10940
Telephone 845.741.9363
Email: ddollingeresq@gmail.com
Attorney for Plaintiff