# EXHIBIT C

**MARSHALL DENNEHEY**
**WARNER COLEMAN & GOGGIN**
ATTORNEYS-AT-LAW   WWW.MARSHALLDENNEHEY.COM
A PROFESSIONAL CORPORATION

PENNSYLVANIA: Allentown, Doylestown, Erie, Harrisburg, King of Prussia, Philadelphia, Pittsburgh, Scranton
NEW JERSEY: Mount Laurel, Roseland
DELAWARE: Wilmington
OHIO: Cincinnati, Cleveland
FLORIDA: Ft. Lauderdale, Jacksonville, Orlando, Tampa
NEW YORK: Long Island, New York City, Westchester

425 Eagle Rock Avenue, Suite 302, Roseland, NJ 07068
(973) 618-4100  Fax  (973) 618-0685
*Justin F. Johnson, Resident Managing Attorney*

Direct Dial: (973) 618-4118
Email: hbmankoff@mdwcg.com

September 13, 2019

Honorable Denise L. Cote, U.S.D.J.
United States Courthouse
500 Pearl Street
New York NY 10007-1312

Re: Karn v. Lask et. al. #15-cv-09946-DLC

Dear Judge Cote:

I now represent Defendant, Susan Chana Lask, Esq. in the above referenced matter. I have reviewed Ms. Lask's recusal motion papers and the August 1, 2019 recusal order. My client respectfully disagrees with the characterizations made in the order and expressly denies them.

In support of Ms. Lask's position, I have attached the Declaration of Peter Joy, Esq., an expert in legal ethics. As indicated in his Declaration, Mr. Joy has reviewed the record in this matter, and opines that no actions taken by Ms. Lask were in violation of the New York Rules of Professional Conduct or state or federal law.

A hardcopy to Chambers will follow by mail.

Respectfully submitted,

*/s/ Howard B. Mankoff*

Howard B. Mankoff

HBM:pdv

LEGAL/124888666.v1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------
**MARGARET RHEE-KARN,**                        Case No. 15 cv 09946

               **Plaintiff,**

  -against-                                                    **DECLARATION OF**
                                            **PETER A. JOY, ESQ.**
**SUSAN LASK,**

               **Defendant.**

**SUSAN LASK,**

               **Plaintiff,**

-against-

**MARGARET RHEE-KARN,**
**DOUGLAS R. DOLLINGER & KENNETH CRAIG,**

               **Defendants.**

    I, PETER A. JOY, declare pursuant to 28 U.S.C. 1746, as follows:

1. I presently hold the position of Henry Hitchcock Professor of Law since 2010, and since 1998 have held positions of Vice Dean, Vice Dean for Academic Affairs, Director of the Criminal Justice Clinic, Director of Trial Advocacy and professor of law, among other positions at the Washington University in St. Louis School of Law. I am admitted to practice law and in good standing in Missouri, Ohio, District of Columbia (inactive), and before several different federal district courts, federal circuit courts, and the United States Supreme Court.

2. In connection with the August 1, 2019 Order of this court wherein Judge Preska recused herself from this matter (the "Order"), I have been retained by Susan Chana Lask, Esq. to provide opinions as an expert on legal ethics (i.e., lawyers' professional conduct).

3. I have reviewed the docket and the entries in this case and the following documents to render this opinion:

- July 25, 2019 pre-motion letter of Susan Chana Lask, Esq. to Judge Preska requesting disqualification, and attached exhibits (Dkt. 181)

   **Exhibits**

   A- Chart of Dollinger/Craig Lawsuits;

   B- 7/1/19 Redacted Craig Letter emailed to Chambers & not filed on the docket;

   C- Picture of Dollinger and Three Certifications of Receptionists of Intellicell;

   D- 7/2/19 Emails from Chambers to Susan Lask;

   E- Stat Counter reports belonging to Ms. Lask's Website showing US Court IP Addresses on her website on July 2, 2019 and April 13, 2017; and

   F- Email exchange between Ms. Lask and Mr. Richard Weiss regarding Mr. Weiss's withdrawal from the matter.

- July 30, 2019 response letter of Kenneth Craig, of five pages, entitled "EMAIL FILING UNDER SEAL", that was not filed on the docket but emailed to Chambers, which Ms. Lask attached to her July 31, letter as her Exhibit A thereto (Dkt 183-1).

- July 31, 2019 reply letter of Susan Chana Lask, Esq. regarding her pre-conference motion letter to Judge Preska requesting disqualification, and attached exhibits (Dkt. 183).

   **Exhibits**

   A- 7-30-19 Craig Letter Reply Emailed to Judge Preska;

   B- Dollinger-Craig Letterhead;

   C- Keiko Sugisako, Esq. Confirmation of Craig's Misrepresentations;

   D- Dollinger-Craig Extortion Demands for $20 Mil; and

   E- 6-6-14 Stuart Sanders, Esq. Letter Confirming Dollinger Extortion.

- August 1, 2019 Order of "recusal" by Judge Preska with commentary therein (Dkt. 184).

4. In addition to reviewing the docket and the items identified above, on August 4, 2019, I also visited the website for Ms. Lask, which is www.appellate-brief.com, to review the disclaimer-privacy notice which advises visitors to her website that the website uses

analytics that obtains information concerning the time and date of a visit to the website and the IP address of the visitor and what pages they visit.

5. On August 4, 2019, I also viewed a docket entry in Campoverde, et al. v. Sony Pictures, et al., 01cv7775, U.S. District Court, Southern District of New York, Honorable Judge Loretta A. Preska presiding, in which Ms. Lask represented the plaintiff Juan Campoverde. A Memorandum entry dated September 19, 2001 (Dkt. 2) signed by Judge Preska, states: "the parties are advised that the firm in which my husband is a partner, Cahill Gordon & Reindel, from time to time represents Sony Music Entertainment Inc. and various affiliates and that my husband works on those matters."

**Qualifications**

6. My qualifications to provide expert opinions on questions of lawyers' professional conduct are set forth more fully in my curriculum vitae (Exhibit A).

7. I joined the full-time faculty of Washington University in St. Louis School of Law in 1998. Prior to Fordham University School of Law in 1987. Immediately prior to that, I was a professor of law at Case Western Reserve University School of Law in Cleveland, Ohio. Before that, I was in private practice in Cleveland, Ohio, and had previously worked for a non-profit legal organization in Atlanta, Georgia. I have been an attorney at law admitted to practice and on active status and in good standing for more than forty years, and I have had a Martindale-Hubbell AV rating since 1980.

8. At Washington University in St. Louis School of Law, and previously at Case Western Reserve University School of Law, I have regularly taught courses in legal ethics. I have participated in numerous conferences and other programs for legal academics and practitioners on issues of legal ethics, and I speak frequently at Continuing Legal Education programs regarding legal ethics, including issues of confidentiality owed to prospective clients.

9. I have written extensively on legal ethics, including the duty of confidentiality owed to prospective clients in both civil and criminal litigation, and many of writings have appeared

in peer-edited publications such as the American Bar Association (ABA) publication *Criminal Justice*. I am also co-author of a casebook on legal ethics -Pearce, Knake, Green, Joy, Kim, Murphy & Terry, *Professional Responsibility: A Contemporary Approach* (West Academic Publ., 3d ed. 2017).

10. I have engaged extensively in various professional work relating to legal ethics. On the national level, I am a contributing author of a co-authored ethics column to the ABA publication Criminal Justice, a member of the ABA Center for Professional Responsibility, and a Subject Matter Expert on legal ethics for the National Conference of Bar Examiners (NCBE) Multistate Professional Responsibility Examination (MPRE). I am also an elected member of the American Law Institute (ALI). In addition, I have been active in bar association activities including serving on local bar association ethics committees and serving as a Special Investigator for the Ohio Supreme Court Board of Commissioners on Character and Fitness.

11. I occasionally give advice, participate in and help draft amicus briefs, testify as an expert witness, and render other professional services on issues of lawyers' professional conduct. When serving as an expert witness, in this case and others, I render independent opinions solely in my individual capacity and not on behalf of any of the entities with which I am, or have been, associated.

12. In the past five years, I have testified in a hearing in *United States v. Lorenzo Black*, Case No. 16-CR-20032, United States District Court for the District of Kansas, on two occasions on behalf of the Federal Public Defender for the District of Kansas.

**Relevant Facts**

13. I have no first-hand knowledge of the relevant facts. I base my opinions on my review of the documents and the docket entries in this case. For the purposes of this legal ethics opinion, I assume the facts as stated in the documents I reviewed, as listed above.

14. My understanding of the facts, based on my review of the documents and docket entries identified previously, are that Ms. Lask is a Defendant-Counterclaim Plaintiff in this matter. In her July 25, 2019, letter to the Court (Docket 181), she states that on July 2, 2019, Ms. Lask contacted John Kupiec, Esq. by phone, and sought legal assistance from him as a prospective client. Mr. Kupiec informed Ms. Lask that he was a former law clerk to the Honorable Loretta Preska, the judge then presiding over this matter. During that phone conversation, Ms. Lask shared legal strategies and other confidential information about the pending matter that would not otherwise be known to Mr. Kupiec or in the public record.

15. Soon after Ms. Lask's conversation with Mr. Kupiec, she was contacted by personnel for the Court to arrange a call with the Court immediately on July 2, 2019. The call took place, and at that time Judge Preska informed Ms. Lask that her former law clerk had contacted Judge Preska and informed Judge Preska about the conversation between the former clerk and Ms. Lask, which included confidential information Ms. Lask had shared as a prospective client of the former clerk. Ms. Lask's letter also indicates that in this same phone conference with Judge Preska that Judge Preska accused Ms. Lask of stalking Judge Preska by contacting a former clerk.

16. In her July 25, 2019, letter to the Court, Ms. Lask informed the Court that her website uses website analytics, which is explained in the disclaimer-privacy notice on her website, and the analytics indicated that one or more persons with an IP address at the U.S. District Court for the Southern District of New York had visited Ms. Lask's website several times.

17. In her July 25, 2019, letter to the Court, Ms. Lask informed the Court that she had recorded phone calls with three individuals, none of whom are employed by the Court nor involved with the case other than her co-counsel, to document accurately and completely what occurred.

**Opinion**

18. As I will explain more fully below, I have concluded to a reasonable degree of professional certainty that nothing in the record or any other materials I reviewed indicates that Ms. Lask

5

violated any of the New York Rules of Professional Conduct (N.Y. Rules of Professional Conduct) or state or federal law.

19. As I will explain more fully below, I have concluded to a reasonable degree of professional certainty that if Mr. Kupiec contacted Judge Preska and discussed information he learned from Ms. Lask, who was a prospective client of Mr. Kupiec, that would be a violation of the duty of confidentiality owed to Ms. Lask pursuant to N.Y. Rules of Professional Conduct R. 1.18.

**Recording Phone Calls**

20. New York is a one-party consent state, which permits any person, including lawyers, to record phone calls with another person even if that other person is unaware that the phone call is being recorded. N.Y. Penal Law § 250. Additionally, federal law also permits a person to record phone calls with another person even if that other person is unaware that the phone call is being recorded. 18 U.S.C. § 2511(2)(d) (2018). Because it is legal for an attorney to record phone calls with another, I have concluded to a reasonable degree of professional certainty that Ms. Lask did not and could not have violated state or federal law by recording phone calls with those individuals she identified in her July 25, 2019, letter to the Court.

21. The ABA's position on secret recording is that it is not unethical for a lawyer to record a phone call with another, especially one who is not the lawyer's client, as long as it is legal to do so in the jurisdiction. ABA Formal Opinion 01-422 (2001). In 1993, the New York County Lawyers Association (NYCLA) reached this same conclusion. NYCLA Op. 696 (1993). Most jurisdictions agree with the ABA's position and that of the NYCLA. The New York City Bar has taken a more limited approach, and approves of secret recording by a lawyer if the lawyer "has a reasonable basis for believing that disclosure of the taping would significantly impair pursuit of a generally accepted societal good." City Bar Op. 2003-02 (2003). The City Bar did not attempt to define what a "generally accepted societal good" is, but preservation of the truth, which is the reason Ms. Lask has given for taping, would, in my opinion, fit the definition. I have concluded to a reasonable degree of

professional certainty that Ms. Lask did not violate any ethics rules in New York by recording her conversations with those individuals she identified in her July 25, 2019 letter to the Court.

**Stalking**

22. In the August 1, 2019, Order explaining her recusal, Judge Preska alleges that "Ms. Lask has stalked the Court and chambers staff" by monitoring the IP addresses of those visiting Ms. Lask's website. As stated previously, Ms. Lask's website uses an analytics program as explained in her website's disclaimer and privacy notice informing visitors to her website that she can view their IP addresses for no other purpose but to understand what topics are popular to her viewers. This is a common practice, and any visitor to any website is likely to have their IP address, date, and time of visit recorded so that the website owner may view this information. My legal practice has included representing individuals primarily in criminal matters, and I have never heard of website IP address analytics program criminally charged as stalking, or even commonly understood to be stalking. I have concluded to a reasonable degree of professional certainty that Ms. Lask did not engage in stalking the Court and chambers staff when they visited her website.

23. In the August 1, 2019, Order explaining her recusal, Judge Preska alleges that Ms. Lask " has been 'informed that [the Court's] husband owned stock in [a] company' that Ms. Lask sued 17 years ago." Judge Preska's lists this as another indication that Ms. Lask allegedly "stalked the Court." I asked Ms. Lask about this allegation, and she stated that she did not recall exactly the relationship between the defendant-company and Judge Preska's husband over 17 years ago, so she looked into that prior case. In doing so, Ms. Lask sent me the docket that shows Judge Preska's entry on the record in Campoverde, et al. v. Sony Pictures, et al., 01cv7775, U.S. District Court, Southern District of New York, in which Ms. Lask represented the plaintiff Juan Campoverde. A Memorandum entry dated September 19, 2001(Dkt. 2) signed by Judge Preska, states: "the parties are advised that the firm in which my husband is a partner, Cahill Gordon & Reindel, from time to time represents Sony Music Entertainment Inc. and various affiliates and that my husband works on those matters." Ms. Lask indicated to me that she remembered a connection disclosed by Judge Preska, but not the exact nature of Judge Preska's husband's relationship with the company.

I have concluded to a reasonable degree of professional certainty that Ms. Lask did not engage in stalking the Court and chambers staff by inaccurately recalling the nature of Judge Preska's husband's relationship with a company that Ms. Lask sued previously.

**N.Y. Rules of Professional Conduct R. 1.18**

24. It is clear that a lawyer shall not disclose a prospective client's confidential information or use it to the prospective client's disadvantage. N.Y. Rules of Professional Conduct R. 1.18. Prospective clients are entitled to share confidential information with a lawyer and have the same protections of the attorney-client privilege and the ethical duty of confidentiality, so that prospective clients and the lawyers with whom they consult can make an informed decision whether to establish a lawyer-client relationship. This duty of confidentiality extends to everything the prospective client discloses to the lawyer. *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S .C.A.*, 258 F.R.D. 95, 100 (S.D.N.Y. 2009) ("An attorney-client relationship can arise prior to formal engagement. As a result, privilege may attach to a prospective client's 'initial statements' to an attorney who is not ultimately hired."); *Rose Ocko Found. v. Liebowitz*, 155 A.D.2d 426, 427 (1st Dep't 1989) (stating that the fiduciary relationship between lawyer and client "extends to a preliminary consultation by a prospective client with a view toward retention of the lawyer").

25. In this matter, Ms. Lask was a prospective client of Mr. Kupiec because she contacted him in effort to seek his assistance as a lawyer. If Mr. Kupiec contacted Judge Preska and disclosed any information he learned from Ms. Lask, including the fact that Ms. Lask had contacted him about representing her in the matter before Judge Preska, I have concluded to a reasonable degree of professional certainty that that would be a violation of the duty of confidentiality owed to Ms. Lask pursuant to N.Y. Rules of Professional Conduct R. 1.18.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 5, 2019   _____
PETER A. JOY
WASHINGTON UNIVERSITY IN ST. LOUIS
SCHOOL OF LAW
One Brookings Drive, Campus Box 1120
St. Louis, Missouri 63130
(314) 935-6445