UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

MARGARET RHEE KARN,

                                        CIVIL ACTION NO: 15-CV-9946 (RWL)

                        Plaintiff,
            v.

SUSAN CHANA LASK,

_____Defendant_____


# MEMORANDUM OF LAW
# SUPPORTING SANCTIONS
# AGAINST PLAINTIFF AND HER COUNSEL


Law Offices of Susan Chana Lask

*Counsel for Defendant*

244 Fifth Avenue, #2369
New York, NY 10001
(917) 300-1958

September 25, 2025

**TABLE OF CONTENTS**

Page(s)

**I. Introduction** ................................................................ 1

**II. Jurisdiction** ................................................. 2

    A. Continuing Authority to Sanction ........................................... 2

**III. Facts: Plaintiff's AI-Generated Fake Cases** ............................... 3

    A. Serial Fraudulent Filings (July–August 2025) ............................... 3

    i. Fictional Cases and Holdings (DE 526)… ...................................... 3

    ii. Continued Fake AI-Generated Cases (DE 532-1) ............................ 4

    iii. False Attributions to the Court Record ..................................... 4

    iv. The Court Found Plaintiff's Cases Fake ..................................... 5

**IV. Law and Argument: AI-Generated Frauds** ................................... 6

    A. Park v. Kim Mandates Sanctions ............................................ 6

    B. Sanctionable Misuse of Sanctions and Replies ............................... 7

    C. Rule 11, §1927, and Inherent Powers Warrant Sanctions ...................... 7

        a. Prior Judicial Findings Corroborate Plaintiff's Bad Faith ................... 10

        b. Dollinger's Documented History Warrants Enhanced Sanctions ...........10

**V. Misconduct Continuing Since 2015 Warrants Sanctions** ................... 11

    A. Plaintiff's Frivolous Sanctions Motion (DE 494) ............................ 11

    i. Misrepresenting Rule 54(d)(2) ............................................. 12

    ii. Fabricated "Fee Schedule" and No Causal Link ............................. 12

    iii. Other Baseless Attacks ..................................................... 13

    B. Trial-Eve Ambushes…………………………………………… 15

    i. 143-Page Document Dump…………………………………… 15

**TABLE OF CONTENTS (cont')**

Page(s)

C. Fabrication Accusation Vacating Trial - a Scheme to Avoid Trial….     16

D. Post–August 9 Order-Shifting Stories, Perpetuating Lies to Smear Counsel. 18

E. Continuing Sanctionable Conduct………………..     18

    i. Repeated Misrepresentations in Pleadings and Motions…….     18

    ii. Complaint Knowingly False Allegations…………     19

    iii. Stalker Smears and Harassment…………     21

    iv. Pattern of Delay and Defiance of Orders………     24

. Pretrial Misconduct ...............................................................     11

A. Serial Falsehoods at July 20 & 24 Conferences ...............................     13

F. Defied Pretrial Order—Rule 16(f) Sanctions .................................     25

G. Ambush Discovery, Replies, Sur-replies, Trial .............................     26

H. Pattern of Lying About Sanctions/Discipline .................................     27

**VI. Conclusion** ..................................................................     27

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

AJ Energy LLC v. Woori Bank, 829 F. App'x 533, 535 (2d Cir. 2020) ......................... 7

Azkour v. Little Rest Twelve, No. 10 Civ. 4132, 2014 WL 12779561

       (S.D.N.Y. June 2, 2014) .....     21

Barbera v. Grailed, LLC, No. 24-CV-3535 (LJL) ........................................................     2

Benjamin v. Costco Wholesale Corp., No. 24-CV-7399 (LGD) ...........................................6,7

Bevins v. Colgate-Palmolive Co., No. 25-CV-576, 2025 WL 1085695

    (E.D. Pa. Apr. 10, 2025) .....      6

Bridges v. Eastman Kodak Co., 102 F.3d 56 (2d Cir. 1996) ............................................ 5,12

Bouveng v. NYG Cap. LLC, 2017 WL 6210853, (S.D.N.Y. Dec. 7, 2017) .......................25

Cameron v. Lambert, 07 Civ. 9258 (DC) .............................................................     21

Chemiakin v. Yefimov, 932 F.2d 124, 127 (2d Cir. 1991) ............................................ 2

Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395 (1990) .......................................... 2

Dehghani v. Castro, No. 25-CV-52 (MIS) ................................................................    6

Empire Tr. LLC v. Cellura, 2024 WL 4573989 (S.D.N.Y . Oct. 24, 2024) ........     11,17

Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012)……     9

Gallop v. Cheney, 642 F.3d 364, 370 (2d Cir. 2011) ................................................    8

Nakash v. U.S. Dep't of Justice, 708 F. Supp. 1354, 1369–70 (S.D.N.Y . 1988)    7

Int'l Techs. Mktg. v. Verint Sys., 991 F.3d 361, 368 (2d Cir. 2021)
1

Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012) .................................. 9

Gauthier v. Goodyear Tire & Rubber Co., No. 23-CV-281, 2024 WL 4882651, (E.D. Tex. Nov. 25, 2024)……………………………………..     6

Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976) ........................... 13

Hoodho v. Holder, 558 F.3d 184, 192 (2d Cir. 2009) ................................................    9

Houghton v. Culver, 467 F. App'x 63, 64 (2d Cir. 2012) ............................................    25

Johnson v. Univ. of Rochester Med. Ctr., 642 F.3d 121, 126 (2d Cir. 2011)  ...   3

Kaur v. Desso, 2025 WL 1895859, at *4 (N.D.N.Y . July 9, 2025) .......................   11

Miller v. Victor, No. 14-cv-01819 (SDNY) ...........................................................    11

Muhammad v. Walmart Stores E., 732 F.3d 104 (2d Cir. 2013) .....     7

Paese v. New York Seven-Up Bottling Co., 158 F.R.D. 34 (S.D.N.Y. 1994) ............. 17

Indiezone v. Rooke, 2014 U.S. Dist. LEXIS 122807

    (N.D. Cal. Sept. 2, 2014) ................................ 1,10 *ad pasim*

Inc. v. Verint Sys., Ltd., 991 F.3d 361, 368 (2d Cir. 2021) ......................................... 21

Jakes v. Youngblood, No. 2:24-CV-1608, 2025 WL 2371007

    (W.D. Pa. June 26, 2025) ................................................ 6

Knipe v. Skinner, 19 F.3d 72, 77 (2d Cir. 1994) ...................................................... 4, 17

Lacey v. State Farm Gen. Ins. Co., No. 24-cv-05205, 2025 WL 1363069

    (C.D. Cal. May 6, 2025) .. ................................... 6

Gollomp v. Spitzer, 568 F.3d 355, 374 (2d Cir. 2009)  27

Liebowitz v. Bandshell Artist Mgmt., 6 F.4th 267, 290 (2d Cir. 2021) ...................... 11

Link v. Wabash R.R. Co., 370 U.S. 626, 633–34 (1962) ................................................ 9

Martin v. Giordano, 185 F. Supp. 3d 339, 354 (E.D.N.Y. 2016) ...................................... 25

Mata v. Avianca, Inc., 678 F. Supp. 3d 443, 461 (S.D.N.Y . 2023) ................................... 3

Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) ..................................................... 18

Nguyen v. Savage Enters., No. 24-CV-815 (BSM) ....................................................... 6

Paese v. New York Seven- Up Bottling Co., 158 F.R.D. 34, 37 (S.D.N.Y. 1994).. 17

Park v. Kim, 91 F.4th 610 (2d Cir. 2024)............... 1,6,27

Pentagen Techs. Int'lLtd. v. United States, 172 F. Supp. 2d 464 (S.D.N.Y. 2001)... 13

Ramirez v. Humala, 2025 WL 1384161 (E.D.N.Y . May 13, 2025) ............................... 11

Ransmeier v. Mariani, 718 F.3d 64, 67 (2d Cir. 2013) ................................................ 2

Rhee-Karn v. Burnett, 2014 WL 4494126, at *2 (S.D.N.Y. Sept. 12, 2014) ... 14, 20

Rudolf v. Shayne, Dachs, , 867 N.E.2d 385, 388 (N.Y. 2007) ................. 12

Rossbach v. Montefiore Med. Ctr., 81 F.4th 124, 140 (2d Cir. 2023) ......... 10

S.A. v. Vann, 112 F.3d 91, 96 (2d Cir. 1997) ......................................................... 8

Safe-Strap Co. v. Koala Corp., 270 F. Supp. 2d 407, 421 (S.D.N.Y . 2003) ............... 7

Saxena v. Martinez-Hernandez, No. 22-cv-2126, 2025 WL 1194003

    (D. Nev. Apr. 23, 2025) ........                6

Schlaifer Nance & Co. v. Est. of Warhol, 194 F.3d 323 (2d Cir. 1999) .....................  2

Shangold v. Walt Disney Co., 275 F. App'x 72, 73 (2d Cir. 2008) .................................. 17

Techs. Mktg. v. Verint Sys., 991 F.3d 361 (2d Cir. 2021) ............................................. 27

United States v. Hayes, 763 F. Supp. 3d 1054, 1060 (E.D. Cal. 2025) .......................  6

United States v. L-3 Commc'ns EOTech, Inc., 921 F.3d 11, 19 (2d Cir. 2019)....... 19

Universe Antiques, Inc. v. Vareika, 826 F. Supp. 2d 595, 611 (S.D.N.Y. 2011) .......... 9

Usherson v. Bandshell Artist Mgmt., 2020 WL 3483661

    (S.D.N.Y. June 26, 2020) ................                8

Wadsworth v. Walmart Inc., 348 F.R.D. 489, 495–96 (D. Wyo. 2025) .........    6

Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 114
 (2d Cir. 2009). ....................................................       9

Zalisko v. MTA New York City Transit, 2010 WL 3185685

    (S.D.N.Y. Aug. 12, 2010) ....................................................  25

## I. INTRODUCTION

This case has been defined by Plaintiff and her counsel Dollinger's relentless obstruction: fabricating evidence, citing fake AI-generated cases, smearing counsel and Defendant as a "stalker," and turning conferences into sideshows. On July 24, 2023, Dollinger detonated an eleventh-hour time bomb—accusing Defendant and her counsel of fabricating Exhibit 6. He swore "Absolutely" that experts, hard drives, and Dropbox protocols proved it. None existed. This Court later found "not even a scintilla of evidence" and "no good faith basis." DE 411. That is the definition of sanctionable bad faith.

The Second Circuit in *Park v. Kim*, 91 F.4th 610 (2d Cir. 2024) directs that sanctions are *mandatory* when fabricated cases or citations are submitted. Here, Plaintiff has submitted not one but dozens. This Court itself acknowledged the fraud in August 2025 (DE 550 fn.2, 552), yet no sanction issued—directly conflicting with *Park* and cases nationwide and emboldening further misconduct.

The misconduct is systemic. Family Court (after a 16-day trial affirmed on appeal) found Plaintiff obstructive, defiant, gave unreliable testimony and in contempt. DE 76-6. Judge Cote relied on those findings in dismissing Plaintiff's accusations here, holding her own misconduct caused her loss of custody. DE 226 at 9–10. Dollinger, for his part, has been sanctioned numerous times (see Exhibit A) including fraud on the court in *Indiezone v. Rooke* ($93,365.92) and recently disqualified in *Empire Tr. v. Cellura* after accusing Judge Karas of corruption. He has never paid the sanctions, never stopped, and repeats the same pattern here.

The law requires only one bad-faith misrepresentation for sanctions. *Int'l Techs. Mktg. v. Verint Sys.,* 991 F.3d 361, 368 (2d Cir. 2021). Here, there are more than twenty. Sanctions are not optional. They are mandated by *Park*, *Verint*, and the Court's inherent duty to preserve the integrity of these proceedings.

## II. JURISDICTION

### A.  Continuing Authority to Sanction

A district court retains jurisdiction to impose sanctions regardless of the underlying case status because sanctions are collateral to, and independent of, the merits. *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 395 (1990); *Schlaifer Nance & Co. v. Est. of Warhol,* 194 F.3d 323 (2d Cir. 1999). That authority extends even after notice of appeal or issuance of a Circuit mandate. *In re NASDAQ Mkt.-Makers Antitrust Litig*., 187 F.R.D. 124, 129 (S.D.N.Y. 1999); *Chemiakin v. Yefimov*, 932 F.2d 124, 127 (2d Cir. 1991); *Schlaifer*, supra. The Court should assess the *totality* of litigants' conduct. *Ransmeier v. Mariani*, 718 F.3d 64, 67 (2d Cir. 2013)**.**  This cumulative approach is especially fitting in a multi-year case like this one. Indeed, the Court only recently—on August 26, 2025—addressed Plaintiff's fabricated citations and meritless arguments. DE 551, 552. Filing sanctions before that point would have burdened the Court with piecemeal litigation, contrary to principles of judicial economy.

As courts routinely grant sanctions first and then set fee schedules, Defendant will submit a fee application with contemporaneous billing within 30 days of the decision. *Barbera v. Grailed, LLC*, No. 24-CV-3535 (LJL), 2025 WL 2098635, at *17* (S.D.N.Y. July 25, 2025); *Keitel v. D'Agostino,* No. 21-CV-8537 (JMF), 2023 WL 3560553, at 6 (S.D.N.Y. May 19, 2023).

## III. FACTS: PLAINTIFF'S AI-GENERATED FAKE CASES

### A. Serial Fraudulent Filings (July–August 2025)

#### i. Fictional Cases and Holdings (DE 526) and Refusal to Cease False Filings

On July 30, 2025, Plaintiff moved to amend the judgment with contradictions and fictional citations—attributing quotes and holdings to nonexistent or inapposite authorities. DE 526-2. Defendant's August 13, 2025 opposition (DE 542) demonstrated Plaintiff's patent misrepresentations of law and citing fake cases, law and holdings, as follows:

1.   A frivolous demand to lift the Rule 62(d) statutory stay;

2.   A false quotation of Rule 58(a) ("all essential terms necessary for execution");

3.   An internally inconsistent bond argument; and

4.   Fabricated/misrepresented authorities, including:

- *Schipani* (fake quote - "Where state law governs the underlying claim, post-judgment interest is also governed by state law,"; opposite holding);

- *Nken* (immigration; unrelated to Rule 62(a), false quoted holding "the Court has discretion to lift or shorten that stay [62(a)]"-);

- *Briggs* (about omission of interest, not calculating it), *PCH Assocs.* (claim preclusion case, not about interest),

- *Robert Lewis Rosen* (invented quote "Courts routinely amend judgments to conform to mandatory statutory interest obligations."),

- *Silge* (default-judgment context yet quoted false holding - "renders a judgment facially incomplete,"), and

- *Lipin* (unlawfully cited in reply for sanctions and *Lipin* imposed none anyhow). DE 542 at 2–4; DE 549.

Defendant also filed a July 17, 2025 email warning Plaintiff to stop threatening to lift the statutory stay (DE 542-1). Plaintiff ignored it, refused to withdraw even after the bond posted (DE 543, 544), and doubled down in a reply (DE 546). Continuing to press a position known to be baseless is sanctionable. See *Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 126 (2d Cir. 2011); *Mata v. Avianca, Inc.,* 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023). Plaintiff's refusal to withdraw her motion to lift the statutory 30-day stay is sanctionable.

### ii. Continued Fake AI-Generated Cases (DE 532-1)

On August 4, 2025, Plaintiff again manufactured citations/holdings in her motion filings:

- *Harrison v. Brookhaven* (nonexistent; fabricated holding in quotes- "(failure to appeal earlier adverse ruling waives right to relitigate under Rule 59(e)))"

- *Karmely* (fabricated holding as "(declining to consider issues not preserved through direct appeal).", and a fake
- *Vesco* (not about motions, fake quote of "A court may treat as a motion any written request for relief which calls for judicial action."

See **Exhibit A** for a table of Plaintiff's fake citations.

### iii. False Attributions to the Court Record

1. **Law of the Case.** Plaintiff misrepresented Judge Preska's 2019 recusal order was "law of the case." DE 532-1 at 2. The Court confirmed that was false, the order had no preclusive effect. DE 550. Plaintiff insisting on elevating a disputed interlocutory ruling into binding precedent distorted fundamental procedural law and the record.

2. **False Appellate Law.** Plaintiff insisted the recusal order must be appealed before judgment (DE 532 ¶ 6; Karn Br. DE 532 at 1–2), contrary to black-letter law that interlocutory order is not appealable. The Court rejected this meritless argument. DE 550. This was Plaintiff's deliberate attempt to invent appellate law to penalize Defendant for exercising her rights in the ordinary course of litigation.

3. **Fabricated Sealed Filings.** Plaintiff misrepresented that "sealed matters" exist on the docket; none exist. Pl. Reply DE 546 at 3. False statements about sealed filings are especially grave, as they suggest the existence of confidential judicial records that could distort the case itself. Misrepresenting something so sensitive reflects a deliberate attempt to mislead the Court.

4. **Frivolous Sanctions Demands via Reply Ambush.** Plaintiff embedded a sanctions demand in her Reply. DE 546 at 3. *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief"). Defendant was forced to seek and file a sur-reply (DE 546, 547, 549, 552), which the Court granted. This was not

isolated. Only months earlier, Plaintiff embedded new false arguments in a reply, again

forcing Defendant to request and file a sur-reply—which the Court granted. DE 504, 505,

513. Plaintiff then escalated by unlawfully filing a sur-sur-reply, requiring yet another order

deeming it "an improper sur-sur-reply." DE 519–521.

### iv. The Court Found Plaintiff's Cases Fake; the Arguments Meritless

The August 26, 2025 Order confirmed "*Karmely* … did not at all discuss preservation" and

"*Harrison v. Brookhaven*" does not exist even on Westlaw. DE 550, fn.2. The Court also rejected

Plaintiff's arguments on law of the case, interlocutory appeal before judgment, and her denial

of *Keach*'s applicability. In a contemporaneous order, the Court held: (i) stay issues moot after

bond; (ii) judgment attack was meritless; (iii) demand for a higher 9% interest rate unsupported;

and (iv) *Schipani* requires the federal rate. DE 552.

## IV. LAW AND ARGUMENT: AI-GENERATED FRAUDS

Defendant's opposition (DE 542 at 3) explained:

> "These distortions are not isolated. Defendant has repeatedly documented
> Plaintiff's pattern of citing cases in previous filings that either do not exist or
> do not say what she claims—suggesting she is relying on AI-generated text
> known for its hallucinations … Courts sanction attorneys for these fraudulent
> filings. Citing *Benjamin v. Costco*; *Mata*." [1]

Plaintiff never denied the AI-generated and fictional citations—confirming the obvious: the

authorities were fake.

---

[1] Plaintiff's pattern of distortion includes her December 2024 fee motion - denied by this Court - which cited *Bridges v. Eastman Kodak Co*., 102 F.3d 56 (2d Cir. 1996) and three other cases to claim a "prevailing party" may recover fees. DE 494-6 at 10. Those were Title VII cases with statutory fees completely inapplicable to legal malpractice, which prohibits fee shifting. DE 500 at 4. Defendant also showed at summary judgment that Plaintiff fabricated a proposition from *G Investors Holding LLC*, 2012 WL 446818 and misquoted *Nw. Mut. Life Ins*., 78 F. Supp. 2d 70, by omitting words. DE 211fn.5 at 13–14. This is illustrative, not exhaustive, as her filings repeatedly distort the record and law.

**A.**  ***Park v. Kim* Mandates Sanctions for Fake Citations; Declining to Sanction Conflicts with That Authority**

In *Park v. Kim*, 91 F.4th 610, 614 (2d Cir. 2024), the Second Circuit sanctioned counsel for citing a *single* nonexistent case generated by ChatGPT and referred counsel to the Grievance Panel, citing *Mata*, 2023 WL 4114965, at *12:

> "A fake opinion is not 'existing law' … relying on fake opinions is an abuse of the adversary system."

*Park,* at 614–16, confirms that fabricated citations are essentially *per se* sanctionable bad faith that wastes judicial resources and unreasonably multiply proceedings. Only one fake cite warrants sanctions under *Park*, supra.  Here, the pattern is far worse: Plaintiff fabricated numerous cases, holdings and quotations identified by Defendant and this Court (DE 550 fn 2; DE 552), causing substantial time expended chasing phantom cases.

*Park* condemned this misconduct as fundamentally incompatible with Rule 11 and left no doubt that district courts must sanction fabricated citations to protect the integrity of the judicial process. Courts nationwide agree: *Mata* (S.D.N.Y. 2023); *Park* (2d Cir. 2024); *Benjamin v. Costco Wholesale Corp.,* No. 24-CV-7399 (LGD), 2025 WL 1195925, at *6–8 (E.D.N.Y. Apr. 24, 2025); *Jakes v. Youngblood,* No. 2:24-CV-1608, 2025 WL 2371007 (W.D. Pa. June 26, 2025).[2]

---

[2] *Gauthier v. Goodyear Tire & Rubber Co.,* No. 23-CV-281, 2024 WL 4882651, at *2–3 (E.D. Tex. Nov. 25, 2024); *Wadsworth v. Walmart Inc.,* 348 F.R.D. 489, 495–96 (D. Wyo. 2025); Dehghani v. Castro, No. 25-CV-52 (MIS) (DLM), 2025 WL 988009, at *4 (D.N.M. Apr. 2, 2025); *Nguyen v. Savage Enters.*, No. 24-CV-815 (BSM), 2025 WL 679024, at *1 (E.D. Ark. Mar. 3, 2025); *Bevins v. Colgate-Palmolive Co.*, No. 25-CV-576, 2025 WL 1085695, at *7 (E.D. Pa. Apr. 10, 2025); *Saxena v. Martinez-Hernandez*, No. 22-cv-2126, 2025 WL 1194003, at *2 (D. Nev. Apr. 23, 2025); *United States v. Hayes*, 763 F. Supp. 3d 1054, 1060 (E.D. Cal. 2025); *Lacey v. State Farm Gen. Ins. Co*., No. 24-cv-05205, 2025 WL 1363069, at *3 (C.D. Cal. May 6, 2025).

Despite Defendant's August filings documenting this misconduct - and the Court's own recognition - no sanction issued. This Court cannot ignore misconduct it has already recognized without placing itself at odds with this Circuit and its sister courts nationwide sanctioning identical misconduct. Excusing fabricated citations invites further pollution of the record and undermines confidence in the judiciary.

### B. Sanctionable Misuse of Sanctions and Replies

In August 2025, Plaintiff twice embedded baseless sanctions in replies and repeatedly misused replies/sur-sur-replies—conduct this Court struck. Sanctions requests used as harassment are themselves sanctionable. *Nakash v. U.S. Dep't of Justice,* 708 F. Supp. 1354, 1369–70 (S.D.N.Y. 1988) (sanctions requests are "not a tactical device" and filing for strategic reasons constitutes an "improper purpose); *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003).

These baseless sanctions demands ambushed in replies combined with the fake authorities (DE 550 n.2) warrant Rule 11, § 1927, and inherent sanctions.

### C.  Rule 11, § 1927, and Inherent Powers Warrant Sanctions

**Rule 11.**  Legal contentions must be warranted by law and fact, or a nonfrivolous argument for extension, and counsel must read and confirm the authorities cited. *AJ Energy LLC v. Woori Bank*, 829 F. App'x 533, 535 (2d Cir. 2020); *Park,* 91 F.4th at 615.  When imposed *sua sponte* (without a safe harbor notice as here), Rule 11 sanctions require subjective bad faith. *Benjamin v. Costco,* supra, at 347 (citing *Muhammad v. Walmart Stores E.,* 732 F.3d 104 (2d Cir. 2013)).

As *Park* points out, counsel <u>knew</u> he was misrepresenting cases and creating false quotations when none existed in the first place to be verified under the signing requirements of Rule 11. Submitting nonexistent cases and fabricated quotes is categorical bad faith. *Park*, 615–16; *Mata,*463; *Benjamin*, 462–63.

7

**Section 1927.** Sanctions are warranted when an attorney "multiplies the proceedings…

unreasonably and vexatiously," plus a finding of bad faith. 28 U.S.C. § 1927; *Ted Lapidus, S.A.

v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997). It is a subjective bad faith standard, but bad faith is

inferred when conduct is "so completely without merit as to require the conclusion that [it was]

undertaken for some improper purpose." *Schlaifer*, supra, at 338. Plaintiff's counsel did precisely

that:

- Forced Defendant and the Court to research fictitious case law. DE 542.

- Required leave for a sur-reply to rebut misrepresentations in a Reply. DE 546, 547, 549;

- Repeated the same fabrications during reconsideration. DE 531–536.

- Repeatedly used unlawful replies and a sur-sur-reply, each found improper. DE 504, 505, 513, 520.

This repeated use of fabricated authorities and reply-embedded sanctions was calculated to

deceive the Court, risk decisions tainted by fabricated authority and squandered judicial

resources. See *Gallop v. Cheney*, 642 F.3d 364, 370 (2d Cir. 2011).

The Court's August 26, 2025 decisions denied all of Plaintiff's arguments and confirmed her

fabrications. Sanctions are warranted. *Park*, supra.

**Inherent Power (client and counsel).** Courts retain inherent authority to sanction bad-faith

conduct by parties and lawyers. *Chambers* at 46 (power "grounded … in [the court's] inherent

power to control the proceedings"); *Ransmeier* at 68. Inherent sanctions are appropriate upon

clear and convincing evidence of knowingly false or misleading submissions "or knowingly

fail[ing] to correct false statements, as part of a deliberate and unconscionable scheme to

interfere with the Court's ability to adjudicate the case fairly." *Usherson v. Bandshell Artist

Mgmt.*, 2020 WL 3483661, at *9 (S.D.N.Y. June 26, 2020). False submissions "seriously

impedes the truth-finding process." *Universe Antiques, Inc. v. Vareika*, 826 F. Supp. 2d 595, 611 (S.D.N.Y. 2011).

Inherent-power sanctions requires a finding that (1) the conduct was without a colorable basis and (2) done in bad faith. *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012). Without color means "it lacks any legal or factual basis … considered in light of the reasonable beliefs of the [actor]." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). Bad faith is "inferred when the actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Schlaifer* at 338 (2d Cir. 1999). "[I]nappropriate conduct [may] suggest[ ] [that] the attorney [or party] was motivated by bad faith." *Ransmeier*, at 69.

Plaintiff and counsel's bad faith is established by *Park*, supra,, and would be inferred anyhow by fabricating quotations and holdings (e.g., *Harrison*; *Vesco*), denying controlling precedent (*Schipani*; *Keach*), and abusing reply briefs for sanctions. DE 546. There was no colorable basis to any of this.

Plaintiff was no innocent bystander. She personally reviewed and participated in filings (DE 494-2; DE 532) and cannot disclaim responsibility. Nor can she claim ignorance, particularly where she was on notice of her counsel's misconduct from Defendant's repeated objections over years to fabricated filings and counsel's documented history of fraud and sanctions. DE 47 at 2 fn.2; DE 121 at 17; DE 181-1; DE 500 fn.4. The Second Circuit holds, a party "cannot avoid the consequences of the acts or omissions of [the] freely selected agent," for "each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts known to the attorney." *Hoodho v. Holder*, 558 F.3d 184, 192 (2d Cir. 2009) (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 633–34 (1962)). *Ransmeier* confirms, "[c]lients are responsible for dictating the ultimate goals of a lawsuit." 718 F.3d at 71.

### a. Prior Judicial Findings Corroborate Plaintiff's Bad Faith History

After investigations and a 16-day Family Court trial (affirmed on appeal), the court found Plaintiff (i) delayed the case; (ii) disobeyed orders; (iii) had "an altered sense of reality," lacked impulse control, and exhibited unstable behavior; (iv) was linked to suspicious pet deaths; (v) gave evasive, unreliable testimony; (vi) presented a paid witness; and (vii) falsely projected her deficiencies onto the father. DE 76-6.  Judge Cote relied on those findings to conclude Plaintiff's accusations against Defendant here were false and it was Plaintiff's own misconduct that caused her loss of custody of her child. DE 226 at 9–10. These are formal judicial findings after a full record and appellate review confirming a pattern: obstruction, defiance, false narratives, and bad-faith tactics—mirrored here by fabricated citations, misrepresented precedent, and reply ambushes.  Recognizing this background explains why Plaintiff's conduct here is not aberrational - it is part of a documented pattern that multiple courts have already found. Sanctions are warranted.

### b. Dollinger's Documented History Warrants Enhanced Sanctions

Plaintiff's counsel, Dollinger, has a documented history of sanctions for similar misconduct. **Exhibit B** summarizes twelve orders sanctioning or disqualifying Dollinger for frauds, defiance, and abusive tactics. Courts may and should consider repeated misconduct elsewhere when imposing sanctions. *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 140 (2d Cir. 2023) (citing *Liebowitz*, supra, at 291). The Ninth Circuit affirmed $93,365.92 in sanctions against him for fraud on the court. *Indiezone, Inc. v. Rooke*, 2014 U.S. Dist. LEXIS 122807 (N.D. Cal. Sept. 2, 2014), aff'd, 720 F. App'x 333 (9th Cir. 2017). He has not satisfied those sanctions. His

pattern - fabricating facts, threatening judges/counsel, weaponizing baseless accusations - repeats here. [3]

For AI-fabricated citations, courts impose sanctions ranging from $1,000–$15,000, disciplinary referrals, and CLE mandates. *Kaur v. Desso*, 2025 WL 1895859, at *4 (N.D.N.Y. July 9, 2025); *Park,* supra; *Gauthier,* at *3. Lesser fines are reserved for clean records and contrition. *Benjamin*, supra; *Ramirez v. Humala*, 2025 WL 1384161 (E.D.N.Y. May 13, 2025). Dollinger has neither. His escalating pattern warrants sanctions above the $15,000 ceiling payable to the Court (*Liebowitz v. Bandshell Artist Mgmt*., 6 F.4th 267, 290 (2d Cir. 2021), and referral to the Grievance Panel. *Park*, supra.

## V. MISCONDUCT CONTINUING SINCE 2015 WARRANTS SANCTIONS

Plaintiff's July–August 2025 fake citations did not arise in a vacuum - they cap years of repeated deceits.

### A. Plaintiff's Frivolous Sanctions Motion (DE 494)

The December 2024 sanctions motion—seeking $127,325 in fees and $3,017.80 in costs—epitomizes her bad-faith litigation. Plaintiff and counsel swore there were "contemporaneous

---

[3] Further examples of Dollinger's dangerous pattern. (1) He threatened Judge Chhabria that he reported "everyone" to the DOJ. DE 56-2; **Exhibit C** at 21–22); (2) He accused the court of "bigotry," "cultural intolerance," and *ex parte* collusion, and lied that Defendant was his "consultant" as "confirmed" by the FBI and "former members of the California Judiciary." **Exhibit D** fn. 3, 5–6 & ¶¶30, 35; (3) He threatened Attorney Sugisaki and clients with criminal charges in a civil case. *Id* at 43; (4) He branded Defendant and Sugisaki "stalkers" in the "unauthorized practice of law." *Id* fn. 3–4; (5) In the SDNY, Judge Karas confronted Dollinger's "lies," so he retaliated by accusing the Judge of *ex parte* dealings and judicial ethics violations, leading to Dollinger's disqualification, then his harassing appeal that was dismissed. *Empire Tr., LLC v. Cellura*, 2024 WL 4573989 (S.D.N.Y. Oct. 24, 2024), aff'd, 2025 WL 1556557 (2d Cir. Apr. 22, 2025); **Exhibit E**, T 21:4–9, 22–25); (6) In *Miller v. Victor*, No. 14-cv-01819 (SDNY), he trespassed into a party's office in disguise (trench coat, sunglasses, makeup, lipstick), refused to identify himself, threatening to "arrest" female staff, and spewed vulgarities. **Exhibit F**.

billing records," when none existed. DE 494-1 ¶11. The Court devoted twelve pages to the motion, and rejected every argument as unsupported by fact and law. DE 551 at 36–48.

### i. Misrepresenting Rule 54(d)(2)

Plaintiff predicated fees on Rule 54(d)(2), and the Court found it "is not a basis for attorney's fees." DE 551 at 36. Defendant's opposition likewise showed Rule 54 reliance was clearly false and used as a vehicle to extracting fees categorically barred in malpractice cases. *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 867 N.E.2d 385, 388 (N.Y. 2007); DE 500 at 3–5. This knowing misrepresentation was also in Plaintiff's pretrial statement invoking a fictitious "Recoverability of Legal Fees Rule." DE 337 at 4. Plaintiff further misrepresented she was a "prevailing party" entitled to fees by citing *Bridges v. Eastman Kodak Co.,* 102 F.3d 56 (2d Cir. 1996) and three other cases that were all Title VII statutory fee-shifting cases completely irrelevant to malpractice. DE 494-6 at 10. More disturbing, Plaintiff lied that this Court gave her the right to file a "Rule 54(d)(2) motion". DE 494-6 p 2. The Court never gave permission for a Rule 54(d) motion, exactly for the reasons it denied it in its decisions.

These deliberate misrepresentations of law and fact was to extract money prohibited by law, and warrants severe sanctions for lying about the Magistrate alone.

### ii. Fabricated "Fee Schedule" and No Causal Link

Contemporaneous records are required. *Carey,* 711 F.2d at 1147–48; *Scott,* 626 F.3d at 133–34. Plaintiff instead submitted a 78-page "copy of the entire docket, with fictional hours and placeholders. DE 494-3; DE 551 at 47 fn 8. Plaintiff also defied prior orders barring appellate expenses because she filed her own cross-appeal (DE 378 at 7), yet she defiantly added a $505.00 cross-appeal fee. DE 494-3 at 78. The Court found no contemporaneous records or causal tie between claimed fees and any misconduct, and Plaintiff simply inflated entries "spanning nearly the entire case." DE 551 at 36–39.

### iii. Other Baseless Attacks the Court Rejected

The Disqualification/Counterclaim were not bad faith and Plaintiff's assertions were "nothing beyond conjecture." DE 551 at 41–47.  The collateral smears (stalking / perjury / Preska) were unsubstantiated, hearsay, immaterial, the claimed "perjury" "never happened", and no fees were tied to Preska's recusal. DE 551 at 43–48.

"A filing is frivolous if it is 'clear under existing precedent that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.'" *Pentagen Techs. Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 470 (S.D.N.Y. 2001). From inception, the sanctions motion showed it violated *Carey* and *Scott* fee requirements, in addition to being unsupported by law or fact. This sanctions motion was legally and factually baseless (Rule 11(b)), vexatiously multiplied proceedings (§ 1927), and constituted deliberate bad faith (inherent power).

This is not Plaintiff's first misuse of sanctions. She has weaponized them throughout this case - through letter campaigns filled with personal attacks, and repeatedly embedding baseless demands in replies and even sur-sur-replies. Her December 2024 sanctions motion was equally groundless. Sanctions against Plaintiff and her counsel are necessary not only to address their repeated abuses but also to deter future litigants from similar misconduct. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

## B. PRETRIAL MISCONDUCT

### A. Serial Falsehoods at the July 20 and July 24 Conferences

At the July 20, 2023 conference, Dollinger lied that this case "mirrors" other malpractice cases and "judicial decisions" against Defendant. The Magistrate immediately rebuked him: "Be careful, because now you're going into territory that you should not … it certainly is not

relevant." T1 46:3–11.[4]  In defiance, Dollinger repeated the lie in a five-page March 25, 2024 letter, again denied. DE 434, 435, 437.

Next, Dollinger pressed punitive damages, stating this is "one of the rarest situations in New York where I can do this." T1 74–82. The Court reiterated that punitive damages are unavailable in negligence, but not before much wasted time on this. Dollinger revived his baseless punitive damages at the July 24 conference, the Court barred it again (T2 57:13–18; 59:15–18), raised it a third time, causing another Order: "***Plaintiff once again ignores the scope of the trial***," and "***there is no basis for punitive damages***" in this negligence case, and "nothing more." DE 424.

Next, Dollinger lied that Defendant "insisted" on a second federal filing and Plaintiff was unaware of her rights. The Magistrate rejected that outright: "You are not allowed to argue that she was improperly advised … in connection with the second action … it's an issue that actually has already been addressed." T1 82:19–22.  The 2020 summary judgment found it was Plaintiff who persisted in refiling over Defendant's warnings. DE 226 at 17–18. Records and judicial findings show that on February 18, 2013 - just thirteen days after the February 5 withdrawal - Plaintiff wrote and sent a letter to the Family Court Administrative Judge acknowledging the "Federal Complaint, that I voluntarily withdrew…," and stating she would refile if the Family Court did not act. see *Rhee-Karn v. Burnett*, 2014 WL 4494126, at *2 (S.D.N.Y. Sept. 12, 2014); DE 448- the letter.

Two business days later, July 24, Dollinger revived all of this. He stated a non-existent flat-fee "express agreement" made trial unnecessary; but refused to produce it, and Defendant showed no such agreement existed. T2 27–32. The Court reiterated "this is not becoming a contract case." Id. That ruling was consistent with prior orders: (i) March 4, 2020 summary

---

[4] Transcript cites herein are as follows: DE 495-3 is T1 7/20/23; DE 495-4 is T2 7/24/23, DE 494-5 is T3 8/6/24; DE 495-7 is T5 8/8/24

judgment reducing case to negligence (DE 226); (ii) May 24, 2023 limiting trial to certain entries for the first federal action (DE 378 at 5); and (iii) June 16, 2023 denying Plaintiff relitigating her false "discharged for cause" and retainer/rule claims. DE 382, 383.

Plaintiff also repeated the lie that Defendant was "discharged for cause after a hearing" in Family Court – even though the record shows Plaintiff's own misconduct cost her custody and no such hearing regarding Defendant occurred. DE 76-6 at 2 (Family Court Order). The Court also previously deemed the Family Court immaterial since all Defendant's false claims about that were dismissed. DE 382,383.  Plaintiff defied these orders and repeated this lie on October 15, 2023 - also was denied**.** DE 414-416.

Plaintiff further misrepresented that she paid $315,000 "for federal actions" when fees largely related to Family Court, appeals, Article 78, and divorce proceedings. T2 10:15–17.   She again denied knowing of the first withdrawal (Id. 11:12–19), despite (i) her Feb. 18, 2013 letter acknowledging "I voluntarily withdrew" and intent to refile (DE 448; Rhee-Karn, supra), and (ii) her receipt of the Feb. 5, 2013 ECF notice of withdrawal. **9/25/25 Lask Dec.**

These serial misrepresentations—about unrelated malpractice actions, punitive damages, the second filing, retainer agreements, Family Court and fees—were already resolved. Dollinger's repeated recycling reflects a deliberate effort to abuse the docket and extract money after the Court reduced this case to negligence and nothing more.

### B. Trial-Eve Ambushes

#### i.  143-Page Document Dump

On July 23, Plaintiff served a 143-page, disorganized exhibit dump (DE 402-1). This caused opposition (DE 403) and two hours wasted on July 24 parsing through it, which the Court struck most of those documents as irrelevant or prejudicial and already deemed such and excluded "75 percent" of Plaintiff's witness list that also violated prior rules and basic law. T2 24–70; DE

404.  Dollinger's defiance of prior Orders is exemplified by his very first exhibit—the

Retainer—which had already been had already been ruled irrelevant numerous times, yet was

placed first, thumbing his nose at prior rulings.

### C.  Fabrication Accusation Vacating Trial - a Scheme to Avoid Trial

Plaintiff repeatedly sought to derail the July 25, 2023 trial with her last-minute exhibit dump,

recycled demands already dismissed and patent lies to disparage Defendant and her career. A

week earlier, Plaintiff filed baseless motions for reconsideration and interlocutory appeal, which

the Court rejected: "Plaintiff's motion essentially attempts to resurrect issues resolved at

summary judgment," citing no new facts or controlling authority. DE 392. Undeterred, Dollinger

next misrepresented the trial date and invoked vague "personal matters," which the Court

rebuked, noting Plaintiff had known the trial date since February 2023. DE 396. Plaintiff's next

effort to derail trial was an accusation of fraud against Defendant and her counsel—an eleventh-

hour time bomb later found entirely false, as set out below.

Despite having Defendant's exhibits since July 21 (DE 401-1), Dollinger waited until late in

the July 24 conference—after two hours of rejecting his arguments—to accuse Defendant and

her counsel of fabricating Exhibit 6.  He swore "Absolutely" that it was "fabricated," "recently

made," "doesn't exist," and promised proof from his unnamed "IP expert", a Dropbox-only

"protocol," and a "hard drive" from prior counsel's widow whose children "worked on the case."

T2 75–91. Incredibly, he did not produce proof of any of that because none of it existed.

Defendant immediately produced a July 29, 2019 cover letter proving Exhibit 6's authenticity.

The Court conceded, "I don't have a basis to exclude it," but nonetheless vacated the next day's

trial based on Dollinger's assertions. Id. 84–85, 89–91.

Defendant then filed proof that Dollinger's promises to the Court—fabrication, experts,

Dropbox mandate, hard drive and children as staff—were all false and despite the Court even

giving Plaintiff time, nothing materialized. DE 406. Plaintiff responded with more accusations and baseless discovery demands (DE 407), requiring further briefing (DE 408).

On August 9, 2023, the Court held Plaintiff's "fabrication" claim was "purely speculative," with "not even a scintilla of evidence," and lacking "a good faith basis" and her demands for "discovery on discovery" were a "wasteful distraction". DE 411.

That finding alone mandates sanctions.  A finding of "not even a scintilla of evidence" and lacking a "good faith basis" is the definition of bad faith sanctions. In *Paese v. New York Seven-Up Bottling Co.*, 158 F.R.D. 34, 37 (S.D.N.Y. 1994), the court held "That not even a scintilla of evidence … was proffered *is both astonishing and telling in light of representations made*…" to the court.  Similarly, Plaintiff's bad faith is "telling" by her refusal to proffer anything she promised.  In *Shangold v. Walt Disney Co.*, 275 F. App'x 72, 73 (2d Cir. 2008), the "most severe sanction" was upheld for fabricated evidence.  Plaintiff's fabricated accusation is no different than "fabricated evidence."  Additionally, this Court's finding of lacking a "good faith basis" also warrants sanctions. *Knipe v. Skinner*, 19 F.3d 72, 77 (2d Cir. 1994).  Here, Dollinger assured the Court - "Absolutely" - that he had proof by hard drives, IP experts, Dropbox mandates, and children who "worked on the case" - none of that existed.  Plaintiff perpetrated a fraud on the Court by pressing critical and serious allegations that she knew to be false.

Had the misrepresentations not been made, this court would not have vacated a trial that Defendant travelled to, paid for hotel and transportation and was ready to start trial.  This misconduct mirrors Dollinger's fraud in *Indiezone* (sanctioned for fabricating sham companies to file a sham complaint demanding billions of dollars) and his disqualification in *Empire Tr. v. Cellura* (S.D.N.Y. Oct. 24, 2024) after falsely accusing Judge Karas of *ex parte* collusion. Dollinger's frauds on courts is a pattern, not an aberration, and sanctions are warranted.  Nor did it end here—two months later, Plaintiff's lies resumed, as detailed below.

17

### D. Post–August 9 Order- Shifting Stories, Perpetuating Lies to Smear Counsel.

Despite the Court's August 9 Order ending this ruse, over 60 days later Plaintiff filed a 46-page "reconsideration" letter with irrelevant exhibits and yet another shifting story. DE 414. First, the "Dropbox" lie. Plaintiff's supposed "Dropbox protocol" suddenly became "Google Dropbox"—a product that does not exist. Dropbox is a standalone service (Dropbox, Inc.), entirely separate from Google Drive. They are competitors, not joint products. Plaintiff's invention of "Google Dropbox" underscores her effort to conceal the original lie. See Dropbox vs. Google Drive comparison (Exhibit G, 9/23/25 Lask Dec).

Next, Plaintiff and Dollinger smeared Defendant's counsel, Mr. Dolan, as dishonest after he informed the Court of Dollinger's $93,365.92 *Indiezone* fraud sanctions. Dollinger falsely stated those sanctions were "headed to the U.S. Supreme Court" [5], and went further—asserting Defendant "consulted" for his office and was "terminated." That is not just false but delusional, the kind of "factual contentions [that] are clearly baseless, such as when allegations are the product of delusion or fantasy." Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990). The same letter recycled the "stalker" smear and demanded a hearing on a contrived "conflict," forcing opposition (DE 415) and an Order again denying the requests as "immaterial" and his reply was prohibited. DE 416.

Sanctions are warranted for these repeated lies, fabrications, and improper filings

### E. Continuing Sanctionable Conduct

#### i. Repeated Misrepresentations in Pleadings and Motions

Plaintiff and Dollinger repeatedly advanced false statements in core filings:

---

[5] Dollinger repeated this lie to SDNY Judge Karas, who immediately rejected it as impossible because a 2014 sanction would not take ten years to reach the Supreme Court in 2024. **Exhibit E**, T 19–21. The Dollinger refused to answer Judge Karas.

- **Summary Judgment Reply**: Plaintiff misrepresented that "Judge Oetken's holdings citing Younger" established malpractice "as a matter of law." DE 220 at 3–4. In fact, Judge Oetken addressed only abstention, acknowledged Defendant argued *Younger* exceptions, and never found malpractice. Plaintiff also misrepresented abstention as a "Supreme Court mandate," concealing that *Younger* has recognized exceptions—including extraordinary bias—which Defendant expressly raised and Judge Oetken noted in his decision.

- **False Narrative of Two Federal Filings**: Plaintiff misrepresented that Defendant filed and prosecuted "two baseless and unsuccessful Federal Actions." DE 204 at 7; DE 211 at 22. However, the first was voluntarily withdrawn immediately and never prosecuted, and thus not "unsuccessful." Plaintiff herself admitted this at trial. T3 8/6/24 63–64:25-7; T4 8/7/24 142:1-12; 143:19-25; 144:1-9. A voluntary dismissal renders the action as if never filed, and "any future lawsuit based on the same claim [is] an entirely new lawsuit." *United States v. L-3 Commc'ns EOTech, Inc.*, 921 F.3d 11, 19 (2d Cir. 2019). There was only one lawsuit prosecuted, and this Court held it was not malpractice.

- **Adopted by Judges**: These lies infected rulings: Judge Preska wrote Defendant's "decision to commence two federal lawsuits … constituted legal malpractice." DE 97 at 21. Judge Cote later clarified Plaintiff's own misconduct—not Defendant—caused her loss. DE 226 at 9–10.

- **June 2023 Windfall Briefing (DE 380-385)**: Plaintiff again misrepresented Defendant was "discharged for cause after a hearing" in Family Court (false) and demanded resurrection of dismissed claims. Defendant's reply (DE 385) cited Orders DE 226, 378, 383 repeatedly denying Plaintiff's demands and accusations; the Court agreed and found Plaintiff's arguments "moot and entirely irrelevant." DE 387 at 4.

### ii. Complaint Knowingly False Allegations

Sanctions for bad-faith pleadings are proper at the end of the case. Chambers, 501 U.S. at 2138–39. The Third Amended Complaint was not just unclear as this Court found (DE 97 at 17), but a vehicle for known falsehoods:

1. **Fabricated Rule 11 Threat**: Plaintiff swore Defendant withdrew the first action due to a Rule 11 threat (TAC ¶ 82). Judge Preska unwittingly repeated the lie in her opinion. DE

97 at 22. No such threat exists; the federal dockets confirm it never occurred. *Rhee-Karn v. Burnett*, 2014 WL 4494126, at *2.

2. **False "But For" Assurances**: Plaintiff alleged she "would not have pursued" federal court "but for Lask's assurances." DE 57 ¶178. Judge Cote found the opposite: Defendant repeatedly warned Plaintiff against filing again, and Plaintiff insisted. DE 208 at 20.

3. **False Expert Claims**: Plaintiff affirmed Defendant negligently failed to retain an expert to rebut Dr. Brandt. TAC ¶¶ __. Judge Preska repeated this in finding negligence. DE 97 at 24–25. Judge Cote later rejected it, holding custody was lost due to the Family Court's findings of Plaintiff's contempt, unreliable testimony, and instability—not Defendant. DE 226 at 18–20.

4. **False Article 78/Disqualification Allegations**: Plaintiff swore Defendant never filed them. TAC ¶¶120–125. Judge Preska found those claims baseless. DE 97 at 19–21.

5. **Baseless Causes of Action**: This complaint was a copy-cat of what Dollinger filed years before in Franzone v Lask, 14-cv-03043, where he was disqualified and that baseless complaint was dismissed entirely for the same reasons as the bulk of the complaint at bar was dismissed- yet he filed the same causes of action here.  As Magistrate Gorenstein in the disqualification of Dollinger decision found "The complaint purports to assert an array of causes of action, including legal malpractice, unjust enrichment, "interstate stalking," "extortion/coercion," false advertising, and "intentional and/or negligent infliction of emotional distress." See 14-cv-03043 DE 80.  The same exact actions Plaintiff of Fraud, Judiciary Law § 487, GBL 349 (false advertising), Negligent Infliction of Emotional Distress, unjust enrichment, and fiduciary duty claims were all dismissed as factually and legally unsupported. DE 69; DE 97 at 19–21, 27–37.

Prosecuting a knowingly frivolous claim (lacking colorable basis and motivated by improper purpose i.e. harassment) is bad faith conduct warranting sanctions. *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021); yet Plaintiff advanced claims flatly contradicted by record and law - wasting years of litigation from a motion to dismiss to summary judgment to dismiss nearly everything.

### iii. Stalker Smears and Harassment

Courts do not tolerate abusive, demeaning, or threatening accusations masquerading as advocacy. See *Cameron v. Lambert*, 07 Civ. 9258 (DC), 2008 U.S. Dist. LEXIS 117399, 2008 WL 4823596, at *4 (S.D.N.Y. Nov. 7, 2008); *Ransmeier*, supra. ("escalating series of ad hominem attacks on opposing counsel" warranted sanctions). Yet nearly every one of Plaintiff's filings brands defendant a stalker without any basis and repeats Judge Preska's 2019 recusal order to use it to brand Defendant a "stalker"—words that this Circuit finds unacceptable as reputationally harmful when issued without notice or hearing in violation of *Keach*, supra. Any reasonable attorney knows that calling an adversary a "stalker" in litigation is improper. The law confirms as much: "Whether or not the statements are factually accurate is irrelevant," as they add nothing to any legal argument when "***the only live issue in this case is what damages Plaintiff is entitled to for [her] claims.***"  *Azkour v. Little Rest Twelve*, No. 10 Civ. 4132, 2014 WL 12779561, at *3 (S.D.N.Y. June 2, 2014).  Such statements are "offensive, unjustified, and entirely improper for legal proceedings," and constitute bad faith intended to harass and annoy. Id. See also *U.S. Commodity Futures Trading Comm'n v. LaMarco*, No. 17-CV-04087, 2025 WL 1726414, at *5 (E.D.N.Y. June 20, 2025) (striking motions containing offensive accusations). In *Azkour*, the court imposed $1,000 sanctions for each offensive statement, ordered the plaintiff to refrain from further insults, and warned that violations would trigger $5,000 sanctions per statement. Id.

Defendant repeatedly objected to the "stalker" smear, and this Court itself directed Plaintiff to refrain from personal attacks numerous times. Plaintiff never contested the legal definition of stalking or the Marshal's Handbook Defendant submitted (DE 531), which make clear the label is false. Yet Plaintiff persisted—filing brief after brief and letter after letter with the baseless slur, as detailed below.

- **May 30, 2017** (DE 38): Early *ad hominem* attacks on Defendant's education, setting the tone for collateral personal smears.
- **March 11, 2019 (DE 144-1):** Dollinger accused Defendant of stalking without a basis.
- **March 30, 2020 (DE 233):** The harassment continues as Dollinger falsely states Plaintiff had moved in July, 2019 for *sanctions and a "restraining order" against Defendant for "harassment-delay,"* and that the Court denied the motion "without prejudice to renew" on July 2, 2019. The record shows no such motion and no such decision.
- **August 8, 2023 (DE 413)**: Dollinger demanded "immediate action," branding Defendant a "stalker", baseless accusations of threatening his family. Court denied this as "not supported." T3 8/8/23 433:12-20
- **August 14, 2023 (DE 414):** Repeatedly falsely accuses Defendant of "stalking" Dollinger and Judge Preska "forced to recuse herself based on the Defendant's stalking her staff-former staff and the Judge herself" and "Perhaps had the Court intervened when her stalking was first brought to its attention todays situation would not exist. It should be clear, despite the actual and obvious warnings by this Court, and her awareness of her." DE 414. None of that is true or relevant to a case limited to damages as the Court's Order found. DE 416
- **October 12, 2023 (DE 414–416)**: Plaintiff recycled "stalker" and attacked Defendant's counsel Dolan of fabricating the *Indiezone* sanctions that Mr. Dolan also raised to this Court as Dollinger's personal attacks escalated. The Court again struck Plaintiff's accusations as "immaterial."
- **March 25, 2024 (DE 434)**: Five-page letter untethered to any issue in this case, recycling the "stalker" smear, and lied that "three other cases" of malpractice existed against Defendant, misrepresented litigation privilege law and baselessly demanding sanctions. DE 434. Defendant was forced—again—to respond to this meritless demand (DE 435), and the Court denied it again. DE 437. As shown above, this lie of malpractice cases against Defendant was

previously raised at the July 20, 2023 conference that the Court also immediately rebuked then. T1 46:3–11.

- **August 8, 2023 (Conference):** Dollinger repeated the "stalking" smear, stating Judge Preska "withdrew … because she had been stalked." T3 8/8/23; Defendant objected; the Magistrate stated he understood the objection and directed the parties to "be as professional as possible and simply refer to Judge Preska's ruling in that regard" meaning a recusal and nothing more. Id. Plaintiff's persistence in repeating this baseless smear despite that and repeated rulings against personal attacks underscores bad faith and warrants sanctions.

- **February, 2025 (DE 504–505):** Embedded in Reply personal attacks, criminal conduct, false accusation of perjury and "stalker" smear in replies, forcing Defendant to obtain relief for a sur-reply, as granted.

- **July 2025 Reconsideration Motion by Defendant (DE 531):** Defendant attached Marshal's Handbook and definition of stalking to show the "stalker" smear is baseless—Plaintiff did not rebut, yet continued using it.

- **March, 2025 (DE 519–521):** Unlawful sur-sur-reply again repeating smears of "perjury and intimidation" requiring Defendant to move to strike, as granted.

- **August 18, 2025 (DE 546):** Plaintiff's reply falsely accused Defendant of "continued harassment and stalking" and of "referencing sealed matters" about Dollinger's private medical history—claims made without a shred of substantiation.  This again caused Defendant to complain to the Court, that granted her sur-reply proving this false, then the Court refused to address these baseless accusations in its August 25, 2025 Orders.

**Now is the time to sanction these repetitive smears.** Plaintiff has repeatedly leveled grave but wholly unsubstantiated accusations—branding Defendant a "stalker," inventing three other malpractice cases against her, claiming disclosure of private medical records, and even alleging perjury. All were designed to harass Defendant, prejudice the Court, and distract from the merits. Courts do not tolerate such tactics. *Azkour*, supra; *LaMarco*, supra.

Under *Azkour,* sanctions of $1,000 per offensive statement, rising to $5,000 for repeats, are appropriate. Listed above are 12 such instances: two before the Court's March 2, 2023 directive

(2 × $1,000 = $2,000) and ten after (10 × $5,000 = $50,000). The total sanction warranted is $52,000. This figure is conservative, counting only 12 documented instances, even though Plaintiff's smear campaign pervades nearly every filing in this case.

### iv. Pattern of Delay and Defiance of Orders

From the outset, Plaintiff and Dollinger turned this litigation into a campaign of obstruction. They refused to pay filing fees (DE 6), filed *ex parte* papers until reinstatement (DE 7–8), and cycled through mislabeled complaints for over a year into 2017, drawing repeated admonitions for "dilatory conduct." DE 29 at 11; DE 58. When ordered to appear personally on a disqualification motion which in fact explained why Dollinger was disqualified before in his copy-cat case of *Franzone v Lask* he filed against Defendant years before and dismissed entirely, Dollinger evaded the Court by substituting Kenneth Craig at the last minute. DE 40, 42, 44. Later, after Defendant repeatedly tried communicating to Craig to settle the case with no response, Defendant discovered Plaintiff concealed Craig's death for months and reported this to the Court (DE 230), then Dollinger ignored an April 2020 appearance order after he promised on the record to appear, angering the Court again and causing a second termination of the case. DE 230, 234–35.

The misconduct did not stop. Dollinger falsely denied his *Indiezone* sanctions (DE 38, 243, 251), contradicted himself on trial availability, failed to meet pretrial obligations, and succeeded in vacating trial with a fabricated "fabrication" claim. He wasted further time attempting to unseal a sealed, unrelated 2011 letter containing his same vile accusations, already deemed improper by Judge Barbara Jones. DE 144-1 at 6 n.2. He also sought adjournments on absurd grounds—including appointment of a "special master" (DE 154) and renewed demands to unseal irrelevant documents (DE 155)—all denied.

Plaintiff likewise defied the Court's directive to file pretrial documents (DE 327), and both she and Dollinger failed to appear for a court-ordered mediation they had agreed to (DE 310), without notice to the Court or Defendant, leaving Judge Cave and Defendant waiting in vain. Dollinger also advanced the repeated lie that the Craig "Estate" was entitled to fees. On March 30, 2020, he threatened that the Estate would collect fees from this malpractice action. DE 233. He repeated this at the August 8, 2023 conference, where the Court confirmed "Ms. Lask, you are making a valid point" and warned Dollinger: "I assume counsel will observe Rule 11." T3 8/8/23 433–34. For a third time, he pressed the same baseless "Estate" theory to delay post-trial briefing and then blamed Defendant for the delay. The Magistrate found his excuses "dubious," noting no estate is involved and the delays were attributable to Dollinger's own requests for adjournments due to travel and a family death. DE 489.

The pattern is unmistakable: Plaintiff and Dollinger have delayed at every turn by ignoring orders, recycling falsehoods, and consuming judicial resources. This case was not prolonged by complexity, but by obstruction. Every phase—from filing to pretrial to trial—was marred by their misconduct. That is sanctionable.

## F.  Defied Pretrial Order--Rule 16(f) Sanctions

Rule 16(f) authorizes sanctions where a party or attorney "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). No showing of bad faith is required—violation alone suffices. *Houghton v. Culver*, 467 F. App'x 63, 64 (2d Cir. 2012); *Martin v. Giordano*, 185 F. Supp. 3d 339, 354 (E.D.N.Y. 2016). Sanctions include fee-shifting (id.), fines payable to the Clerk (*Bouveng v. NYG Cap. LLC*, 2017 WL 6210853, at *5 (S.D.N.Y. Dec. 7, 2017)), and penalties for failing to attend mediation—ranging from $1,000 (*Zalisko v. MTA New York City Transit*, 2010 WL 3185685, at *1 (S.D.N.Y. Aug. 12, 2010)) to $3,400 to the Clerk plus $1,600 in legal fees. Adjusted for inflation, those figures would be far higher today.

Here, Plaintiff and Dollinger repeatedly defied such orders. On April 20, 2023, the Court found "it is plain that Plaintiff's counsel did not fulfill his obligation to timely prepare and provide to defense counsel the pretrial filings due on April 19, 2023," noting their belated "slap-dash pretrial filing" even included irrelevant claims like §1983 and mental anguish damages. DE 327. Earlier, on March 31, 2023, both Plaintiff and Dollinger failed to appear for a simple dial-in mediation before Judge Cave—despite agreeing to the date. DE 310. Neither notified the Court or Defendant. Judge Cave and Defendant waited over thirty minutes, with Judge Cave even attempting to reach Dollinger directly, to no avail. The no-show wasted resources and forced adjournment to May 1, 2023. DE 315.

These violations fall squarely within Rule 16(f) and warrant sanctions.

### G. Ambush Discovery, replies, Sur-replies, trial

An Order in 2019 directed expert disclosure. DE 155. Instead, Plaintiff ambushed by uploading "expert" reports at summary judgment, prompting Defendant's objections. DE 208–220. An August 2, 2022 Order denied reopening discovery. DE 244. Yet Plaintiff tried again, presenting the same "expert." The Magistrate found the witness undisclosed, in violation of prior orders, and unqualified as Defendant had long argued. DE 378 at 10–11.

This ambush tactic recurred: embedding sanctions demands and smears in replies, filing unauthorized sur-sur-replies, and staging a 143-page last-minute exhibit dump—most stricken as barred by prior rulings. Most egregious, on the eve of trial Plaintiff falsely accused Defendant of fabricating an exhibit, vacating the trial—only for the Court to later find the charge had "not even a scintilla of evidence" and "no good faith basis." DE 411.

These serial ambushes—spanning 2019 through trial—prove a deliberate, bad-faith strategy warranting sanctions.

**H. Pattern of Lying About Sanctions and Discipline**

Dollinger repeatedly lied about his *Indiezone* sanctions—denying they existed, falsely

claiming U.S. Supreme Court review, and even telling this Court he was found "innocent" by the

Ninth Circuit. He then smeared Defendant's counsel, Mr. Dolan, as dishonest for accurately

reporting those sanctions. At a conference, when asked how he could appear while still tagged

with unpaid *Indiezone* sanctions, Dollinger deflected: "The Court should recognize I've not been

disciplined." T3 362:1–10; 363:11–12. That was false. In November 2023, the Ninth Judicial

District Grievance Committee (File No. 35328/18) imposed discipline on him for breaching RPC

3.1(a) and 1.16(b)(1). 9/25/25 Lask Dec.

Misrepresenting a disciplinary history is sanctionable. *Gollomp v. Spitzer*, 568 F.3d 355, 374

(2d Cir. 2009). The same result applies given Dollinger's repeated misrepresentations of the

Ninth Circuit's *Indiezone* decision, which in fact affirmed sanctions against him for fraud on the

court.

**VI.  CONCLUSION**

For nearly a decade, Plaintiff and her counsel have waged a campaign of obstruction, deceit,

and harassment—fabricating citations, lying about orders and filings, ambushing with baseless

sanctions and sur-replies, defying mediation and pretrial orders, and smearing Defendant with

reputationally devastating "stalking" accusations. This misconduct is not isolated but consistent

with Dollinger's pattern of fraud, sanctions, and disqualifications in other courts, and with

findings against Plaintiff, including contempt.

The law requires sanctions for even a single instance of bad-faith or just one fabricated

citation. *Park v. Kim*, 91 F.4th 610 (2d Cir. 2024); *Int'l Techs. Mktg. v. Verint Sys.*, 991 F.3d 361

(2d Cir. 2021). Here, the record reflects well over twenty instances—so many, in fact, that they

are too numerous to quantify.  This Court itself has already found Plaintiff's fake cases and "not

even a scintilla of evidence" and "no good faith basis" for Plaintiff's central accusation that vacated the trial. DE 411. To decline sanctions now would place this Court at odds with controlling Second Circuit precedent and encourage future litigants to pollute the record with fictions and smears.

Sanctions are warranted under every available authority:

- **Rule 11**, for fabricated authorities and knowingly false submissions;

- **28 U.S.C. § 1927**, for multiplying proceedings with fictitious cases, baseless motions, and ambush filings, persistent threats and frivolous filings;

- **Inherent power**, for a deliberate, bad-faith scheme to mislead the Court and destroy Defendant's reputation; and

- **Rule 16(f)**, for defiance of pretrial and mediation orders.

Given Dollinger's recidivism and Plaintiff's repeated misconduct found in other courts, affirmed on appeal and reiterated by Judge Cote, and Plaintiff's personal participation, deterrence requires more than nominal penalties.

For the foregoing reasons, Defendant respectfully requests that the Court (a) impose sanctions jointly and severally against Plaintiff and her counsel Dollinger, in an amount no less than $52,000, considering *Azkour*; (b) such additional fee-shifting and monetary penalties as billing to be filed by Defendant in 30-days from this decision shows; (c) that Dollinger be referred to the Grievance Committee for further discipline; and (d) that the Court order the following additional relief to protect the integrity of these proceedings:

1. That Dollinger personally certify in any future filing that he has reviewed and verified the accuracy and authenticity of every case, quotation, and record citation submitted;

2. That Plaintiff and Dollinger be expressly barred from referring to Defendant as a "stalker" in any way, including invoking Judge Preska's recusal order (as the Court

admonished on August 8, 2024), or recycling collateral accusations of perjury, intimidation, or claims of non-existent malpractice cases;

3. That Plaintiff and Dollinger be prohibited from filing any new sanctions motions, reconsideration requests, or reply-embedded arguments without prior leave of Court;

4. That Dollinger be required to complete continuing legal education in federal practice, Rule 11, and candor to the tribunal, with proof of completion filed on the docket;

5. That Plaintiff and Dollinger be held jointly and severally liable for Defendant's reasonable attorneys' fees and costs incurred as a result of their misconduct, in addition to a fine payable to the Clerk of Court;

6. That Dollinger be referred to this Court's Grievance Committee, including for consideration of suspension of his bar privileges until he satisfies his prior sanctions obligations, including those in *Indiezone*; and

7. That all future filings from Plaintiff and Dollinger be subject to page limits and a certification of relevance to prevent further collateral abuse of the record.

The integrity of these proceedings—and of the judicial process itself—demands nothing less.


Dated: September 25, 2025                    Respectfully submitted,

                                            LAW OFFICES OF SUSAN CHANA LASK


                                            /s/ Susan Chana Lask
                                            By: Susan Chana Lask, Esq.
                                            244 Fifth Avenue, #2369
                                            New York, NY 10001
                                            917. 300-1958

                                            *Counsel for Defendant*

## WORD COUNT DECLARATION

I, **Susan Chana Lask**, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Defendant in this action and an attorney admitted to practice before this Court.

2. I submit this declaration in connection with Defendant's Memorandum of Law in Support of Motion for Sanctions**,** dated September 25, 2025.

3. In accordance with Local Civil Rule 7.1 and the Court's Individual Practices, I certify that the memorandum contains 8,647 words**,** excluding the caption, table of contents, table of authorities, signature block, and words past "for the foregoing reasons" above the signature block and this declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 25, 2025

                             LAW OFFICES OF SUSAN CHANA LASK

                             /s/ Susan Chana Lask
                             By: Susan Chana Lask, Esq.

                             244 Fifth Avenue, #2369
                             New York, NY 10001
                             917. 300-1958